Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
KIRBY NOONAN LANCE & HOGE LLP
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Filed

12 DEC 14 AM 11:13

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: ____________________

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, DOES 1 through 100, inclusive,

Defendants.

Case No. CV12-10697 JAK (SHx)

Los Angeles Superior Court Case No. BC 475958

NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE ENTITLED COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

Pursuant to 28 U.S.C. §§ 1441 and 1446, the Defendants, Wright Medical Technology, Inc. and Wright Medical Group, Inc. (collectively "Wright Medical"), by and through their counsel, file this Notice of Removal to remove this action from the Los Angeles County Superior Court, California, where this action is now pending, to the United States District Court for the Central District of California, Western Division. In support of this Notice of Removal, Wright Medical states:

///

Generated by CamScanner from intsig.com

1. On December 22, 2011, the Plaintiffs commenced an action against Wright Medical and others in the Superior Court of Los Angeles County, California entitled Alan Warner and Patricia Warner v. Brad L. Penenberg, M.D., Wright Medical Group, Inc., Wright Medical Technology, Inc., a corporation, Doctor, and DOES 1 through 100, Inclusive, Case No. BC475958 (the "State Court Action"). (See Plaintiff's Complaint attached hereto as Exhibit A.) Wright Medical was served with the State Court Action papers on or about February 17, 2012.

2. Plaintiffs are, upon information and belief, residents of the State of California. (See Exhibit A, Complaint at ¶ 1.)

3. Plaintiffs' Complaint alleges that Defendant Brad L. Penenberg, M.D. ("Penenberg") is a resident of the State of California. (See Exhibit A, Complaint at ¶ 2.)

4. Both Wright Medical Technology, Inc. and Wright Medical Group, Inc. are now, and were at the time of the filing of the State Court Action, Delaware corporations with their principal place of business at 5677 Airline Road, Arlington, Tennessee, 38002.

5. Based on Plaintiffs' initial Complaint, diversity of jurisdiction did not exist pursuant to 28 U.S.C. §§ 1441 and 1446 because Defendant Penenberg is a resident of the State of California, as are Plaintiffs and thus, removal was not available.

6. Nowhere in their Complaint do Plaintiffs allege the citizenship or residences of the remaining Defendants DOE. Further, "for purposes of removal..., the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

7. In fact, Plaintiffs' only allegation against the Doe Defendants is at Paragraph 6 which states:

> The true names and capacities, whether individual, corporate, associate, governmental, or otherwise of DOE 1 through DOE 100, inclusive, are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants are ascertained, plaintiffs will amend this Complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each of the defendants designated herein as a DOE was and is responsible in some manner for the events and happenings herein referred to and their conduct directly, proximately and legally caused the injuries and damages sustained by plaintiffs as herein alleged, either through said defendants' own conduct or through the conduct of their agents, servants, or employees, or in some other manner.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

(See Exhibit A, Complaint at ¶ 6.)

8. Further, Plaintiffs fail to direct any count against the Doe Defendants except for the Fifth Cause of Action (By Plaintiff Patricia Warner Against All Defendants For Loss of Consortium Against all Defendants). (See Exhibit A, Complaint at p. 11.)

9. On or about August 16, 2012, Plaintiffs added Harlan C. Amstutz, M.D., an individual, and Harlan C. Amstutz, M.D., a Medical Corporation, as Defendants in the place of Doe Nos. 1 and 2. (See Exhibits B and C attached hereto). However, Plaintiffs' Amendment to the Complaint (Fictitious/Incorrect Name) fails to allege the residency of Dr. Harlan C. Amstutz (Ex. B), although it does allege that Harlan C. Amstutz, M.D., a medical corporation, is a California corporation (Ex. C).

10. On or about August 30, 2012, Plaintiffs filed a request for dismissal of Defendant Penenberg. (See Exhibit D attached hereto.) To date, no order has yet entered dismissing Defendant Penenberg.

11. Upon information and belief, Defendants Harlan C. Amstutz, M.D. and Harlan C. Amstutz, M.D., a Medical Corporation, have not been served with process and the time to serve process on these Defendants expired on or about September 17, 2012. Cal. Rule of Court 3.110(b). Plaintiffs did not move to extend the time to serve process.

12. Because Defendants Harlan C. Amstutz, M.D., and Harlan C. Amstutz, M.D., a Medical Corporation, were not timely served with process, their citizenship is irrelevant for purposes of diversity jurisdiction because courts assess the diversity of "properly joined *and served*" Defendants. 28 U.S.C. § 1441(b)(2) (emphasis added). Thus, complete diversity exists between Plaintiffs, residents of the State of California, and the remaining Defendants, Wright Medical Technology, Inc. and Wright Medical Group, Inc., Delaware corporations with their principal places of business in Tennessee.

13. This Notice of Removal is timely filed with this Court as required by 28 U.S.C. § 1445(b) and before one year has expired from the time Plaintiffs filed suit in the State Court Action on December 27, 2011.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

14. The Complaint contains five counts for separate causes of action, each count seeking general and special damages, interest, cost and expenses, pre-judgment interest and such other and further relief as may be just and proper. Therefore, the aggregate monetary relief sought in the Complaint is over $75,000, and the amount in controversy exceeds the sum or value of $75,000 and satisfies the jurisdictional requirements of 28 U.S.C. § 1332.

15. Additionally, notwithstanding the monetary demands contained in each count of the Complaint, Plaintiffs' ADR Case Referral Intake Form – a form used in the Los Angeles Superior Court when the court assigns a case to ADR or mediation – asserted that the amount in controversy is between $250,000-500,000.

16. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs. Removal of the State Court Action to this Court is therefore appropriate under 28 U.S.C. § 1441.

17. Pursuant to 28 U.S.C. § 1446(a), copies of the entire State Court Action, including a docket sheet, are attached as Exhibit E.

18. A true and correct copy of this Notice of Removal will be filed with the Clerk of the Los Angeles County Superior Court and a copy of this Notice of Removal will be served on the attorney for Plaintiffs as required by 28 U.S.C. § 1446(d).

19. By filing this Notice of Removal, Wright Medical does not waive any defense which may be available to it, including defects as to service of process, venue, or jurisdiction.

///

///

///

///

///

///

///

///

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

WHEREFORE, the filing of this Notice of Removal effects the removal of the above-described action now pending in the Superior Court for the County of Los Angeles, California to this Court.

DATED: December 13, 2012

KIRBY NOONAN LANCE & HOGE LLP

By: [signature]
Michael L. Kirby
Micaela P. Banach
Attorneys for Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

DEC 27 2011

John A. Clarke, Executive Officer/Clerk
BY ______ Deputy
Shaunya Wesley

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

a corporation

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., WRIGHT MEDICAL TECHNOLOGY, INC., and DOES 1 through 100, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

ALAN WARNER and PATRICIA WARNER

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court
111 N. Hill Street, Los Angeles, CA. 90012
Central District

CASE NUMBER:
*(Número del Caso):*
BC 475958

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Steven R. Vartazarian, 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA. 91403; 818-990-9949

DATE: *(Fecha)* DEC 27 2011 JOHN A. CLARKE, CLERK Clerk, by *(Secretario)* Shaunya Wesley, Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Wright Medical Technology, INC

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Steven R. Vartazarian, Esq. (SBN: 227635)
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403
(818) 990-9949

Attorney for Plaintiffs,
ALAN WARNER and PATRICIA WARNER

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

DEC 27 2011

John A. Clarke, Executive Officer/Clerk
BY ____________, Deputy
Shaunya Wesley

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| ALAN WARNER and PATRICIA WARNER,<br><br>Plaintiffs,<br>v.<br><br>BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,<br><br>Defendants. | CASE NO. BC 475958<br><br>**COMPLAINT FOR:**<br><br>**(1) Medical Malpractice**<br>**(2) Strict Products Liability**<br>**(3) Negligence**<br>**(4) Breach of Warranty**<br>**(5) Loss of Consortium**<br><br>**DEMAND FOR JURY TRIAL**<br><br>*[AMOUNT DEMANDED EXCEEDS $25,000]* |

Plaintiffs ALAN WARNER and PATRICIA WARNER bring this action against BRAD L. PENENBERG, M.D., and WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, and DOES 1 THROUGH 100, inclusive (collectively hereinafter referred to as "Defendants") and allege as follows:

**GENERAL ALLEGATIONS**

1. Plaintiff ALAN WARNER and his wife PATRICIA WARNER were and are residents of Los Angeles, California at all relevant times.

2. Defendant Brad L. Penenberg, M.D., was and is a resident of Los Angeles, California at all relevant times.

3. Defendant Wright Medical Group, Inc., a corporation, is a citizen of the

State of Delaware (where incorporated) and the State of Tennessee (principal place of business), and is the parent company of Defendant Wright Medical Technology, Inc., a corporation, which is a citizen of the State of Delaware (where incorporated) and the State of Tennessee (principal place of business), collectively referred to hereinafter as the "WRIGHT" Defendants.

4. Directly or through its aforesaid subsidiaries, Defendants Wright Medical Group, Inc., and Wright Medical Technology, Inc., designed, manufactured, distributed and sold in California various orthopedic hardware systems including the ProFemur R hip prosthesis component at issue in this case.

5. The ProFemur R hip prosthesis component was approved for marketing by the Food and Drug Administration via its 510(K) Premarket Notification procedure filed by one of the "Wright" defendants, and therefore defendants are not exempt from suit in State Court.

6. The true names and capacities, whether individual, corporate, associate, governmental, or otherwise of DOE 1 through DOE 100, inclusive, are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants are ascertained, plaintiffs will amend this Complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each of the defendants designated herein as a DOE was and is responsible in some manner for the events and happenings herein referred to and their conduct directly, proximately and legally caused the injuries and damages sustained by plaintiffs as herein alleged, either through said defendants' own conduct or through the conduct of their agents, servants, or employees, or in some other manner.

7. At all times herein mentioned, each defendant named herein was and is the duly authorized agent, employee, servant, partner and/or joint venturer of the other co-defendants, acting within the course and scope of said relationship. Further, when acting as a principal, each defendant approved, consented to, and ratified the acts and conduct of his, her or its co-defendants.

///

## FACTUAL CONTENTIONS

8. On November 27, 2007, plaintiff ALAN WARNER underwent a revision of his existing left hip implant using a ProFemur R femoral component manufactured by the "WRIGHT" Defendants. Specifically, the femoral component was a ProFemur R 176mm x 14mm bearing serial number 037409895; and was manufactured and caused to be distributed to California by defendants WRIGHT MEDICAL GROUP, INC., and, WRIGHT MEDICAL TECHNOLOGY, INC. At the time the femoral component was implanted in plaintiff, it was in the same condition in all respects as when it left the Defendants' control.

9. Less than three years later, and on October 27, 2010, as plaintiff ALAN WARNER was walking in his home he suddenly felt severe pain in and around his left groin. He was unable to ambulate and immediately laid down. The next morning Mr. Warner presented to Cedars Sinai Medical Center and was diagnosed with a left femoral stem fracture and scheduled for surgery to revise his left total hip implant. The X-Ray depicting the broken femoral component taken on October 29, 2010, is hereby identified and incorporated herein by reference:

10. On November 1, 2010, plaintiff underwent revision surgery whereby his entire left hip implant system was revised again using components manufactured by the "WRIGHT" defendants.

11. Several months later, and in and around February 1, 2011, the revised hip implant system failed when the acetabular component did not take to plaintiff's pelvis causing an anterior dislocation and resulting subsidence of the femoral component. On that day, plaintiff presented to Cedars-Sinai Medical Center's emergency department, where he was admitted. The following day, plaintiff was taken to the operating room where a closed reduction of the hip was performed under general anesthesia, but still felt by the physicians to be unstable. Therefore, on February 7, 2011, plaintiff again underwent a revision of his total hip implant system, but this time with the use of a hip implant system from a different manufacturer (Stryker Homemedica Osteonics) from which plaintiff has since been recovering.

**FIRST CAUSE OF ACTION**

**(By ALAN WARNER For Medical Malpractice (failure to obtain informed consent) against Defendant Brad L. Penenberg, M.D.)**

12. Plaintiff re-alleges and incorporates herein by reference the above paragraphs 1 through 11 as if fully set forth herein.

13. Plaintiff contends that Defendant, Brad L. Penenberg, M.D., was negligent in and around November 27, 2007, because he performed a revision of plaintiff's left total hip arthroplasty without first obtaining plaintiff's informed consent.

14. Plaintiff contends that defendant, Brad L. Penenberg, M.D., performed a revision of plaintiff's left total hip arthroplasty on November 27, 2007, using a Wright Medical Technology Profemur R femoral component. Plaintiff contends that he did not give his informed consent to the procedure. Plaintiff further contends that a reasonable person in plaintiff's position would not have agreed to the revision surgery if had been fully informed of the results, risks, and alternatives to the surgery, including the use of hip replacement systems manufactured by companies other than WRIGHT. Plaintiff contends

that he was harmed by a result/risk that defendant should have explained before the revision surgery was performed, such as the failure rate of hip replacement systems manufactured by WRIGHT.

15. As a direct, proximate, and legal result of defendant's negligence as described herein, plaintiff ALAN WARNER suffered debilitating injury when the femoral component of his hip replacement system fractured and thereby required plaintiff to undergo two (2) invasive revision surgeries. As a result, plaintiff has suffered from past, and will suffer from future, physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress.

16. As a further direct, proximate, and legal result of Defendant's negligence as described herein, plaintiff has incurred past medical expenses and will incur future medical expenses in an amount to be ascertained at the time of trial.

**SECOND CAUSE OF ACTION**

**(By ALAN WARNER For Strict Products Liability Against Defendants Wright Medical Group Inc., and Wright Medical Technology, Inc., for defectively designing, manufacturing, and failing to warn of the potential for breakage of the Profemur R femoral component as described above)**

17. Plaintiff re-alleges and incorporates herein by reference the above paragraphs 1 through 16 as if fully set forth herein.

18. **MANUFACTURING DEFECT**

Based on information and belief, Plaintiff contends that the Profemur R femoral component as described herein and used to revise plaintiff's left hip prosthesis on November 27, 2007, contained a manufacturing defect. Plaintiff contends that Defendants manufactured, distributed, and sold the Profemur R femoral component in California. Plaintiff contends that the product contained a manufacturing defect when it left the Defendants' possession. Plaintiff further contends that the product caused harm to plaintiff by fracturing as set forth above in Paragraph nine (9) and thereby necessitated

two (2) extensive revision surgeries. Plaintiff claims that the products manufacturing defect was a substantial factor, and the only factor, in causing plaintiff's harm as stated herein.

19. **DESIGN DEFECT**

A. **Consumer Expectation Test**

1. Plaintiff claims that the products design was defective because the product did not perform as safely as an ordinary consumer would have expected it to perform. Specifically, plaintiff who was an ordinary consumer, formed a reasonable minimum safety expectation that the hip implant component manufactured by Defendants would not fracture when being used as intended, and require avoidable surgery to revise.

2. Plaintiff further alleges that Defendants manufactured, distributed, and sold the defective product within California. Plaintiff alleges that the product did not perform as safely as an ordinary consumer would have expected it to perform when used in the manner intended by the manufacturer. Plaintiff further contends that he was harmed by the defective design of the product when it fractured and required removal. Plaintiff contends that the products failure to perform safely was a substantial factor, and the only factor, in causing plaintiff's harm as stated herein.

B. **Risk-Benefit Test**

1. Plaintiff claims that the product's design caused harm to plaintiff. Plaintiff contends that Defendants manufactured, distributed and sold the subject product in California. Plaintiff contends that he was harmed by the product as a result of its design when it fractured and required surgical removal. Plaintiff contends that the products design was a substantial factor, and the only factor, in causing his harm as stated herein.

///

20. **FAILURE TO WARN**

Plaintiff claims that the Profemur R femoral component lacked sufficient warning of its potential risk for fracturing. Plaintiff contends and alleges that the Profemur R femoral component had a potential risk of fracturing that was known and/or knowable by the use of scientific knowledge available at the time of the manufacture, distribution, and/or sale. Plaintiff further contends that the potential risk of fracturing presented a substantial danger to users of the Profemur R femoral component and that ordinary consumers could not have recognized. Plaintiff further contends and alleges that Defendants failed to adequately warn of the potential risk of the Profemur R femoral component fracturing. Furthermore, as Plaintiff was using the Profemur R femoral component in a way that was reasonably foreseeable to Defendants, Plaintiff was harmed and the lack of sufficient warnings was a substantial factor in causing Plaintiff's harm.

21. As a direct, proximate, and legal result of the actions of Defendants described herein, plaintiff ALAN WARNER suffered debilitating injury which required two (2) invasive revision surgeries, which caused plaintiff to suffer from past and future physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress.

22. As a further direct, proximate, and legal result of defendant's negligence as described herein, plaintiff has incurred past medical expenses and will incur future medical expenses in an amount to be ascertained.

**THIRD CAUSE OF ACTION**

**(By ALAN WARNER for Negligence Against Defendants Wright Medical Group Inc., and Wright Medical Technology, Inc.)**

23. Plaintiff ALAN WARNER re-alleges and incorporates the above paragraphs 1 through 22 as if fully set forth herein.

24. Defendants owed a duty of reasonable care to plaintiff ALAN WARNER to design, manufacture, sell, and/or distribute the Profemur R femoral Component, as described above, in a condition that was safe for its intended purpose. Defendants' duty

includes a duty to ensure that the Profemur R femoral component did not cause users to suffer from failure once implanted. Defendants failed to exercise ordinary care in the manufacture, design, sale, testing, quality assurance, quality control, marketing, and/or distribution of the Profemur R femoral component in that Defendants knew or should have known that the defective Profemur R femoral component created a risk of failure that could result in painful and debilitating injury, which could only be alleviated by revision surgery.

25. Defendants breached their duty to plaintiff ALAN WARNER in the testing, design, manufacture, packaging, warning, advertising, promotion, distribution and sale of its Profemur R femoral component in that Defendants failed to use ordinary care in designing and manufacturing the Profemur R femoral component so as to avoid the manufacturing and design defects that cause the Profemur R femoral component to fail.

26. Defendants also breached their duty to plaintiff ALAN WARNER by failing to properly design, manufacture, inspect, and/or prepare the Profemur R femoral component that was implanted into plaintiff and others similarly situated.

27. Although Defendants knew or should have known since 2007, or earlier that the Profemur R femoral component was defective and could fail, Defendants failed to warn the medical community and the public of said risk. Defendants knew or reasonably should have known that the Profemur R femoral component was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner. Defendants knew or reasonably should have known that users would not realize the danger and Defendants failed to adequately warn of the danger. A reasonable manufacturer, distributor, and/or seller under the same or similar circumstances would have warned of the danger. As a result of the negligent failure to warn, plaintiff was harmed. Defendants' failure to warn was a substantial factor in causing plaintiff's harm.

28. Defendants knew or should have known that consumers such as plaintiff ALAN WARNER risked injury as a result of Defendants' failure to exercise ordinary care as described above.

29.     Plaintiff further alleges that Defendants knew or should have known of the Profemur R femoral components defective nature, as set forth herein, but continued to manufacture, design, market, and sell the Profemur R femoral component so as to maximize sales and profits at the expense of the health and safety of the public, including plaintiff, in conscious or reckless disregard of the foreseeable harm caused by the defective Profemur R femoral component.

30.     Alternatively, Plaintiff contends that Defendants were negligent because they failed to recall and/or retrofit the Profemur R femoral component so that it would not fracture when being used as intended. Plaintiff is informed and believes that prior to 2007 Defendants knew or should have known of the potential for the Profemur R femoral component to fracture and should have therefore recalled the product. Furthermore, defendants knew or reasonably should have known that the Profemur R femoral component was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner. Defendants became aware of this defect after the Profemur R femoral component was sold. Defendants failed to recall and/or retrofit the Profemur R femoral component as a reasonable manufacturer, distributor or seller under the same or similar circumstances would have done. As a result of Defendants' failure to recall and/or retrofit the Profemur R femoral component it was implanted in plaintiff and proximately caused him to suffer injury as described herein.

31.     As a direct, proximate, and legal result of Defendants' negligence as described herein, plaintiff ALAN WARNER suffered debilitating injury which required two (2) invasive revision surgeries, which caused plaintiff to suffer from past and future physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress.

32.     As a further direct, proximate, and legal result of defendant's negligence as described herein, plaintiff has incurred past medical expenses and will incur future medical expenses in an amount to be ascertained.

///

**FOURTH CAUSE OF ACTION**

**(By ALAN WARNER for Breach of Warranty Against Defendants Wright Medical Group Inc., and Wright Medical Technology, Inc.)**

33. Plaintiff ALAN WARNER re-alleges and incorporates the above paragraphs 1 through 32 as if fully set forth herein.

34. Plaintiff contends that he was harmed by the Profemur R femoral component because it did not have the quality that a buyer would expect and/or that it was not suitable for its intended purpose.

35. Defendants impliedly warranted that they would sell and deliver the Profemur R femoral component that was fit for the particular purposes for which it was intended. Defendants also knew that plaintiff ALAN WARNER and her physician intended to use the Profemur R femoral component for the particular purpose of hip replacement.

36. Plaintiff ALAN WARNER and his physician relied upon Defendants' skill and/or judgment in furnishing a suitable Profemur R femoral component.

37. Defendants, by selling and delivering a defective Profemur R femoral component, which was used during Plaintiff's surgery, breached the implied warranties of merchantability and fitness in that the defective Profemur R femoral component presented an unreasonable risk of failure resulting in pain, discomfort, anxiety, emotional distress, partial disability, and the necessity of painful, invasive surgery.

38. As a direct, proximate, and legal result of defendant's actions as described herein, plaintiff ALAN WARNER suffered debilitating injury which required two (2) invasive revision surgeries, which caused plaintiff to suffer from past and future physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress, and was caused to suffer from, and continues to suffer from emotional distress, pain, discomfort, and anxiety.

39. As a further direct, proximate, and legal result of defendant's negligence as

described herein, plaintiff has incurred medical expenses and will incur future medical expenses in an amount to be ascertained.

**FIFTH CAUSE OF ACTION**

**(By Plaintiff Patricia Warner Against All Defendants For Loss of Consortium Against All Defendants)**

40. Plaintiff PATRICIA WARNER re-alleges and incorporates the above paragraphs 1 through 39 as if fully set forth herein.

41. At all times material to this action, Plaintiffs ALAN WARNER and PATRICIA WARNER were husband and wife. Plaintiff PATRICIA WARNER contends that she has been harmed as a result of the wrongful acts alleged herein against defendants collectively.

42. Prior to plaintiff ALAN WARNER sustaining the above described injuries, he was able to and did perform his duties as Plaintiff PATRICIA WARNER'S husband. Subsequent to sustaining the injuries as described above, Plaintiff ALAN WARNER has been unable to do so, including performing and assisting with certain of the work, services, and society usually performed in the care of the family home and as Plaintiff PATRICIA WARNER'S husband, and will be unable to do so in the future. By reason thereof, Plaintiff PATRICIA WARNER has been and will be deprived of the consortium of her spouse and/or the enjoyment of her husband's love, companionship, comfort, care, assistance, protection, affection, society, solace, moral support, economic support, and loss of the enjoyment of sexual relations, in a sum to be proved at time of trial.

**WHEREFORE**, Plaintiffs request the following relief:

On the First through Fourth Causes of Action by Plaintiff ALAN WARNER Against All Defendants:

(a) general damages in an amount according to proof;

(b) special damages according to proof;

(c) interest, costs and expenses in this litigation;

(d) pre-judgment interest on the amount of damages attributable to personal injury pursuant to Civil Code section 3291;

(e) such other and further relief as may be just and proper;

<u>On the Fifth Cause of Action by Plaintiff PATRICIA WARNER Against All Defendants:</u>

(a) for general damages and damages for loss of consortium against all defendants, according to proof;

(b) interest, costs and expenses in this litigation;

(c) pre-judgment interest on the amount of damages attributable to personal injury pursuant to Civil Code section 3291; and

(d) such other and further relief as may be just and proper.

Dated: December 27, 2011

THE VARTAZARIAN LAW FIRM

Steven R. Vartazarian
Attorney for Plaintiffs

Exhibit A
Page 13

# EXHIBIT B

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| --- | --- | --- |
| Steven R. Vartazarian<br>The Vartazarian Law Firm<br>15250 Ventura Blvd., Suite 505<br>Sherman Oaks, CA. 91403<br>ATTORNEY FOR (Name): Plaintiffs | 227635 | RECEIVED<br>AUG [illegible]<br>KIRBY NOONAN LANCE & HUGE LLP |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS:<br>111 N. Hill Street, Los Angeles, CA. 90012 | | |
| PLAINTIFF:<br>Alan Warner and Patricia Warner | | |
| DEFENDANT:<br>Brad L. Penenberg, M.D. et. al. | | |
| **AMENDMENT TO COMPLAINT**<br>**(Fictitious /Incorrect Name)** | | CASE NUMBER:<br>BC475958 |

☑ **FICTITIOUS NAME *(No order required)***

Upon the filing of the complaint, the plaintiff, being ignorant of the true name of the defendant and having designated the defendant in the complaint by the fictitious name of:

| FICTITIOUS NAME |
| --- |
| DOE 2 |

and having discovered the true name of the defendant to be:

| TRUE NAME |
| --- |
| HARLAN C. AMSTUTZ, M.D., an individual |

amends the complaint by substituting the true name for the fictitious name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
| --- | --- | --- |
| August 15, 2012 | Steven R. Vartazarian | [signature] |

☐ **INCORRECT NAME *(Order required)***

The plaintiff, having designated a defendant in the complaint by the incorrect name of:

| INCORRECT NAME |
| --- |
| |

and having discovered the true name of the defendant to be:

| TRUE NAME |
| --- |
| |

amends the complaint by substituting the true name for the incorrect name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
| --- | --- | --- |
| | | |

## ORDER

THE COURT ORDERS the amendment approved and filed.

Dated ______________________ Judicial Officer ______________________

PROOF OF SERVICE
1013A (3) CCP
STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403.

On August 15, 2012, I served the foregoing document described as **AMENDMENT TO COMPLAINT** on the interested parties in this action:

PLEASE SEE SERVICE LIST

__X___By placing the true copies thereof enclosed in sealed envelopes addressed as follows:

_____I deposited such envelope with Federal Express in Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid for Priority Overnight Delivery.

__X___ I caused such envelope to be deposited in the mail at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

_____(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

______(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was ________________. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

______By attaching the document described above as a PDF document and emailing the same to all parties identified on the Service List below.

XXX I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 15, 2012, at Sherman Oaks, California.

Dahlia Smith

Exhibit B
Page 15

**SERVICE LIST**

Michael L. Kirby
**KIRBY NOONAN LANCE & HOGE, LLP**
350 Tenth Avenue, Suite 1300
San Diego, Ca 92101
Attorneys for: Wright Medical Group, Inc. And Wright Medical Technology, Inc.

Suhasini S. Sawkar, Esq.
**HERZFELD & RUBIN, LLP**
1925 Century Park East, Suite 900
Los Angeles, Ca 90067
Attorneys for: Brad Penenberg

# EXHIBIT C

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: Steven R. Vartazarian, The Vartazarian Law Firm, 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA. 91403 | STATE BAR NUMBER 227635 | Reserved for Clerk's File Stamp |
|---|---|---|
| ATTORNEY FOR (Name): Plaintiffs | | RECEIVED AUG 2 0 [illegible] KIRBY NOONAN LANCE & HOGE LLP |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: 111 N. Hill Street, Los Angeles, CA. 90012 | | |
| PLAINTIFF: Alan Warner and Patricia Warner | | |
| DEFENDANT: Brad L. Penenberg, M.D. et. al. | | |
| **AMENDMENT TO COMPLAINT (Fictitious /Incorrect Name)** | | CASE NUMBER: BC475958 |

☑ **FICTITIOUS NAME** ***(No order required)***

Upon the filing of the complaint, the plaintiff, being ignorant of the true name of the defendant and having designated the defendant in the complaint by the fictitious name of:

| FICTITIOUS NAME |
|---|
| DOE 1 |

and having discovered the true name of the defendant to be:

| TRUE NAME |
|---|
| HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, a California corporation |

amends the complaint by substituting the true name for the fictitious name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
|---|---|---|
| August 15, 2012 | Steven R. Vartazarian | [signature] |

☐ **INCORRECT NAME** ***(Order required)***

The plaintiff, having designated a defendant in the complaint by the incorrect name of:

| INCORRECT NAME |
|---|
| |

and having discovered the true name of the defendant to be:

| TRUE NAME |
|---|
| |

amends the complaint by substituting the true name for the incorrect name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
|---|---|---|
| | | |

**ORDER**

THE COURT ORDERS the amendment approved and filed.

Dated

Judicial Officer

PROOF OF SERVICE
1013A (3) CCP
STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403.

On August 15, 2012, I served the foregoing document described as **AMENDMENT TO COMPLAINT** on the interested parties in this action:

PLEASE SEE SERVICE LIST

__X___By placing the true copies thereof enclosed in sealed envelopes addressed as follows:

_____ I deposited such envelope with Federal Express in Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid for Priority Overnight Delivery.

__X___ I caused such envelope to be deposited in the mail at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

_____(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

______(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was ________________. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

______By attaching the document described above as a PDF document and emailing the same to all parties identified on the Service List below.

XXX I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 15, 2012, at Sherman Oaks, California.

Dahlia Smith

**SERVICE LIST**

Michael L. Kirby
**KIRBY NOONAN LANCE & HOGE, LLP**
350 Tenth Avenue, Suite 1300
San Diego, Ca 92101
Attorneys for: Wright Medical Group, Inc. And Wright Medical Technology, Inc.

Suhasini S. Sawkar, Esq.
**HERZFELD & RUBIN, LLP**
1925 Century Park East, Suite 900
Los Angeles, Ca 90067
Attorneys for: Brad Penenberg

# EXHIBIT D

CIV-110

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Steven R. Vartazarian, SBN: 227635
The Vartazarian Law Firm
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA. 91403
TELEPHONE NO.: 818-990-9949 FAX NO. (Optional): 818-990-6124
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Plaintiffs

FOR COURT USE ONLY

RECEIVED
AUG [illegible] 2012
KIRBY NOONAN LANCE & HOGE LLP

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA. 90012
BRANCH NAME: Central District

PLAINTIFF/PETITIONER: Alan Warner et. al.

DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D. et. al.

**REQUEST FOR DISMISSAL**

☐ **Personal Injury, Property Damage, or Wrongful Death**
☐ **Motor Vehicle** ☐ **Other**
☐ **Family Law** ☐ **Eminent Domain**
☑ **Other (specify):** Products Liability

CASE NUMBER: BC475958

**- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -**

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice (2) ☑ Without prejudice
   b. (1) ☐ Complaint (2) ☐ Petition
   (3) ☐ Cross-complaint filed by (name): on (date):
   (4) ☐ Cross-complaint filed by (name): on (date):
   (5) ☐ Entire action of all parties and all causes of action
   (6) ☑ Other (specify):* ONLY as to Brad L. Penenberg, M.D.

2. *(Complete in all cases except family law cases.)*
   ☐ Court fees and costs were waived for a party in this case. *(This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed).*

Date: August 27, 2012

Steven R. Vartazarian
(TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

(SIGNATURE)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
☑ Plaintiff/Petitioner ☐ Defendant/Respondent
☐ Cross–Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
   Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

(SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner ☐ Defendant/Respondent
☐ Cross–Complainant

*(To be completed by clerk)*

4. ☐ Dismissal entered as requested on (date):
5. ☐ Dismissal entered on (date): as to only (name):
6. ☐ Dismissal **not entered** as requested for the following reasons (specify):

7. a. ☐ Attorney or party without attorney notified on (date):
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
   ☐ a copy to be conformed ☐ means to return conformed copy

Date: Clerk, by ______________________, Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. July 1, 2009]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courtinfo.ca.gov

Exhibit D

Page 20

CIV-110

| PLAINTIFF/PETITIONER: Alan Warner et. al.<br>DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D. et. al. | CASE NUMBER:<br>BC475958 |
|---|---|

## Declaration Concerning Waived Court Fees

The court has a statutory lien for waived fees and costs on any recovery of $10,000 or more in value by settlement, compromise, arbitration award, mediation settlement, or other recovery. The court's lien must be paid before the court will dismiss the case.

1. The court waived fees and costs in this action for *(name):*
2. The person in item 1 (*check one):*
   a. ☐ is not recovering anything of value by this action.
   b. ☐ is recovering less than $10,000 in value by this action.
   c. ☐ is recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*
3. ☐ All court fees and costs that were waived in this action have been paid to the court *(check one):* ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: ______________________________

______________________________ ▶ ______________________________

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION) (SIGNATURE)

PROOF OF SERVICE
1013A (3) CCP
STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403.

On August 27, 2012, I served the foregoing document described as **Request for Dismissal** on the interested parties in this action:

PLEASE SEE SERVICE LIST

__X___By placing the true copies thereof enclosed in sealed envelopes addressed as follows:

_____ I deposited such envelope with Federal Express in Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid for Priority Overnight Delivery.

__X___ I caused such envelope to be deposited in the mail at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

_____(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

______(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was ________________. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

______By attaching the document described above as a PDF document and emailing the same to all parties identified on the Service List below.

XXX I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 27, 2012, at Sherman Oaks, California.

Dahlia Smith

**SERVICE LIST**

Michael L. Kirby
**KIRBY NOONAN LANCE & HOGE, LLP**
350 Tenth Avenue, Suite 1300
San Diego, Ca 92101
Attorneys for: Wright Medical Group, Inc. And Wright Medical Technology, Inc.

Suhasini S. Sawkar, Esq.
**HERZFELD & RUBIN, LLP**
1925 Century Park East, Suite 900
Los Angeles, Ca 90067
Attorneys for: Brad Penenberg

# EXHIBIT E

## Case Summary

**Case Number:** BC475958
ALAN WARNER ET AL VS BRAD L PENENBERG M D ET AL

**Filing Date:** 12/27/2011
**Case Type:** Prdct Liablty (not asbes,tox,envir (General Jurisdiction)
**Status:** Pending

---

**Future Hearings**

**01/03/2013** at 08:31 am in department 33 at 111 North Hill Street, Los Angeles, CA 90012
MOTION - APPEAR PRO HAC VICE

**01/04/2013** at 10:00 am in department ADRO
Hearing-Mediation (1-4-13STEVEN L. MARTINMEDIATOR)

**01/07/2013** at 08:31 am in department 33 at 111 North Hill Street, Los Angeles, CA 90012
MOTION - COMPEL FURTHER RESPONSES

**01/16/2013** at 08:30 am in department 33 at 111 North Hill Street, Los Angeles, CA 90012
Conference-Post Mediation Status (MEDIATION TO BE COMPLETED BY1/15/13)

**04/26/2013** at 08:30 am in department 33 at 111 North Hill Street, Los Angeles, CA 90012
Final Status Conference

**05/06/2013** at 09:30 am in department 33 at 111 North Hill Street, Los Angeles, CA 90012
Jury Trial (7-10 days time est.)

---

Documents Filed | Proceeding Information

**Parties**

HARLAN C. AMSTUTZ M.D. (A MEDICAL CORP.) - Defendant/Respondent

HARLAN C. AMSTUTZ M.D. AN INDIVIDUAL - Defendant/Respondent

HERZFELD & RUBIN LAW OFFICES OF - Attorney for Deft/Respnt

KIRBY MICHAEL L. ESQ. - Attorney for Deft/Respnt

MARTIN STEVEN L. ESQ. - Mediator

PENENBERG M.D. BRAD L. - Defendant/Respondent

VARTAZARIAN STEVEN R. ESQ. - Attorney for Plaintiff/Petitioner

WARNER ALAN - Plaintiff/Petitioner

WARNER PATRICIA - Plaintiff/Petitioner

WRIGHT MEDICAL GROUP INC - Defendant/Respondent

WRIGHT MEDICAL TECHNOLOGY INC - Defendant/Respondent

---

Case Information | Party Information | Proceeding Information

**Documents Filed** (Filing dates listed in descending order)

Click on any of the below link(s) to see documents filed on or before the date indicated:
01/27/2012

**12/05/2012** Notice (OF AMENDED APP AND VERIFIED APP TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECL OF STEVEN R VARTAZARIAN )
Filed by Attorney for Pltf/Petnr

**10/31/2012** Application-Pro Hac Vice (DECL OF STEVEN R VARTAZARIAN )
Filed by Attorney for Pltf/Petnr

**10/30/2012** Ex-Parte Application (FOR GEORGE E. MCLAUGHLIN TO APPEAR AS COUNSEL PRO HAC VIC DECL. OF EROL D. ARI )
Filed by Attorney for Pltf/Petnr

**10/04/2012** Affidavit of Posting
Filed by Attorney for Pltf/Petnr

**08/30/2012** Miscellaneous-Other (SEPARATE STAREMENT OF DISCOVERY REQUEST AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL )
Filed by Attorney for Deft/Respnt

**08/30/2012** Partial Dismissal(not entire case) (WITHOUT PREJUDICE, ONLY AS TO BRAD L. PENENBERG, M.D. )
Filed by Attorney for Pltf/Petnr

**08/30/2012** Declaration (OF MICHAELA P BANACH IN SUPPORT OF MOTION TO COMPEL FURTHER )
Filed by Attorney for Deft/Respnt

**08/30/2012** Motion to Compel (PLFFS FURTHER RESPONSES TO DISCOVE RY AND CORRESPONDING REQUEST FOR SANCTIONS )
Filed by Attorney for Deft/Respnt

**08/30/2012** Points and Authorities (IN SUPPORT OF MOTION TO COMPEL FURTHER )
Filed by Attorney for Deft/Respnt

**08/27/2012** Notice-Mediation Hrg Date (RESCHEDULED TIME )
Filed by Mediator

**08/16/2012** Amendment to Complaint (doe 1 - Harlan C. Amstutz, M.D. a Medical

Corp-a California Corp. )
Filed by Attorney for Plaintiff/Petitioner

**08/16/2012** Amendment to Complaint (doe 2 - HARLAN C. AMSTUTZ, M.D. an individual )
Filed by Attorney for Plaintiff/Petitioner

**08/14/2012** Notice-Mediation Hrg Date
Filed by Mediator

**07/20/2012** Application-Pro Hac Vice
Filed by Attorney for Deft/Respnt

**07/20/2012** Declaration (of micaela p banach in support of app of michael o fawaz to appear as counsel pro hac vice )
Filed by Attorney for Deft/Respnt

**07/20/2012** Proof of Service
Filed by Attorney for Deft/Respnt

**07/20/2012** Notice of Hearing (on app of michael o fawaz to appear s counsel pro hac vice )
Filed by Attorney for Deft/Respnt

**07/20/2012** Points and Authorities (in support of app of michael o fawaz to appear as counsel pro hac vice )
Filed by Attorney for Deft/Respnt

**06/15/2012** Notice-Assignment-Mediator
Filed by ADR Clerk

**05/23/2012** Notice of Ruling
Filed by Attorney for Deft/Respnt

**05/08/2012** Statement-Case Management
Filed by Attorney for Pltf/Petnr

**05/04/2012** Statement-Case Management
Filed by Attorney for Deft/Respnt

**05/01/2012** Opposition Document
Filed by Attorney for Deft/Respnt

**04/30/2012** Statement-Case Management
Filed by Attorney for Deft/Respnt

**04/23/2012** Notice (OF ORDER ASSIGNING COORDINATION MOTIOIN JUDGE AND SETTING DATE FOR HEARING RE PETITION FOR COORDINA- TION )
Filed by Attorney for Pltf/Petnr

**04/17/2012** Opposition Document (NTC OF OPP TO PETN OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS; MEMO OF P'S AND'AS; AND DECL OF SUHASINI S SAWKAR )
Filed by Attorney for Deft/Respnt

**04/17/2012** Answer to Complaint

Filed by Attorney for Deft/Respnt

**04/17/2012** Declaration (of trial attorney for brad l. penenberg, m.d. )
Filed by Attorney for Deft/Respnt

**03/22/2012** Notice (OF SUBMISSION OF PETITION FOR COORDIANTION AND DECL OF SERVICE )
Filed by Attorney for Pltf/Petnr

**03/15/2012** Answer to Complaint
Filed by Attorney for Deft/Respnt

**02/24/2012** Proof-Service/Summons
Filed by Attorney for Pltf/Petnr

Click on any of the below link(s) to see documents filed on or before the date indicated:
TOP   01/27/2012

**01/27/2012** Notice-Case Management Conference
Filed by Clerk

**12/27/2011** Complaint

Click on any of the below link(s) to see documents filed on or before the date indicated:
TOP   01/27/2012

---

Case Information  |  Party Information  |  Documents Filed

**Proceedings Held** (Proceeding dates listed in descending order)

**11/28/2012** at 01:30 pm in Department 33, Charles F. Palmer, Presiding
MOTION - APPEAR PRO HAC VICE - **Denied without prejudice**

**10/30/2012** at 08:30 am in Department 33, Charles F. Palmer, Presiding
Exparte proceeding - **Motion Denied**

**09/14/2012** at 08:31 am in Department 33, Charles F. Palmer, Presiding
MOTION - APPEAR PRO HAC VICE - **Granted**

**05/15/2012** at 08:30 am in Department 33, Charles F. Palmer, Presiding
Conference-Case Management - **Completed**

---

Case Information  |  Party Information  |  Documents Filed  |  Proceeding Information

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

DEC 27 2011

John A. Clarke, Executive Officer/Clerk
BY ________, Deputy
Shaunya Wesley

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):*** a Corporation

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., WRIGHT MEDICAL TECHNOLOGY, INC., and DOES 1 through 100, Inclusive
& [illegible] Doctor

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

ALAN WARNER and PATRICIA WARNER

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court
111 N. Hill Street, Los Angeles, CA. 90012
Central District

CASE NUMBER:
*(Número del Caso):*
BC 475958

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Steven R. Vartazarian, 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA. 91403; 818-990-9949

DATE: DEC 27 2011 JOHN A. CLARKE, CLERK — Clerk, by Shaunya Wesley, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Wright Medical Technology, INC
   under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Steven R. Vartazarian, Esq. (SBN: 227635)
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403
(818) 990-9949

Attorney for Plaintiffs,
ALAN WARNER and PATRICIA WARNER

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

DEC 27 2011

John A. Clarke, Executive Officer/Clerk
BY ________________, Deputy
Shaunya Wesley

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

v.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,

Defendants.

CASE NO. BC 475958

**COMPLAINT FOR:**

**(1) Medical Malpractice**
**(2) Strict Products Liability**
**(3) Negligence**
**(4) Breach of Warranty**
**(5) Loss of Consortium**

**DEMAND FOR JURY TRIAL**

*[AMOUNT DEMANDED EXCEEDS $25,000]*

Plaintiffs ALAN WARNER and PATRICIA WARNER bring this action against BRAD L. PENENBERG, M.D., and WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, and DOES 1 THROUGH 100, inclusive (collectively hereinafter referred to as "Defendants") and allege as follows:

**GENERAL ALLEGATIONS**

1. Plaintiff ALAN WARNER and his wife PATRICIA WARNER were and are residents of Los Angeles, California at all relevant times.

2. Defendant Brad L. Penenberg, M.D., was and is a resident of Los Angeles, California at all relevant times.

3. Defendant Wright Medical Group, Inc., a corporation, is a citizen of the

State of Delaware (where incorporated) and the State of Tennessee (principal place of business), and is the parent company of Defendant Wright Medical Technology, Inc., a corporation, which is a citizen of the State of Delaware (where incorporated) and the State of Tennessee (principal place of business), collectively referred to hereinafter as the "WRIGHT" Defendants.

4. Directly or through its aforesaid subsidiaries, Defendants Wright Medical Group, Inc., and Wright Medical Technology, Inc., designed, manufactured, distributed and sold in California various orthopedic hardware systems including the ProFemur R hip prosthesis component at issue in this case.

5. The ProFemur R hip prosthesis component was approved for marketing by the Food and Drug Administration via its 510(K) Premarket Notification procedure filed by one of the "Wright" defendants, and therefore defendants are not exempt from suit in State Court.

6. The true names and capacities, whether individual, corporate, associate, governmental, or otherwise of DOE 1 through DOE 100, inclusive, are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants are ascertained, plaintiffs will amend this Complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each of the defendants designated herein as a DOE was and is responsible in some manner for the events and happenings herein referred to and their conduct directly, proximately and legally caused the injuries and damages sustained by plaintiffs as herein alleged, either through said defendants' own conduct or through the conduct of their agents, servants, or employees, or in some other manner.

7. At all times herein mentioned, each defendant named herein was and is the duly authorized agent, employee, servant, partner and/or joint venturer of the other co-defendants, acting within the course and scope of said relationship. Further, when acting as a principal, each defendant approved, consented to, and ratified the acts and conduct of his, her or its co-defendants.

///

## FACTUAL CONTENTIONS

8. On November 27, 2007, plaintiff ALAN WARNER underwent a revision of his existing left hip implant using a ProFemur R femoral component manufactured by the "WRIGHT" Defendants. Specifically, the femoral component was a ProFemur R 176mm x 14mm bearing serial number 037409895; and was manufactured and caused to be distributed to California by defendants WRIGHT MEDICAL GROUP, INC., and, WRIGHT MEDICAL TECHNOLOGY, INC. At the time the femoral component was implanted in plaintiff, it was in the same condition in all respects as when it left the Defendants' control.

9. Less than three years later, and on October 27, 2010, as plaintiff ALAN WARNER was walking in his home he suddenly felt severe pain in and around his left groin. He was unable to ambulate and immediately laid down. The next morning Mr. Warner presented to Cedars Sinai Medical Center and was diagnosed with a left femoral stem fracture and scheduled for surgery to revise his left total hip implant. The X-Ray depicting the broken femoral component taken on October 29, 2010, is hereby identified and incorporated herein by reference:

10. On November 1, 2010, plaintiff underwent revision surgery whereby his entire left hip implant system was revised again using components manufactured by the "WRIGHT" defendants.

11. Several months later, and in and around February 1, 2011, the revised hip implant system failed when the acetabular component did not take to plaintiff's pelvis causing an anterior dislocation and resulting subsidence of the femoral component. On that day, plaintiff presented to Cedars-Sinai Medical Center's emergency department, where he was admitted. The following day, plaintiff was taken to the operating room where a closed reduction of the hip was performed under general anesthesia, but still felt by the physicians to be unstable. Therefore, on February 7, 2011, plaintiff again underwent a revision of his total hip implant system, but this time with the use of a hip implant system from a different manufacturer (Stryker Homemedica Osteonics) from which plaintiff has since been recovering.

**FIRST CAUSE OF ACTION**

**(By ALAN WARNER For Medical Malpractice (failure to obtain informed consent) against Defendant Brad L. Penenberg, M.D.)**

12. Plaintiff re-alleges and incorporates herein by reference the above paragraphs 1 through 11 as if fully set forth herein.

13. Plaintiff contends that Defendant, Brad L. Penenberg, M.D., was negligent in and around November 27, 2007, because he performed a revision of plaintiff's left total hip arthroplasty without first obtaining plaintiff's informed consent.

14. Plaintiff contends that defendant, Brad L. Penenberg, M.D., performed a revision of plaintiff's left total hip arthroplasty on November 27, 2007, using a Wright Medical Technology Profemur R femoral component. Plaintiff contends that he did not give his informed consent to the procedure. Plaintiff further contends that a reasonable person in plaintiff's position would not have agreed to the revision surgery if had been fully informed of the results, risks, and alternatives to the surgery, including the use of hip replacement systems manufactured by companies other than WRIGHT. Plaintiff contends

that he was harmed by a result/risk that defendant should have explained before the revision surgery was performed, such as the failure rate of hip replacement systems manufactured by WRIGHT.

15. As a direct, proximate, and legal result of defendant's negligence as described herein, plaintiff ALAN WARNER suffered debilitating injury when the femoral component of his hip replacement system fractured and thereby required plaintiff to undergo two (2) invasive revision surgeries. As a result, plaintiff has suffered from past, and will suffer from future, physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress.

16. As a further direct, proximate, and legal result of Defendant's negligence as described herein, plaintiff has incurred past medical expenses and will incur future medical expenses in an amount to be ascertained at the time of trial.

**SECOND CAUSE OF ACTION**

**(By ALAN WARNER For Strict Products Liability Against Defendants Wright Medical Group Inc., and Wright Medical Technology, Inc., for defectively designing, manufacturing, and failing to warn of the potential for breakage of the Profemur R femoral component as described above)**

17. Plaintiff re-alleges and incorporates herein by reference the above paragraphs 1 through 16 as if fully set forth herein.

18. **MANUFACTURING DEFECT**

Based on information and belief, Plaintiff contends that the Profemur R femoral component as described herein and used to revise plaintiff's left hip prosthesis on November 27, 2007, contained a manufacturing defect. Plaintiff contends that Defendants manufactured, distributed, and sold the Profemur R femoral component in California. Plaintiff contends that the product contained a manufacturing defect when it left the Defendants' possession. Plaintiff further contends that the product caused harm to plaintiff by fracturing as set forth above in Paragraph nine (9) and thereby necessitated

two (2) extensive revision surgeries. Plaintiff claims that the products manufacturing defect was a substantial factor, and the only factor, in causing plaintiff's harm as stated herein.

19. **DESIGN DEFECT**

A. **Consumer Expectation Test**

1. Plaintiff claims that the products design was defective because the product did not perform as safely as an ordinary consumer would have expected it to perform. Specifically, plaintiff who was an ordinary consumer, formed a reasonable minimum safety expectation that the hip implant component manufactured by Defendants would not fracture when being used as intended, and require avoidable surgery to revise.

2. Plaintiff further alleges that Defendants manufactured, distributed, and sold the defective product within California. Plaintiff alleges that the product did not perform as safely as an ordinary consumer would have expected it to perform when used in the manner intended by the manufacturer. Plaintiff further contends that he was harmed by the defective design of the product when it fractured and required removal. Plaintiff contends that the products failure to perform safely was a substantial factor, and the only factor, in causing plaintiff's harm as stated herein.

B. **Risk-Benefit Test**

1. Plaintiff claims that the product's design caused harm to plaintiff. Plaintiff contends that Defendants manufactured, distributed and sold the subject product in California. Plaintiff contends that he was harmed by the product as a result of its design when it fractured and required surgical removal. Plaintiff contends that the products design was a substantial factor, and the only factor, in causing his harm as stated herein.

///

20. **FAILURE TO WARN**

Plaintiff claims that the Profemur R femoral component lacked sufficient warning of its potential risk for fracturing. Plaintiff contends and alleges that the Profemur R femoral component had a potential risk of fracturing that was known and/or knowable by the use of scientific knowledge available at the time of the manufacture, distribution, and/or sale. Plaintiff further contends that the potential risk of fracturing presented a substantial danger to users of the Profemur R femoral component and that ordinary consumers could not have recognized. Plaintiff further contends and alleges that Defendants failed to adequately warn of the potential risk of the Profemur R femoral component fracturing. Furthermore, as Plaintiff was using the Profemur R femoral component in a way that was reasonably foreseeable to Defendants, Plaintiff was harmed and the lack of sufficient warnings was a substantial factor in causing Plaintiff's harm.

21. As a direct, proximate, and legal result of the actions of Defendants described herein, plaintiff ALAN WARNER suffered debilitating injury which required two (2) invasive revision surgeries, which caused plaintiff to suffer from past and future physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress.

22. As a further direct, proximate, and legal result of defendant's negligence as described herein, plaintiff has incurred past medical expenses and will incur future medical expenses in an amount to be ascertained.

**THIRD CAUSE OF ACTION**

**(By ALAN WARNER for Negligence Against Defendants Wright Medical Group Inc., and Wright Medical Technology, Inc.)**

23. Plaintiff ALAN WARNER re-alleges and incorporates the above paragraphs 1 through 22 as if fully set forth herein.

24. Defendants owed a duty of reasonable care to plaintiff ALAN WARNER to design, manufacture, sell, and/or distribute the Profemur R femoral Component, as described above, in a condition that was safe for its intended purpose. Defendants' duty

includes a duty to ensure that the Profemur R femoral component did not cause users to suffer from failure once implanted. Defendants failed to exercise ordinary care in the manufacture, design, sale, testing, quality assurance, quality control, marketing, and/or distribution of the Profemur R femoral component in that Defendants knew or should have known that the defective Profemur R femoral component created a risk of failure that could result in painful and debilitating injury, which could only be alleviated by revision surgery.

25. Defendants breached their duty to plaintiff ALAN WARNER in the testing, design, manufacture, packaging, warning, advertising, promotion, distribution and sale of its Profemur R femoral component in that Defendants failed to use ordinary care in designing and manufacturing the Profemur R femoral component so as to avoid the manufacturing and design defects that cause the Profemur R femoral component to fail.

26. Defendants also breached their duty to plaintiff ALAN WARNER by failing to properly design, manufacture, inspect, and/or prepare the Profemur R femoral component that was implanted into plaintiff and others similarly situated.

27. Although Defendants knew or should have known since 2007, or earlier that the Profemur R femoral component was defective and could fail, Defendants failed to warn the medical community and the public of said risk. Defendants knew or reasonably should have known that the Profemur R femoral component was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner. Defendants knew or reasonably should have known that users would not realize the danger and Defendants failed to adequately warn of the danger. A reasonable manufacturer, distributor, and/or seller under the same or similar circumstances would have warned of the danger. As a result of the negligent failure to warn, plaintiff was harmed. Defendants' failure to warn was a substantial factor in causing plaintiff's harm.

28. Defendants knew or should have known that consumers such as plaintiff ALAN WARNER risked injury as a result of Defendants' failure to exercise ordinary care as described above.

29. Plaintiff further alleges that Defendants knew or should have known of the Profemur R femoral components defective nature, as set forth herein, but continued to manufacture, design, market, and sell the Profemur R femoral component so as to maximize sales and profits at the expense of the health and safety of the public, including plaintiff, in conscious or reckless disregard of the foreseeable harm caused by the defective Profemur R femoral component.

30. Alternatively, Plaintiff contends that Defendants were negligent because they failed to recall and/or retrofit the Profemur R femoral component so that it would not fracture when being used as intended. Plaintiff is informed and believes that prior to 2007 Defendants knew or should have known of the potential for the Profemur R femoral component to fracture and should have therefore recalled the product. Furthermore, defendants knew or reasonably should have known that the Profemur R femoral component was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner. Defendants became aware of this defect after the Profemur R femoral component was sold. Defendants failed to recall and/or retrofit the Profemur R femoral component as a reasonable manufacturer, distributor or seller under the same or similar circumstances would have done. As a result of Defendants' failure to recall and/or retrofit the Profemur R femoral component it was implanted in plaintiff and proximately caused him to suffer injury as described herein.

31. As a direct, proximate, and legal result of Defendants' negligence as described herein, plaintiff ALAN WARNER suffered debilitating injury which required two (2) invasive revision surgeries, which caused plaintiff to suffer from past and future physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress.

32. As a further direct, proximate, and legal result of defendant's negligence as described herein, plaintiff has incurred past medical expenses and will incur future medical expenses in an amount to be ascertained.

///

**FOURTH CAUSE OF ACTION**

**(By ALAN WARNER for Breach of Warranty Against Defendants Wright Medical Group Inc., and Wright Medical Technology, Inc.)**

33. Plaintiff ALAN WARNER re-alleges and incorporates the above paragraphs 1 through 32 as if fully set forth herein.

34. Plaintiff contends that he was harmed by the Profemur R femoral component because it did not have the quality that a buyer would expect and/or that it was not suitable for its intended purpose.

35. Defendants impliedly warranted that they would sell and deliver the Profemur R femoral component that was fit for the particular purposes for which it was intended. Defendants also knew that plaintiff ALAN WARNER and her physician intended to use the Profemur R femoral component for the particular purpose of hip replacement.

36. Plaintiff ALAN WARNER and his physician relied upon Defendants' skill and/or judgment in furnishing a suitable Profemur R femoral component.

37. Defendants, by selling and delivering a defective Profemur R femoral component, which was used during Plaintiff's surgery, breached the implied warranties of merchantability and fitness in that the defective Profemur R femoral component presented an unreasonable risk of failure resulting in pain, discomfort, anxiety, emotional distress, partial disability, and the necessity of painful, invasive surgery.

38. As a direct, proximate, and legal result of defendant's actions as described herein, plaintiff ALAN WARNER suffered debilitating injury which required two (2) invasive revision surgeries, which caused plaintiff to suffer from past and future physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress, and was caused to suffer from, and continues to suffer from emotional distress, pain, discomfort, and anxiety.

39. As a further direct, proximate, and legal result of defendant's negligence as

described herein, plaintiff has incurred medical expenses and will incur future medical expenses in an amount to be ascertained.

**FIFTH CAUSE OF ACTION**

**(By Plaintiff Patricia Warner Against All Defendants For Loss of Consortium Against All Defendants)**

40. Plaintiff PATRICIA WARNER re-alleges and incorporates the above paragraphs 1 through 39 as if fully set forth herein.

41. At all times material to this action, Plaintiffs ALAN WARNER and PATRICIA WARNER were husband and wife. Plaintiff PATRICIA WARNER contends that she has been harmed as a result of the wrongful acts alleged herein against defendants collectively.

42. Prior to plaintiff ALAN WARNER sustaining the above described injuries, he was able to and did perform his duties as Plaintiff PATRICIA WARNER'S husband. Subsequent to sustaining the injuries as described above, Plaintiff ALAN WARNER has been unable to do so, including performing and assisting with certain of the work, services, and society usually performed in the care of the family home and as Plaintiff PATRICIA WARNER'S husband, and will be unable to do so in the future. By reason thereof, Plaintiff PATRICIA WARNER has been and will be deprived of the consortium of her spouse and/or the enjoyment of her husband's love, companionship, comfort, care, assistance, protection, affection, society, solace, moral support, economic support, and loss of the enjoyment of sexual relations, in a sum to be proved at time of trial.

**WHEREFORE**, Plaintiffs request the following relief:

On the First through Fourth Causes of Action by Plaintiff ALAN WARNER Against All Defendants:

(a) general damages in an amount according to proof;

(b) special damages according to proof;

(c) interest, costs and expenses in this litigation;

(d) pre-judgment interest on the amount of damages attributable to personal injury pursuant to Civil Code section 3291;

(e) such other and further relief as may be just and proper;

On the Fifth Cause of Action by Plaintiff PATRICIA WARNER Against All Defendants:

(a) for general damages and damages for loss of consortium against all defendants, according to proof;

(b) interest, costs and expenses in this litigation;

(c) pre-judgment interest on the amount of damages attributable to personal injury pursuant to Civil Code section 3291; and

(d) such other and further relief as may be just and proper.

Dated: December 27, 2011

THE VARTAZARIAN LAW FIRM

Steven R. Vartazarian
Attorney for Plaintiffs



CORPORATION SERVICE COMPANY®

null / ALL
**Transmittal Number: 9604030**
**Date Processed: 02/14/2012**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Thomas McAllister Esq.<br>Wright Medical Technology, Inc.<br>5677 Airline Road<br>Arlington, TN 38002 |
| **Copy of transmittal only provided to:** | James Lightman<br>Monica Cunningham |

| | |
|---|---|
| **Entity:** | Wright Medical Technology, Inc.<br>Entity ID Number 2233123 |
| **Entity Served:** | Wright Medical Technology, Inc |
| **Title of Action:** | Alan Warner vs. Brad L. Penenberg, M.D. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Product Liability |
| **Court/Agency:** | Los Angeles County Superior Court, California |
| **Case/Reference No:** | BC475958 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 02/14/2012 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Steven R. Vartazarian<br>818-990-9949 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road Wilmington, DE 19808 (888) 690-2882 | sop@cscinfo.com



CORPORATION SERVICE COMPANY

MIW / ALL
Transmittal Number: 9616335
Date Processed: 02/17/2012

# Notice of Service of Process

**Primary Contact:** Thomas McAllister Esq.
Wright Medical Technology, Inc.
5677 Airline Road
Arlington, TN 38002

**Copy of transmittal only provided to:** Monica Cunningham
James Lightman

| | |
|---|---|
| **Entity:** | Wright Medical Group, Inc.<br>Entity ID Number 1956821 |
| **Entity Served:** | Wright Medical Group, Inc. |
| **Title of Action:** | Alan Warner vs. Brad L. Penenberg, M.D. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Product Liability |
| **Court/Agency:** | Los Angeles County Superior Court, California |
| **Case/Reference No:** | BC 475958 |
| **Jurisdiction Served:** | Delaware |
| **Date Served on CSC:** | 02/17/2012 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Steven R. Vartazarian<br>818-990-9949 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road Wilmington, DE 19808 (888) 690-2882 | sop@cscinfo.com

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
STEVEN R. VARTAZARIAN, SBN: 227635
THE VARTAZARIAN LAW FIRM
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA. 91403
TELEPHONE NO.: 818-990-9949 FAX NO.: 818-990-6124
ATTORNEY FOR (Name): Plaintiffs

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

DEC 27 2011

John A. Clarke, Executive Officer/Clerk
BY ______, Deputy
Shaunya Wesley

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA. 90012
BRANCH NAME: Central District

CASE NAME:
WARNER et. al. v. BRAD L. PENENBERG, M.D. et. al.

# CIVIL CASE COVER SHEET

☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less)

Complex Case Designation
☐ Counter ☐ Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: BC 475958
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☑ Product liability (24)
☑ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (*not specified above*) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought (*check all that apply*): a. ☑ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action (*specify*): 5:medical malprac, strict products liab,neg,breach of warranty,loss of consortium
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: December 27, 2011
Steven R. Vartazarian
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

Exhibit E
Page 43

| SHORT TITLE: WARNER et. al. v. BRAD L. PENENBERG, M.D. et. al. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES CLASS ACTION? ☐ YES LIMITED CASE? ☐ YES TIME ESTIMATED FOR TRIAL 8 ☐ HOURS/ ☑ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check one Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☑ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☑ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

| SHORT TITLE: WARNER et. al. v. BRAD L. PENENBERG, M.D. et. al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Non-Personal Injury/ Property Damage/ Wrongful Death Tort | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2.,3. |
| Employment | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109 Labor Commissioner Appeals | 10. |
| Contract | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012 Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031 Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032 Quiet Title | 2., 6. |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: WARNER et. al. v. BRAD L. PENENBERG, M.D. et. al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153 Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2., 8. |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment | 2., 9. |
| | | ☐ A6160 Abstract of Judgment | 2., 6. |
| | | ☐ A6107 Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112 Other Enforcement of Judgment Case | 2., 8., 9. |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment | 2., 3., 9. |
| | | ☐ A6123 Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124 Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190 Election Contest | 2. |
| | | ☐ A6110 Petition for Change of Name | 2., 7. |
| | | ☐ A6170 Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100 Other Civil Petition | 2., 9. |

| SHORT TITLE: WARNER et. al. v. BRAD L. PENENBERG, M.D. et. al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. ☐1. ☐2. ☐3. ☑4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | | | ADDRESS: 8700 Beverly Blvd. |
|---|---|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90048 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: December 27, 2011

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).
5. Payment in full of the filing fee, unless fees have been waived.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE
Case Number BC 475958

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT
Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3(c)). There is additional information on the reverse side of this form.

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|---|---|
| | Hon. Carolyn B. Kuhl | 1 | 534 | | Hon. Holly E. Kendig | 42 | 416 | |
| | Hon. J. Stephen Czuleger | 3 | 224 | | Hon. Mel Red Recana | 45 | 529 | |
| | Hon. Luis A. Lavin | 13 | 630 | | Hon. Debre Katz Weintraub | 47 | 507 | |
| | Hon. Terry A. Green | 14 | 300 | | Hon. Elizabeth Allen White | 48 | 506 | |
| | Hon. Richard Fruin | 15 | 307 | | Hon. Deirdre Hill | 49 | 509 | |
| | Hon. Rita Miller | 16 | 306 | | Hon. John L. Segal | 50 | 508 | |
| | Hon. Richard E. Rico | 17 | 309 | | Hon. Abraham Khan | 51 | 511 | |
| | Hon. Rex Heeseman | 19 | 311 | | Hon. Susan Bryant-Deason | 52 | 510 | |
| | Hon. Kevin C. Brazile | 20 | 310 | | Hon. Steven J. Kleifield | 53 | 513 | |
| | Hon. Zaven V. Sinanian | 23 | 315 | | Hon. Ernest M. Hiroshige | 54 | 512 | |
| | Hon. Robert L. Hess | 24 | 314 | | Hon. Malcolm H. Mackey | 55 | 515 | |
| | Hon. Mary Ann Murphy | 25 | 317 | | Hon. Michael Johnson | 56 | 514 | |
| | Hon. James R. Dunn | 26 | 316 | | Hon. Ralph W. Dau | 57 | 517 | |
| | Hon. Yvette M. Palazuelos | 28 | 318 | | Hon. Rolf M. Treu | 58 | 516 | |
| | Hon. Barbara Scheper | 30 | 400 | | Hon. David L. Minning | 61 | 632 | |
| | Hon. Alan S. Rosenfield | 31 | 407 | | Hon. Michael L. Stern | 62 | 600 | |
| | Hon. Mary H. Strobel | 32 | 406 | | Hon. Kenneth R. Freeman | 64 | 601 | |
| X | Hon. Charles F. Palmer | 33 | 409 | | Hon. Mark Mooney | 68 | 617 | |
| | Hon. Amy D. Hogue | 34 | 408 | | Hon. Ramona See | 69 | 621 | |
| | Hon. Daniel Buckley | 35 | 411 | | Hon. Soussan G. Bruguera | 71 | 729 | |
| | Hon. Gregory Alarcon | 36 | 410 | | Hon. Ruth Ann Kwan | 72 | 731 | |
| | Hon. Joanne O'Donnell | 37 | 413 | | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| | Hon. Maureen Duffy-Lewis | 38 | 412 | | Hon. William F. Fahey | 78 | 730 | |
| | Hon. Michael C. Solner | 39 | 415 | | **Hon. Emilie H. Elias*** | **324** | **CCW** | |
| | Hon. Michelle R. Rosenblatt | 40 | 414 | | Other | | | |
| | Hon. Ronald M. Sohigian | 41 | 417 | | | | | |

*Class Actions
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on ____________ JOHN A. CLARKE, Executive Officer/Clerk

By ______________________, Deputy Clerk

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

**APPLICATION**

The Chapter Seven Rules were effective January 1, 1994. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

COMPLAINTS: All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

CROSS-COMPLAINTS: Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

**SANCTIONS**

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

[CRC 3.221 Information about Alternative Dispute Resolution]

For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Cases for Which Mediation May Be Appropriate**
Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate**
Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Cases for Which Arbitration May Be Appropriate**
Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate**
If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate**
Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate**
Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:

- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

FAMILY LAW (non-custody):

- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

PROBATE:

- **Mediation**
- **Settlement Conference**

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

**Party Select Panel** — The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

**Random Select Panel** — The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

**Private Neutral** — The market rate for private neutrals can range from $300-$1,000 per hour.

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Long Beach | 415 W. Ocean Blvd. | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Pasadena | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | 400 Civic Center Plaza | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Santa Monica | 1725 Main St. | 203 | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | 113 | Los Angeles, CA 90012 | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

[illegible]

[illegible]

LAADR 005 (Rev. 05/09)
LASC Approved 10-03

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

**Information About Alternative Dispute Resolution:**

California Rules of Court, rule 3.221, requires counties participating in the Dispute Resolution Programs Act ("DRPA"), to provide information about the availability of local dispute resolution programs funded under DRPA. In Los Angeles County, these services are made possible through major support from the Los Angeles County Department of Community and Senior Services through DRPA. The list of the local dispute resolution programs funded in Los Angeles County is set forth below.

Superior Court of California, Los Angeles County, ADR Office (213) 974-5425
www.lasuperiorcourt.org/ADR

**Staff and volunteers of the following identified agencies are not employees of the Los Angeles Superior Court:**

Asian-Pacific American Dispute Resolution Center (213) 250-8190 www.apadrc.org

California Academy of Mediation Professionals (818) 377-7250 www.mediationprofessionals.org

California Lawyers for the Arts, Arbitration and Mediation Service (310) 998-5590 www.calawyersforthearts.org/

Center for Conflict Resolution (818) 705-1090 www.ccr4peace.org

Inland Valleys Justice Center (909) 621-7479 www.ivjc.org

Korean American Coalition 4.29 Center (213) 365-5999 www.kacla.org

Los Angeles City Attorney's Office Dispute Resolution Program (213) 485-8324
www.lacity.org/mediate

Los Angeles County Bar Association Dispute Resolution Services
(877) 473-7658 (323) 930-1841 (888) 922-1322 (562) 570-1019 www.lacba.org/drs

Los Angeles County Department of Consumer Affairs (213) 974-0825

The Loyola Law School Center for Conflict Resolution (213) 736-1145 www.lls.edu/ccr

City of Norwalk Dispute Resolution Program (562) 929-5603
www.ci.norwalk.ca.us/socialservices2.asp

***These programs do not offer legal advice or help you respond to a summons, but they can assist in resolving your problem through mediation.***

**Dispute Resolution Programs Act**
**Contracts Administration Office: (213) 738-2621**

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: Click on the button to select the appropriate court address. | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR)** | | CASE NUMBER: |

The undersigned parties stipulate to participate in an Alternative Dispute Resolution (ADR) process in the above-entitled action, as follows:

- ☐ Mediation
- ☐ Non-Binding Arbitration
- ☐ Binding Arbitration
- ☐ Early Neutral Evaluation
- ☐ Settlement Conference
- ☐ Other ADR Process *(describe)*: ______________________________

Dated: ____________________

| | | |
|---|---|---|
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

☐ Additional signature(s) on reverse

LAADR 001 10-04
LASC Approved
(Rev. 01-07)

STIPULATION TO PARTICIPATE IN
ALTERNATIVE DISPUTE RESOLUTION (ADR)

Cal. Rules of Court, rule 3.221
Page 1 of 2

Exhibit E
Page 53

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE**
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What Is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Cases for Which Mediation May Be Appropriate**
Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate**
Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Cases for Which Arbitration May Be Appropriate**
Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate**
If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate**
Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate**
Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

## Information About Alternative Dispute Resolution:

California Rules of Court, rule 3.221, requires counties participating in the Dispute Resolution Programs Act ("DRPA"), to provide information about the availability of local dispute resolution programs funded under DRPA. In Los Angeles County, these services are made possible through major support from the Los Angeles County Department of Community and Senior Services through DRPA. The list of the local dispute resolution programs funded in Los Angeles County is set forth below.

Superior Court of California, Los Angeles County, ADR Office (213) 974-5425
www.lasuperiorcourt.org/ADR

**Staff and volunteers of the following identified agencies are not employees of the Los Angeles Superior Court:**

Asian-Pacific American Dispute Resolution Center (213) 250-8190 www.apadrc.org

California Academy of Mediation Professionals (818) 377-7250 www.mediationprofessionals.org

California Lawyers for the Arts, Arbitration and Mediation Service (310) 998-5590 www.calawyersforthearts.org/

Center for Conflict Resolution (818) 705-1090 www.ccr4peace.org

Inland Valleys Justice Center (909) 621-7479 www.ivjc.org

Korean American Coalition 4.29 Center (213) 365-5999 www.kacla.org

Los Angeles City Attorney's Office Dispute Resolution Program (213) 485-8324
www.lacity.org/mediate

Los Angeles County Bar Association Dispute Resolution Services
(877) 473-7658 (323) 930-1841 (888) 922-1322 (562) 570-1019 www.lacba.org/drs

Los Angeles County Department of Consumer Affairs (213) 974-0825

The Loyola Law School Center for Conflict Resolution (213) 736-1145 www.lls.edu/ccr

City of Norwalk Dispute Resolution Program (562) 929-5603
www.ci.norwalk.ca.us/socialservices2.asp

***These programs do not offer legal advice or help you respond to a summons, but they can assist in resolving your problem through mediation.***

**Dispute Resolution Programs Act**
**Contracts Administration Office: (213) 738-2621**

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: Click on the button to select the appropriate court address. | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR)** | | CASE NUMBER: |

The undersigned parties stipulate to participate in an Alternative Dispute Resolution (ADR) process in the above-entitled action, as follows:

- ☐ Mediation
- ☐ Non-Binding Arbitration
- ☐ Binding Arbitration
- ☐ Early Neutral Evaluation
- ☐ Settlement Conference
- ☐ Other ADR Process *(describe)*: ____________________

Dated: ____________________

| Name of Stipulating Party ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| Name of Stipulating Party ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

☐ Additional signature(s) on reverse



## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS

Superior Court of California
County of Los Angeles

Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section

Consumer Attorneys
Association of Los Angeles

Southern California
Defense Counsel

Association of
Business Trial Lawyers

California Employment
Lawyers Association

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | FAX NO. (Optional): | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | | CASE NUMBER: |

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at ***www.lasuperiorcourt.org*** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to ________________ (INSERT DATE) for the complaint, and ________________ (INSERT DATE) for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

________________________ (TYPE OR PRINT NAME) ➤ ________________________ (ATTORNEY FOR PLAINTIFF)

Date:

________________________ (TYPE OR PRINT NAME) ➤ ________________________ (ATTORNEY FOR DEFENDANT)

Date:

________________________ (TYPE OR PRINT NAME) ➤ ________________________ (ATTORNEY FOR DEFENDANT)

Date:

________________________ (TYPE OR PRINT NAME) ➤ ________________________ (ATTORNEY FOR DEFENDANT)

Date:

________________________ (TYPE OR PRINT NAME) ➤ ________________________ (ATTORNEY FOR ________________)

Date:

________________________ (TYPE OR PRINT NAME) ➤ ________________________ (ATTORNEY FOR ________________)

Date:

________________________ (TYPE OR PRINT NAME) ➤ ________________________ (ATTORNEY FOR ________________)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – DISCOVERY RESOLUTION** | | CASE NUMBER: |

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

iii. Be filed within two (2) court days of receipt of the Request; and

iv. Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
| --- | --- |
| | |

**The following parties stipulate:**

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR PLAINTIFF)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ______________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ______________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ______________)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | | CASE NUMBER: |

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
| --- | --- |
| | |

**The following parties stipulate:**

Date:

| | |
| --- | --- |
| (TYPE OR PRINT NAME) | ➤ (ATTORNEY FOR PLAINTIFF) |

Date:

| | |
| --- | --- |
| (TYPE OR PRINT NAME) | ➤ (ATTORNEY FOR DEFENDANT) |

Date:

| | |
| --- | --- |
| (TYPE OR PRINT NAME) | ➤ (ATTORNEY FOR DEFENDANT) |

Date:

| | |
| --- | --- |
| (TYPE OR PRINT NAME) | ➤ (ATTORNEY FOR DEFENDANT) |

Date:

| | |
| --- | --- |
| (TYPE OR PRINT NAME) | ➤ (ATTORNEY FOR ____________) |

Date:

| | |
| --- | --- |
| (TYPE OR PRINT NAME) | ➤ (ATTORNEY FOR ____________) |

Date:

| | |
| --- | --- |
| (TYPE OR PRINT NAME) | ➤ (ATTORNEY FOR ____________) |

**THE COURT SO ORDERS.**

Date: ____________________

JUDICIAL OFFICER

LACIV 075 (new)
LASC Approved 04/11

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

Page 2 of 2

Exhibit E
Page 64

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **INFORMAL DISCOVERY CONFERENCE** (pursuant to the Discovery Resolution Stipulation of the parties) | | CASE NUMBER: |

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: ______________ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: ______________ (insert date 20 calendar days following filing of the Request).
4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

ORIGINAL FILED

JAN 27 2012

LOS ANGELES SUPERIOR COURT

NOTICE SENT TO:

Vartazarian, Steven R., Esq.
The Vartazarian Law Firm
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

ALAN WARNER ET AL
Plaintiff(s),

VS.

BRAD L PENENBERG M D ET AL
Defendant(s).

CASE NUMBER
BC475958

## NOTICE OF CASE MANAGEMENT CONFERENCE

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/ attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for May 15, 2012 at 8:30 am in Dept. 33 at 111 North Hill Street, Los Angeles, California 90012.

NOTICE TO DEFENDANT: **THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedeure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date: January 27, 2012

CHARLES F. PALMER
Judicial Officer

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[✓] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[ ] by personally giving the party notice upon filing the complaint.

Date: January 27, 2012

John A. Clarke, Executive Officer/Clerk

by ________________, Deputy Clerk

LACIV 132 (Rev. 09/07)
LASC Approved 10-03

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address) | FOR COURT USE ONLY |
|---|---|
| Steven R. Vartazarian,Esq SBN: 227635<br>The Vartazarian Law Group<br>15250 Ventura Blvd, Ste 505<br>Sherman Oaks, CA, 91403<br>TELEPHONE NO: (818) 990-9949<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Plaintiff(s) | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br>FEB 24 2012<br>John A. Clarke, Executive Officer/Clerk<br>BY [signature], Deputy<br>Mary Flores |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>STREET ADDRESS: 111 North Hill Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Los Angeles, 90012<br>BRANCH NAME: Stanley Mosk Courthouse | |
| PLAINTIFF/PETITIONER: Alan Warner<br>DEFENDANT/RESPONDENT: Brad L. Penenberg | CASE NUMBER:<br>BC475958<br>D-73 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: 41193 Dept.: |

*(Seperate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of
   a. ☑ summons
   b. ☑ complaint
   c ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents)*: Addendum,Notice of Case Management ConferenceNotice of Case Assignment,Voluntary Efficient Litigation Stipulations
3. a. Party served *(specify name of party as shown on documents served)*:
   Brad L. Penenberg, M.D.

   b. ☐ Person (other than the party in item3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
4. Address where the party was served:
   120 S. Spalding Drive, Suite # 400, Beverly Hills, CA, 90212
5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: (2) at *(time)*:
   b. ☑ **by substitute service.** On *(date)*: 2/16/2012 at *(time)*: 04:30 PM I left the documents listed in item 2 with or in the prescence of *(name and title or relationship to person indicated in item 3)*:
   Ti Hogan,Receptionist,Person in charge of the office
   (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post box. I informed him or her of the general nature of the papers.
   (4) ☑ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: 2/16/2012 from *(city)*: Los Angeles or ☐ a declaration of mailing is attached.
   (5) ☑ I attached a **declaration of diligence** stating actions taken first to attempt person service.

Page 1 of 2

Form Adopted for Mandatory Use Judicial Council of California POS-010 [Rev. January 1, 2007]

PROOF OF SERVICE OF SUMMONS

Code of Civil Procedure, § 417.10
American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit E
Page 67

| PLAINTIFF/PETITIONER: Alan Warner | CASE NUMBER: BC475958 |
|---|---|
| DEFENDANT/RESPONDENT: Brad L. Penenberg | |

5. c. ☐ **by mail and aknowledgment of receipt of service.** I mailed the documents listed in item2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   (1) on *(date):* (2) from *(city):*
   (3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)
   (4) ☐ to an address outside California with return receipt requested. Code Civ. Proc., § 415.40
   d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☑ as an individual
   b. ☐ as a person sued under the fictious name *(specify):*
   c. ☐ as occupant
   d. ☐ On behalf of *(specify):*
   under the following Code of Civil Procedure section:
   ☐ 416.10 (corporation)
   ☐ 416.20 (defunct corporation)
   ☐ 416.30 (joint stock company/association)
   ☐ 416.40 (association or partnership)
   ☐ 416.50 (public entity)
   ☐ 415.95 (business organization, form unkown)
   ☐ 416.60 (minor)
   ☐ 416.70 (ward or conservatee)
   ☐ 416.90 (authorized person)
   ☐ 415.46 (occupant)
   ☐ other:

7. **Person who served papers**
   a. Name: **David Pinon**
   b. Address: **3436 Foothill Blvd., #144, Glendale, CA, 91214**
   c. Telephone number: **(213) 353-9100**
   d. The fee for service was: **$52.00**
   e. I am:
   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☑ a registered California process server:
   (i) ☐ owner ☐ employee ☑ independent contractor.
   (ii) Registration No.: **6867**
   (iii) County.: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal an** I certify that the foregoing is true and correct.

Date: **2/23/2012**

**David Pinon**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ D. Pinon
(SIGNATURE)

ATTORNEY OR PARTY WITHOUT ATTORNEY (NAME AND ADDRESS)

Steven R. Vartazarian,Esq
The Vartazarian Law Group
15250 Ventura Blvd, Ste 505
Sherman Oaks, CA, 91403

TELEPHONE NO. (818) 99[redacted]49

FOR COURT USE ONLY

REFERENCE NUMBER: W.O. # 41193

ATTORNEY FOR (Name): Plaintiff(s)

Insert name of court, judicial district or branch court, if any, and post office street addre

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
111 North Hill Street, Los Angeles, CA, 90012

SHORT NAME OF CASE: Alan Warner vs. Brad L. Penenberg

| DECLARATION RE DILIGENCE | DATE: | TIME: | DEPT/DIV: | CASE NUMBER: BC475958 |
|---|---|---|---|---|

I, David Pinon, declare that I am over the age of eighteen years and not a party to this action;

I received the following documents on: 2 /15/2012

- [x] summons
- [x] complaint
- [x] Alternative Dispute Resolution (ADR) package
- [x] Civil Case Cover She *(served in complex cases only)*
- [ ] cross-complaint
- [x] other *(specify documents)*: Addendum,Notice of Case Management ConferenceNotice of Case Assignment,Voluntary Effici

After due search, careful inquiry and diligent attempts at the following address(s), I have been unable to effect personal service of said process on:

Name: Brad L. Penenberg, M.D.
120 S. Spalding Drive, Suite # 400, Beverly Hills, CA, 90212

Process is being returned without service for the following reason(s).

| Attempt Date | Attempt Time | Attempt Description |
|---|---|---|
| 2/15/2012 | 04:50 PM | The defendant was not in per the receptionist. No set time of arrival is known. |
| 2/15/2012 | 01:00 PM | The defendant was not in per the receptionist. No set time of arrival is known. |
| 2/16/2012 | 10:00 AM | The defendant was not in per the receptionist. No set time of arrival is known. |
| 2/16/2012 | 04:30 PM | The defendant was not in. Substituted service was made. |

Fee for service: $52.00

Recoverable Cost Per CCP 1033.5(a)(4)(B)

Registered: Los Angeles County.
Number: 6867

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

on: 2 /23/2012

CALWEST Attorney Services, Inc.
3436 Foothill Blvd. #144
Glendale, CA 91214
Phone: (213) 353-9100 Fax: (213) 353-9200

Signature: [signature]
Name: David Pinon

Jud. Coun. Form 982(a)(23)

DECLARATION RE DILIGENCE

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): Steven R. Vartazarian (Bar#: 227635) The Vartazarian Law Firm 15250 Ventura Blvd, Ste 505 Sherman Oaks, CA 91403 TELEPHONE NO.: 818-990-8949 FAX NO. (Optional): 818-990-6124 E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): Plaintiff | FOR COURT USE ONLY FILED SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES FEB 24 2012 John A. Clarke, Executive Officer/Clerk BY [signature] Deputy Mary Flores |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES STREET ADDRESS: 111 NORTH HILL STREET MAILING ADDRESS: CITY AND ZIP CODE: LOS ANGELES, CA 90012 BRANCH NAME: CENTRAL LOS ANGELES | |
| PLAINTIFF/PETITIONER: Alan Warner and Patricia Warner DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D.; Wright Medical Group, Inc., a Corporation, et al | CASE NUMBER: BC 475958 D-33 |
| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [XXX] summons
   b. [XXX] complaint
   c. [XXX] Alternative Dispute Resolution (ADR) package
   d. [XXX] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [XXX] other *(specify documents)*: Notice of Case Management Conference; Notice of Case Assignment-Unlimited Civil Case; Civil Case Cover Sheet Addendum and Statement of Location
3. a. Party served *(specify name of party as shown on documents served)*:

   Wright Medical Group, Inc., a Corporation

   b. [XXX] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   Becky DeGeorge, Authorized Agent for Registered Agent CSC
4. Address where the party was served: Corporation Service Company 2730 Gateway Oaks Dr. Ste 100 Sacramento, CA 95833
5. I served the party *(check proper box)*
   a. [XX] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 02/14/2012 (2) at *(time)*: 11:00 AM
   b. [ ] **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: from *(city)*: or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use Judicial Council of California POS-010 [Rev. January 1, 2007]

PROOF OF SERVICE OF SUMMONS

Code of Civil Procedure, § 417.10

American LegalNet, Inc. www.FormsWorkflow.com

Exhibit E

Page 70

| PLAINTIFF/PETITIONER: Alan Warner & Patricia Warner | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D.; Wright Medical Group, Inc., a Corporation, et al | BC 475958 |

5\. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date)*: (2) from *(city)*:

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section)*:

☐ Additional page describing service is attached.

6\. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify)*:

c. ☐ as occupant.

d. ☒ On behalf of *(specify)*: **Wright Medical Group, Inc., a Corporation**

under the following Code of Civil Procedure section:

☒ 416.10 (corporation)
☐ 416.20 (defunct corporation)
☐ 416.30 (joint stock company/association)
☐ 416.40 (association or partnership)
☐ 416.50 (public entity)
☐ 415.95 (business organization, form unknown)
☐ 416.60 (minor)
☐ 416.70 (ward or conservatee)
☐ 416.90 (authorized person)
☐ 415.46 (occupant)
☐ other:

7\. **Person who served papers**

a. Name: **Jenice Rossner**

b. Address: **3104 'O' Street, #230, Sacramento, CA 95816**

c. Telephone number: **916.247.7990**

d. The fee for service was: **$20.00**

e. I am:

(1) ☐ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☒ a registered California process server:

(i) ☒ owner ☐ employee ☐ independent contractor.

(ii) Registration No.: **98-02**

(iii) County: **Sacramento**

8\. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9\. ☐ **I am a California sheriff or marshal and I** certify that the foregoing is true and correct.

Date: 2/20/12

Jenice Rossner
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

Jenice Rossner
(SIGNATURE)

L.A.S.C. - FILINGS #32
111 N. HILL STREET
LOS ANGELES CA 90012

DATE PAID: 03/15/12 12:52:58 PM
RECEIPT #: CCH465980057

CIT/CASE: BC475958 LEA/DEF#:

PAYMENT: $790.00 0310
RECEIVED:
CHECK: 790.00
CASH:
CHANGE:



Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, DOES 1 through 100, inclusive,

Defendants.

Case No. BC 475958

**ANSWER OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC. TO COMPLAINT AND DEMAND FOR JURY TRIAL**

Judge: Hon. Charles F. Palmer
Dept.: 33

Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc. (collectively hereinafter referred to as "Defendants"), by and through their attorneys, Kirby Noonan Lance & Hoge, LLP, answer Plaintiffs Alan Warner and Patricia Warner's Complaint as follows:

**GENERAL DENIAL**

1. Pursuant to the provisions of California Code of Civil Procedure section 431.30, Defendants deny, generally and specifically, each and every allegation contained in the Complaint, including each and every cause of action contained in the Complaint, deny that Plaintiffs were injured or damaged in the amount or manner alleged, or otherwise, and further

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

deny that Plaintiffs were or are entitled to the relief claimed, or to any relief, upon the grounds alleged, or otherwise.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

**(Failure to State a Claim)**

2. Defendants allege that Plaintiffs' Complaint, and each and every cause of action contained therein, fails to state facts sufficient to constitute a claim or a cause of action against Defendants for which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

**(Consent)**

3. Defendants allege that Plaintiffs expressly and/or impliedly consented to all known and unknown risks associated with the products allegedly distributed, manufactured, produced, sold and/or supplied by Defendants.

### THIRD AFFIRMATIVE DEFENSE

**(Assumption of Risk)**

4. Defendant alleges that Plaintiffs knew, or in the exercise of ordinary care should have known, the risks involved in the use of the prosthesis system but, nevertheless and with full knowledge of those risks, did fully and voluntarily consent to assume the risks involved in such procedure.

### FOURTH AFFIRMATIVE DEFENSE

**(Lack of Proximate Cause)**

5. Defendants allege that each and every cause of action or purported cause of action contained in Plaintiffs' Complaint is barred, or recovery reduced, due to a lack of proximate causation between Defendants' alleged conduct and any alleged injuries or damages. Defendants allege that the acts, conduct and/or omissions of others proximately caused any such injuries or damages.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**FIFTH AFFIRMATIVE DEFENSE**

**(Superseding/Intervening Cause)**

6. Defendants allege that each and every cause of action or purported cause of action contained in Plaintiffs' Complaint is barred, or recovery reduced, because none of the acts attributed to Defendants proximately caused the alleged injuries, and any such causation was proximately caused by the intervening and superseding actions of others, which intervening and superseding actions bar and/or diminish Plaintiffs' recovery, if any, against Defendants.

**SIXTH AFFIRMATIVE DEFENSE**

**(Comparative Fault)**

7. Defendants allege that any alleged damage, loss, injury or detriment, if any, was directly and proximately caused or contributed to, either wholly or partially, by the strict liability, breach of warranty, conduct, acts, activities, carelessness, recklessness, fault, negligence, and/or omissions of other known or unknown parties, including but not limited to Plaintiffs, thereby completely or partially barring the Complaint according to the principles of comparative fault.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Preemption)**

8. Defendants allege that Plaintiffs' claims are barred and/or have been preempted by the Federal Food, Drug & Cosmetic Act and Medical Device Amendments thereto.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Pre-Existing Conditions)**

9. Defendants allege that Plaintiffs' injuries are the result of an independent, unforeseeable, superseding and/or intervening cause and/or were the result of a pre-existing condition which is unrelated to any product of Defendants.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**NINTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate)**

10. Defendants allege that if Plaintiffs suffered any loss or damage, such loss or damage was proximately caused at least in part by Plaintiffs' own failure to mitigate against the alleged damages and therefore Plaintiffs' claims must be reduced, diminished, or defeated by such amounts as should have been so mitigated.

**TENTH AFFIRMATIVE DEFENSE**

**(Doctrines)**

11. Defendants allege that Plaintiffs' claims are barred, in whole or in part, by the "learned intermediary," "informed intermediary," or "sophisticated user" doctrines.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Industry Standards)**

12. Defendants allege that the products allegedly designed, manufactured, distributed and sold by Defendants were done so in conformity with and pursuant to governmental standards, industry standards and statutes.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Abnormal Use)**

13. Defendants allege that the products allegedly designed, manufactured, distributed and sold by Defendants were used in a manner not intended or reasonably anticipated by Defendants and were thus unforeseeable.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(State of the Art)**

14. Defendants allege that the products allegedly designed, manufactured, distributed and sold by Defendants were in conformity with the then-existing state-of-the-art, and as a result, were not defective in any manner.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Waiver/Release)**

15. Defendants allege that Plaintiffs waived or released any cause of action against Defendants.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Set-Off)**

16. Without admitting liability, Defendants allege that to the extent Defendants have any liability to Plaintiffs, Defendants are entitled to set-off such amount found to be due and owing.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

17. Defendants allege that Plaintiffs, by their own acts, omissions and other conduct, are barred from any recovery herein against Defendants by the doctrine of unclean hands.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

18. Defendants alleges that Plaintiffs, by their own acts and omissions, are barred from any recovery herein against Defendants by virtue of the doctrine of estoppel.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

19. Defendants allege that the causes of action alleged in Plaintiffs' Complaint, are barred by the applicable statutes of limitation.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(Contribution)**

20. Defendants allege that they are entitled to contribution from Plaintiffs and/or other parties.

Exhibit E
Page 77

**TWENTIETH AFFIRMATIVE DEFENSE**

**(Reasonable and Good Faith Conduct)**

21. Defendants allege that Plaintiffs are barred from any recovery against Defendants because Defendants acted reasonably and in good faith at all times.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(Third Parties)**

22. Defendants allege that Plaintiffs' injuries, if any, were proximately caused by the independent conduct of third parties. Plaintiffs' recovery against Defendants, if any, must therefore be reduced to the extent to which those injuries, if any, were caused by independent conduct of third parties.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**(Indemnification)**

23. Defendants allege that should Plaintiffs recover damages from Defendants, Defendants are entitled to indemnification in whole or in part from all persons or entities whose conduct and/or fault proximately contributed to Plaintiffs' damages, if any.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(Additional Affirmative Defenses)**

24. Defendants presently have insufficient knowledge or information upon which to form a belief as to whether they have additional, yet unstated, affirmative defenses. Defendants therefore reserve the right to assert additional affirmative defenses in the event that facts are discovered through investigation and discovery which indicate that such additional affirmative defenses are appropriate.

WHEREFORE, Defendants respectfully requests as follows:

1. That Plaintiffs take nothing by way of the Complaint herein and that judgment be entered in favor of Defendants and against Plaintiffs;

2. That all claims against Defendants be dismissed with prejudice;

3. That Defendants recover their reasonable attorneys' fees and costs of suit incurred herein to the extent permitted by law; and

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 78
KNLH\943952.1
-6-
ANSWER OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC. TO COMPLAINT AND DEMAND FOR JURY TRIAL

4. For such other and further relief as the Court deems just and proper.

DATED: March 13, 2012

KIRBY NOONAN LANCE & HOGE LLP

By: [signature]

Michael L. Kirby
Micaela P. Banach
Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

PROOF OF SERVICE

*WARNER v. PENENBERG/WRIGHT MEDICAL*
Los Angeles Superior Court Case No. BC475958

I, the undersigned, declare: That I am, and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to the action; and I am employed in the County of San Diego, California. My business address is 350 Tenth Avenue, Suite 1300, San Diego, California 92101-8700.

On March 15, 2012, at San Diego, California, I served the following document(s) described as **ANSWER OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC. TO COMPLAINT AND DEMAND FOR JURY TRIAL** on the parties in said action by placing a true copy thereof in a separate sealed envelope for each addressee named hereafter, addressed to each such addressee respectively as stated below, which reflects the address last given by each such addressee on any document filed in the action and served on this office.

| | |
|---|---|
| Steven R. Vartazarian (227635)<br>THE VARTAZARIAN LAW FIRM, APC<br>15250 Ventura Blvd., Suite 505<br>Sherman Oaks, CA 91403<br>Ph: 818-990-9949 | Attorneys for Plaintiff ALAN WARNER and PATRICIA WARNER |

☒ **BY MAIL:** I am readily familiar with our business practice for collecting, processing and mailing correspondence and pleadings with the United States Postal Service. Such correspondence and pleadings are deposited with the United States Postal Service on the same day that they are placed for mailing in the ordinary course of business. I sealed each envelope and, with the postage thereon fully prepaid, placed it for mailing in accord with our business' practice. (C.C.P. § 1013(a) and (b))

☒ **STATE COURT:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 15, 2012, at San Diego, California.

Lorri A. Taylor

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Raymond P. Boucher, State Bar No. 115364
*boucher@kbla.com*
Paul R. Kiesel, State Bar No. 119854
*kiesel@kbla.com*
Helen Zukin, State Bar No. 117933
*zukin@kbla.com*
Fontaine Yuk, State Bar No. 267973
*fyuk@kbla.com*
Matthew A. Young, State Bar No. 266291
*young@kbla.com*
KIESEL BOUCHER LARSON LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

RECEIVED
MAR 26 2012
KIRBY NOONAN LANCE & HOGE LLP

Attorneys for Petitioner
MARY WRIGHT

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

v.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,

Defendants.

Case No. BC475958

**NOTICE OF SUBMISSION OF PETITION FOR COORDINATION AND DECLARATION OF SERVICE**

Judge: Hon. Charles Palmer
Dept.: 33
Action Filed: 12/27/2011

**TO THE CLERK OF THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

1. You are hereby notified that a Petition for Coordination was submitted to the Chair of the Judicial Council, located at 455 Golden Gate Avenue, San Francisco, California 94102, on March 19, 2012, pursuant to section 404 of the California Code of Civil Procedure and Rule 3.522 of the California Rules of Court

Exhibit E
Page 81

2. Any written opposition to this Petition must be served at least nine (9) court days before the hearing date to be set by the coordination motion judge.

3. This Petition was filed by the sole Plaintiff in *Wright v. Wright Medical Technology, et al.*, Case No. BC476193 (Los Angeles Superior Court). Petitioner is a party in only this action. The Petitioner's attorney of record is Helen Zukin, Kiesel Boucher & Larson, LLP, 8648 Wilshire Boulevard, Beverly Hills, California 90211.

4. This Petition seeks coordination of the following actions:

a) *Lisa Stevens v. Wright Medical Technology, Inc., et al.*, Los Angeles County Superior Court Case No. BC479487 (filed 02/24/12)

b) *Mary Wright v. Wright Medical Technology, Inc., et al.*, Los Angeles County Superior Court Case No. BC476193 (filed 12/30/11, demurrer filed 3/14/12)

c) *Barry Judenfriend v. Wright Medical Technology, Inc., et al.*, Los Angeles County Superior Court Case No. BC479149 (filed 02/17/12)

d) *Penny Steinman v. Wright Medical Technology, Inc., et al.*, San Diego County Superior Court Case No. 37-2012-00051926-CU-PL-NC (filed 03/13/12)

e) *Kym Steinberg v. Wright Medical Technology, Inc., et al.*, Los Angeles Superior Court Case No. BC480987 (filed 3/15/12)

f) *Gregory A. Jones v. Wright Medical Technology, Inc., et al.*, Orange County Superior Court Case No. 30-2012-00548956-CU-PL-CXC (filed 02/27/12)

g) *Gregory K. Tucker v. Wright Medical Technology, Inc. et al.*, San Francisco County Superior Court Case No. CGC-11-510778 (filed May 6, 2011)

h) *Inga Harris et al. v. Wright Medical Technology, Inc. et al.*, Los Angeles County Superior Court Case No. BC457818 (filed October 20, 2011 – 3rd Amended Complaint Answered )

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

Exhibit E
Page 82

i) *Alan Warner et al. v. Brad L. Penenberg M.D., et al.*, Los Angeles Superior Court Case No. BC475958 (filed December 27, 2011, answered March 15, 2012)

j) *Janet Sternfeld et al. v. Brad L. Penenberg M.D.,et al.*, Los Angeles Superior Court Case No. BC478032 (filed January 30, 2012)

5. A copy of the Petition for Coordination, Memorandum of Points and Authorities and Declaration of Helen Zukin In Support Thereof is attached hereto as Exhibit A.

DATED: March 21, 2012

Respectfully submitted,

KIESEL BOUCHER LARSON LLP

By: [signature]
RAYMOND P. BOUCHER
PAUL R. KIESEL
HELEN ZUKIN
FONTAINE YUK
MATTHEW A. YOUNG

Attorneys for Petitioner
MARY WRIGHT

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

Exhibit E
Page 83

3

NOTICE OF SUBMISSION OF PETITION FOR COORDINATION AND DECLARATION OF SERVICE

Exhibit E
Page 84

EXHIBIT A

Raymond P. Boucher [SBN 115364]
Paul R. Kiesel [SBN 119854]
Helen Zukin [SBN 117933]
Fontaine Yuk [SBN 267973]
Matthew Young [SBN 266291]
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard,
Beverly Hills, CA 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

Counsel for Plaintiff and Petitioner
MARY WRIGHT

RECEIVED
MAR 19 2012
JUDICIAL COUNCIL
ADMINISTRATIVE
OFFICE OF THE COURTS
BY Susan McMullen /ms
COORDINATION ATTORNEY

**CHAIRPERSON OF THE JUDICIAL COUNCIL**

**OF THE STATE OF CALIFORNIA**

MARY WRIGHT,

Plaintiff and Petitioner,

v.

WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and WRIGHT MEDICAL GROUP, INC., a Delaware corporation; HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, a California corporation; HARLAN C. AMSTUTZ, M.D., an individual; and DOES 1 through 50, inclusive,

Defendants and Respondents.

JCCP NO.

CASE NO. BC476193

PETITION FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS AND APPLICATION FOR STAY ORDER

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

TO THE CHAIR OF THE JUDICIAL COUNCIL, THE PARTIES TO THE ACTIONS, AND THEIR COUNSEL OF RECORD:

Petitioner, Plaintiff Mary Wright, hereby submits a request to the Chair of the Judicial Council for assignment of a judge to determine whether the above-entitled action and the included actions referred to herein are complex actions, and if so, whether coordination of the actions is appropriate.

The request is made on the grounds set forth in Section 404.1 of the Code of Civil Procedure, namely, that one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and the likelihood of settlement of the actions without further litigation should coordination be denied.

The following named actions are all known related actions pending in any California court:

a) *Lisa Stevens v. Wright Medical Technology, Inc., et al.*, Los Angeles County Superior Court Case No. BC479487 (filed 02/24/12)

- Hon. John L. Segal - Department 50; Los Angeles Superior Court Stanley Mosk Courthouse
- Lisa Stevens - Plaintiff
- Wright Medical Group Inc. - Defendant
- Wright Medical Technology Inc. - Defendant
- Harlan C. Amstutz M.D. - Defendant
- Harlan C. Amstutz M.D., A Medical Corp. - Defendant
- Helen Zukin, Esq. - Attorney for Plaintiff, 8648 Wilshire Blvd.,

Exhibit E
Page 86

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

Beverly Hills, CA 90211

b) *Mary Wright v. Wright Medical Technology, Inc., et al.*, Los Angeles County Superior Court Case No. BC476193 (filed 12/30/11, demurrer filed 3/14/12)

- Hon. Kevin Brazile - Department 20; Los Angeles Superior Court Stanley Mosk Courthouse
- Mary Wright - Plaintiff
- Wright Medical Group Inc. - Defendant
- Wright Medical Technology Inc. - Defendant
- Harlan C. Amstutz M.D. - Defendant
- Harlan C. Amstutz M.D., A Medical Corp. - Defendant
- Christopher B. Yeh – Attorney for Defendant Wright Medical Technology, Inc. & Harlan C. Amstutz- Duane Morris LLP, 865 S. Figueroa Street, Suite 3100, Los Angeles, CA 90017
- Helen Zukin, Esq. - Attorney for Plaintiff, 8648 Wilshire Blvd., Beverly Hills, CA 90211

c) *Barry Judenfriend v. Wright Medical Technology, Inc., et al.*, Los Angeles County Superior Court Case No. BC479149 (filed 02/17/12)

- Hon. Amy D. Hogue - Department 34; Los Angeles Superior Court, Stanley Mosk Courthouse
- Barry Judenfriend - Plaintiff
- Wright Medical Group Inc. - Defendant
- Wright Medical Technology Inc. - Defendant
- Harlan C. Amstutz M.D. - Defendant

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

- Harlan C. Amstutz M.D., A Medical Corp. - Defendant
- Helen Zukin, Esq. - Attorney for Plaintiff, 8648 Wilshire Blvd., Beverly Hills, CA 90211

d) *Penny Steinman v. Wright Medical Technology, Inc., et al.*, San Diego County Superior Court Case No. 37-2012-00051926-CU-PL-NC (filed 03/13/12)

- Hon. Earl H. Maas III – Department N-28; San Diego Superior Court, North County Regional Center
- Penny Steinman - Plaintiff
- Wright Medical Group Inc. - Defendant
- Wright Medical Technology Inc. - Defendant
- Harlan C. Amstutz M.D. - Defendant
- Harlan C. Amstutz M.D., A Medical Corp. - Defendant
- Helen Zukin, Esq. - Attorney for Plaintiff, 8648 Wilshire Blvd., Beverly Hills, CA 90211
- Douglass A. Kreis, Esq. – Attorney for Plaintiff, Aylstock, Witkin, Kreis & Overholtz PLLC, 17 East Main Street, Pensacola, FL 32502

e) *Kym Steinberg v. Wright Medical Technology, Inc., et al.*, Los Angeles Superior Court Case No. BC480987 (filed 3/15/12)

- Hon. Michelle R. Rosenblatt – Department 40, Los Angeles Superior Court, Stanley Mosk Courthouse
- Kym Steinberg - Plaintiff
- Wright Medical Group Inc. - Defendant

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

- Wright Medical Technology Inc. - Defendant
- Harlan C. Amstutz M.D. - Defendant
- Harlan C. Amstutz M.D., A Medical Corp. - Defendant
- Helen Zukin, Esq. – Attorney for Plaintiff, 8648 Wilshire Blvd., Beverly Hills, CA 90211
- Neil C. Newson, Esq. – Attorney for Plaintiff, Neil C. Newson & Associates, 8447 Wilshire Boulevard, Suite 204, Beverly Hills, CA 90211

f) *Gregory A. Jones v. Wright Medical Technology, Inc., et al.*, Orange County Superior Court Case No. 30-2012-00548956-CU-PL-CXC (filed 02/27/12)

- Hon. Steven L. Perk – Department CX102; Orange County Superior Court Civil Complex Center
- Gary A. Jones - Plaintiff
- Wright Medical Group Inc. - Defendant
- Wright Medical Technology Inc. - Defendant
- Harlan C. Amstutz M.D. - Defendant
- Harlan C. Amstutz M.D., A Medical Corp. - Defendant
- Lowell W. Finson, Esq. - Attorney for Plaintiff, Citigroup Center Building, 444 South Flower Street, 33rd Floor, Los Angeles, CA 90071

g) *Gregory K. Tucker v. Wright Medical Technology, Inc. et al.*, San Francisco County Superior Court Case No. CGC-11-510778 (filed May 6, 2011)

- Hon. Tomar Mason – Department 610; San Francisco Superior Court, 400 McAllister Street, San Francisco, CA 94102

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

Exhibit E
Page 89

5

PETITION FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

- Gregory K. Tucker – Plaintiff
- Rebecca Tucker – Plaintiff
- Wright Medical Technology Inc. – Defendant
- Wright Medical Group, Inc. – Defendant
- Joseph D. Herling – Attorney for Defendant, Wright Medical Technology, Inc.; Keller and Heckman, LLP, Three Embarcadero Ctr, Ste450, San Francisco, CA 94111
- Joseph H. Fagundes, Esq. – Attorney for Plaintiff; Cassel Malm Fagundes, 6 El Dorado South, Suite 315, Stockton, CA 95202

h) *Inga Harris et al. v. Wright Medical Technology, Inc. et al.*, Los Angeles County Superior Court Case No. BC457818 (2nd Amended Complaint filed October 20, 2011 – 3rd Amended Complaint Answered )

- Hon. Luis A. Lavin – Dept. 13; Los Angeles Superior Court, Stanley Mosk Courthouse
- Inga Harris – Plaintiff
- Lowell Harris – Plaintiff
- Seth W. Bolling – Defendant
- Seth W. Bolling M.D., Inc. – Defendant
- Brad Penenberg M.D., A Professional Corp. – Defendant
- Brad Pennenberg – Defendant
- Wright Medical Technology, Inc. – Defendant
- Olympia Medical Center, Inc. – Defendant
- Christopher B. Yeh – Attorney for Defendant Wright Medical Technology, Inc. - Duane Morris LLP, 865 S. Figueroa Street, Suite 3100, Los Angeles, CA 90017

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

- Randolph M. Even – Attorney for Defendant, Olympic Medical Center – Randolph M. Even & Associates 5550 Topanga Cyn. Blvd., Suite 280, Woodland Hills, CA 91367
- Herzfeld & Rubin LLP – Attorney for Defendant
- Reback McAndrews Kjar Warford et al. – Attorney for Defendant
- Randall Rich – Attorney for Plaintiffs, PO Box 66-1796, Los Angeles, CA 90066

i) *Alan Warner et al. v. Brad L. Penenberg M.D.,et al.*, Los Angeles Superior Court Case No. BC475958 (filed December 27, 2011, answered March 15, 2012)

- Hon. Charles Palmer – Dept. 33, Los Angeles Superior Court, Stanley Mosk Courthouse
- Alan Warner – Plaintiff
- Patricia Warner – Plaintiff
- Wright Medical Group, Inc. – Defendant
- Wright Medical Technology, Inc. – Defendant
- Brad L. Penenberg, M.D. – Defendant
- Michael L. Kirby – Attorney for Defendant Wright Medical Group, Inc. and Wright Medical Technology, Inc., Kirby Noonan, Lance & Hogue, 350 Tenth Ave., Ste. 1300, San Diego CA 92101.
- Steven R. Vartazarian, Esq. – Attorney for Plaintiffs, 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403

j) *Janet Sternfeld et al. v. Brad L. Penenberg M.D.,et al.*, Los Angeles Superior Court Case No. BC478032 (filed January 30, 2012)

- Hon. Alan Rosenfeld – Dept. 31, Los Angeles Superior Court, Stanley Mosk Courthouse

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

- Janet Sternfeld – Plaintiff
- Earl Sternfeld – Plaintiff
- Wright Medical Group, Inc. – Defendant
- Wright Medical Technology, Inc. – Defendant
- Brad L. Penenberg, M.D. – Defendant
- Steven R. Vartazarian, Esq. – Attorney for Plaintiffs, 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403

Petitioner requests that the Chair of the Judicial Council designate the Central Civil West Courthouse of the Los Angeles County Superior Court as the location for assignment of the coordination trial judge.

Pending determination of whether coordination is appropriate, Petitioner requests that an order be made staying the proceedings in all included actions. The request for a stay is made on the ground that the stay order is necessary and appropriate to effectuate the purposes of coordination as stated above.

Declarations, a memorandum, and accompanying supporting papers set forth with more particularity the appropriateness of the actions for coordination.

Petitioner requests that a hearing on this Petition be conducted in Los Angeles County Superior Court.

///

///

///

///

///

///

///

///

Exhibit E
Page 92

WHEREFORE, petitioner prays that the actions herein referred to be coordinated pursuant to Sections 404-404.9 of the Code of Civil Procedure and Rules 3.501-3.550 of the California Rules of Court.

DATED: March 16, 2012

Respectfully submitted,

KIESEL BOUCHER LARSON LLP

By: *Helen Zukin*

RAYMOND P. BOUCHER, ESQ.
HELEN ZUKIN, ESQ.

*Counsel for Petitioner, Mary Wright*

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

Exhibit E
Page 93

9

PETITION FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Raymond P. Boucher [SBN 115364]
Paul R. Kiesel [SBN 119854]
Helen Zukin [SBN 117933]
Fontaine Yuk [SBN 267973]
Matthew Young [SBN 266291]
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard,
Beverly Hills, CA 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

RECEIVED

MAR 19 2012

JUDICIAL COUNCIL ADMINISTRATIVE OFFICE OF THE COURTS
BY [signature] COORDINATION ATTORNEY

Counsel for Plaintiff and Petitioner, MARY WRIGHT

**CHAIRPERSON OF THE JUDICIAL COUNCIL**

**OF THE STATE OF CALIFORNIA**

MARY WRIGHT,

Plaintiff and Petitioner,

v.

WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and WRIGHT MEDICAL GROUP, INC., a Delaware corporation; HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, a California corporation; HARLAN C. AMSTUTZ, M.D., an individual; and DOES 1 through 50, inclusive,

Defendants and Respondents.

JCCP NO.

CASE NO. BC476193

MEMORANDUM IN SUPPORT OF PETITION FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Complaint Filed: December 30, 2011

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

Exhibit E
Page 94

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

California law authorizes the coordination of complex cases pending in different courts whenever they share a common question of law or fact. Civ. Proc. Code § 404. The statute provides for the coordination of these types of cases in order to promote the efficient use of judicial resources. *Id.* Here, the actions sought to be coordinated each allege similar product liability and negligence claims against the same or similar Defendants for injuries arising out of the metal-on-metal Wright Medical Total Hip System. Plaintiffs allege similar injuries, including breakage, metalosis and necrosis to the tissue, often requiring a suffering plaintiff to undergo a painful revision surgery.

Coordination of the Wright Hip System Product Liability Actions "will promote the ends of justice" as required under Code Civ. Proc. § 404 and 404.1. The included cases involve common questions of fact or law against the same or a similar group of defendants. Coordination will further save the courts and the parties significant resources by avoiding duplicative motions and discovery and prevent the risk of inconsistent rulings. Additionally, the parties will not burden multiple courts of this State with the task of presiding over similar efforts by plaintiffs to recover for alleged injuries caused by the Wright Hip System.

Based on the sheer number of allegedly defective metal-on-metal Wright hip devices implanted in patients in California, Petitioner further anticipates hundreds, if not thousands, of potential cases to be filed in California courts alleging similar injuries arising out of implantation of the Wright Hip System.

### II. WHEN PETITION MAY BE MADE

When civil actions sharing a common question of fact or law are pending in different courts, all the parties plaintiff, in any one of the actions may submit a Petition for Coordination to the Chair of the Judicial Council, who on receiving the petition may assign a judge to determine whether the actions are complex, and if so, whether coordination of the actions is appropriate (Code Civ. Proc. § 404; Cal. Rules of Ct., Rules 3.520(b), 3.521(a)).

Coordination promotes "judicial efficiency and economy by providing for the unified

management of both pretrial and trial phases of the coordinated cases." *Citigroup North Am., Inc. v. Superior Court* (1989) 213 Cal.App.3d 563, 565, fn.3. Code Civ. Proc. § 404 governs the method for coordination when complex cases share a common question of law or fact.

Coordination should be ordered when its benefits outweigh potential complications or problems. *McGhan Medical Corp. v. Superior Court* (1992) 11 Cal. App. 4th 804, 812-813, 14 Cal. Rptr. 2d 264. The judge has discretion in weighing and balancing the factors to determine whether coordination best serves the ends of justice in a particular case. The judge's discretion is not abused if there is evidence to support the existence of many factors favoring the judge's decision. *Pesses v. Superior Court* (1980) 107 Cal. App. 3d 117, 126, 165 Cal. Rptr. 680.

Coordination is proper when two requirements are met: (1) the actions are "complex" as defined by the Judicial Council, and (2) the actions meet the coordination criteria set forth in Code Civ. Proc. § 404.1.

## III. THE WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS ARE COMPLEX

The court must consider California Rules of Court, Rule 3.400 et seq. in determining whether a case is complex within the meaning of Code Civ. Proc. § 404 (Cal. Rules of Ct., Rule 3.502). Under California Rules of Court, Rule 3.400(a), a complex case is an action that requires exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel. The actions sought to be coordinated here are complex actions within this definition so as to allow their coordination under Code of Civil Procedure Section 404. The included actions will involve numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve; management of a large number of witnesses and a substantial amount of documentary evidence; management of a large number of separately represented parties; and coordination with related actions pending in federal court in Atlanta. Furthermore, the included actions are provisionally complex under California Rules of Court Section 3.400(b) because they involve mass torts.

Similar cases concerning metal-on-metal hip implant devices have been deemed complex and recently coordinated. First, the United States Judicial Panel on Multidistrict Litigation

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

Exhibit E
3
Page 96
MEMORANDUM IN SUPPORT OF PETITION FOR COORDINATION OF WRIGHT HIP SYSTEM

recently determined that federally-filed Wright Hip implant cases alleging the same injuries against predominantly identical defendants should be coordinated in Atlanta, Georgia (MDL 2329). Based on the resounding similarities between the federal cases and the included cases, here, the Judicial Council should allow coordination of the California cases. Second, the DePuy ASR Hip System Cases (JCCP 4649) were recently coordinated in California. The DePuy cases, like those included here, involve an allegedly defective metal-on-metal hip implant device that caused plaintiffs injuries such as metalosis and necrosis of bodily tissue, often requiring plaintiffs to undergo painful revision surgeries.

## IV. COORDINATION IS NECESSARY AND APPROPRIATE TO EFFECTUATE THE PURPOSES OF COORDINATION AND WILL PROMOTE THE ENDS OF JUSTICE

Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice, taking into account the following factors (Code Civ. Proc. § 404.1):

(1) whether the common question of fact or law is predominating and significant to the litigation;

(2) the convenience of parties, witnesses, and counsel;

(3) the relative development of the actions and the work product of counsel;

(4) the efficient utilization of judicial facilities and manpower;

(5) the calendar of the courts;

(6) the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and

(7) the likelihood of settlement of the actions without further litigation should coordination be denied.

This Petition is made on the grounds that the Wright Hip System Product Liability Actions share common questions of law and fact, and coordination will promote the ends of justice as required by Code Civ. Proc. § 404.1 and 404.4 for the following reasons:

- The included actions require resolution of similar or even identical factual and legal issues;

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

- Coordination will further the convenience of the parties, witnesses, and counsel;
- Most of the named defendants in any one included action are common to all included actions;
- Defense counsel for the Wright Defendants, namely the law firm of Duane Morris, LLP, will likely be the same counsel of record in each of the included actions;
- With the exception of the *Wright, Harris,* and *Warner* actions, where Defendants have very recently responded to the complaints, to the best of Petitioners knowledge, no answers have yet been filed in these actions, and discovery has yet to be served. In several of these cases, to the best of Petitioner's knowledge, Defendants' counsel have yet to make an appearance.
- Coordination will further the efficient utilization of judicial resources; and
- Coordination will avoid the disadvantages of duplicative and potentially inconsistent rulings, orders, and judgments.

**A. The Cases Involve Common Questions of Fact and Law That Predominate and Are Significant to the Litigation.**

Each of the actions sought to be coordinated were filed on or after May 6, 2011. The Wright Hip System Product Liability Actions each involve a dispute as to whether the commonly used metal-on-metal Wright Hip System was defective in design and manufacture. The included actions allege that the defendants knew or should have known that the Wright Hip System was defective and likely to fail, and that the Defendants engaged in either fraudulent or negligent misrepresentation and fraudulent concealment in regards to the medical device. Plaintiffs allege that, as a result of the defendants' actions and their use of the defective hip implant systems, the metal-on-metal hip devices failed and/or caused metal ion debris to be released in the plaintiffs' bodies, causing injury. Plaintiffs allege similar injuries, including breakage, metalosis and necrosis of tissue, often requiring patients to undergo painful revision surgeries. The dispute is essentially the same for each of the included actions with some variance as to theories of liability

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

Exhibit E
Page 98

5

MEMORANDUM IN SUPPORT OF PETITION FOR COORDINATION OF WRIGHT HIP SYSTEM

and prayers for relief. Each of the included actions necessarily involve a court's interpretation and application of a similar set of California laws.

**B. Coordination Will Promote The Efficient Use of Judicial Resources And Will Advance The Convenience of the Parties, Witnesses, and Counsel**

Coordination of the included actions will promote the efficient use of judicial and parties' resources and will accommodate the convenience of all counsel by preventing the duplication of effort and the costly adjudication of the same or substantially similar motions, such as demurrers, judgment on the pleadings and motions for summary judgment. Coordination will also avoid duplicative discovery. Each included action involves common defendants. Many witnesses, such as the implants' designers, are likely to be the same in all of these cases. Thus, coordination will also advance the potential witnesses by avoiding duplicative depositions. Coordination will also advance the convenience of counsel by conserving their resources through cooperative discovery that will benefit all parties and the court in the form of cost savings. For instance, as further described below, a great number of witnesses, including the designer of Wright's Conserve hip device, prominent implanting doctors, and relevant researchers reside in Los Angeles County. Further, it is anticipated that additional plaintiffs will likely be filing in Los Angeles County, because Los Angeles was a training center for the implantation of these devices, making the Wright Hip System a commonly used device in the hip surgeries of many Los Angeles patients. Thus, because several potential key witnesses and documents are likely to be in Los Angeles, discovery proceedings would be facilitated by coordination in Los Angeles County. "The preparation for trial in terms of depositions, interrogatories, admissions ... etc., will be better achieved if done in a coordinated manner." *McGhan Med. Corp. v. Superior Court* (1992) 11 Cal.App.4th 804, 814.

**C. Coordination will alleviate the burden on the Courts.**

The Wright Hip System Product Liability Actions are pending in the Superior Court of California, but in different Counties. Coordination will lessen the burden on the judicial system by avoiding adjudication of the same or similar issues multiple times. The cases involve claims arising from the same conduct by the defendants – the design and manufacture of a defective

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

medical device. Since motion practice, document discovery, depositions of witnesses, and other aspects of litigation will follow a similar course of conduct, coordination will alleviate the burden on the courts from needlessly adjudicating the same types of motions and issues.

**D. Refusal to Coordinate May Result in Duplicative and Potentially Inconsistent Rulings.**

The included cases will involve significant motion practice. Coordination will ensure uniform and consistent rulings. By contrast, allowing these cases to proceed independently will result in various courts determining the same factual issues on the same types of motions. A single court should resolve such issues.

**E. Settlement is Unlikely Without Coordination**

Finally, without coordination, settlement is unlikely. The primary motivators driving the settlement of cases, generally, are eliminating further litigation, avoiding the risk of an adverse judgment at trial, and avoiding additional litigation costs. The incentive to settle any of the included actions is greatly reduced without coordination. Settlement of one case may not end the litigation of the others, leaving Defendants with a continued risk of adverse judgment and substantial litigation costs. A realistic possibility of settlement would only arise if Defendants are able to settle these claims in a coordinated action.

**V. THE CENTRAL CIVIL WEST COURTHOUSE OF THE LOS ANGELES COUNTY SUPERIOR COURT IS THE APPROPRIATE LOCATION FOR ASSIGNMENT OF THE COORDINATION TRIAL JUDGE**

Petitioner requests that the Chair of the Judicial Commission select the Central Civil West Courthouse ("CCW") of the Los Angeles County Superior Court as the location for assignment of the coordination trial judge. With the existence of a complex case panel, Central Civil West hears complex litigation cases assigned from throughout Los Angeles County and the State of California. The CCW judges have exceptional experience presiding over coordinated proceedings, including both the Yaz and Avandia product liability JCCPs.

Lastly, it would serve the convenience of the parties, for discovery purposes, to have the cases coordinated in Los Angeles County. Dr. Harlan Amstutz, a defendant in many of the

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

included actions who researched, designed, and developed the Wright Conserve Hip System, resides in Los Angeles County. Los Angeles County is unique, not only because it is the residence of the Conserve system's designer, but also because it appears to be the nerve-center for many doctors who were trained, or trained others, in the implantation of these metal-on-metal hip devices. Therefore, it is anticipated that, as the litigation progresses, there will likely be many additional plaintiffs who are residents of Los Angeles County. Furthermore, in late-2010, Professor Pat Campbell at UCLA's Orthopaedic Hospital headed a study examining pseudotumor-like reactions caused by metal hypersensitivity in metal-on-metal Wright hip devices. There will likely be discovery as to the purpose and results of that study. Thus, because several potential key witnesses and documents are likely to be in Los Angeles, discovery proceedings would be facilitated by coordination in Los Angeles County.

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

## VI. ISSUING A STAY PENDING DETERMINATION OF THIS PETITION WILL PROMOTE THE OBJECTIVES OF COORDINATION

Petitioner also moves to stay the included actions while the Court decides whether they should be coordinated and, if so, where. Such a stay is expressly authorized by California Code of Civil Procedure section 404.5 and California Rule of Court 3.515 and would cover only an interim period while a decision on the Petition is pending. If this Court grants the Coordination Petition, the coordinated cases are automatically stayed by Rule of Court 3.529(b) so that a coordination trial judge can be selected and assume control over the cases. The interim stay that Petitioners seek is appropriate to effectuate the purposes of coordination, including the efficient utilization of judicial facilities and man power, the avoidance of inconsistent rulings and orders, and the convenience of the parties and counsel. Cal. Civ. Proc. Code § 404.1.

Coordination is meant to further the efficient handling of multiple, complex matters. These cases, if ordered, are perfectly positioned to reap those benefits. Litigation is in its earliest stages. If coordinated, the rules contemplate an early hearing for the court to establish, *inter alia*, a discovery schedule, a central depository to maintain evidentiary materials, a motion schedule, and the appointment of liaison counsel. Cal. Rule of Court, Rule 3.541(a).

The coordination rules provide for interim and automatic stays in order to avoid piecemeal

discovery and motion practice, and multiple response deadlines in separate cases. A stay would preserve the status quo and, if the cases are coordinated, allow the coordination trial judge to manage these cases in their entirety as the rules contemplate.

There is no compelling reason not to grant the interim stay. No action is subject to a trial or trial schedule that would be affected by a stay. In the event coordination is denied, the plaintiffs will proceed individually and any delay will have been brief. If coordination is granted, the coordination trial judge's handling of the actions will achieve the desired results of coordination in an orderly fashion and with fewer burdens.

Therefore, Petitioner respectfully requests that the Court grant an interim stay and preserve the status quo pending the outcome of this Petition.

## VII. CONCLUSION

Coordination should be ordered because it is appropriate under the standards set out in Section 404.1 of the Code of Civil Procedure, in that the common questions of fact and law predominate and are significant to the litigation, so that coordination will be convenient to the parties, witnesses, and counsel and will avoid duplicative and inconsistent rulings, orders, or judgments.

DATED: March 16, 2012

Respectfully submitted,

KIESEL BOUCHER LARSON LLP

By: *Helen Zukin*
RAYMOND P. BOUCHER, ESQ.
HELEN ZUKIN, ESQ.

*Counsel for Petitioner, Mary Wright*

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

Raymond P. Boucher [SBN 115364]
Paul R. Kiesel [SBN 119854]
Helen Zukin [SBN 117933]
Fontaine Yuk [SBN 267973]
Matthew Young [SBN 266291]
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard,
Beverly Hills, CA 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

Counsel for Plaintiff and Petitioner
MARY WRIGHT

**CHAIRPERSON OF THE JUDICIAL COUNCIL**

**OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| MARY WRIGHT,<br>Plaintiff and Petitioner,<br>v.<br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and WRIGHT MEDICAL GROUP, INC., a Delaware corporation; HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, a California corporation; HARLAN C. AMSTUTZ, M.D., an individual; and DOES 1 through 50, inclusive,<br>Defendants and Respondents. | JCCP NO.<br>CASE NO. BC476193<br>DECLARATION OF HELEN ZUKIN IN SUPPORT OF PETITION FOR COORDINATION |

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

Exhibit E
Page 103

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

**DECLARATION OF HELEN ZUKIN**

I, Helen Zukin, declare and state as follows:

1. I am an attorney at law, duly licensed to practice before this Court and all of the courts of the State of California, and a partner of Kiesel Boucher Larson LLP, counsel of record for Plaintiff Mary Wright in this case. I make this Declaration in support of the Petition for Coordination of Wright Hip System Product Liability Actions. I have personal knowledge of the matters stated in this Declaration and know them to be true and correct.

2. The name of the petitioner and the name and address of her attorney of record is as follows:

| **Name and Address** | **Party Represented** |
|---|---|
| Raymond P. Boucher, Esq.<br>Helen Zukin, Esq.<br>Kiesel Boucher & Larson, LLP<br>8648 Wilshire Blvd.<br>Beverly Hills, CA 90211 | Mary Wright |

3. The names of the parties to all included actions, the name and address of each party's attorney of record, the complete title of each included action, the number of the action, the title of the court in which the action is pending, and the status of each included action, including the status of any pretrial or discovery motions or orders in that action which are known to petitioner are as follows:

a) *Lisa Stevens v. Wright Medical Technology, Inc., et al.*, Los Angeles County Superior Court Case No. BC479487 (filed 02/24/12)

- Hon. John L. Segal - Department 50; Los Angeles Superior Court Stanley Mosk Courthouse
- Lisa Stevens - Plaintiff
- Wright Medical Group Inc. - Defendant

Kiesel Boucher Larson LLP
Attorneys at Law,
Beverly Hills, California

- Wright Medical Technology Inc. - Defendant
- Harlan C. Amstutz M.D. - Defendant
- Harlan C. Amstutz M.D., A Medical Corp. - Defendant
- Helen Zukin, Esq. - Attorney for Plaintiff, 8648 Wilshire Blvd., Beverly Hills, CA 90211

b) *Mary Wright v. Wright Medical Technology, Inc., et al.*, Los Angeles County Superior Court Case No. BC476193 (filed 12/30/11, demurrer filed 3/14/12)

- Hon. Kevin Brazile - Department 20; Los Angeles Superior Court Stanley Mosk Courthouse
- Mary Wright - Plaintiff
- Wright Medical Group Inc. - Defendant
- Wright Medical Technology Inc. - Defendant
- Harlan C. Amstutz M.D. - Defendant
- Harlan C. Amstutz M.D., A Medical Corp. - Defendant
- Christopher B. Yeh – Attorney for Defendant Wright Medical Technology, Inc. & Harlan C. Amstutz- Duane Morris LLP, 865 S. Figueroa Street, Suite 3100, Los Angeles, CA 90017
- Helen Zukin, Esq. - Attorney for Plaintiff, 8648 Wilshire Blvd., Beverly Hills, CA 90211

c) *Barry Judenfriend v. Wright Medical Technology, Inc., et al.*, Los Angeles County Superior Court Case No. BC479149 (filed 02/17/12)

- Hon. Amy D. Hogue - Department 34; Los Angeles Superior Court, Stanley Mosk Courthouse

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

- Barry Judenfriend - Plaintiff
- Wright Medical Group Inc. - Defendant
- Wright Medical Technology Inc. - Defendant
- Harlan C. Amstutz M.D. - Defendant
- Harlan C. Amstutz M.D., A Medical Corp. - Defendant
- Helen Zukin, Esq. - Attorney for Plaintiff, 8648 Wilshire Blvd., Beverly Hills, CA 90211

d) *Penny Steinman v. Wright Medical Technology, Inc., et al.*, San Diego County Superior Court Case No. 37-2012-00051926-CU-PL-NC (filed 03/13/12)

- Hon. Earl H. Maas III – Department N-28; San Diego Superior Court, North County Regional Center
- Penny Steinman - Plaintiff
- Wright Medical Group Inc. - Defendant
- Wright Medical Technology Inc. - Defendant
- Harlan C. Amstutz M.D. - Defendant
- Harlan C. Amstutz M.D., A Medical Corp. - Defendant
- Helen Zukin, Esq. - Attorney for Plaintiff, 8648 Wilshire Blvd., Beverly Hills, CA 90211
- Douglass Kreis, Esq. – Attorney for Plaintiff, Aylstock, Witkin, Kreis & Overholtz PLLC, Joseph

e) *Kym Steinberg v. Wright Medical Technology, Inc., et al.*, Los Angeles Superior Court Case No. BC480987 (filed 3/15/12)

- Hon. Michelle R. Rosenblatt – Department 40, Los Angeles

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

Superior Court, Stanley Mosk Courthouse

- Kym Steinberg - Plaintiff
- Wright Medical Group Inc. - Defendant
- Wright Medical Technology Inc. - Defendant
- Harlan C. Amstutz M.D. - Defendant
- Harlan C. Amstutz M.D., A Medical Corp. - Defendant
- Helen Zukin, Esq. - Attorney for Plaintiff, 8648 Wilshire Blvd., Beverly Hills, CA 90211
- Neil C. Newson, Esq. – Attorney for Plaintiff, Neil C. Newson & Associates, 8447 Wilshire Boulevard, Suite 204, Beverly Hills, CA 90211

f) *Gregory A. Jones v. Wright Medical Technology, Inc., et al.*, Orange County Superior Court Case No. 30-2012-00548956-CU-PL-CXC (filed 02/27/12)

- Hon. Steven L. Perk – Department CX102; Orange County Superior Court Civil Complex Center
- Gary A. Jones - Plaintiff
- Wright Medical Group Inc. - Defendant
- Wright Medical Technology Inc. - Defendant
- Harlan C. Amstutz M.D. - Defendant
- Harlan C. Amstutz M.D., A Medical Corp. - Defendant
- Lowell W. Finson, Esq. - Attorney for Plaintiff, Citigroup Center Building, 444 South Flower Street, 33rd Floor, Los Angeles, CA 90071

g) *Gregory K. Tucker v. Wright Medical Technology, Inc. et al.*, San

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

Francisco County Superior Court Case No. CGC-11-510778 (filed May 6, 2011)

- Hon. Tomar Mason – Department 610; San Francisco Superior Court, 400 McAllister Street, San Francisco, CA 94102
- Gregory K. Tucker – Plaintiff
- Rebecca Tucker – Plaintiff
- Wright Medical Technology Inc. – Defendant
- Wright Medical Group, Inc. – Defendant
- Joseph D. Herling – Attorney for Defendant, Wright Medical Technology, Inc.; Keller and Heckman, LLP, Three Embarcadero Ctr, Ste450, San Francisco, CA 94111
- Joseph H. Fagundes, Esq. – Attorney for Plaintiff; Cassel Malm Fagundes, 6 El Dorado South, Suite 315, Stockton, CA 95202

h) *Inga Harris et al. v. Wright Medical Technology, Inc. et al.*, Los Angeles County Superior Court Case No. BC457818 (2nd Amended Complaint filed October 20, 2011 – 3rd Amended Complaint Answered )

- Hon. Luis A. Lavin – Dept. 13; Los Angeles Superior Court, Stanley Mosk Courthouse
- Inga Harris – Plaintiff
- Lowell Harris – Plaintiff
- Seth W. Bolling – Defendant
- Seth W. Bolling M.D., Inc. – Defendant
- Brad Penenberg M.D., A Professional Corp. – Defendant
- Brad Pennenberg – Defendant
- Wright Medical Technology, Inc. – Defendant
- Olympia Medical Center, Inc. – Defendant

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

- Christopher B. Yeh – Attorney for Defendant Wright Medical Technology, Inc. - Duane Morris LLP, 865 S. Figueroa Street, Suite 3100, Los Angeles, CA 90017
- Randolph M. Even – Attorney for Defendant, Olympic Medical Center – Randolph M. Even & Associates 5550 Topanga Cyn. Blvd., Suite 280, Woodland Hills, CA 91367
- Suhasini S. Sawkar, Esq. – Attorney for Defendant, Brad Penenberg, M.D. - Herzfeld & Rubin LLP ; 1925 Century Park East, Suite 900, Los Angeles, CA 90067
- James J. Kjar, Esq. – Attorney for Defendant W. Seth Bolling; - Reback McAndrews Kjar Warford & Stockalper, LLP, 1239 Rosecrans Ave., Suite 450, Manhattan Beach, CA 90266
- Randall Rich, Esq. – Attorney for Plaintiffs, PO Box 66-1796, Los Angeles, CA 90066

i) *Alan Warner et al. v. Brad L. Penenberg M.D.,et al.*, Los Angeles Superior Court Case No. BC475958 (filed December 27, 2011, answered March 15, 2012)

- Hon. Charles Palmer – Dept. 33, Los Angeles Superior Court, Stanley Mosk Courthouse
- Alan Warner – Plaintiff
- Patricia Warner – Plaintiff
- Wright Medical Group, Inc. – Defendant
- Wright Medical Technology, Inc. – Defendant
- Brad L. Penenberg, M.D. – Defendant

Exhibit E
Page 109

- Michael L. Kirby – Attorney for Defendant Wright Medical Group, Inc. and Wright Medical Technology, Inc., Kirby Noonan, Lance & Hogue, 350 Tenth Ave., Ste. 1300, San Diego CA 92101.
- Steven R. Vartazarian, Esq. – Attorney for Plaintiffs, 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403

j) *Janet Sternfeld et al. v. Brad L. Penenberg M.D.,et al.*, Los Angeles Superior Court Case No. BC478032 (filed January 30, 2012)

- Hon. Alan Rosenfeld – Dept. 31, Los Angeles Superior Court, Stanley Mosk Courthouse
- Janet Sternfeld – Plaintiff
- Earl Sternfeld – Plaintiff
- Wright Medical Group, Inc. – Defendant
- Wright Medical Technology, Inc. – Defendant
- Brad L. Penenberg, M.D. – Defendant
- Steven R. Vartazarian, Esq. – Attorney for Plaintiffs, 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 914034.

4. Based on the sheer number of allegedly defective metal-on-metal Wright hip devices implanted in patients in California, Petitioner further anticipates hundreds, if not thousands, of potential cases to be filed in California courts alleging similar injuries arising out of implantation of the Wright Hip System.

5. The actions sought to be coordinated here are complex actions, as defined by the Judicial Council in California Rules of Court, Rules 3.502 and 3.400, so as to allow their coordination under Code of Civil Procedure Section 404. The included actions will involve numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve; management of a large number of witnesses and a substantial amount of documentary

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

evidence; management of a large number of separately represented parties; and coordination with related actions pending in federal court in Atlanta. Furthermore, the included actions are provisionally complex under California Rules of Court Section 3.400(b) because they involve mass torts.

6. The Wright Hip System Product Liability Actions require resolution of similar or even identical factual and legal issues. The included cases involve common questions of fact or law against the same or a similar group of defendants. The Wright Hip System Product Liability Actions each involve a dispute as to whether the metal-on-metal Wright Hip System was defective in design and manufacture. The included actions allege that the defendants knew or should have known that the Wright Hip System was defective and likely to fail, and that the Defendants engaged in either fraudulent or negligent misrepresentation and fraudulent concealment in regards to the medical device. Plaintiffs allege that, as a result of the defendants' actions, the metal-on-metal hip devices failed and/or caused metal ion debris to be released in the plaintiffs' bodies, causing injury. Plaintiffs allege similar injuries, including breakage, metalosis and necrosis of tissue, often requiring patients to undergo painful revision surgeries. The dispute is essentially the same for each of the included actions with some variance as to theories of liability and prayers for relief. Each of the included actions necessarily involve this Court's interpretation and application of a similar set of California laws.

7. This Petition is made on the grounds that the Wright Hip System Product Liability Actions share common questions of law and fact, and coordination will promote the ends of justice as required by Code Civ. Proc. § 404.1 and 404.4 for the following reasons:

- The included actions require resolution of similar or even identical factual and legal issues;
- Coordination will further the convenience of the parties, witnesses, and counsel;
- Most of the named defendants in any one included action are common to all included actions;
- Defense counsel for the Wright Defendants, namely the law firm of Duane

Morris, LLP, will likely be the same counsel of record in each of the included actions;

- With the exception of the *Wright*, *Harris*, and *Warner* actions, where Defendants have very recently responded to the complaints, to the best of Petitioners knowledge, no answers have yet been filed in these actions, and discovery has yet to be served. In several of these cases, to the best of my knowledge, Defendants' counsel have yet to make an appearance.
- Coordination will further the efficient utilization of judicial resources; and
- Coordination will avoid the disadvantages of duplicative and potentially inconsistent rulings, orders, and judgments.

8. Coordination of the included actions will promote the efficient use of judicial and parties' resources and will accommodate the convenience of all counsel by preventing the duplication of effort and the costly adjudication of the same or substantially similar motions, such as demurrers, judgment on the pleadings and motions for summary judgment. Coordination will also avoid duplicative discovery. Each included action involves common defendants. Many witnesses, such as the implants' designers, are likely to be the same in all of these cases. Thus, coordination will also advance the potential witnesses by avoiding duplicative depositions. Coordination will also advance the convenience of counsel by conserving their resources through cooperative discovery that will benefit all parties and the court in the form of cost savings. For instance, as further described below, a great number of witnesses, including the designer of Wright's Conserve hip device, prominent implanting doctors, and relevant researchers reside in Los Angeles County. Further, it is anticipated that additional plaintiffs will likely be filing in Los Angeles County, because Los Angeles was a training center for the implantation of these devices, making the Wright Hip System a commonly used device in the hip surgeries of many Los Angeles patients. Thus, because several potential key witnesses and documents are likely to be in Los Angeles, discovery proceedings would be facilitated by coordination in Los Angeles County.

9. The Wright Hip System Product Liability Actions are pending in the Superior Court of California, but in different Counties and Departments. The cases involve claims arising

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

from the same conduct by the defendants – the design and manufacture of a defective medical device.

10. The included cases will involve significant motion practice. Motion practice, document discovery, depositions of witnesses, and other aspects of litigation will follow a similar course of conduct throughout the cases.

11. A hearing on this petition may conveniently and appropriately be held at Los Angeles Superior Court.

**EXHIBITS**

12. Attached as Exhibit 1 is a true and correct copy of the complaint *Lisa Stevens v. Wright Medical Technology, Inc., et al.*, Los Angeles County Superior Court Case No. BC479487, filed February 24, 2012.

13. Attached as Exhibit 2 is a true and correct copy of the complaint *Mary Wright v. Wright Medical Technology, Inc., et al.*, Los Angeles County Superior Court Case No. BC476193, filed December 30, 2011.

14. Attached as Exhibit 3 is a true and correct copy of the complaint *Barry Judenfriend v. Wright Medical Technology, Inc., et al.*, Los Angeles County Superior Court Case No. BC479149, filed February 17, 2012.

15. Attached as Exhibit 4 is a true and correct copy of the complaint *Penny Steinman v. Wright Medical Technology, Inc., et al.*, San DiegoCounty Superior Court Case No. 37-2012-00051926-CU-PL-NC, filed March 13, 2012.

16. Attached as Exhibit 5 is a true and correct copy of the complaint *Kym Steinberg v. Wright Medical Technology, Inc., et al.*, Los Angeles Superior Court Case No. BC480987, filed March 15, 2012.

17. Attached as Exhibit 6 is a true and correct copy of the complaint *Gregory A. Jones v. Wright Medical Technology, Inc., et al.*, Orange County Superior Court Case No. 30-2012-00548956-CU-PL-CXC, filed February 27, 2012.

18. Attached as Exhibit 7 is a true and correct copy of the complaint *Gregory K. Tucker v. Wright Medical Technology, Inc. et al.*, San Francisco County Superior Court Case No.

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

Kiesel Boucher Larson LLP
Attorneys at Law
Beverly Hills, California

CGC-11-510778, filed May 6, 2011.

19. Attached as Exhibit 8 is a true and correct copy of the second amended complaint *Inga Harris et al. v. Wright Medical Technology, Inc. et al.*, Los Angeles County Superior Court Case No. BC457818, filed October 20, 2011.

20. Attached as Exhibit 9 is a true and correct copy of the complaint *Alan Warner et al. v. Brad L. Penenberg M.D.,et al.*, Los Angeles Superior Court Case No. BC475958, filed December 27, 2011.

21. Attached as Exhibit 10 is a true and correct copy of the complaint *Janet Sternfeld et al. v. Brad L. Penenberg M.D.,et al.*, Los Angeles Superior Court Case No. BC478032, filed January 30, 2012.

22. Petitioner will submit to the Chair of the Judicial Council, notice and proof of filing in each included action, within five (5) court days of submitting the Petition for Coordination, as required by Rule 3.522.

23. Petitioner will serve notice of petition for coordination, the petition, and all supporting documents on each party appearing in each included action and submit the notice to the Chair of the Judicial Council within five court days of submitting the Peition for Coordination, as required by Rule 3.523.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this 16th day of March 2012, in the City of Beverly Hills, California.

Helen Zukin

# EXHIBIT 1

Raymond P. Boucher, State Bar No. 115364
boucher@kbla.com
Paul R. Kiesel, State Bar No. 119854
kiesel@kbla.com
Helen Zukin, State Bar No. 117933
zukin@kbla.com
Steven D. Archer, State Bar No. 63834
archer@kbla.com
Fontaine Yuk, State Bar No. 267973
fyuk@kbla.com
KIESEL BOUCHER LARSON LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

Attorneys for Plaintiff
LISA STEVENS

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

FEB 24 2012

John A. Clarke, Executive Officer/Clerk
BY ________, Deputy

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| LISA STEVENS,<br><br>Plaintiff,<br><br>v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and WRIGHT MEDICAL GROUP, INC., a Delaware corporation; HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, a California corporation; HARLAN C. AMSTUTZ, M.D., an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. BC 479487<br><br>COMPLAINT FOR DAMAGES<br><br>1. Strict Products Liability – Manufacturing Defect<br>2. Strict Products Liability – Failure to Warn<br>3. Strict Products Liability – Unreasonably Dangerous Design<br>4. Negligence<br>5. Negligence – Failure to Recall/Retrofit<br>6. Breach of Express Warranty<br>7. Breach of Implied Warranty<br>8. Fraudulent Misrepresentation<br>9. Fraudulent Concealment<br>10. Negligent Misrepresentation<br><br>DEMAND FOR JURY TRIAL |

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

COMES NOW the plaintiff, LISA STEVENS, by and through her attorneys of record, KIESEL BOUCHER LARSON LLP, to allege the following causes of action against Defendants, and each of them, as follows:

**NATURE OF THE ACTION**

1. This is an action for strict products liability, negligence, breach of express and implied warranties, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and punitive damages brought by Plaintiff LISA STEVENS ("Plaintiff") for injuries arising out of the Wright Medical Total Hip System ("Wright Hip System") she received as part of her total hip replacement surgery.

2. On February 29, 2008, Plaintiff received a Wright Hip System as part of a right total hip replacement surgery. On and prior to the date of that implantation surgery Defendants knew or should have known, based on hundreds of reports received from orthopedic surgeons around the U.S., that the Wright Hip System was defective and likely to fail. Defendants concealed this adverse information and continued to represent to Plaintiff, her healthcare providers, and the public that the Wright Hip System was a safe, effective medical device with a low failure rate.

3. Subsequent to implantation of the Wright Hip System, Plaintiff began to experience the painful effects of the product's defective design and manufacture. Plaintiff began suffering persistent pain and decreased mobility, both worsening over time. While Plaintiff's physicians searched for the cause of Plaintiff's pain, Plaintiff continued to endure persistent, debilitating pain and decreased mobility. Plaintiff began suffering emotional distress as a result of the defective product. Plaintiff was required to undergo emergency revision surgery to remove and replace the defective Wright Hip System.

4. Revision surgery to remove the failed Wright Hip System and replace it with a new implant is a complex, risky and painful procedure. Revision surgeries are generally more complex than the original hip replacement as there is less bone available to attach the new implant. Revision surgeries also are usually longer than the original hip replacement procedure and have a higher rate of complications.

5. After the revision surgery, Plaintiff endured a long recovery that was both physically and emotionally painful. Additionally, Plaintiff must live with a greater risk of future complications as a revised hip implant presents a much higher risk of dislocation than an original implant.

**PARTIES**

6. Plaintiff LISA STEVENS is, and at all times relevant hereto was, a resident of Cathedral City, County of Riverside, State of California. Plaintiff underwent a right total hip replacement surgery on February 29, 2008, in Los Angeles County. At that time, the Wright Hip System manufactured, designed, distributed, and warranted by defendants was implanted into Plaintiff. Plaintiff's surgeon, medical staff, and other healthcare providers met or exceeded the standard of care applicable to the hip replacement surgery. The Wright Hip System subsequently failed.

7. Defendant WRIGHT MEDICAL GROUP, INC., is, and at all times relevant hereto was, a Delaware corporation, with its principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. At all times relevant hereto, Defendant WRIGHT MEDICAL GROUP, INC. conducted regular and sustained business in California by selling and distributing its products in California, and engaged in substantial commerce and business activity in the County of Los Angeles.

8. Defendant WRIGHT MEDICAL TECHNOLOGY, INC., is, and at all times relevant hereto was, a Delaware corporation, with its principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. At all times relevant hereto, Defendant WRIGHT MEDICAL TECHNOLOGY, INC. conducted regular and sustained business in California by selling and distributing its products in California, and engaged in substantial commerce and business activity in the County of Los Angeles.

9. Defendant WRIGHT MEDICAL TECHNOLOGY, INC. is a wholly owned subsidiary of Defendant WRIGHT MEDICAL GROUP, INC.

10. Defendants WRIGHT MEDICAL TECHNOLOGY, INC. and WRIGHT MEDICAL GROUP, INC. are hereinafter collectively referred to as "Wright." "Wright" includes

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant WRIGHT MEDICAL TECHNOLOGY, INC. and Defendant WRIGHT MEDICAL GROUP, INC.

11. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant HARLAN C. AMSTUTZ, M.D., an individual, is a resident of the County of Los Angeles, State of California. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant HARLAN C. AMSTUTZ, M.D., an individual, researched, designed, developed, and marketed the Wright Hip System throughout the United States, including California. Defendant HARLAN C. AMSTUTZ, M.D., an individual, also researched, designed, developed, and marketed the Wright surgical technique and instrumentation designed for use with Wright's CONSERVE® hip system.

12. Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION is, and at all times relevant hereto was, a California corporation with its principal place of business in Los Angeles, California. On information and belief, Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, by and through its shareholder, director and officer HARLAN C. AMSTUTZ, M.D., researched, designed, developed and marketed the defective Wright Hip System throughout the United States, including California. On information and belief, a primary purpose of Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION is to collect royalty payments and consulting fees arising out of the Wright Hip System on behalf of Defendant HARLAN C. AMSTUTZ, M.D., an individual.

13. Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION and Defendant HARLAN C. AMSTUTZ, M.D., an individual, are hereinafter collectively referred to as "Dr. Amstutz." "Dr. Amstutz" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL

CORPORATION and/or Defendant HARLAN C. AMSTUTZ, M.D., an individual.

14. The true names or capacities, whether individual, corporate, associate, or otherwise of Defendants DOES 1 through 50, inclusive, and each of them, are unknown to Plaintiff who, therefore, sues said defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each defendant designated herein by a fictitious name is in some manner legally responsible for the events and happenings herein referred to, and proximately caused foreseeable damages to Plaintiff as alleged herein. Plaintiff will seek leave of Court to amend this Complaint when the names of said DOE defendants are ascertained.

15. As used herein, "Defendants" includes all named Defendants and Does 1-50, inclusive.

16. At all times relevant hereto, each of the Defendants was the representative, agent, employee, joint venturer, or alter ego of each of the other Defendants and was acting within the scope of its authority as such.

17. At all times relevant hereto, the Defendants, either directly or through their agents, apparent agents, servants or employees, sold, distributed and marketed the defective Wright Hip System in the State of California. Defendants derive substantial revenue from orthopedic products used or implanted in the State of California. As such, Defendants expected or should have expected that their business activities could or would subject them to legal action in the State of California.

18. Plaintiff has reviewed her potential legal claims and causes of action against Defendants and has chosen only to pursue state-law claims. Any reference to any federal agency, regulation or rule is stated solely as background information and does not raise a federal question. Dr. Amstutz, principal designer and promoter of the Wright Hip System hip implant, is a California resident. The liability of Dr. Amstutz is so intertwined with the liability of the other Defendants herein that no claims arising out of Plaintiff's Wright Hip System implant can be severed or removed. Accordingly, Plaintiff contends that this Court may rightfully exercise jurisdiction, and venue is proper in this case.

///

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**FACTUAL BACKGROUND**

19. The hip joint, connecting the femur and pelvis, consists of a femoral head rotating within the acetabulum. The femoral head is a ball-like structure at the top of the femur. The acetabulum is a cup-shaped bone structure at the bottom of the pelvis. Over time, the cartilage that cushions the rotation of the femoral head and acetabulum against each other breaks down. When the cartilage is depleted, the femoral head rubs directly against the acetabulum, causing extreme pain and immobility, and necessitating a total hip replacement surgery.

20. In a total hip replacement, an artificial hip joint is installed to replace the body's natural joint. Usually, the artificial joint is made of metal and plastic and consists of four parts: (1) an acetabular shell; (2) a plastic liner; (3) a femoral head; and (4) a femoral stem. In most hip replacement systems, the femoral head forms the hip joint when it is placed inside the plastic liner and acetabular shell.

21. Dr. Amstutz, Wright, and others designed and developed the Wright Hip System. The Wright Hip System differs from most hip implants in that the metal femoral head is in direct contact with a metal acetabular cup. Despite its unorthodox design, Defendants did not properly test the device for safety, efficacy, and durability. Other metal-on-metal prosthetic hip device manufacturers carefully screen, select, and train orthopedic surgeons on proper implant procedures for their respective devices. However, Defendants aggressively marketed, promoted and encouraged orthopedic surgeons in the U.S. to use the Wright Hip System without screening, selecting, or training the surgeons on how to implant the Wright Hip System

22. While Wright wanted to market its Wright Hip System in the U.S., it did not want to endure the long and expensive FDA approval process. Instead, Wright exploited a loophole in FDA regulations that would allow its device to enter the U.S. market without proper testing or approval. Wright represented that the Wright Hip System design was substantially equivalent to other hip replacement products already on the market.

23. While representing to the FDA that its Wright Hip System was "substantially equivalent" to other hip replacement products, Wright omitted the Wright Hip System's critical distinguishing features. The Wright Hip System's femoral head has a larger circumference than

industry standard. Also, the acetabular cup departs from industry standards in that it (1) is thinner; (2) has a smaller circumference; (3) is double-heat treated rather than single-heat treated; (4) has an exterior shell that lacks reliable bone ingrowth materials; (5) offers no obvious means of fixation other than the expectation that the patient's bone will grow into the porous exterior of the cup; and (6) has a low clearance which spreads the contact area out closer to the edge of the cup resulting in increased friction from the lack of lubrication entering the cup.

24. Shortly after the U.S. launch of the Wright Hip System, Defendants began receiving hundreds of complaints from doctors reporting Wright Hip System failures. By 2008, Defendants had received hundreds of such reports regarding their PROFEMUR® and CONSERVE® lines. Defendants failed to disclose or actively concealed these adverse reports from doctors and patients, including Plaintiff and Plaintiff's surgeon, and continued to promote the Wright Hip System as a safe and effective device.

25. Prior to Plaintiff's hip replacement surgery, Defendants knew or should have known that the Wright Hip System was failing frequently and causing serious post-implant complications for many patients. Those complications arising out of the implantation of the Wright Hip System that Defendants knew or should have known about included but were not limited to: bone cysts; pseudo-tumors; metallosis and osteolysis; high levels of metal ions, such as chromium and cobalt, in the bloodstream; detachment, disconnection, and/or loosening of the acetabular cup; loosening of the femoral component; and other complications requiring revision surgery. Armed with such knowledge, Defendants concealed the true risks of the Wright Hip System and instead continued to market, defend and promote the Wright Hip System.

26. From as early as 1996 through the present, Dr. Amstutz served as a consultant for Wright. Dr. Amstutz is one of the innovators and developers of the CONSERVE® and CONSERVE® Plus hip surface arthroplasty utilizing metal on metal bearing technology.

27. Dr. Amstutz and Wright representatives continued to market the superiority of the Wright Hip System despite their awareness of numerous, serious complications and alarmingly high failure rates. Dr. Amstutz and the Wright representatives concealed their knowledge of the Wright Hip System's unacceptably high failure rate.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

28. Despite legal and moral obligations to cease promoting, marketing, selling and defending the Wright Hip System upon awareness of its serious risks, Defendants did not notify physicians, including Plaintiff's orthopedic surgeon, of the device's propensity to fail and cause other serious complications.

29. Defendants had a strong monetary motive not to reveal the dangers associated with the Wright Hip System. In 2010, alone, Wright's sales revenue was over $518 million, with about $176 million comprising of sales from their hip products, making it one of its parent company's most profitable groups. Likewise, Dr. Amstutz collected millions of dollars in royalties and consulting fees from Wright for designing, marketing, promoting and defending the Wright Hip System. For example, in her consulting agreement with Wright, Dr. Amstutz was promised a consulting salary and a royalty of 5% of all net sales from Wright's CONSERVE® and CONSERVE® Plus hip implants.

30. On February 29, 2008, Plaintiff underwent a right total hip replacement procedure using the Wright Hip System at Century City Doctors Hospital in Los Angeles, California. The Plaintiff's right prosthetic hip consisted of the following four Wright modular components:

a) PROFEMUR® Z Femoral Component, Size 4

b) CONSERVE® Total Femoral Head, Size 42mm

c) PROFEMUR® Short ARVV-1 Neck

d) CONSERVE® PLUS Acetabular Component, Size 48mm

31. Subsequently, as a direct and proximate result of the design, manufacture and composition of the device, Plaintiff's Wright Hip System detached, disconnected, created metallic debris, and/or loosened from Plaintiff's acetabulum. As a result, the Wright Hip System has forced Plaintiff to live with debilitating pain, decreased mobility, and emotional distress.

32. On or about March 11, 2011, Plaintiff was forced to undergo revision surgery in Los Angeles County to remove the defective Wright Hip Implant.

33. Defendants recklessly, knowingly, intentionally and fraudulently misrepresented to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, that the Wright Hip System was safe and effective for its intended use.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

34. Defendants recklessly, knowingly, intentionally and fraudulently concealed and suppressed adverse information relating to the safety and performance of the Wright Hip System from the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers.

35. Defendants' misrepresentations were communicated to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, with the intent that the medical community and general public, including Plaintiff and Plaintiff's healthcare providers, would rely on such in selecting the Wright Hip System.

36. Specifically, Defendants misrepresented and actively concealed material facts regarding the safety and performance of the Wright Hip System including, but not limited to:

(a) the Wright Hip System was not as safe as other available hip implant devices;

(b) the Wright Hip System had an unacceptably high rate of failures requiring revision surgery;

(c) the safety and performance of the Wright Hip System was not adequately tested and/or known by Defendants;

(d) patients implanted with the Wright Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip implant devices;

(e) the Wright Hip System was designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

(f) the design of the Wright Hip System increased the wear between the femoral component and the acetabular component, as compared to other hip implant products;

(g) metal corrosion was more likely to occur, and would occur with greater severity, as compared to other hip replacement products;

(h) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

surgical implantation was substantially less likely to occur;

(i) metal ion debris would be released into the patient's body; and

(j) safer alternatives were available.

37. To Plaintiff's detriment, Plaintiff and Plaintiff's healthcare provider justifiably relied on and/or were induced by Defendants' misrepresentations and/or active concealment to recommend, purchase, implant and/or use the Wright Hip System.

38. As a direct, legal, proximate and producing result of Defendants' misrepresentation and active concealment of material facts, Plaintiff has suffered injuries as set forth herein.

39. Plaintiff files this lawsuit within two years of first suspecting that Wright Hip System was the cause of any appreciable harm sustained by Plaintiff. Plaintiff first suspected that the cause of her injuries was the defective Wright Hip System on or about 2011. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of Plaintiff's injuries at an earlier time because when Plaintiff's injuries were discovered, their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of Plaintiff's injury or the tortuous nature of the conduct causing injury until less than two years prior to the filing of this action. Additionally, Plaintiff was prevented from discovering this information sooner because Defendants misrepresented and continue to misrepresent to the public and to the medical profession that Wright Hip System did not have a propensity to fail or cause other serious complications, and Defendants have fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

40. Plaintiff alleges that she is entitled to prejudgment interest pursuant to California *Civil Code* § 3288 from the date of the implantation of the defective Wright Hip System into her body on February 29, 2008, up to and including the date of judgment, according to proof.

**FIRST CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**
**(Against All Defendants)**

41. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40, inclusive, as though fully set forth herein.

42. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System, including the 1)PROFEMUR® Z Femoral Component, 2) CONSERVE® Total Femoral Head, 3) PROFEMUR® Short ARVV-1 Neck, and 4) CONSERVE® PLUS Acetabular Component that were implanted in Plaintiff on or about February 29, 2008.

43. At all times relevant hereto, the Wright Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without a substantial change in the condition in which it was sold.

44. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

45. At all times relevant hereto, the Wright Hip System was dangerous, unsafe and defective in manufacture. Such defects included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

46. Plaintiff is informed and believes, and thereupon alleges, that the Wright Hip System implanted in Plaintiff was defectively manufactured because it differed from the manufacturer's design and specifications, or from typical units of the same product line.

47. As a direct, legal, proximate and producing result of the defective manufacture of the Wright Hip System implanted in Plaintiff, Plaintiff sustained injuries as set forth above.

48. The dangerous, unsafe and defective manufacturing of the Wright Hip System implanted in Plaintiff was a substantial factor in causing Plaintiff's injuries as set forth above.

**SECOND CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**
**(Against All Defendants)**

49. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

///

50. The Wright Hip System was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert the medical community and patients, including Plaintiff and Plaintiff's healthcare providers, to the dangerous risks associated with the Wright Hip System when used for its intended and reasonably foreseeable purpose. The dangers and risks included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

51. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

52. Plaintiff and Plaintiff's healthcare providers could not have discovered any defect in the Wright Hip System through the exercise of due care.

53. Defendants knew or should have known, by the use of scientific knowledge available before, at and after the time of manufacture, distribution and sale of the Wright Hip System, of potential risks and side effects associated with the Wright Hip System. Defendants knew or should have known of the defective condition, characteristics, and risks associated with said product, as previously set forth herein.

54. The warnings and instructions provided with the Wright Hip System by Defendants did not adequately warn of the potential risks and side effects of the Wright Hip System, which risks were known or scientifically knowable to Defendants.

55. Defendants had a continuing duty to warn the medical community and public, including Plaintiff and Plaintiff's healthcare providers, of the potential risks and increased failure rate associated with the Wright Hip System.

56. As a direct, legal, proximate and producing result of Defendants' failure to warn, Plaintiff sustained injuries as set forth above.

57. Defendants' failure to adequately warn of the potential risks and side effects of the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

///

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**THIRD CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – UNREASONABLY DANGEROUS DESIGN**
**(Against All Defendants)**

58. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

59. At all times relevant hereto, Defendants designed, manufactured; distributed, sold, marketed and promoted the Wright Hip System, including the 1)PROFEMUR® Z Femoral Component, 2) CONSERVE® Total Femoral Head, 3) PROFEMUR® Short ARVV-1 Neck, and 4) CONSERVE® PLUS Acetabular Component that were implanted in Plaintiff on or about February 29, 2008.

60. At all times relevant hereto, the Wright Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without a substantial change in the condition in which it was sold.

61. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

62. At all times relevant hereto, the Wright Hip System was dangerous, unsafe and defective in design. Such defects included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

63. Defendants knew or should have known of the unreasonably dangerous and serious risks associated with the design of the Wright Hip System. Such risks were scientifically knowable to Defendants. However, Defendants performed inadequate evaluation and testing of the Wright Hip System design.

64. As a direct, legal, proximate and producing result of the defective manufacture of the Wright Hip System implanted in Plaintiff, Plaintiff sustained injuries as set forth above.

65. Defendants' defective design and failure to adequately test the safety of the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

///

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Defendants)**

66. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

67. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System for implantation into customers, such as Plaintiff, by physicians and surgeons in the U.S.

68. At all times relevant hereto, Defendants knew or should have known that the novel design of the Wright Hip System necessitated clinical trials and other pre-marketing evaluations of risk and efficacy. Such testing would have revealed the increased risk of failure and complications associated with the Wright Hip System. A reasonable manufacturer under the same or similar circumstances would have conducted additional testing and evaluation of the Wright Hip System's safety and performance prior to placing the Wright Hip System into the stream of commerce.

69. At all times relevant hereto, Defendants knew or should have known of the serious complications and high failure rate associated with the Wright Hip System. Despite receiving hundreds of reports of serious complications from healthcare providers, Defendants chose (1) not to perform any additional testing of the Wright Hip System; (2) not to investigate other potential causes of the reported complications; (3) suspend sales or distribution; or (4) warn physicians and patients of the propensity of the Wright Hip System's propensity to detach, disconnect, create metallic debris and/or loosen from the acetabulum.

70. As a direct, legal, proximate and producing cause of Defendants' negligent design, testing, manufacturing, marketing, selling, and promoting the Wright Hip System, Plaintiff suffered injuries as set forth above.

71. Defendants' negligent design, testing, manufacturing, marketing, selling, and promoting the Wright Hip System, was a substantial factor in causing Plaintiff's injuries as set forth above.

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE – FAILURE TO RECALL/RETROFIT**
**(Against All Defendants)**

72. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

73. At all times relevant hereto, Defendants knew or should have known that the design of the Wright Hip System and its warnings were dangerous or were likely to be dangerous when used in an intended or reasonably foreseeable manner.

74. Despite the severity and number of complaints Defendants received, Defendants failed to recall, retrofit, or warn patients or physicians about the danger of the Wright Hip System.

75. Reasonable manufacturers, distributors, sellers, promoters, and designers under the same or similar circumstances would have recalled the Wright Hip System.

76. As a direct, legal, proximate and producing result of Defendants' failure to recall the Wright Hip System, Plaintiff suffered injuries as set forth above.

77. Defendants' failure to recall the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(Against All Defendants)**

78. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

79. Through sales representatives, consultants, printed materials, and other advertising and marketing efforts, Defendants made express representations to healthcare providers and patients, including Plaintiff and Plaintiff's healthcare providers, about the safety and efficacy of the Wright Hip System.

80. The Wright Hip System does not conform to the express representations made by Defendants through sales representatives, consultants, printed materials, and other advertising and

marketing efforts.

81. Defendants' conduct in this manner was a contributing cause of injuries and damages suffered by Plaintiff.

**SEVENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(Against All Defendants)**

82. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

83. At the time Defendants designed, tested, marketed, promoted, and sold the Wright Hip System, Defendants knew of the intended, reasonably foreseeable uses and impliedly warranted the Wright Hip System to be of merchantable quality and safe and fit for such use.

84. Plaintiff and Plaintiff's healthcare providers, in deciding to use the Wright Hip System as part of Plaintiff's total hip replacement, reasonably relied upon the skill and judgment of Defendants as to whether the Wright Hip System was of merchantable quality and safe and fit for its intended or reasonably foreseeable use.

85. In breach of the implied warranty given by Defendants, the Wright Hip System was not of merchantable quality or safe or fit for its intended or reasonably foreseeable use because the product was unmerchantable, in a defective condition and unreasonably dangerous and unfit for its intended use. The unmerchantable, defective, and unreasonably dangerous nature of the Wright Hip System included, but was not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

86. As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiff suffered injuries as set forth above.

///

///

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**EIGHTH CAUSE OF ACTION**
**FRAUDULENT MISREPRESENTATION**
**(Against All Defendants)**

87. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

88. The Defendants falsely and fraudulently represented to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, that the Wright Hip System had been properly tested and was safe and effective for its indicated use.

89. The representations made by Defendants to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, regarding the safety and performance of the Wright Hip System were, in fact, false.

90. Defendants knew or should have known that the Wright Hip System had not been sufficiently tested, was defectively designed, and lacked adequate warnings and instructions.

91. Defendants knew or should have known that the Wright Hip System could and would cause severe and grievous injury to users of said product, and that the Wright Hip System's inherent dangers exceeded any purported, inaccurate, and/or downplayed warnings.

92. When said representations were made by Defendants, Defendants knew those representations to be false and exhibited a willful, wanton and reckless disregard for the truth of said representations.

93. Said representations were made by Defendants with the intent to defraud and deceive Plaintiff, Plaintiff's healthcare providers, the medical community, and the general public. Defendants intended said representations to induce Plaintiff, Plaintiff's healthcare providers, the medical community and the general public, to recommend, implant, and/or purchase the Wright Hip System for use as part of total hip replacement surgery. Defendants' actions evinced a callous, reckless, willful, depraved indifference to the health, safety, and welfare of Plaintiff.

94. At all relevant times, Plaintiff and Plaintiff's healthcare providers were unaware of the falsity of said representations and reasonably believed them to be true.

95. In reliance upon Defendants' representations, Plaintiff was induced and did use the

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

Wright Hip System, thereby sustaining severe and permanent personal injuries, and is now at an increased risk of sustaining further severe and permanent personal injuries in the future.

96. Defendants brought the Wright Hip System to the market, and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

97. As a direct, legal, proximate and producing result of Defendants' false representations, Plaintiff suffered the injuries set forth herein.

**NINTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(Against All Defendants)**

98. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

99. Defendants knew their representations were false or recklessly disregarded the truth of said representations.

100. In representations to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, Defendants omitted, concealed or suppressed material information regarding the safety and performance of the Wright Hip System, including, but not limited to:

(a) the Wright Hip System was not as safe as other available hip implant devices;

(b) the Wright Hip System had an unacceptably high rate of failures requiring revision surgery;

(c) the safety and performance of the Wright Hip System was not adequately tested and/or known by Defendants;

patients implanted with the Wright Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip implant devices;

(d) the Wright Hip System was designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

(e) the design of the Wright Hip System increased the wear between the femoral component and the acetabular component, as compared to other hip implant products;

(f) metal corrosion was more likely to occur, and would occur with greater severity, as compared to other hip replacement products;

(g) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper surgical implantation was substantially less likely to occur;

(h) metal ion debris would be released into the patient's body; and

(i) safer alternatives were available.

101. Defendants purposefully downplayed and understated the serious nature of the risks associated with the use of the Wright Hip System in order to increase and sustain sales.

102. Defendants had sole access to material facts regarding the safety and performance of the Wright Hip System. Defendants knew Plaintiff and Plaintiff's healthcare providers and/or the FDA had no way to determine the truth behind Defendants' concealment, omission and suppression of material facts as set forth herein.

103. Plaintiff and Plaintiff's healthcare providers relied on Defendants' incomplete and inaccurate representations as to the safety and performance of the Wright Hip System when selecting, recommending, and implanting the Wright Hip System.

104. As a direct, legal, proximate and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

**TENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against All Defendants)**

105. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

106. Defendants had a duty to truthfully represent to the medical community, and to Plaintiff, Plaintiff's healthcare providers, and the FDA, that the Wright Hip System had been properly

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

tested and found to be safe and effective for its intended use.

107. Defendants knew or should have known the representations regarding the safety and performance of the Wright Hip System were, in fact, false.

108. Defendants failed to exercise ordinary care in determining the truth or falsity of their representations, and by misrepresenting the safety and performance of the Wright Hip System.

109. Defendants breached their duty to present truthful representations by knowingly, or by want of ordinary care, misrepresenting the safety and performance of the Wright Hip System.

110. As a direct, legal, proximate and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and/or severally, as follows:

1. For general damages for personal injuries to Plaintiff, according to proof;
2. For all past, current, and future medical and incidental expenses, according to proof;
3. For all loss of earnings, present and future, and loss of earning capacity, according to proof;
4. For punitive and/or exemplary damages in an amount sufficient to punish Defendants and deter similar conduct in the future, according to proof;
5. For prejudgment interest, as provided by law;
6. For reasonable attorneys' fees;
7. For costs of litigation; and

///

///

///

///

///

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

8. For such other and further relief as this Court may deem just and proper.

Dated: February 23, 2012

KIESEL BOUCHER LARSON LLP

By: [signature]
Raymond P. Boucher
Paul R. Kiesel
Helen Zukin
Steven D. Archer
Fontaine Yuk

Attorneys for Plaintiff
LISA STEVENS

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

Dated: February 23, 2012

KIESEL BOUCHER LARSON LLP

By: [signature]
Raymond P. Boucher
Paul R. Kiesel
Helen Zukin
Steven D. Archer
Fontaine Yuk

Attorneys for Plaintiff
LISA STEVENS

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

21
COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Exhibit E
Page 136

# EXHIBIT 2

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

DEC 30 2011

John A. Clarke, Executive Officer/Clerk
BY ________, Deputy
Mary Flores

Raymond P. Boucher, State Bar No. 115364
boucher@kbla.com
Paul R. Kiesel, State Bar No. 119854
kiesel@kbla.com
Helen Zukin, State Bar No. 117933
zukin@kbla.com
Steven D. Archer, State Bar No. 63834
archer@kbla.com
Fontaine Yuk, State Bar No. 267973
fyuk@kbla.com
KIESEL BOUCHER LARSON LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

Attorneys for Plaintiff
MARY WRIGHT

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

BC 476193

| | |
|---|---|
| MARY WRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and WRIGHT MEDICAL GROUP, INC., a Delaware corporation; BRAD L. PENENBERG, M.D., A PROFESSIONAL CORPORATION, a California corporation; BRAD L. PENENBERG, M.D., an individual; HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, a California corporation; HARLAN C. AMSTUTZ, M.D., an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Strict Products Liability - Manufacturing Defect<br>2. Strict Products Liability - Failure to Warn<br>3. Strict Products Liability - Unreasonably Dangerous Design<br>4. Negligence<br>5. Negligence - Failure to Recall/Retrofit<br>6. Breach of Express Warranty<br>7. Breach of Implied Warranty<br>8. Fraudulent Misrepresentation<br>9. Fraudulent Concealment<br>10. Negligent Misrepresentation<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW the plaintiff, MARY WRIGHT, by and through her attorneys of record, KIESEL BOUCHER LARSON LLP, to allege the following causes of action against Defendants, and each of them, as follows:

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

## NATURE OF THE ACTION

1. This is an action for strict products liability, negligence, breach of express and implied warranties, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and punitive damages brought by Plaintiff MARY WRIGHT ("Plaintiff") for injuries arising out of the Wright Medical Total Hip System ("Wright Hip System") she received as part of her total hip replacement surgery.

2. On October 30, 2007, Plaintiff received a Wright Hip System as part of a right total hip replacement surgery. On and prior to the date of that implantation surgery Defendants knew or should have known, based on hundreds of reports received from orthopedic surgeons around the U.S., that the Wright Hip System was defective and likely to fail. Defendants concealed this adverse information and continued to represent to Plaintiff, her healthcare providers, and the public that the Wright Hip System was a safe, effective medical device with a low failure rate.

3. Subsequent to implantation of the Wright Hip System, Plaintiff began to experience the painful effects of the product's defective design and manufacture. Plaintiff began suffering persistent pain and decreased mobility, both worsening over time. While Plaintiff's physicians searched for the cause of Plaintiff's pain, Plaintiff continued to endure persistent, debilitating pain and decreased mobility. Plaintiff began suffering emotional distress as a result of the defective product. Plaintiff was required to undergo revision surgery to remove and replace the defective Wright Hip System.

4. Revision surgery to remove the failed Wright Hip System and replace it with a new implant is a complex, risky and painful procedure. Revision surgeries are generally more complex than the original hip replacement as there is less bone available to attach the new implant. Revision surgeries also are usually longer than the original hip replacement procedure and have a higher rate of complications.

5. After the revision surgery, Plaintiff endured a long recovery that was both physically and emotionally painful. Additionally, Plaintiff must live with a greater risk of future complications as a revised hip implant presents a much higher risk of dislocation than an original implant.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**PARTIES**

6. Plaintiff MARY WRIGHT is, and at all times relevant hereto was, a resident of the City of Richmond, State of Indiana. Plaintiff underwent a right total hip replacement surgery on October 30, 2007. At that time, the Wright Hip System manufactured, designed, distributed, and warranted by defendants was implanted into Plaintiff. Plaintiff's surgeon, medical staff, and other healthcare providers met or exceeded the standard of care applicable to the hip replacement surgery. The Wright Hip System subsequently failed.

7. Defendant WRIGHT MEDICAL GROUP, INC., is, and at all times relevant hereto was, a Delaware corporation, with its principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. At all times relevant hereto, Defendant WRIGHT MEDICAL GROUP, INC. conducted regular and sustained business in California by selling and distributing its products in California, and engaged in substantial commerce and business activity in the County of Los Angeles.

8. Defendant WRIGHT MEDICAL TECHNOLOGY, INC., is, and at all times relevant hereto was, a Delaware corporation, with its principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. At all times relevant hereto, Defendant WRIGHT MEDICAL TECHNOLOGY, INC. conducted regular and sustained business in California by selling and distributing its products in California, and engaged in substantial commerce and business activity in the County of Los Angeles.

9. Defendant WRIGHT MEDICAL TECHNOLOGY, INC. is a wholly owned subsidiary of Defendant WRIGHT MEDICAL GROUP, INC.

10. Defendants WRIGHT MEDICAL TECHNOLOGY, INC. and WRIGHT MEDICAL GROUP, INC. are hereinafter collectively referred to as "Wright." "Wright" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant WRIGHT MEDICAL TECHNOLOGY, INC. and Defendant WRIGHT MEDICAL GROUP, INC.

11. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant BRAD L. PENENBERG, M.D., an individual, is a resident of the County of Los Angeles, State of California. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant BRAD L. PENENBERG, M.D., an individual, researched, designed, developed, and marketed the Wright Hip System throughout the United States, including California. The defective Wright Hip System was implanted in Plaintiff's body. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant BRAD L. PENENBERG, M.D., an individual, also researched, designed, developed, and marketed the Wright-patented PATH™ surgical technique and instrumentation designed for use with Wright's PROFEMUR® hip system.

12. Defendant BRAD L. PENENBERG, M.D., A PROFESSIONAL CORPORATION is, and at all times relevant hereto was, a California corporation with its principal place of business in Los Angeles, California. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant BRAD L. PENENBERG, M.D., A PROFESSIONAL CORPORATION, by and through its shareholder, director and officer BRAD L. PENENBERG, M.D., an individual, researched, designed, developed and marketed the defective Wright Hip System throughout the United States, including California. Plaintiff is informed and believes and, based upon such information and belief, alleges that a primary purpose of Defendant BRAD L. PENENBERG, M.D., A PROFESSIONAL CORPORATION is to collect royalty payments and consulting fees arising out of the Wright Hip System on behalf of Defendant BRAD L. PENENBERG, M.D., an individual.

13. Defendants BRAD L. PENENBERG, M.D., A PROFESSIONAL CORPORATION and BRAD L. PENENBERG, M.D., an individual, are hereinafter collectively referred to as "Dr. Penenberg." "Dr. Penenberg" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant BRAD L. PENENBERG, M.D., A PROFESSIONAL CORPORATION and/or Defendant BRAD L. PENENBERG, M.D., an individual.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

14. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant HARLAN C. AMSTUTZ, M.D., an individual, is a resident of the County of Los Angeles, State of California. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant HARLAN C. AMSTUTZ, M.D., an individual, researched, designed, developed, and marketed the Wright Hip System throughout the United States, including California. Defendant HARLAN C. AMSTUTZ, M.D., an individual, also researched, designed, developed, and marketed the Wright surgical technique and instrumentation designed for use with Wright's CONSERVE® hip system

15. Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION is, and at all times relevant hereto was, a California corporation with its principal place of business in Los Angeles, California. On information and belief, Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, by and through its shareholder, director and officer HARLAN C. AMSTUTZ, M.D., researched, designed, developed and marketed the defective Wright Hip System throughout the United States, including California. On information and belief, a primary purpose of Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION is to collect royalty payments and consulting fees arising out of the Wright Hip System on behalf of Defendant HARLAN C. AMSTUTZ, M.D., an individual.

16. Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION and Defendant HARLAN C. AMSTUTZ, M.D., an individual, are hereinafter collectively referred to as "Dr. Amstutz." "Dr. Amstutz" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION and/or Defendant HARLAN C. AMSTUTZ, M.D., an individual.

17. The true names or capacities, whether individual, corporate, associate, or otherwise of Defendants DOES 1 through 50, inclusive, and each of them, are unknown to Plaintiff who, therefore, sues said defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each defendant designated herein by a fictitious name is in some manner legally

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

responsible for the events and happenings herein referred to, and proximately caused foreseeable damages to Plaintiff as alleged herein. Plaintiff will seek leave of Court to amend this Complaint when the names of said DOE defendants are ascertained.

18. As used herein, "Defendants" includes all named Defendants and Does 1-50, inclusive.

19. At all times relevant hereto, each of the Defendants was the representative, agent, employee, joint venturer, or alter ego of each of the other Defendants and was acting within the scope of its authority as such.

20. At all times relevant hereto, the Defendants, either directly or through their agents, apparent agents, servants or employees, sold, distributed and marketed the defective Wright Hip System in the State of California. Defendants derive substantial revenue from orthopedic products used or implanted in the State of California. As such, Defendants expected or should have expected that their business activities could or would subject them to legal action in the State of California.

21. Plaintiff has reviewed her potential legal claims and causes of action against Defendants and has chosen only to pursue state-law claims. Any reference to any federal agency, regulation or rule is stated solely as background information and does not raise a federal question. Dr. Penenberg and Dr. Amstutz, principal designers and promoters of the Wright Hip System hip implant, are California residents. The liability of Dr. Penenberg and Dr. Amstutz is so intertwined with the liability of the other Defendants herein that no claims arising out of Plaintiff's Wright Hip System implant can be severed or removed. Accordingly, Plaintiff contends that this Court may rightfully exercise jurisdiction, and venue is proper in this case.

**FACTUAL BACKGROUND**

22. The hip joint, connecting the femur and pelvis, consists of a femoral head rotating within the acetabulum. The femoral head is a ball-like structure at the top of the femur. The acetabulum is a cup-shaped bone structure at the bottom of the pelvis. Over time, the cartilage that cushions the rotation of the femoral head and acetabulum against each other breaks down. When the cartilage is depleted, the femoral head rubs directly against the acetabulum, causing extreme pain and immobility, and necessitating a total hip replacement surgery.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

23. In a total hip replacement, an artificial hip joint is installed to replace the body's natural joint. Usually, the artificial joint is made of metal and plastic and consists of four parts: (1) an acetabular shell; (2) a plastic liner; (3) a femoral head; and (4) a femoral stem. In most hip replacement systems, the femoral head forms the hip joint when it is placed inside the plastic liner and acetabular shell.

24. Dr. Penenberg, Dr. Amstutz, Wright, and others designed and developed the Wright Hip System. The Wright Hip System differs from most hip implants in that the metal femoral head is in direct contact with a metal acetabular cup. Despite its unorthodox design, Defendants did not properly test the device for safety, efficacy, and durability. Other metal-on-metal prosthetic hip device manufacturers carefully screen, select, and train orthopedic surgeons on proper implant procedures for their respective devices. However, Defendants aggressively marketed, promoted and encouraged orthopedic surgeons in the U.S. to use the Wright Hip System without screening, selecting, or training the surgeons on how to implant the Wright Hip System

25. While Wright wanted to market its Wright Hip System in the U.S., it did not want to endure the long and expensive FDA approval process. Instead, Wright exploited a loophole in FDA regulations that would allow its device to enter the U.S. market without proper testing or approval. Wright represented that the Wright Hip System design was substantially equivalent to other hip replacement products already on the market.

26. While representing to the FDA that its Wright Hip System was "substantially equivalent" to other hip replacement products, Wright omitted the Wright Hip System's critical distinguishing features. The Wright Hip System's femoral head has a larger circumference than industry standard. Also, the acetabular cup departs from industry standards in that it (1) is thinner; (2) has a smaller circumference; (3) is double-heat treated rather than single-heat treated; (4) has an exterior shell that lacks reliable bone ingrowth materials; (5) offers no obvious means of fixation other than the expectation that the patient's bone will grow into the porous exterior of the cup; and (6) has a low clearance which spreads the contact area out closer to the edge of the cup resulting in increased friction from the lack of lubrication entering the cup.

27. Shortly after the U.S. launch of the Wright Hip System, Defendants began

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

receiving hundreds of complaints from doctors reporting Wright Hip System failures. By 2008, Defendants had received hundreds of such reports regarding their PROFEMUR® and CONSERVE® lines. Defendants failed to disclose or actively concealed these adverse reports from doctors and patients, including Plaintiff and Plaintiff's surgeon, and continued to promote the Wright Hip System as a safe and effective device.

28. Prior to Plaintiff's hip replacement surgery, Defendants knew or should have known that the Wright Hip System was failing frequently and causing serious post-implant complications for many patients. Those complications arising out of the implantation of the Wright Hip System that Defendants knew or should have known about included but were not limited to: bone cysts; pseudo-tumors; metallosis and osteolysis; high levels of metal ions, such as chromium and cobalt, in the bloodstream; detachment, disconnection, and/or loosening of the acetabular cup; loosening of the femoral component; and other complications requiring revision surgery. Armed with such knowledge, Defendants concealed the true risks of the Wright Hip System and instead continued to market, defend and promote the Wright Hip System.

29. Defendants actively promoted and marketed the Wright Hip System after it entered the U.S. market. For example, in 2005, Wright issued a press release announcing the launch of instrumentation for its new PATH™ minimally invasive surgical technique. The launch featured small workshops with the technique, instrumentation, and implant designer, Dr. Brad Penenberg. The PATH™ technique and instrumentation are designed for use with Wright's PROFEMUR® hip system.

30. From as early as 2003 through the present, Dr. Penenberg served as a consultant for Wright. Dr. Penenberg discloses the following on his current new patient forms: "Dr. Penenberg is a consultant for, and receives royalties from, Wright Medical Technology, Inc. for his input on orthopaedic implant design, surgical instrumentation and surgical techniques." As a consultant, Dr. Penenberg collected millions of dollars in royalties and consulting fees from Wright for designing, marketing, promoting, and defending the Wright Hip System.

31. From as early as 1996 through the present, Dr. Amstutz served as a consultant for Wright. Dr. Amstutz is one of the innovators and developers of the CONSERVE® and

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

CONSERVE® Plus hip surface arthroplasty utilizing metal on metal bearing technology.

32. Dr. Penenberg, Dr. Amstutz, and Wright representatives continued to market the superiority of the Wright Hip System despite their awareness of numerous, serious complications and alarmingly high failure rates. Dr. Penenberg, Dr. Amstutz, and the Wright representatives concealed their knowledge of the Wright Hip System's unacceptably high failure rate.

33. Despite legal and moral obligations to cease promoting, marketing, selling and defending the Wright Hip System upon awareness of its serious risks, Defendants did not notify physicians, including Plaintiff's orthopedic surgeon, of the device's propensity to fail and cause other serious complications.

34. Defendants had a strong monetary motive not to reveal the dangers associated with the Wright Hip System. In 2010, alone, Wright's sales revenue was over $518 million, with about $176 million comprising of sales from their hip products, making it one of its parent company's most profitable groups. Likewise, Dr. Penenberg and Dr. Amstutz collected millions of dollars in royalties and consulting fees from Wright for designing, marketing, promoting and defending the Wright Hip System. For example, in his consulting agreement with Wright, Dr. Amstutz was promised a consulting salary and a royalty of 5% of all net sales from Wright's CONSERVE® and CONSERVE® Plus hip implants.

35. On October 30, 2007, Plaintiff underwent a right total hip replacement procedure using the Wright Hip System at Reid Hospital in Richmond, Indiana. The Plaintiff's right prosthetic hip consisted of the following four Wright modular components:

a) PROFEMUR® RENAISSANCE Stem, Size 11mm, REF: PLS0-R411, Lot: 067446221

b) CONSERVE® Total Femoral Head, Size 42mm, REF: 3801-4204, Lot: 01469315

c) PROFEMUR® Neck A/R, Size 2, REF: PHA0-1212, Lot: 066354541

d) CONSERVE® PLUS Spiked Cup, Size 42mm, REF: 38SP-4248, Lot: ATTEST

///

///

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

36. Subsequently, as a direct and proximate result of the design, manufacture and composition of the device, Plaintiff's Wright Hip System detached, disconnected, created metallic debris, and/or loosened from Plaintiff's acetabulum. As a result, the Wright Hip System has forced Plaintiff to live with debilitating pain, decreased mobility, and emotional distress.

37. On or about November 3, 2008, Plaintiff was forced to undergo a revision surgery on her right hip to remove the defective Wright Hip Implant.

38. Defendants recklessly, knowingly, intentionally and fraudulently misrepresented to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, that the Wright Hip System was safe and effective for its intended use.

39. Defendants recklessly, knowingly, intentionally and fraudulently concealed and suppressed adverse information relating to the safety and performance of the Wright Hip System from the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers.

40. Defendants' misrepresentations were communicated to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, with the intent that the medical community and general public, including Plaintiff and Plaintiff's healthcare providers, would rely on such in selecting the Wright Hip System.

41. Specifically, Defendants misrepresented and actively concealed material facts regarding the safety and performance of the Wright Hip System including, but not limited to:

(a) the Wright Hip System was not as safe as other available hip implant devices;

(b) the Wright Hip System had an unacceptably high rate of failures requiring revision surgery;

(c) the safety and performance of the Wright Hip System was not adequately tested and/or known by Defendants;

(d) patients implanted with the Wright Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip implant devices;

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

(e) the Wright Hip System was designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

(f) the design of the Wright Hip System increased the wear between the femoral component and the acetabular component, as compared to other hip implant products;

(g) metal corrosion was more likely to occur, and would occur with greater severity, as compared to other hip replacement products;

(h) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper surgical implantation was substantially less likely to occur;

(i) metal ion debris would be released into the patient's body; and

(j) safer alternatives were available.

42. To Plaintiff's detriment, Plaintiff and Plaintiff's healthcare provider justifiably relied on and/or were induced by Defendants' misrepresentations and/or active concealment to recommend, purchase, implant and/or use the Wright Hip System.

43. As a direct, legal, proximate and producing result of Defendants' misrepresentation and active concealment of material facts, Plaintiff has suffered injuries as set forth herein.

44. Plaintiff files this lawsuit within two years of first suspecting that Wright Hip System was the cause of any appreciable harm sustained by Plaintiff. Plaintiff first suspected that the cause of her injuries was the defective Wright Hip System on or about 2010, when Plaintiff first learned of a recall of certain metal on metal implants. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of Plaintiff's injuries at an earlier time because when Plaintiff's injuries were discovered, their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of Plaintiff's injury or the tortuous nature of the conduct causing injury until less than two years prior to the filing of this action. Additionally, Plaintiff was prevented from discovering this information sooner because Defendants misrepresented and continue to misrepresent to the public and to the medical profession that Wright Hip System did not have a propensity to fail or cause other serious

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

complications, and Defendants have fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

45. Plaintiff alleges that she is entitled to prejudgment interest pursuant to California *Civil Code* § 3288 from the date of the implantation of the defective Wright Hip System into her body on October 30, 2007, up to and including the date of judgment, according to proof.

**FIRST CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**
**(Against All Defendants)**

46. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 45, inclusive, as though fully set forth herein.

47. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System, including the 1) PROFEMUR® Renaissance Stem, 2) CONSERVE® Total Femoral Head, 3) PROFEMUR® Neck, and 4) CONSERVE® Plus Spiked Cup that were implanted in Plaintiff on or about October 30, 2007.

48. At all times relevant hereto, the Wright Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without a substantial change in the condition in which it was sold.

49. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

50. At all times relevant hereto, the Wright Hip System was dangerous, unsafe and defective in manufacture. Such defects included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

51. Plaintiff is informed and believes, and thereupon alleges, that the Wright Hip System implanted in Plaintiff was defectively manufactured because it differed from the manufacturer's design and specifications, or from typical units of the same product line.

52. As a direct, legal, proximate and producing result of the defective manufacture of the Wright Hip System implanted in Plaintiff, Plaintiff sustained injuries as set forth above.

53. The dangerous, unsafe and defective manufacturing of the Wright Hip System implanted in Plaintiff was a substantial factor in causing Plaintiff's injuries as set forth above.

**SECOND CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**
**(Against All Defendants)**

54. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 45 above, inclusive, as though fully set forth herein.

55. The Wright Hip System was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert the medical community and patients, including Plaintiff and Plaintiff's healthcare providers, to the dangerous risks associated with the Wright Hip System when used for its intended and reasonably foreseeable purpose. The dangers and risks included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum; (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

56. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

57. Plaintiff and Plaintiff's healthcare providers could not have discovered any defect in the Wright Hip System through the exercise of due care.

58. Defendants knew or should have known, by the use of scientific knowledge available before, at and after the time of manufacture, distribution and sale of the Wright Hip System, of potential risks and side effects associated with the Wright Hip System. Defendants knew or should have known of the defective condition, characteristics, and risks associated with said product, as previously set forth herein.

59. The warnings and instructions provided with the Wright Hip System by Defendants did not adequately warn of the potential risks and side effects of the Wright Hip System, which risks were known or scientifically knowable to Defendants.

60. Defendants had a continuing duty to warn the medical community and public,

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

including Plaintiff and Plaintiff's healthcare providers, of the potential risks and increased failure rate associated with the Wright Hip System.

61. As a direct, legal, proximate and producing result of Defendants' failure to warn, Plaintiff sustained injuries as set forth above.

62. Defendants' failure to adequately warn of the potential risks and side effects of the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**THIRD CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – UNREASONABLY DANGEROUS DESIGN**
**(Against All Defendants)**

63. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 45 above, inclusive, as though fully set forth herein.

64. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System, including the 1) PROFEMUR® Renaissance Stem, 2) CONSERVE® Total Femoral Head, 3) PROFEMUR® Neck, and 4) CONSERVE® Plus Spiked Cup implanted in Plaintiff on or about October 30, 2007.

65. At all times relevant hereto, the Wright Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without a substantial change in the condition in which it was sold.

66. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

67. At all times relevant hereto, the Wright Hip System was dangerous, unsafe and defective in design. Such defects included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

68. Defendants knew or should have known of the unreasonably dangerous and serious risks associated with the design of the Wright Hip System. Such risks were scientifically knowable to Defendants. However, Defendants performed inadequate evaluation and testing of

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

the Wright Hip System design.

69. As a direct, legal, proximate and producing result of the defective manufacture of the Wright Hip System implanted in Plaintiff, Plaintiff sustained injuries as set forth above.

70. Defendants' defective design and failure to adequately test the safety of the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Defendants)**

71. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 45 above, inclusive, as though fully set forth herein.

72. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System for implantation into customers, such as Plaintiff, by physicians and surgeons in the U.S.

73. At all times relevant hereto, Defendants knew or should have known that the novel design of the Wright Hip System necessitated clinical trials and other pre-marketing evaluations of risk and efficacy. Such testing would have revealed the increased risk of failure and complications associated with the Wright Hip System. A reasonable manufacturer under the same or similar circumstances would have conducted additional testing and evaluation of the Wright Hip System's safety and performance prior to placing the Wright Hip System into the stream of commerce.

74. At all times relevant hereto, Defendants knew or should have known of the serious complications and high failure rate associated with the Wright Hip System. Despite receiving hundreds of reports of serious complications from healthcare providers, Defendants chose (1) not to perform any additional testing of the Wright Hip System; (2) not to investigate other potential causes of the reported complications; (3) suspend sales or distribution; or (4) warn physicians and patients of the propensity of the Wright Hip System's propensity to detach, disconnect, create metallic debris and/or loosen from the acetabulum.

75. As a direct, legal, proximate and producing cause of Defendants' negligent design,

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

testing, manufacturing, marketing, selling, and promoting the Wright Hip System, Plaintiff suffered injuries as set forth above.

76. Defendants' negligent design, testing, manufacturing, marketing, selling, and promoting the Wright Hip System, was a substantial factor in causing Plaintiff's injuries as set forth above.

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE – FAILURE TO RECALL/RETROFIT**
**(Against All Defendants)**

77. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 45 above, inclusive, as though fully set forth herein.

78. At all times relevant hereto, Defendants knew or should have known that the design of the Wright Hip System and its warnings were dangerous or were likely to be dangerous when used in an intended or reasonably foreseeable manner.

79. Despite the severity and number of complaints Defendants received, Defendants failed to recall, retrofit, or warn patients or physicians about the danger of the Wright Hip System.

80. Reasonable manufacturers, distributors, sellers, promoters, and designers under the same or similar circumstances would have recalled the Wright Hip System.

81. As a direct, legal, proximate and producing result of Defendants' failure to recall the Wright Hip System, Plaintiff suffered injuries as set forth above.

82. Defendants' failure to recall the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(Against All Defendants)**

83. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 45 above, inclusive, as though fully set forth herein.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

84. Through sales representatives, consultants, printed materials, and other advertising and marketing efforts, Defendants made express representations to healthcare providers and patients, including Plaintiff and Plaintiff's healthcare providers, about the safety and efficacy of the Wright Hip System.

85. The Wright Hip System does not conform to the express representations made by Defendants through sales representatives, consultants, printed materials, and other advertising and marketing efforts.

86. Defendants' conduct in this manner was a contributing cause of injuries and damages suffered by Plaintiff.

**SEVENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(Against All Defendants)**

87. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 45 above, inclusive, as though fully set forth herein.

88. At the time Defendants designed, tested, marketed, promoted, and sold the Wright Hip System, Defendants knew of the intended, reasonably foreseeable uses and impliedly warranted the Wright Hip System to be of merchantable quality and safe and fit for such use.

89. Plaintiff and Plaintiff's healthcare providers, in deciding to use the Wright Hip System as part of Plaintiff's total hip replacement, reasonably relied upon the skill and judgment of Defendants as to whether the Wright Hip System was of merchantable quality and safe and fit for its intended or reasonably foreseeable use.

90. In breach of the implied warranty given by Defendants, the Wright Hip System was not of merchantable quality or safe or fit for its intended or reasonably foreseeable use because the product was unmerchantable, in a defective condition and unreasonably dangerous and unfit for its intended use. The unmerchantable, defective, and unreasonably dangerous nature of the Wright Hip System included, but was not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

91. As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiff suffered injuries as set forth above.

**EIGHTH CAUSE OF ACTION**
**FRAUDULENT MISREPRESENTATION**
**(Against All Defendants)**

92. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 45 above, inclusive, as though fully set forth herein.

93. The Defendants falsely and fraudulently represented to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, that the Wright Hip System had been properly tested and was safe and effective for its indicated use.

94. The representations made by Defendants to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, regarding the safety and performance of the Wright Hip System were, in fact, false.

95. Defendants knew or should have known that the Wright Hip System had not been sufficiently tested, was defectively designed, and lacked adequate warnings and instructions.

96. Defendants knew or should have known that the Wright Hip System could and would cause severe and grievous injury to users of said product, and that the Wright Hip System's inherent dangers exceeded any purported, inaccurate, and/or downplayed warnings.

97. When said representations were made by Defendants, Defendants knew those representations to be false and exhibited a willful, wanton and reckless disregard for the truth of said representations.

98. Said representations were made by Defendants with the intent to defraud and deceive Plaintiff, Plaintiff's healthcare providers, the medical community, and the general public. Defendants intended said representations to induce Plaintiff, Plaintiff's healthcare providers, the medical community and the general public, to recommend, implant, and/or purchase the Wright Hip System for use as part of total hip replacement surgery. Defendants' actions evinced a

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

callous, reckless, willful, depraved indifference to the health, safety, and welfare of Plaintiff.

99. At all relevant times, Plaintiff and Plaintiff's healthcare providers were unaware of the falsity of said representations and reasonably believed them to be true.

100. In reliance upon Defendants' representations, Plaintiff was induced and did use the Wright Hip System, thereby sustaining severe and permanent personal injuries, and is now at an increased risk of sustaining further severe and permanent personal injuries in the future.

101. Defendants brought the Wright Hip System to the market, and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

102. As a direct, legal, proximate and producing result of Defendants' false representations, Plaintiff suffered the injuries set forth herein.

## NINTH CAUSE OF ACTION
## FRAUDULENT CONCEALMENT
### (Against All Defendants)

103. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 45 above, inclusive, as though fully set forth herein.

104. Defendants knew their representations were false or recklessly disregarded the truth of said representations.

105. In representations to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, Defendants omitted, concealed or suppressed material information regarding the safety and performance of the Wright Hip System, including, but not limited to:

(a) the Wright Hip System was not as safe as other available hip implant devices;

(b) the Wright Hip System had an unacceptably high rate of failures requiring revision surgery;

(c) the safety and performance of the Wright Hip System was not adequately tested and/or known by Defendants;

(d) patients implanted with the Wright Hip System were at increased risk of

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip implant devices;

(e) the Wright Hip System was designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

(f) the design of the Wright Hip System increased the wear between the femoral component and the acetabular component, as compared to other hip implant products;

(g) metal corrosion was more likely to occur, and would occur with greater severity, as compared to other hip replacement products;

(h) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper surgical implantation was substantially less likely to occur;

(i) metal ion debris would be released into the patient's body; and

(j) safer alternatives were available.

106. Defendants purposefully downplayed and understated the serious nature of the risks associated with the use of the Wright Hip System in order to increase and sustain sales.

107. Defendants had sole access to material facts regarding the safety and performance of the Wright Hip System. Defendants knew Plaintiff and Plaintiff's healthcare providers and/or the FDA had no way to determine the truth behind Defendants' concealment, omission and suppression of material facts as set forth herein.

108. Plaintiff and Plaintiff's healthcare providers relied on Defendants' incomplete and inaccurate representations as to the safety and performance of the Wright Hip System when selecting, recommending, and implanting the Wright Hip System.

109. As a direct, legal, proximate and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

///

///

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**TENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against All Defendants)**

110. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 45 above, inclusive, as though fully set forth herein.

111. Defendants had a duty to truthfully represent to the medical community, and to Plaintiff, Plaintiff's healthcare providers, and the FDA, that the Wright Hip System had been properly tested and found to be safe and effective for its intended use.

112. Defendants knew or should have known the representations regarding the safety and performance of the Wright Hip System were, in fact, false.

113. Defendants failed to exercise ordinary care in determining the truth or falsity of their representations, and by misrepresenting the safety and performance of the Wright Hip System.

114. Defendants breached their duty to present truthful representations by knowingly, or by want of ordinary care, misrepresenting the safety and performance of the Wright Hip System.

115. As a direct, legal, proximate and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and/or severally, as follows:

1. For general damages for personal injuries to Plaintiff, according to proof;
2. For all past, current, and future medical and incidental expenses, according to proof;
3. For all loss of earnings, present and future, and loss of earning capacity, according to proof;
4. For punitive and/or exemplary damages in an amount sufficient to punish Defendants and deter similar conduct in the future, according to proof;
5. For prejudgment interest, as provided by law;
6. For reasonable attorneys' fees;

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

7. For costs of litigation; and

8. For such other and further relief as this Court may deem just and proper.

Dated: December 30, 2011

KIESEL BOUCHER LARSON LLP

By: [signature]
Raymond P. Boucher
Paul R. Kiesel
Helen Zukin
Steven D. Archer
Fontaine Yuk
Attorneys for Plaintiff
MARY WRIGHT

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

Dated: December 30, 2011

KIESEL BOUCHER LARSON LLP

By: [signature]
Raymond P. Boucher
Paul R. Kiesel
Helen Zukin
Steven D. Archer
Fontaine Yuk
Attorneys for Plaintiff
MARY WRIGHT

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

22

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Exhibit E
Page 159

# EXHIBIT 3

Raymond P. Boucher, State Bar No. 115364
*boucher@kbla.com*
Paul R. Kiesel, State Bar No. 119854
*kiesel@kbla.com*
Helen Zukin, State Bar No. 117933
*zukin@kbla.com*
Steven D. Archer, State Bar No. 63834
*archer@kbla.com*
Fontaine Yuk, State Bar No. 267973
*fyuk@kbla.com*
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court
FEB 17 2012
John A. Clarke, Executive Officer/Clerk
By SHAUNYA WESLEY, Deputy

Attorneys for Plaintiff
**BARRY JUDENFRIEND**

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

BC 479149

| | |
|---|---|
| BARRY JUDENFRIEND,<br><br>Plaintiff,<br><br>v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and WRIGHT MEDICAL GROUP, INC., a Delaware corporation; HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, a California corporation; HARLAN C. AMSTUTZ, M.D., an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR DAMAGES<br><br>1. Strict Products Liability – Manufacturing Defect<br>2. Strict Products Liability – Failure to Warn<br>3. Strict Products Liability – Unreasonably Dangerous Design<br>4. Negligence<br>5. Negligence – Failure to Recall/Retrofit<br>6. Breach of Express Warranty<br>7. Breach of Implied Warranty<br>8. Fraudulent Misrepresentation<br>9. Fraudulent Concealment<br>10. Negligent Misrepresentation<br><br>DEMAND FOR JURY TRIAL |

COMES NOW the plaintiff, BARRY JUDENFRIEND, by and through his attorneys of record, KIESEL BOUCHER LARSON LLP, to allege the following causes of action against Defendants, and each of them, as follows:

## NATURE OF THE ACTION

1. This is an action for strict products liability, negligence, breach of express and implied warranties, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and punitive damages brought by Plaintiff BARRY JUDENFRIEND ("Plaintiff") for injuries arising out of the Wright Medical Total Hip System ("Wright Hip System") she received as part of her total hip replacement surgery.

2. On November 28, 2005, Plaintiff received a Wright Hip System as part of a bilateral total hip replacement surgery. On and prior to the date of that implantation surgery Defendants knew or should have known, based on hundreds of reports received from orthopedic surgeons around the U.S., that the Wright Hip System was defective and likely to fail. Defendants concealed this adverse information and continued to represent to Plaintiff, his healthcare providers, and the public that the Wright Hip System was a safe, effective medical device with a low failure rate.

3. Subsequent to implantation of the Wright Hip System, Plaintiff began to experience the painful effects of the product's defective design and manufacture. Plaintiff began suffering persistent pain and decreased mobility, both worsening over time. While Plaintiff's physicians searched for the cause of Plaintiff's pain, Plaintiff continued to endure persistent, debilitating pain and decreased mobility. Plaintiff began suffering emotional distress as a result of the defective product. Plaintiff was required to undergo emergency revision surgery to remove and replace the defective Wright Hip System.

4. Revision surgery to remove the failed Wright Hip System and replace it with a new implant is a complex, risky and painful procedure. Revision surgeries are generally more complex than the original hip replacement as there is less bone available to attach the new implant. Revision surgeries also are usually longer than the original hip replacement procedure and have a higher rate of complications.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

5. After the revision surgery, Plaintiff endured a long recovery that was both physically and emotionally painful. Additionally, Plaintiff must live with a greater risk of future complications as a revised hip implant presents a much higher risk of dislocation than an original implant.

## PARTIES

6. Plaintiff BARRY JUDENFRIEND is, and at all times relevant hereto was, a resident of the City of Los Angeles, State of California. Plaintiff underwent a bilateral total hip replacement surgery on November 28, 2005, in Los Angeles County. At that time, the Wright Hip System manufactured, designed, distributed, and warranted by defendants was implanted into Plaintiff. Plaintiff's surgeon, medical staff, and other healthcare providers met or exceeded the standard of care applicable to the hip replacement surgery. The Wright Hip System subsequently failed.

7. Defendant WRIGHT MEDICAL GROUP, INC., is, and at all times relevant hereto was, a Delaware corporation, with its principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. At all times relevant hereto, Defendant WRIGHT MEDICAL GROUP, INC. conducted regular and sustained business in California by selling and distributing its products in California, and engaged in substantial commerce and business activity in the County of Los Angeles.

8. Defendant WRIGHT MEDICAL TECHNOLOGY, INC., is, and at all times relevant hereto was, a Delaware corporation, with its principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. At all times relevant hereto, Defendant WRIGHT MEDICAL TECHNOLOGY, INC. conducted regular and sustained business in California by selling and distributing its products in California, and engaged in substantial commerce and business activity in the County of Los Angeles.

9. Defendant WRIGHT MEDICAL TECHNOLOGY, INC. is a wholly owned subsidiary of Defendant WRIGHT MEDICAL GROUP, INC.

10. Defendants WRIGHT MEDICAL TECHNOLOGY, INC. and WRIGHT MEDICAL GROUP, INC. are hereinafter collectively referred to as "Wright." "Wright" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant WRIGHT MEDICAL TECHNOLOGY, INC. and Defendant WRIGHT MEDICAL GROUP, INC.

11. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant HARLAN C. AMSTUTZ, M.D., an individual, is a resident of the County of Los Angeles, State of California. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant HARLAN C. AMSTUTZ, M.D., an individual, researched, designed, developed, and marketed the Wright Hip System throughout the United States, including California. Defendant HARLAN C. AMSTUTZ, M.D., an individual, also researched, designed, developed, and marketed the Wright surgical technique and instrumentation designed for use with Wright's CONSERVE® hip system

12. Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION is, and at all times relevant hereto was, a California corporation with its principal place of business in Los Angeles, California. On information and belief, Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, by and through its shareholder, director and officer HARLAN C. AMSTUTZ, M.D., researched, designed, developed and marketed the defective Wright Hip System throughout the United States, including California. On information and belief, a primary purpose of Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION is to collect royalty payments and consulting fees arising out of the Wright Hip System on behalf of Defendant HARLAN C. AMSTUTZ, M.D., an individual.

13. Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION and Defendant HARLAN C. AMSTUTZ, M.D., an individual, are hereinafter collectively referred to as "Dr. Amstutz." "Dr. Amstutz" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION and/or Defendant HARLAN C. AMSTUTZ, M.D., an individual.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

14. The true names or capacities, whether individual, corporate, associate, or otherwise of Defendants DOES 1 through 50, inclusive, and each of them, are unknown to Plaintiff who, therefore, sues said defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each defendant designated herein by a fictitious name is in some manner legally responsible for the events and happenings herein referred to, and proximately caused foreseeable damages to Plaintiff as alleged herein. Plaintiff will seek leave of Court to amend this Complaint when the names of said DOE defendants are ascertained.

15. As used herein, "Defendants" includes all named Defendants and Does 1-50, inclusive.

16. At all times relevant hereto, each of the Defendants was the representative, agent, employee, joint venturer, or alter ego of each of the other Defendants and was acting within the scope of its authority as such.

17. At all times relevant hereto, the Defendants, either directly or through their agents, apparent agents, servants or employees, sold, distributed and marketed the defective Wright Hip System in the State of California. Defendants derive substantial revenue from orthopedic products used or implanted in the State of California. As such, Defendants expected or should have expected that their business activities could or would subject them to legal action in the State of California.

18. Plaintiff has reviewed her potential legal claims and causes of action against Defendants and has chosen only to pursue state-law claims. Any reference to any federal agency, regulation or rule is stated solely as background information and does not raise a federal question. Dr. Amstutz, principal designer and promoter of the Wright Hip System hip implant, is a California resident. The liability of Dr. Amstutz is so intertwined with the liability of the other Defendants herein that no claims arising out of Plaintiff's Wright Hip System implant can be severed or removed. Accordingly, Plaintiff contends that this Court may rightfully exercise jurisdiction, and venue is proper in this case.

///

///

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**FACTUAL BACKGROUND**

19. The hip joint, connecting the femur and pelvis, consists of a femoral head rotating within the acetabulum. The femoral head is a ball-like structure at the top of the femur. The acetabulum is a cup-shaped bone structure at the bottom of the pelvis. Over time, the cartilage that cushions the rotation of the femoral head and acetabulum against each other breaks down. When the cartilage is depleted, the femoral head rubs directly against the acetabulum, causing extreme pain and immobility, and necessitating a total hip replacement surgery.

20. In a total hip replacement, an artificial hip joint is installed to replace the body's natural joint. Usually, the artificial joint is made of metal and plastic and consists of four parts: (1) an acetabular shell; (2) a plastic liner; (3) a femoral head; and (4) a femoral stem. In most hip replacement systems, the femoral head forms the hip joint when it is placed inside the plastic liner and acetabular shell.

21. Dr. Amstutz, Wright, and others designed and developed the Wright Hip System. The Wright Hip System differs from most hip implants in that the metal femoral head is in direct contact with a metal acetabular cup. Despite its unorthodox design, Defendants did not properly test the device for safety, efficacy, and durability. Other metal-on-metal prosthetic hip device manufacturers carefully screen, select, and train orthopedic surgeons on proper implant procedures for their respective devices. However, Defendants aggressively marketed, promoted and encouraged orthopedic surgeons in the U.S. to use the Wright Hip System without screening, selecting, or training the surgeons on how to implant the Wright Hip System

22. While Wright wanted to market its Wright Hip System in the U.S., it did not want to endure the long and expensive FDA approval process. Instead, Wright exploited a loophole in FDA regulations that would allow its device to enter the U.S. market without proper testing or approval. Wright represented that the Wright Hip System design was substantially equivalent to other hip replacement products already on the market.

23. While representing to the FDA that its Wright Hip System was "substantially equivalent" to other hip replacement products, Wright omitted the Wright Hip System's critical distinguishing features. The Wright Hip System's femoral head has a larger circumference than

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

industry standard. Also, the acetabular cup departs from industry standards in that it (1) is thinner; (2) has a smaller circumference; (3) is double-heat treated rather than single-heat treated; (4) has an exterior shell that lacks reliable bone ingrowth materials; (5) offers no obvious means of fixation other than the expectation that the patient's bone will grow into the porous exterior of the cup; and (6) has a low clearance which spreads the contact area out closer to the edge of the cup resulting in increased friction from the lack of lubrication entering the cup.

24. Shortly after the U.S. launch of the Wright Hip System, Defendants began receiving hundreds of complaints from doctors reporting Wright Hip System failures. By 2008, Defendants had received hundreds of such reports regarding their PROFEMUR® and CONSERVE® lines. Defendants failed to disclose or actively concealed these adverse reports from doctors and patients, including Plaintiff and Plaintiff's surgeon, and continued to promote the Wright Hip System as a safe and effective device.

25. Prior to Plaintiff's hip replacement surgery, Defendants knew or should have known that the Wright Hip System was failing frequently and causing serious post-implant complications for many patients. Those complications arising out of the implantation of the Wright Hip System that Defendants knew or should have known about included but were not limited to: bone cysts; pseudo-tumors; metallosis and osteolysis; high levels of metal ions, such as chromium and cobalt, in the bloodstream; detachment, disconnection, and/or loosening of the acetabular cup; loosening of the femoral component; and other complications requiring revision surgery. Armed with such knowledge, Defendants concealed the true risks of the Wright Hip System and instead continued to market, defend and promote the Wright Hip System.

26. From as early as 1996 through the present, Dr. Amstutz served as a consultant for Wright. Dr. Amstutz is one of the innovators and developers of the CONSERVE® and CONSERVE® Plus hip surface arthroplasty utilizing metal on metal bearing technology.

27. Dr. Amstutz and Wright representatives continued to market the superiority of the Wright Hip System despite their awareness of numerous, serious complications and alarmingly high failure rates. Dr. Amstutz and the Wright representatives concealed their knowledge of the Wright Hip System's unacceptably high failure rate.

28. Despite legal and moral obligations to cease promoting, marketing, selling and defending the Wright Hip System upon awareness of its serious risks, Defendants did not notify physicians, including Plaintiff's orthopedic surgeon, of the device's propensity to fail and cause other serious complications.

29. Defendants had a strong monetary motive not to reveal the dangers associated with the Wright Hip System. In 2010, alone, Wright's sales revenue was over $518 million, with about $176 million comprising of sales from their hip products, making it one of its parent company's most profitable groups. Likewise, Dr. Amstutz collected millions of dollars in royalties and consulting fees from Wright for designing, marketing, promoting and defending the Wright Hip System. For example, in his consulting agreement with Wright, Dr. Amstutz was promised a consulting salary and a royalty of 5% of all net sales from Wright's CONSERVE® and CONSERVE® Plus hip implants.

30. On November 28, 2005, Plaintiff underwent a bilateral total hip replacement procedure using the Wright Hip System at Cedars-Sinai Medical Center in Los Angeles, California. The Plaintiff's right prosthetic hip consisted of the following four Wright modular components:

a) PROFEMUR® Z Femoral Component, Size 5

b) CONSERVE® Total Femoral Head, Size 52mm

c) PROFEMUR® Short ARVV-2 Neck

d) CONSERVE® PLUS Acetabular Component, Size 58mm

The Plaintiff's left prosthetic hip consisted of the following four Wright modular components:

a) PROFEMUR® Z Femoral Component, Size 5

b) CONSERVE® Total Femoral Head, Size 52mm

c) PROFEMUR® Short ARVV-2 Neck

d) CONSERVE® PLUS Acetabular Component, Size 58mm

31. Subsequently, as a direct and proximate result of the design, manufacture and composition of the device, Plaintiff's Wright Hip System detached, disconnected, created metallic debris, and/or loosened from Plaintiff's acetabulum. As a result, the Wright Hip System has

forced Plaintiff to live with debilitating pain, decreased mobility, and emotional distress.

32. On or about July 2, 2011, Plaintiff was forced to undergo a bilateral revision surgery to remove the defective Wright Hip Implant.

33. Defendants recklessly, knowingly, intentionally and fraudulently misrepresented to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, that the Wright Hip System was safe and effective for its intended use.

34. Defendants recklessly, knowingly, intentionally and fraudulently concealed and suppressed adverse information relating to the safety and performance of the Wright Hip System from the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers.

35. Defendants' misrepresentations were communicated to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, with the intent that the medical community and general public, including Plaintiff and Plaintiff's healthcare providers, would rely on such in selecting the Wright Hip System.

36. Specifically, Defendants misrepresented and actively concealed material facts regarding the safety and performance of the Wright Hip System including, but not limited to:

(a) the Wright Hip System was not as safe as other available hip implant devices;

(b) the Wright Hip System had an unacceptably high rate of failures requiring revision surgery;

(c) the safety and performance of the Wright Hip System was not adequately tested and/or known by Defendants;

(d) patients implanted with the Wright Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip implant devices;

(e) the Wright Hip System was designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

(f) the design of the Wright Hip System increased the wear between the

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

femoral component and the acetabular component, as compared to other hip implant products;

(g) metal corrosion was more likely to occur, and would occur with greater severity, as compared to other hip replacement products;

(h) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper surgical implantation was substantially less likely to occur;

(i) metal ion debris would be released into the patient's body; and

(j) safer alternatives were available.

37. To Plaintiff's detriment, Plaintiff and Plaintiff's healthcare provider justifiably relied on and/or were induced by Defendants' misrepresentations and/or active concealment to recommend, purchase, implant and/or use the Wright Hip System.

38. As a direct, legal, proximate and producing result of Defendants' misrepresentation and active concealment of material facts, Plaintiff has suffered injuries as set forth herein.

39. Plaintiff files this lawsuit within two years of first suspecting that Wright Hip System was the cause of any appreciable harm sustained by Plaintiff. Plaintiff first suspected that the cause of his injuries was the defective Wright Hip System on or about 2011, when Plaintiff met with his doctor for an examination. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of Plaintiff's injuries at an earlier time because when Plaintiff's injuries were discovered, their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of Plaintiff's injury or the tortious nature of the conduct causing injury until less than two years prior to the filing of this action. Additionally, Plaintiff was prevented from discovering this information sooner because Defendants misrepresented and continue to misrepresent to the public and to the medical profession that Wright Hip System did not have a propensity to fail or cause other serious complications, and Defendants have fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

40. Plaintiff alleges that he is entitled to prejudgment interest pursuant to California

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

*Civil Code* § 3288 from the date of the implantation of the defective Wright Hip System into his body on November 28, 2005, up to and including the date of judgment, according to proof.

**FIRST CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**
**(Against All Defendants)**

41. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40, inclusive, as though fully set forth herein.

42. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System, including the 1)PROFEMUR® Z Femoral Component, 2) CONSERVE® Total Femoral Head, 3) PROFEMUR® Short ARVV-2 Neck, and 4) CONSERVE® PLUS Acetabular Component that were implanted in Plaintiff on or about November 28, 2005.

43. At all times relevant hereto, the Wright Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without a substantial change in the condition in which it was sold.

44. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

45. At all times relevant hereto, the Wright Hip System was dangerous, unsafe and defective in manufacture. Such defects included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

46. Plaintiff is informed and believes, and thereupon alleges, that the Wright Hip System implanted in Plaintiff was defectively manufactured because it differed from the manufacturer's design and specifications, or from typical units of the same product line.

47. As a direct, legal, proximate and producing result of the defective manufacture of the Wright Hip System implanted in Plaintiff, Plaintiff sustained injuries as set forth above.

48. The dangerous, unsafe and defective manufacturing of the Wright Hip System implanted in Plaintiff was a substantial factor in causing Plaintiff's injuries as set forth above.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**SECOND CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**
**(Against All Defendants)**

49. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

50. The Wright Hip System was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert the medical community and patients, including Plaintiff and Plaintiff's healthcare providers, to the dangerous risks associated with the Wright Hip System when used for its intended and reasonably foreseeable purpose. The dangers and risks included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

51. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

52. Plaintiff and Plaintiff's healthcare providers could not have discovered any defect in the Wright Hip System through the exercise of due care.

53. Defendants knew or should have known, by the use of scientific knowledge available before, at and after the time of manufacture, distribution and sale of the Wright Hip System, of potential risks and side effects associated with the Wright Hip System. Defendants knew or should have known of the defective condition, characteristics, and risks associated with said product, as previously set forth herein.

54. The warnings and instructions provided with the Wright Hip System by Defendants did not adequately warn of the potential risks and side effects of the Wright Hip System, which risks were known or scientifically knowable to Defendants.

55. Defendants had a continuing duty to warn the medical community and public, including Plaintiff and Plaintiff's healthcare providers, of the potential risks and increased failure rate associated with the Wright Hip System.

56. As a direct, legal, proximate and producing result of Defendants' failure to warn,

Plaintiff sustained injuries as set forth above.

57. Defendants' failure to adequately warn of the potential risks and side effects of the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**THIRD CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – UNREASONABLY DANGEROUS DESIGN**
**(Against All Defendants)**

58. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

59. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System, including the 1)PROFEMUR® Z Femoral Component, 2) CONSERVE® Total Femoral Head, 3) PROFEMUR® Short ARVV-2 Neck, and 4) CONSERVE® PLUS Acetabular Component that were implanted in Plaintiff on or about November 28, 2005.

60. At all times relevant hereto, the Wright Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without a substantial change in the condition in which it was sold.

61. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

62. At all times relevant hereto, the Wright Hip System was dangerous, unsafe and defective in design. Such defects included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

63. Defendants knew or should have known of the unreasonably dangerous and serious risks associated with the design of the Wright Hip System. Such risks were scientifically knowable to Defendants. However, Defendants performed inadequate evaluation and testing of the Wright Hip System design.

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

64. As a direct, legal, proximate and producing result of the defective manufacture of the Wright Hip System implanted in Plaintiff, Plaintiff sustained injuries as set forth above.

65. Defendants' defective design and failure to adequately test the safety of the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Defendants)**

66. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

67. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System for implantation into customers, such as Plaintiff, by physicians and surgeons in the U.S.

68. At all times relevant hereto, Defendants knew or should have known that the novel design of the Wright Hip System necessitated clinical trials and other pre-marketing evaluations of risk and efficacy. Such testing would have revealed the increased risk of failure and complications associated with the Wright Hip System. A reasonable manufacturer under the same or similar circumstances would have conducted additional testing and evaluation of the Wright Hip System's safety and performance prior to placing the Wright Hip System into the stream of commerce.

69. At all times relevant hereto, Defendants knew or should have known of the serious complications and high failure rate associated with the Wright Hip System. Despite receiving hundreds of reports of serious complications from healthcare providers, Defendants chose (1) not to perform any additional testing of the Wright Hip System; (2) not to investigate other potential causes of the reported complications; (3) suspend sales or distribution; or (4) warn physicians and patients of the propensity of the Wright Hip System's propensity to detach, disconnect, create metallic debris and/or loosen from the acetabulum.

70. As a direct, legal, proximate and producing cause of Defendants' negligent design, testing, manufacturing, marketing, selling, and promoting the Wright Hip System, Plaintiff

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

suffered injuries as set forth above.

71. Defendants' negligent design, testing, manufacturing, marketing, selling, and promoting the Wright Hip System, was a substantial factor in causing Plaintiff's injuries as set forth above.

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE – FAILURE TO RECALL/RETROFIT**
**(Against All Defendants)**

72. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

73. At all times relevant hereto, Defendants knew or should have known that the design of the Wright Hip System and its warnings were dangerous or were likely to be dangerous when used in an intended or reasonably foreseeable manner.

74. Despite the severity and number of complaints Defendants received, Defendants failed to recall, retrofit, or warn patients or physicians about the danger of the Wright Hip System.

75. Reasonable manufacturers, distributors, sellers, promoters, and designers under the same or similar circumstances would have recalled the Wright Hip System.

76. As a direct, legal, proximate and producing result of Defendants' failure to recall the Wright Hip System, Plaintiff suffered injuries as set forth above.

77. Defendants' failure to recall the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(Against All Defendants)**

78. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

79. Through sales representatives, consultants, printed materials, and other advertising and

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

marketing efforts, Defendants made express representations to healthcare providers and patients, including Plaintiff and Plaintiff's healthcare providers, about the safety and efficacy of the Wright Hip System.

80. The Wright Hip System does not conform to the express representations made by Defendants through sales representatives, consultants, printed materials, and other advertising and marketing efforts.

81. Defendants' conduct in this manner was a contributing cause of injuries and damages suffered by Plaintiff.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
**(Against All Defendants)**

82. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

83. At the time Defendants designed, tested, marketed, promoted, and sold the Wright Hip System, Defendants knew of the intended, reasonably foreseeable uses and impliedly warranted the Wright Hip System to be of merchantable quality and safe and fit for such use.

84. Plaintiff and Plaintiff's healthcare providers, in deciding to use the Wright Hip System as part of Plaintiff's total hip replacement, reasonably relied upon the skill and judgment of Defendants as to whether the Wright Hip System was of merchantable quality and safe and fit for its intended or reasonably foreseeable use.

85. In breach of the implied warranty given by Defendants, the Wright Hip System was not of merchantable quality or safe or fit for its intended or reasonably foreseeable use because the product was unmerchantable, in a defective condition and unreasonably dangerous and unfit for its intended use. The unmerchantable, defective, and unreasonably dangerous nature of the Wright Hip System included, but was not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

86. As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiff suffered injuries as set forth above.

**EIGHTH CAUSE OF ACTION**
**FRAUDULENT MISREPRESENTATION**
**(Against All Defendants)**

87. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

88. The Defendants falsely and fraudulently represented to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, that the Wright Hip System had been properly tested and was safe and effective for its indicated use.

89. The representations made by Defendants to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, regarding the safety and performance of the Wright Hip System were, in fact, false.

90. Defendants knew or should have known that the Wright Hip System had not been sufficiently tested, was defectively designed, and lacked adequate warnings and instructions.

91. Defendants knew or should have known that the Wright Hip System could and would cause severe and grievous injury to users of said product, and that the Wright Hip System's inherent dangers exceeded any purported, inaccurate, and/or downplayed warnings.

92. When said representations were made by Defendants, Defendants knew those representations to be false and exhibited a willful, wanton and reckless disregard for the truth of said representations.

93. Said representations were made by Defendants with the intent to defraud and deceive Plaintiff, Plaintiff's healthcare providers, the medical community, and the general public. Defendants intended said representations to induce Plaintiff, Plaintiff's healthcare providers, the medical community and the general public, to recommend, implant, and/or purchase the Wright Hip System for use as part of total hip replacement surgery. Defendants' actions evinced a callous, reckless, willful, depraved indifference to the health, safety, and welfare of Plaintiff.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

94. At all relevant times, Plaintiff and Plaintiff's healthcare providers were unaware of the falsity of said representations and reasonably believed them to be true.

95. In reliance upon Defendants' representations, Plaintiff was induced and did use the Wright Hip System, thereby sustaining severe and permanent personal injuries, and is now at an increased risk of sustaining further severe and permanent personal injuries in the future.

96. Defendants brought the Wright Hip System to the market, and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

97. As a direct, legal, proximate and producing result of Defendants' false representations, Plaintiff suffered the injuries set forth herein.

**NINTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(Against All Defendants)**

98. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

99. Defendants knew their representations were false or recklessly disregarded the truth of said representations.

100. In representations to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, Defendants omitted, concealed or suppressed material information regarding the safety and performance of the Wright Hip System, including, but not limited to:

(a) the Wright Hip System was not as safe as other available hip implant devices;

(b) the Wright Hip System had an unacceptably high rate of failures requiring revision surgery;

(c) the safety and performance of the Wright Hip System was not adequately tested and/or known by Defendants;

patients implanted with the Wright Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

to undergo revision surgery than patients using other hip implant devices;

(d) the Wright Hip System was designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

(e) the design of the Wright Hip System increased the wear between the femoral component and the acetabular component, as compared to other hip implant products;

(f) metal corrosion was more likely to occur, and would occur with greater severity, as compared to other hip replacement products;

(g) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper surgical implantation was substantially less likely to occur;

(h) metal ion debris would be released into the patient's body; and

(i) safer alternatives were available.

101. Defendants purposefully downplayed and understated the serious nature of the risks associated with the use of the Wright Hip System in order to increase and sustain sales.

102. Defendants had sole access to material facts regarding the safety and performance of the Wright Hip System. Defendants knew Plaintiff and Plaintiff's healthcare providers and/or the FDA had no way to determine the truth behind Defendants' concealment, omission and suppression of material facts as set forth herein.

103. Plaintiff and Plaintiff's healthcare providers relied on Defendants' incomplete and inaccurate representations as to the safety and performance of the Wright Hip System when selecting, recommending, and implanting the Wright Hip System.

104. As a direct, legal, proximate and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

///

///

///

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**TENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against All Defendants)**

105. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

106. Defendants had a duty to truthfully represent to the medical community, and to Plaintiff, Plaintiff's healthcare providers, and the FDA, that the Wright Hip System had been properly tested and found to be safe and effective for its intended use.

107. Defendants knew or should have known the representations regarding the safety and performance of the Wright Hip System were, in fact, false.

108. Defendants failed to exercise ordinary care in determining the truth or falsity of their representations, and by misrepresenting the safety and performance of the Wright Hip System.

109. Defendants breached their duty to present truthful representations by knowingly, or by want of ordinary care, misrepresenting the safety and performance of the Wright Hip System.

110. As a direct, legal, proximate and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and/or severally, as follows:

1. For general damages for personal injuries to Plaintiff, according to proof;
2. For all past, current, and future medical and incidental expenses, according to proof;
3. For all loss of earnings, present and future, and loss of earning capacity, according to proof;
4. For punitive and/or exemplary damages in an amount sufficient to punish Defendants and deter similar conduct in the future, according to proof;
5. For prejudgment interest, as provided by law;
6. For reasonable attorneys' fees;

7. For costs of litigation; and

8. For such other and further relief as this Court may deem just and proper.

Dated: February 16, 2012

KIESEL BOUCHER LARSON LLP

By: [signature]

Raymond P. Boucher
Paul R. Kiesel
Helen Zukin
Steven D. Archer
Fontaine Yuk

Attorneys for Plaintiff
BARRY JUDENFRIEND

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

Dated: February16, 2012

KIESEL BOUCHER LARSON LLP

By: [signature]

Raymond P. Boucher
Paul R. Kiesel
Helen Zukin
Steven D. Archer
Fontaine Yuk

Attorneys for Plaintiff
BARRY JUDENFRIEND

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

21
COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Exhibit E
Page 181

# EXHIBIT 4



FILED

Raymond P. Boucher, State Bar No. 115364
*boucher@kbla.com*
Paul R. Kiesel, State Bar No. 119854
*kiesel@kbla.com*
Helen Zukin, State Bar No. 117933
*zukin@kbla.com*
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

Douglass A. Kreis, State Bar No. 0129704
*dkreis@awkolaw.com*
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, Florida 32502
Tel: 850-916-7450
Fax: 850-916-7449

Peter J. Flowers, Esq., State Bar No. 06210847
*pjf@foote-meyers.com*
**FOOTE, MEYERS, MIELKE & FLOWERS**
3 North Second Street, Suite 300
St. Charles, Illinois 60174
Tel: 630-232-6333
Fax: 630-845-8982

Joseph A. Osborne, Esq. *(Pro Hac Vice Pending)*
*jaosborne@babbitt-johnson.com*
**BABITT, JOHNSON, OSBORNE & LE CLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, Florida 33409
Tel: 561-531-5983
Fax: 561-684-6308

Attorneys for Plaintiff
**PENNY STEINMAN**

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| PENNY STEINMAN,<br><br>Plaintiff,<br><br>v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and WRIGHT MEDICAL GROUP, INC., a Delaware | **Case No.** [illegible]<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Strict Products Liability – Manufacturing Defect<br><br>2. Strict Products Liability – Failure to |

corporation; HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, a California corporation; HARLAN C. AMSTUTZ, M.D., an individual; and DOES 1 through 50, inclusive,

Defendants.

Warn

3. Strict Products Liability – Unreasonably Dangerous Design
4. Negligence
5. Negligence – Failure to Recall/Retrofit
6. Breach of Express Warranty
7. Breach of Implied Warranty
8. Fraudulent Misrepresentation
9. Fraudulent Concealment
10. Negligent Misrepresentation

DEMAND FOR JURY TRIAL

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

COMES NOW the plaintiff, PENNY STEINMAN, by and through her attorneys of record, KIESEL BOUCHER LARSON LLP, to allege the following causes of action against Defendants, and each of them, as follows:

**NATURE OF THE ACTION**

1. This is an action for strict products liability, negligence, breach of express and implied warranties, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and punitive damages brought by Plaintiff PENNY STEINMAN ("Plaintiff") for injuries arising out of the Wright Medical Hip System ("Wright Hip System") she received as part of her hip replacement surgery.

2. On April 7, 2005 Plaintiff received a Wright Hip System as part of a left hip replacement surgery. On and prior to the date of that implantation surgery Defendants knew or should have known, based on hundreds of reports received from orthopedic surgeons around the U.S., that the Wright Hip System was defective and likely to fail. Defendants concealed this adverse information and continued to represent to Plaintiff, her healthcare providers, and the public that the Wright Hip System was a safe, effective medical device with a low failure rate.

3. Subsequent to implantation of the Wright Hip System, Plaintiff began to experience

the painful effects of the product's defective design and manufacture. Plaintiff began suffering persistent pain and decreased mobility, both worsening over time. While Plaintiff's physicians searched for the cause of Plaintiff's pain, Plaintiff continued to endure persistent, debilitating pain and decreased mobility. Plaintiff began suffering emotional distress as a result of the defective product. It was discovered that Plaintiff had elevated levels of Chromium and Cobalt in her blood. Plaintiff was required to undergo emergency revision surgery to remove and replace the defective Wright Hip System.

4. Revision surgery to remove the failed Wright Hip System and replace it with a new implant is a complex, risky and painful procedure. Revision surgeries are generally more complex than the original hip replacement as there is less bone available to attach the new implant. Revision surgeries also are usually longer than the original hip replacement procedure and have a higher rate of complications.

5. After the revision surgery, Plaintiff endured a long recovery that was both physically and emotionally painful. Additionally, Plaintiff must live with a greater risk of future complications as a revised hip implant presents a much higher risk of dislocation than an original implant.

**PARTIES**

6. Plaintiff PENNY STEINMAN is, and at all times relevant hereto was, a resident of Oceanside, County of San Diego, State of California. Plaintiff underwent a left hip replacement surgery on April 7, 2005 in Los Angeles County. At that time, the Wright Hip System manufactured, designed, distributed, and warranted by defendants was implanted into Plaintiff. Plaintiff's surgeon, medical staff, and other healthcare providers met or exceeded the standard of care applicable to the hip replacement surgery. The Wright Hip System subsequently failed.

7. Defendant WRIGHT MEDICAL GROUP, INC., is, and at all times relevant hereto was, a Delaware corporation, with its principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. At all times relevant hereto, Defendant WRIGHT MEDICAL GROUP, INC. conducted regular and sustained business in California by selling and distributing its products in California, and engaged in substantial commerce and business activity in the County of Los

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

Angeles.

8. Defendant WRIGHT MEDICAL TECHNOLOGY, INC., is, and at all times relevant hereto was, a Delaware corporation, with its principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. At all times relevant hereto, Defendant WRIGHT MEDICAL TECHNOLOGY, INC. conducted regular and sustained business in California by selling and distributing its products in California, and engaged in substantial commerce and business activity in the County of Los Angeles.

9. Defendant WRIGHT MEDICAL TECHNOLOGY, INC. is a wholly owned subsidiary of Defendant WRIGHT MEDICAL GROUP, INC.

10. Defendants WRIGHT MEDICAL TECHNOLOGY, INC. and WRIGHT MEDICAL GROUP, INC. are hereinafter collectively referred to as "Wright." "Wright" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant WRIGHT MEDICAL TECHNOLOGY, INC. and Defendant WRIGHT MEDICAL GROUP, INC.

11. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant HARLAN C. AMSTUTZ, M.D., an individual, is a resident of the County of Los Angeles, State of California. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant HARLAN C. AMSTUTZ, M.D., an individual, researched, designed, developed, and marketed the Wright Hip System throughout the United States, including California. Defendant HARLAN C. AMSTUTZ, M.D., an individual, also researched, designed, developed, and marketed the Wright surgical technique and instrumentation designed for use with Wright's CONSERVE® hip system.

12. Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION is, and at all times relevant hereto was, a California corporation with its principal place of business in Los Angeles, California. On information and belief, Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, by and through its shareholder, director and officer HARLAN C.

AMSTUTZ, M.D., researched, designed, developed and marketed the defective Wright Hip System throughout the United States, including California. On information and belief, a primary purpose of Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION is to collect royalty payments and consulting fees arising out of the Wright Hip System on behalf of Defendant HARLAN C. AMSTUTZ, M.D., an individual.

13. Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION and Defendant HARLAN C. AMSTUTZ, M.D., an individual, are hereinafter collectively referred to as "Dr. Amstutz." "Dr. Amstutz" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION and/or Defendant HARLAN C. AMSTUTZ, M.D., an individual.

14. The true names or capacities, whether individual, corporate, associate, or otherwise of Defendants DOES 1 through 50, inclusive, and each of them, are unknown to Plaintiff who, therefore, sues said defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each defendant designated herein by a fictitious name is in some manner legally responsible for the events and happenings herein referred to, and proximately caused foreseeable damages to Plaintiff as alleged herein. Plaintiff will seek leave of Court to amend this Complaint when the names of said DOE defendants are ascertained.

15. As used herein, "Defendants" includes all named Defendants and Does 1-50, inclusive.

16. At all times relevant hereto, each of the Defendants was the representative, agent, employee, joint venturer, or alter ego of each of the other Defendants and was acting within the scope of its authority as such.

17. At all times relevant hereto, the Defendants, either directly or through their agents, apparent agents, servants or employees, sold, distributed and marketed the defective Wright Hip System in the State of California. Defendants derive substantial revenue from orthopedic products used or implanted in the State of California. As such, Defendants expected or should have expected that their business activities could or would subject them to legal action in the State of

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

California.

18. Plaintiff has reviewed her potential legal claims and causes of action against Defendants and has chosen only to pursue state-law claims. Any reference to any federal agency, regulation or rule is stated solely as background information and does not raise a federal question. Dr. Amstutz, principal designer and promoter of the Wright Hip System hip implant, is a California resident. The liability of Dr. Amstutz is so intertwined with the liability of the other Defendants herein that no claims arising out of Plaintiff's Wright Hip System implant can be severed or removed. Accordingly, Plaintiff contends that this Court may rightfully exercise jurisdiction, and venue is proper in this case.

## FACTUAL BACKGROUND

19. The hip joint, connecting the femur and pelvis, consists of a femoral head rotating within the acetabulum. The femoral head is a ball-like structure at the top of the femur. The acetabulum is a cup-shaped bone structure at the bottom of the pelvis. Over time, the cartilage that cushions the rotation of the femoral head and acetabulum against each other breaks down. When the cartilage is depleted, the femoral head rubs directly against the acetabulum, causing extreme pain and immobility, and necessitating a hip replacement surgery.

20. In a total hip replacement, an artificial hip joint is installed to replace the body's natural joint. Usually, the artificial joint is made of metal and plastic and consists of four parts: (1) an acetabular shell; (2) a plastic liner; (3) a femoral head; and (4) a femoral stem. In most hip replacement systems, the femoral head forms the hip joint when it is placed inside the plastic liner and acetabular shell.

21. Dr. Amstutz, Wright, and others designed and developed the Wright Hip System. The Wright Hip System differs from most hip implants in that the metal femoral head is in direct contact with a metal acetabular cup. Despite its unorthodox design, Defendants did not properly test the device for safety, efficacy, and durability. Other metal-on-metal prosthetic hip device manufacturers carefully screen, select, and train orthopedic surgeons on proper implant procedures for their respective devices. However, Defendants aggressively marketed, promoted and encouraged orthopedic surgeons in the U.S. to use the Wright Hip System without screening,

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

selecting, or training the surgeons on how to implant the Wright Hip System

22. While Wright wanted to market its Wright Hip System in the U.S., it did not want to endure the long and expensive FDA approval process. Instead, Wright exploited a loophole in FDA regulations that would allow its device to enter the U.S. market without proper testing or approval. Wright represented that the Wright Hip System design was substantially equivalent to other hip replacement products already on the market.

23. While representing to the FDA that its Wright Hip System was "substantially equivalent" to other hip replacement products, Wright omitted the Wright Hip System's critical distinguishing features. The Wright Hip System's femoral head has a larger circumference than industry standard. Also, the acetabular cup departs from industry standards in that it (1) is thinner; (2) has a smaller circumference; (3) is double-heat treated rather than single-heat treated; (4) has an exterior shell that lacks reliable bone ingrowth materials; (5) offers no obvious means of fixation other than the expectation that the patient's bone will grow into the porous exterior of the cup; and (6) has a low clearance which spreads the contact area out closer to the edge of the cup resulting in increased friction from the lack of lubrication entering the cup.

24. Shortly after the U.S. launch of the Wright Hip System, Defendants began receiving hundreds of complaints from doctors reporting Wright Hip System failures. By 2008, Defendants had received hundreds of such reports regarding their PROFEMUR® and CONSERVE® lines. Defendants failed to disclose or actively concealed these adverse reports from doctors and patients, including Plaintiff and Plaintiff's surgeon, and continued to promote the Wright Hip System as a safe and effective device.

25. Prior to Plaintiff's hip replacement surgery, Defendants knew or should have known that the Wright Hip System was failing frequently and causing serious post-implant complications for many patients. Those complications arising out of the implantation of the Wright Hip System that Defendants knew or should have known about included but were not limited to: bone cysts; pseudo-tumors; metallosis and osteolysis; high levels of metal ions, such as chromium and cobalt, in the bloodstream; detachment, disconnection, and/or loosening of the acetabular cup; loosening of the femoral component; and other complications requiring revision

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

surgery. Armed with such knowledge, Defendants concealed the true risks of the Wright Hip System and instead continued to market, defend and promote the Wright Hip System.

26. From as early as 1996 through the present, Dr. Amstutz served as a consultant for Wright. Dr. Amstutz is one of the innovators and developers of the CONSERVE® and CONSERVE® Plus hip surface arthroplasty utilizing metal on metal bearing technology.

27. Dr. Amstutz and Wright representatives continued to market the superiority of the Wright Hip System despite their awareness of numerous, serious complications and alarmingly high failure rates. Dr. Amstutz and the Wright representatives concealed their knowledge of the Wright Hip System's unacceptably high failure rate.

28. Despite legal and moral obligations to cease promoting, marketing, selling and defending the Wright Hip System upon awareness of its serious risks, Defendants did not notify physicians, including Plaintiff's orthopedic surgeon, of the device's propensity to fail and cause other serious complications.

29. Defendants had a strong monetary motive not to reveal the dangers associated with the Wright Hip System. In 2010, alone, Wright's sales revenue was over $518 million, with about $176 million comprising of sales from their hip products, making it one of its parent company's most profitable groups. Likewise, Dr. Amstutz collected millions of dollars in royalties and consulting fees from Wright for designing, marketing, promoting and defending the Wright Hip System. For example, in her consulting agreement with Wright, Dr. Amstutz was promised a consulting salary and a royalty of 5% of all net sales from Wright's CONSERVE® and CONSERVE® Plus hip implants.

30. On April 7, 2005, Plaintiff underwent a left hip replacement procedure using the Wright Hip System at Los Angeles Orthopaedic Hospital in Los Angeles, California. The Plaintiff's left prosthetic hip consisted of the following two Wright modular components:

a) CONSERVE® PLUS Cup Shell, size 62mm

b) CONSERVE® PLUS Femoral Resurfacing Component

31. Subsequently, as a direct and proximate result of the design, manufacture and composition of the device, Plaintiff's Wright Hip System detached, disconnected, created metallic

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

debris, and/or loosened from Plaintiff's acetabulum. As a result, the Wright Hip System has forced Plaintiff to live with debilitating pain, decreased mobility, and emotional distress.

32. On or about April 25, 2011, Plaintiff was forced to undergo revision surgery in San Diego County to remove the defective Wright Hip Implant.

33. Defendants recklessly, knowingly, intentionally and fraudulently misrepresented to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, that the Wright Hip System was safe and effective for its intended use.

34. Defendants recklessly, knowingly, intentionally and fraudulently concealed and suppressed adverse information relating to the safety and performance of the Wright Hip System from the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers.

35. Defendants' misrepresentations were communicated to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, with the intent that the medical community and general public, including Plaintiff and Plaintiff's healthcare providers, would rely on such in selecting the Wright Hip System.

36. Specifically, Defendants misrepresented and actively concealed material facts regarding the safety and performance of the Wright Hip System including, but not limited to:

(a) the Wright Hip System was not as safe as other available hip implant devices;

(b) the Wright Hip System had an unacceptably high rate of failures requiring revision surgery;

(c) the safety and performance of the Wright Hip System was not adequately tested and/or known by Defendants;

(d) patients implanted with the Wright Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip implant devices;

(e) the Wright Hip System was designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

(f) the design of the Wright Hip System increased the wear between the femoral component and the acetabular component, as compared to other hip implant products;

(g) metal corrosion was more likely to occur, and would occur with greater severity, as compared to other hip replacement products;

(h) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper surgical implantation was substantially less likely to occur;

(i) metal ion debris would be released into the patient's body; and

(j) safer alternatives were available.

37. To Plaintiff's detriment, Plaintiff and Plaintiff's healthcare provider justifiably relied on and/or were induced by Defendants' misrepresentations and/or active concealment to recommend, purchase, implant and/or use the Wright Hip System.

38. As a direct, legal, proximate and producing result of Defendants' misrepresentation and active concealment of material facts, Plaintiff has suffered injuries as set forth herein.

39. Plaintiff files this lawsuit within two years of first suspecting that Wright Hip System was the cause of any appreciable harm sustained by Plaintiff. Plaintiff first suspected that the cause of her injuries was the defective Wright Hip System on or about April 25, 2011. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of Plaintiff's injuries at an earlier time because when Plaintiff's injuries were discovered, their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of Plaintiff's injury or the tortuous nature of the conduct causing injury until less than two years prior to the filing of this action. Additionally, Plaintiff was prevented from discovering this information sooner because Defendants misrepresented and continue to misrepresent to the public and to the medical profession that Wright Hip System did not have a propensity to fail or cause other serious complications, and Defendants have fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

40. Plaintiff alleges that she is entitled to prejudgment interest pursuant to California

*Civil Code* § 3288 from the date of the implantation of the defective Wright Hip System into her body on April 7, 2005 up to and including the date of judgment, according to proof.

**FIRST CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**
**(Against All Defendants)**

41. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40, inclusive, as though fully set forth herein.

42. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System, including the 1) CONSERVE® PLUS Cup Shell, size 62mm and 2) CONSERVE® PLUS Femoral Resurfacing Component, that were implanted in Plaintiff on or about April 7, 2005.

43. At all times relevant hereto, the Wright Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without a substantial change in the condition in which it was sold.

44. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

45. At all times relevant hereto, the Wright Hip System was dangerous, unsafe and defective in manufacture. Such defects included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

46. Plaintiff is informed and believes, and thereupon alleges, that the Wright Hip System implanted in Plaintiff was defectively manufactured because it differed from the manufacturer's design and specifications, or from typical units of the same product line.

47. As a direct, legal, proximate and producing result of the defective manufacture of the Wright Hip System implanted in Plaintiff, Plaintiff sustained injuries as set forth above.

48. The dangerous, unsafe and defective manufacturing of the Wright Hip System implanted in Plaintiff was a substantial factor in causing Plaintiff's injuries as set forth above.

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**SECOND CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**
**(Against All Defendants)**

49. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

50. The Wright Hip System was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert the medical community and patients, including Plaintiff and Plaintiff's healthcare providers, to the dangerous risks associated with the Wright Hip System when used for its intended and reasonably foreseeable purpose. The dangers and risks included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

51. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

52. Plaintiff and Plaintiff's healthcare providers could not have discovered any defect in the Wright Hip System through the exercise of due care.

53. Defendants knew or should have known, by the use of scientific knowledge available before, at and after the time of manufacture, distribution and sale of the Wright Hip System, of potential risks and side effects associated with the Wright Hip System. Defendants knew or should have known of the defective condition, characteristics, and risks associated with said product, as previously set forth herein.

54. The warnings and instructions provided with the Wright Hip System by Defendants did not adequately warn of the potential risks and side effects of the Wright Hip System, which risks were known or scientifically knowable to Defendants.

55. Defendants had a continuing duty to warn the medical community and public, including Plaintiff and Plaintiff's healthcare providers, of the potential risks and increased failure rate associated with the Wright Hip System.

56. As a direct, legal, proximate and producing result of Defendants' failure to warn,

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

Plaintiff sustained injuries as set forth above.

57. Defendants' failure to adequately warn of the potential risks and side effects of the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**THIRD CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – UNREASONABLY DANGEROUS DESIGN**
**(Against All Defendants)**

58. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

59. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System, including the 1) CONSERVE® PLUS Cup Shell, size 62mm and 2) CONSERVE® PLUS Femoral Resurfacing Component, that were implanted in Plaintiff on or about April 7, 2005.

60. At all times relevant hereto, the Wright Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without a substantial change in the condition in which it was sold.

61. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

62. At all times relevant hereto, the Wright Hip System was dangerous, unsafe and defective in design. Such defects included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

63. Defendants knew or should have known of the unreasonably dangerous and serious risks associated with the design of the Wright Hip System. Such risks were scientifically knowable to Defendants. However, Defendants performed inadequate evaluation and testing of the Wright Hip System design.

64. As a direct, legal, proximate and producing result of the defective manufacture of the Wright Hip System implanted in Plaintiff, Plaintiff sustained injuries as set forth above.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

65. Defendants' defective design and failure to adequately test the safety of the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Defendants)**

66. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

67. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System for implantation into customers, such as Plaintiff, by physicians and surgeons in the U.S.

68. At all times relevant hereto, Defendants knew or should have known that the novel design of the Wright Hip System necessitated clinical trials and other pre-marketing evaluations of risk and efficacy. Such testing would have revealed the increased risk of failure and complications associated with the Wright Hip System. A reasonable manufacturer under the same or similar circumstances would have conducted additional testing and evaluation of the Wright Hip System's safety and performance prior to placing the Wright Hip System into the stream of commerce.

69. At all times relevant hereto, Defendants knew or should have known of the serious complications and high failure rate associated with the Wright Hip System. Despite receiving hundreds of reports of serious complications from healthcare providers, Defendants chose (1) not to perform any additional testing of the Wright Hip System; (2) not to investigate other potential causes of the reported complications; (3) suspend sales or distribution; or (4) warn physicians and patients of the propensity of the Wright Hip System's propensity to detach, disconnect, create metallic debris and/or loosen from the acetabulum.

70. As a direct, legal, proximate and producing cause of Defendants' negligent design, testing, manufacturing, marketing, selling, and promoting the Wright Hip System, Plaintiff suffered injuries as set forth above.

71. Defendants' negligent design, testing, manufacturing, marketing, selling, and

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

promoting the Wright Hip System, was a substantial factor in causing Plaintiff's injuries as set forth above.

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE – FAILURE TO RECALL/RETROFIT**
**(Against All Defendants)**

72. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

73. At all times relevant hereto, Defendants knew or should have known that the design of the Wright Hip System and its warnings were dangerous or were likely to be dangerous when used in an intended or reasonably foreseeable manner.

74. Despite the severity and number of complaints Defendants received, Defendants failed to recall, retrofit, or warn patients or physicians about the danger of the Wright Hip System.

75. Reasonable manufacturers, distributors, sellers, promoters, and designers under the same or similar circumstances would have recalled the Wright Hip System.

76. As a direct, legal, proximate and producing result of Defendants' failure to recall the Wright Hip System, Plaintiff suffered injuries as set forth above.

77. Defendants' failure to recall the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(Against All Defendants)**

78. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

79. Through sales representatives, consultants, printed materials, and other advertising and marketing efforts, Defendants made express representations to healthcare providers and patients, including Plaintiff and Plaintiff's healthcare providers, about the safety and efficacy of the Wright Hip

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

System.

80. The Wright Hip System does not conform to the express representations made by Defendants through sales representatives, consultants, printed materials, and other advertising and marketing efforts.

81. Defendants' conduct in this manner was a contributing cause of injuries and damages suffered by Plaintiff.

**SEVENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(Against All Defendants)**

82. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

83. At the time Defendants designed, tested, marketed, promoted, and sold the Wright Hip System, Defendants knew of the intended, reasonably foreseeable uses and impliedly warranted the Wright Hip System to be of merchantable quality and safe and fit for such use.

84. Plaintiff and Plaintiff's healthcare providers, in deciding to use the Wright Hip System as part of Plaintiff's hip replacement, reasonably relied upon the skill and judgment of Defendants as to whether the Wright Hip System was of merchantable quality and safe and fit for its intended or reasonably foreseeable use.

85. In breach of the implied warranty given by Defendants, the Wright Hip System was not of merchantable quality or safe or fit for its intended or reasonably foreseeable use because the product was unmerchantable, in a defective condition and unreasonably dangerous and unfit for its intended use. The unmerchantable, defective, and unreasonably dangerous nature of the Wright Hip System included, but was not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

86. As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiff suffered injuries as set forth above.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**EIGHTH CAUSE OF ACTION**
**FRAUDULENT MISREPRESENTATION**
**(Against All Defendants)**

87. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

88. The Defendants falsely and fraudulently represented to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, that the Wright Hip System had been properly tested and was safe and effective for its indicated use.

89. The representations made by Defendants to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, regarding the safety and performance of the Wright Hip System were, in fact, false.

90. Defendants knew or should have known that the Wright Hip System had not been sufficiently tested, was defectively designed, and lacked adequate warnings and instructions.

91. Defendants knew or should have known that the Wright Hip System could and would cause severe and grievous injury to users of said product, and that the Wright Hip System's inherent dangers exceeded any purported, inaccurate, and/or downplayed warnings.

92. When said representations were made by Defendants, Defendants knew those representations to be false and exhibited a willful, wanton and reckless disregard for the truth of said representations.

93. Said representations were made by Defendants with the intent to defraud and deceive Plaintiff, Plaintiff's healthcare providers, the medical community, and the general public. Defendants intended said representations to induce Plaintiff, Plaintiff's healthcare providers, the medical community and the general public, to recommend, implant, and/or purchase the Wright Hip System for use as part of hip replacement surgery. Defendants' actions evinced a callous, reckless, willful, depraved indifference to the health, safety, and welfare of Plaintiff.

94. At all relevant times, Plaintiff and Plaintiff's healthcare providers were unaware of the falsity of said representations and reasonably believed them to be true.

95. In reliance upon Defendants' representations, Plaintiff was induced and did use the

Wright Hip System, thereby sustaining severe and permanent personal injuries, and is now at an increased risk of sustaining further severe and permanent personal injuries in the future.

96. Defendants brought the Wright Hip System to the market, and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

97. As a direct, legal, proximate and producing result of Defendants' false representations, Plaintiff suffered the injuries set forth herein.

**NINTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(Against All Defendants)**

98. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

99. Defendants knew their representations were false or recklessly disregarded the truth of said representations.

100. In representations to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, Defendants omitted, concealed or suppressed material information regarding the safety and performance of the Wright Hip System, including, but not limited to:

(a) the Wright Hip System was not as safe as other available hip implant devices;

(b) the Wright Hip System had an unacceptably high rate of failures requiring revision surgery;

(c) the safety and performance of the Wright Hip System was not adequately tested and/or known by Defendants;

patients implanted with the Wright Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip implant devices;

(d) the Wright Hip System was designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

(e) the design of the Wright Hip System increased the wear between the femoral component and the acetabular component, as compared to other hip implant products;

(f) metal corrosion was more likely to occur, and would occur with greater severity, as compared to other hip replacement products;

(g) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper surgical implantation was substantially less likely to occur;

(h) metal ion debris would be released into the patient's body; and

(i) safer alternatives were available.

101. Defendants purposefully downplayed and understated the serious nature of the risks associated with the use of the Wright Hip System in order to increase and sustain sales.

102. Defendants had sole access to material facts regarding the safety and performance of the Wright Hip System. Defendants knew Plaintiff and Plaintiff's healthcare providers and/or the FDA had no way to determine the truth behind Defendants' concealment, omission and suppression of material facts as set forth herein.

103. Plaintiff and Plaintiff's healthcare providers relied on Defendants' incomplete and inaccurate representations as to the safety and performance of the Wright Hip System when selecting, recommending, and implanting the Wright Hip System.

104. As a direct, legal, proximate and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

**TENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against All Defendants)**

105. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

106. Defendants had a duty to truthfully represent to the medical community, and to Plaintiff, Plaintiff's healthcare providers, and the FDA, that the Wright Hip System had been properly

tested and found to be safe and effective for its intended use.

107. Defendants knew or should have known the representations regarding the safety and performance of the Wright Hip System were, in fact, false.

108. Defendants failed to exercise ordinary care in determining the truth or falsity of their representations, and by misrepresenting the safety and performance of the Wright Hip System.

109. Defendants breached their duty to present truthful representations by knowingly, or by want of ordinary care, misrepresenting the safety and performance of the Wright Hip System.

110. As a direct, legal, proximate and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and/or severally, as follows:

1. For general damages for personal injuries to Plaintiff, according to proof;
2. For all past, current, and future medical and incidental expenses, according to proof;
3. For all loss of earnings, present and future, and loss of earning capacity, according to proof;
4. For punitive and/or exemplary damages in an amount sufficient to punish Defendants and deter similar conduct in the future, according to proof;
5. For prejudgment interest, as provided by law;
6. For reasonable attorneys' fees;
7. For costs of litigation; and

///

///

///

///

///

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

8. For such other and further relief as this Court may deem just and proper.

Dated: March 9, 2012

KIESEL BOUCHER LARSON LLP

By: [signature]
Raymond P. Boucher
Paul R. Kiesel
Helen Zukin

Attorneys for Plaintiff
PENNY STEINMAN

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

Dated: March 9, 2012

KIESEL BOUCHER LARSON LLP

By: [signature]
Raymond P. Boucher
Paul R. Kiesel
Helen Zukin

Attorneys for Plaintiff
PENNY STEINMAN

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

21
COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Exhibit E
Page 203

# EXHIBIT 5

Raymond P. Boucher, State Bar No. 115364
*boucher@kbla.com*
Paul R. Kiesel, State Bar No. 119854
*kiesel@kbla.com*
Helen Zukin, State Bar No. 117933
*zukin@kbla.com*
Fontaine Yuk, State Bar No. 267973
*fyuk@kbla.com*
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

Neil C. Newson, State Bar No. 41497
*nnewson@aol.com*
**NEIL C. NEWSON & ASSOCIATES**
8447 Wilshire Boulevard Suite 204
Beverly Hills, California 90211
Tel: 310-278-7555
Fax: 310-278-4310

Attorneys for Plaintiff
**KYM STEINBERG**

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES
MAR 15 2012

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

BC480987

KYM STEINBERG,

Plaintiff,

v.

WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and WRIGHT MEDICAL GROUP, INC., a Delaware corporation; HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, a California corporation; HARLAN C. AMSTUTZ, M.D., an individual; and DOES 1 through 50, inclusive,

Defendants.

Case No.

**COMPLAINT FOR DAMAGES**

1. Strict Products Liability – Manufacturing Defect
2. Strict Products Liability – Failure to Warn
3. Strict Products Liability – Unreasonably Dangerous Design
4. Negligence
5. Negligence – Failure to Recall/Retrofit
6. Breach of Express Warranty
7. Breach of Implied Warranty
8. Fraudulent Misrepresentation

9. Fraudulent Concealment

10. Negligent Misrepresentation

**DEMAND FOR JURY TRIAL**

COMES NOW the plaintiff, KYM STEINBERG, by and through her attorneys of record, KIESEL BOUCHER LARSON LLP, to allege the following causes of action against Defendants, and each of them, as follows:

**NATURE OF THE ACTION**

1. This is an action for strict products liability, negligence, breach of express and implied warranties, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and punitive damages brought by Plaintiff KYM STEINBERG ("Plaintiff") for injuries arising out of the Wright Medical Total Hip System ("Wright Hip System") she received as part of her total hip replacement surgery.

2. On April 3, 2006, Plaintiff received a Wright Hip System as part of a right total hip replacement surgery. On and prior to the date of that implantation surgery Defendants knew or should have known, based on hundreds of reports received from orthopedic surgeons around the U.S., that the Wright Hip System was defective and likely to fail. Defendants concealed this adverse information and continued to represent to Plaintiff, her healthcare providers, and the public that the Wright Hip System was a safe, effective medical device with a low failure rate.

3. Subsequent to implantation of the Wright Hip System, Plaintiff began to experience the painful effects of the product's defective design and manufacture. Plaintiff began suffering persistent pain and decreased mobility, both worsening over time. While Plaintiff's physicians searched for the cause of Plaintiff's pain, Plaintiff continued to endure persistent, debilitating pain and decreased mobility. Plaintiff began suffering emotional distress as a result of the defective product. Plaintiff was required to undergo emergency revision surgery to remove and replace the defective Wright Hip System.

4. Revision surgery to remove the failed Wright Hip System and replace it with a new implant is a complex, risky and painful procedure. Revision surgeries are generally more complex

than the original hip replacement as there is less bone available to attach the new implant. Revision surgeries also are usually longer than the original hip replacement procedure and have a higher rate of complications.

5. After the revision surgery, Plaintiff endured a long recovery that was both physically and emotionally painful. Additionally, Plaintiff must live with a greater risk of future complications as a revised hip implant presents a much higher risk of dislocation than an original implant.

**PARTIES**

6. Plaintiff KYM STEINBERG is, and at all times relevant hereto was, a resident of Sherman Oaks, County of Los Angeles, State of California. Plaintiff underwent a right total hip replacement surgery on April 3, 2006, in Los Angeles County. At that time, the Wright Hip System manufactured, designed, distributed, and warranted by defendants was implanted into Plaintiff. Plaintiff's surgeon, medical staff, and other healthcare providers met or exceeded the standard of care applicable to the hip replacement surgery. The Wright Hip System subsequently failed.

7. Defendant WRIGHT MEDICAL GROUP, INC., is, and at all times relevant hereto was, a Delaware corporation, with its principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. At all times relevant hereto, Defendant WRIGHT MEDICAL GROUP, INC. conducted regular and sustained business in California by selling and distributing its products in California, and engaged in substantial commerce and business activity in the County of Los Angeles.

8. Defendant WRIGHT MEDICAL TECHNOLOGY, INC., is, and at all times relevant hereto was, a Delaware corporation, with its principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. At all times relevant hereto, Defendant WRIGHT MEDICAL TECHNOLOGY, INC. conducted regular and sustained business in California by selling and distributing its products in California, and engaged in substantial commerce and business activity in the County of Los Angeles.

9. Defendant WRIGHT MEDICAL TECHNOLOGY, INC. is a wholly owned subsidiary of Defendant WRIGHT MEDICAL GROUP, INC.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

10. Defendants WRIGHT MEDICAL TECHNOLOGY, INC. and WRIGHT MEDICAL GROUP, INC. are hereinafter collectively referred to as "Wright." "Wright" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant WRIGHT MEDICAL TECHNOLOGY, INC. and Defendant WRIGHT MEDICAL GROUP, INC.

11. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant HARLAN C. AMSTUTZ, M.D., an individual, is a resident of the County of Los Angeles, State of California. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant HARLAN C. AMSTUTZ, M.D., an individual, researched, designed, developed, and marketed the Wright Hip System throughout the United States, including California. Defendant HARLAN C. AMSTUTZ, M.D., an individual, also researched, designed, developed, and marketed the Wright surgical technique and instrumentation designed for use with Wright's CONSERVE® hip system.

12. Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION is, and at all times relevant hereto was, a California corporation with its principal place of business in Los Angeles, California. On information and belief, Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, by and through its shareholder, director and officer HARLAN C. AMSTUTZ, M.D., researched, designed, developed and marketed the defective Wright Hip System throughout the United States, including California. On information and belief, a primary purpose of Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION is to collect royalty payments and consulting fees arising out of the Wright Hip System on behalf of Defendant HARLAN C. AMSTUTZ, M.D., an individual.

13. Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION and Defendant HARLAN C. AMSTUTZ, M.D., an individual, are hereinafter collectively referred to as "Dr. Amstutz." "Dr. Amstutz" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors,

successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION and/or Defendant HARLAN C. AMSTUTZ, M.D., an individual.

14. The true names or capacities, whether individual, corporate, associate, or otherwise of Defendants DOES 1 through 50, inclusive, and each of them, are unknown to Plaintiff who, therefore, sues said defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each defendant designated herein by a fictitious name is in some manner legally responsible for the events and happenings herein referred to, and proximately caused foreseeable damages to Plaintiff as alleged herein. Plaintiff will seek leave of Court to amend this Complaint when the names of said DOE defendants are ascertained.

15. As used herein, "Defendants" includes all named Defendants and Does 1-50, inclusive.

16. At all times relevant hereto, each of the Defendants was the representative, agent, employee, joint venturer, or alter ego of each of the other Defendants and was acting within the scope of its authority as such.

17. At all times relevant hereto, the Defendants, either directly or through their agents, apparent agents, servants or employees, sold, distributed and marketed the defective Wright Hip System in the State of California. Defendants derive substantial revenue from orthopedic products used or implanted in the State of California. As such, Defendants expected or should have expected that their business activities could or would subject them to legal action in the State of California.

18. Plaintiff has reviewed her potential legal claims and causes of action against Defendants and has chosen only to pursue state-law claims. Any reference to any federal agency, regulation or rule is stated solely as background information and does not raise a federal question. Dr. Amstutz, principal designer and promoter of the Wright Hip System hip implant, is a California resident. The liability of Dr. Amstutz is so intertwined with the liability of the other Defendants herein that no claims arising out of Plaintiff's Wright Hip System implant can be severed or removed. Accordingly, Plaintiff contends that this Court may rightfully exercise jurisdiction, and venue is proper in this case.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**FACTUAL BACKGROUND**

19. The hip joint, connecting the femur and pelvis, consists of a femoral head rotating within the acetabulum. The femoral head is a ball-like structure at the top of the femur. The acetabulum is a cup-shaped bone structure at the bottom of the pelvis. Over time, the cartilage that cushions the rotation of the femoral head and acetabulum against each other breaks down. When the cartilage is depleted, the femoral head rubs directly against the acetabulum, causing extreme pain and immobility, and necessitating a total hip replacement surgery.

20. In a total hip replacement, an artificial hip joint is installed to replace the body's natural joint. Usually, the artificial joint is made of metal and plastic and consists of four parts: (1) an acetabular shell; (2) a plastic liner; (3) a femoral head; and (4) a femoral stem. In most hip replacement systems, the femoral head forms the hip joint when it is placed inside the plastic liner and acetabular shell.

21. Dr. Amstutz, Wright, and others designed and developed the Wright Hip System. The Wright Hip System differs from most hip implants in that the metal femoral head is in direct contact with a metal acetabular cup. Despite its unorthodox design, Defendants did not properly test the device for safety, efficacy, and durability. Other metal-on-metal prosthetic hip device manufacturers carefully screen, select, and train orthopedic surgeons on proper implant procedures for their respective devices. However, Defendants aggressively marketed, promoted and encouraged orthopedic surgeons in the U.S. to use the Wright Hip System without screening, selecting, or training the surgeons on how to implant the Wright Hip System

22. While Wright wanted to market its Wright Hip System in the U.S., it did not want to endure the long and expensive FDA approval process. Instead, Wright exploited a loophole in FDA regulations that would allow its device to enter the U.S. market without proper testing or approval. Wright represented that the Wright Hip System design was substantially equivalent to other hip replacement products already on the market.

23. While representing to the FDA that its Wright Hip System was "substantially equivalent" to other hip replacement products, Wright omitted the Wright Hip System's critical distinguishing features. The Wright Hip System's femoral head has a larger circumference than

industry standard. Also, the acetabular cup departs from industry standards in that it (1) is thinner; (2) has a smaller circumference; (3) is double-heat treated rather than single-heat treated; (4) has an exterior shell that lacks reliable bone ingrowth materials; (5) offers no obvious means of fixation other than the expectation that the patient's bone will grow into the porous exterior of the cup; and (6) has a low clearance which spreads the contact area out closer to the edge of the cup resulting in increased friction from the lack of lubrication entering the cup.

24. Shortly after the U.S. launch of the Wright Hip System, Defendants began receiving hundreds of complaints from doctors reporting Wright Hip System failures. By 2008, Defendants had received hundreds of such reports regarding their PROFEMUR® and CONSERVE® lines. Defendants failed to disclose or actively concealed these adverse reports from doctors and patients, including Plaintiff and Plaintiff's surgeon, and continued to promote the Wright Hip System as a safe and effective device.

25. Prior to Plaintiff's hip replacement surgery, Defendants knew or should have known that the Wright Hip System was failing frequently and causing serious post-implant complications for many patients. Those complications arising out of the implantation of the Wright Hip System that Defendants knew or should have known about included but were not limited to: bone cysts; pseudo-tumors; metallosis and osteolysis; high levels of metal ions, such as chromium and cobalt, in the bloodstream; detachment, disconnection, and/or loosening of the acetabular cup; loosening of the femoral component; and other complications requiring revision surgery. Armed with such knowledge, Defendants concealed the true risks of the Wright Hip System and instead continued to market, defend and promote the Wright Hip System.

26. From as early as 1996 through the present, Dr. Amstutz served as a consultant for Wright. Dr. Amstutz is one of the innovators and developers of the CONSERVE® and CONSERVE® Plus hip surface arthroplasty utilizing metal on metal bearing technology.

27. Dr. Amstutz and Wright representatives continued to market the superiority of the Wright Hip System despite their awareness of numerous, serious complications and alarmingly high failure rates. Dr. Amstutz and the Wright representatives concealed their knowledge of the Wright Hip System's unacceptably high failure rate.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

28. Despite legal and moral obligations to cease promoting, marketing, selling and defending the Wright Hip System upon awareness of its serious risks, Defendants did not notify physicians, including Plaintiff's orthopedic surgeon, of the device's propensity to fail and cause other serious complications.

29. Defendants had a strong monetary motive not to reveal the dangers associated with the Wright Hip System. In 2010, alone, Wright's sales revenue was over $518 million, with about $176 million comprising of sales from their hip products, making it one of its parent company's most profitable groups. Likewise, Dr. Amstutz collected millions of dollars in royalties and consulting fees from Wright for designing, marketing, promoting and defending the Wright Hip System. For example, in her consulting agreement with Wright, Dr. Amstutz was promised a consulting salary and a royalty of 5% of all net sales from Wright's CONSERVE® and CONSERVE® Plus hip implants.

30. On April 3, 2006, Plaintiff underwent a right total hip replacement procedure using the Wright Hip System at Cedars-Sinai Medical Center in Los Angeles, California. The Plaintiff's right prosthetic hip consisted of the following four Wright modular components:

a) PROFEMUR® Z Cementless Stem, Size 2

b) CONSERVE® Total Femoral Head, Size 42mm

c) PROFEMUR® Neck 8DG A/R Short

d) CONSERVE® PLUS Cup, Shell Size 48mm

31. Subsequently, as a direct and proximate result of the design, manufacture and composition of the device, Plaintiff's Wright Hip System detached, disconnected, created metallic debris, and/or loosened from Plaintiff's acetabulum. As a result, the Wright Hip System has forced Plaintiff to live with debilitating pain, decreased mobility, and emotional distress.

32. On or about August 22, 2011, Plaintiff was forced to undergo revision surgery in Los Angeles County to remove the defective Wright Hip Implant.

33. Defendants recklessly, knowingly, intentionally and fraudulently misrepresented to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, that the Wright Hip System was safe and effective for its intended use.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

34. Defendants recklessly, knowingly, intentionally and fraudulently concealed and suppressed adverse information relating to the safety and performance of the Wright Hip System from the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers.

35. Defendants' misrepresentations were communicated to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, with the intent that the medical community and general public, including Plaintiff and Plaintiff's healthcare providers, would rely on such in selecting the Wright Hip System.

36. Specifically, Defendants misrepresented and actively concealed material facts regarding the safety and performance of the Wright Hip System including, but not limited to:

(a) the Wright Hip System was not as safe as other available hip implant devices;

(b) the Wright Hip System had an unacceptably high rate of failures requiring revision surgery;

(c) the safety and performance of the Wright Hip System was not adequately tested and/or known by Defendants;

(d) patients implanted with the Wright Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip implant devices;

(e) the Wright Hip System was designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

(f) the design of the Wright Hip System increased the wear between the femoral component and the acetabular component, as compared to other hip implant products;

(g) metal corrosion was more likely to occur, and would occur with greater severity, as compared to other hip replacement products;

(h) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

surgical implantation was substantially less likely to occur;

(i) metal ion debris would be released into the patient's body; and

(j) safer alternatives were available.

37. To Plaintiff's detriment, Plaintiff and Plaintiff's healthcare provider justifiably relied on and/or were induced by Defendants' misrepresentations and/or active concealment to recommend, purchase, implant and/or use the Wright Hip System.

38. As a direct, legal, proximate and producing result of Defendants' misrepresentation and active concealment of material facts, Plaintiff has suffered injuries as set forth herein.

39. Plaintiff files this lawsuit within two years of first suspecting that Wright Hip System was the cause of any appreciable harm sustained by Plaintiff. Plaintiff first suspected that the cause of her injuries was the defective Wright Hip System on or about July 7, 2011. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of Plaintiff's injuries at an earlier time because when Plaintiff's injuries were discovered, their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of Plaintiff's injury or the tortuous nature of the conduct causing injury until less than two years prior to the filing of this action. Additionally, Plaintiff was prevented from discovering this information sooner because Defendants misrepresented and continue to misrepresent to the public and to the medical profession that Wright Hip System did not have a propensity to fail or cause other serious complications, and Defendants have fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

40. Plaintiff alleges that she is entitled to prejudgment interest pursuant to California *Civil Code* § 3288 from the date of the implantation of the defective Wright Hip System into her body on April 3, 2006, up to and including the date of judgment, according to proof.

**FIRST CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**
**(Against All Defendants)**

41. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40, inclusive, as though fully set forth herein.

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

42. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System, including the 1) PROFEMUR® Z Cementless Stem, Size 2, 2) CONSERVE® Total Femoral Head, Size 42mm, 3) PROFEMUR® Neck 8DG A/R Short, and 4) CONSERVE® PLUS Cup, Shell Size 48mm, that were implanted in Plaintiff on or about April 3, 2006.

43. At all times relevant hereto, the Wright Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without a substantial change in the condition in which it was sold.

44. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

45. At all times relevant hereto, the Wright Hip System was dangerous, unsafe and defective in manufacture. Such defects included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

46. Plaintiff is informed and believes, and thereupon alleges, that the Wright Hip System implanted in Plaintiff was defectively manufactured because it differed from the manufacturer's design and specifications, or from typical units of the same product line.

47. As a direct, legal, proximate and producing result of the defective manufacture of the Wright Hip System implanted in Plaintiff, Plaintiff sustained injuries as set forth above.

48. The dangerous, unsafe and defective manufacturing of the Wright Hip System implanted in Plaintiff was a substantial factor in causing Plaintiff's injuries as set forth above.

**SECOND CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**
**(Against All Defendants)**

49. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

50. The Wright Hip System was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert the medical community and patients, including Plaintiff and Plaintiff's healthcare providers, to the dangerous risks associated with the Wright Hip System when used for its intended and reasonably foreseeable purpose. The dangers and risks included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

51. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

52. Plaintiff and Plaintiff's healthcare providers could not have discovered any defect in the Wright Hip System through the exercise of due care.

53. Defendants knew or should have known, by the use of scientific knowledge available before, at and after the time of manufacture, distribution and sale of the Wright Hip System, of potential risks and side effects associated with the Wright Hip System. Defendants knew or should have known of the defective condition, characteristics, and risks associated with said product, as previously set forth herein.

54. The warnings and instructions provided with the Wright Hip System by Defendants did not adequately warn of the potential risks and side effects of the Wright Hip System, which risks were known or scientifically knowable to Defendants.

55. Defendants had a continuing duty to warn the medical community and public, including Plaintiff and Plaintiff's healthcare providers, of the potential risks and increased failure rate associated with the Wright Hip System.

56. As a direct, legal, proximate and producing result of Defendants' failure to warn, Plaintiff sustained injuries as set forth above.

57. Defendants' failure to adequately warn of the potential risks and side effects of the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

///

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**THIRD CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – UNREASONABLY DANGEROUS DESIGN**
**(Against All Defendants)**

58. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

59. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System, including the 1) PROFEMUR® Z Cementless Stem, Size 2, 2) CONSERVE® Total Femoral Head, Size 42mm, 3) PROFEMUR® Neck 8DG A/R Short, and 4) CONSERVE® PLUS Cup, Shell Size 48mm, that were implanted in Plaintiff on or about April 3, 2006.

60. At all times relevant hereto, the Wright Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without a substantial change in the condition in which it was sold.

61. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

62. At all times relevant hereto, the Wright Hip System was dangerous, unsafe and defective in design. Such defects included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

63. Defendants knew or should have known of the unreasonably dangerous and serious risks associated with the design of the Wright Hip System. Such risks were scientifically knowable to Defendants. However, Defendants performed inadequate evaluation and testing of the Wright Hip System design.

64. As a direct, legal, proximate and producing result of the defective manufacture of the Wright Hip System implanted in Plaintiff, Plaintiff sustained injuries as set forth above.

65. Defendants' defective design and failure to adequately test the safety of the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Defendants)**

66. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

67. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System for implantation into customers, such as Plaintiff, by physicians and surgeons in the U.S.

68. At all times relevant hereto, Defendants knew or should have known that the novel design of the Wright Hip System necessitated clinical trials and other pre-marketing evaluations of risk and efficacy. Such testing would have revealed the increased risk of failure and complications associated with the Wright Hip System. A reasonable manufacturer under the same or similar circumstances would have conducted additional testing and evaluation of the Wright Hip System's safety and performance prior to placing the Wright Hip System into the stream of commerce.

69. At all times relevant hereto, Defendants knew or should have known of the serious complications and high failure rate associated with the Wright Hip System. Despite receiving hundreds of reports of serious complications from healthcare providers, Defendants chose (1) not to perform any additional testing of the Wright Hip System; (2) not to investigate other potential causes of the reported complications; (3) suspend sales or distribution; or (4) warn physicians and patients of the propensity of the Wright Hip System's propensity to detach, disconnect, create metallic debris and/or loosen from the acetabulum.

70. As a direct, legal, proximate and producing cause of Defendants' negligent design, testing, manufacturing, marketing, selling, and promoting the Wright Hip System, Plaintiff suffered injuries as set forth above.

71. Defendants' negligent design, testing, manufacturing, marketing, selling, and promoting the Wright Hip System, was a substantial factor in causing Plaintiff's injuries as set forth above.

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE – FAILURE TO RECALL/RETROFIT**
**(Against All Defendants)**

72. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

73. At all times relevant hereto, Defendants knew or should have known that the design of the Wright Hip System and its warnings were dangerous or were likely to be dangerous when used in an intended or reasonably foreseeable manner.

74. Despite the severity and number of complaints Defendants received, Defendants failed to recall, retrofit, or warn patients or physicians about the danger of the Wright Hip System.

75. Reasonable manufacturers, distributors, sellers, promoters, and designers under the same or similar circumstances would have recalled the Wright Hip System.

76. As a direct, legal, proximate and producing result of Defendants' failure to recall the Wright Hip System, Plaintiff suffered injuries as set forth above.

77. Defendants' failure to recall the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(Against All Defendants)**

78. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

79. Through sales representatives, consultants, printed materials, and other advertising and marketing efforts, Defendants made express representations to healthcare providers and patients, including Plaintiff and Plaintiff's healthcare providers, about the safety and efficacy of the Wright Hip System.

80. The Wright Hip System does not conform to the express representations made by Defendants through sales representatives, consultants, printed materials, and other advertising and

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

marketing efforts.

81. Defendants' conduct in this manner was a contributing cause of injuries and damages suffered by Plaintiff.

**SEVENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(Against All Defendants)**

82. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

83. At the time Defendants designed, tested, marketed, promoted, and sold the Wright Hip System, Defendants knew of the intended, reasonably foreseeable uses and impliedly warranted the Wright Hip System to be of merchantable quality and safe and fit for such use.

84. Plaintiff and Plaintiff's healthcare providers, in deciding to use the Wright Hip System as part of Plaintiff's total hip replacement, reasonably relied upon the skill and judgment of Defendants as to whether the Wright Hip System was of merchantable quality and safe and fit for its intended or reasonably foreseeable use.

85. In breach of the implied warranty given by Defendants, the Wright Hip System was not of merchantable quality or safe or fit for its intended or reasonably foreseeable use because the product was unmerchantable, in a defective condition and unreasonably dangerous and unfit for its intended use. The unmerchantable, defective, and unreasonably dangerous nature of the Wright Hip System included, but was not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

86. As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiff suffered injuries as set forth above.

///

///

///

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**EIGHTH CAUSE OF ACTION**
**FRAUDULENT MISREPRESENTATION**
**(Against All Defendants)**

87. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

88. The Defendants falsely and fraudulently represented to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, that the Wright Hip System had been properly tested and was safe and effective for its indicated use.

89. The representations made by Defendants to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, regarding the safety and performance of the Wright Hip System were, in fact, false.

90. Defendants knew or should have known that the Wright Hip System had not been sufficiently tested, was defectively designed, and lacked adequate warnings and instructions.

91. Defendants knew or should have known that the Wright Hip System could and would cause severe and grievous injury to users of said product, and that the Wright Hip System's inherent dangers exceeded any purported, inaccurate, and/or downplayed warnings.

92. When said representations were made by Defendants, Defendants knew those representations to be false and exhibited a willful, wanton and reckless disregard for the truth of said representations.

93. Said representations were made by Defendants with the intent to defraud and deceive Plaintiff, Plaintiff's healthcare providers, the medical community, and the general public. Defendants intended said representations to induce Plaintiff, Plaintiff's healthcare providers, the medical community and the general public, to recommend, implant, and/or purchase the Wright Hip System for use as part of total hip replacement surgery. Defendants' actions evinced a callous, reckless, willful, depraved indifference to the health, safety, and welfare of Plaintiff.

94. At all relevant times, Plaintiff and Plaintiff's healthcare providers were unaware of the falsity of said representations and reasonably believed them to be true.

95. In reliance upon Defendants' representations, Plaintiff was induced and did use the

Wright Hip System, thereby sustaining severe and permanent personal injuries, and is now at an increased risk of sustaining further severe and permanent personal injuries in the future.

96. Defendants brought the Wright Hip System to the market, and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

97. As a direct, legal, proximate and producing result of Defendants' false representations, Plaintiff suffered the injuries set forth herein.

**NINTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(Against All Defendants)**

98. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

99. Defendants knew their representations were false or recklessly disregarded the truth of said representations.

100. In representations to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, Defendants omitted, concealed or suppressed material information regarding the safety and performance of the Wright Hip System, including, but not limited to:

(a) the Wright Hip System was not as safe as other available hip implant devices;

(b) the Wright Hip System had an unacceptably high rate of failures requiring revision surgery;

(c) the safety and performance of the Wright Hip System was not adequately tested and/or known by Defendants;

patients implanted with the Wright Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip implant devices;

(d) the Wright Hip System was designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

(e) the design of the Wright Hip System increased the wear between the femoral component and the acetabular component, as compared to other hip implant products;

(f) metal corrosion was more likely to occur, and would occur with greater severity, as compared to other hip replacement products;

(g) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper surgical implantation was substantially less likely to occur;

(h) metal ion debris would be released into the patient's body; and

(i) safer alternatives were available.

101. Defendants purposefully downplayed and understated the serious nature of the risks associated with the use of the Wright Hip System in order to increase and sustain sales.

102. Defendants had sole access to material facts regarding the safety and performance of the Wright Hip System. Defendants knew Plaintiff and Plaintiff's healthcare providers and/or the FDA had no way to determine the truth behind Defendants' concealment, omission and suppression of material facts as set forth herein.

103. Plaintiff and Plaintiff's healthcare providers relied on Defendants' incomplete and inaccurate representations as to the safety and performance of the Wright Hip System when selecting, recommending, and implanting the Wright Hip System.

104. As a direct, legal, proximate and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

**TENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against All Defendants)**

105. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

106. Defendants had a duty to truthfully represent to the medical community, and to Plaintiff, Plaintiff's healthcare providers, and the FDA, that the Wright Hip System had been properly

tested and found to be safe and effective for its intended use.

107. Defendants knew or should have known the representations regarding the safety and performance of the Wright Hip System were, in fact, false.

108. Defendants failed to exercise ordinary care in determining the truth or falsity of their representations, and by misrepresenting the safety and performance of the Wright Hip System.

109. Defendants breached their duty to present truthful representations by knowingly, or by want of ordinary care, misrepresenting the safety and performance of the Wright Hip System.

110. As a direct, legal, proximate and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and/or severally, as follows:

1. For general damages for personal injuries to Plaintiff, according to proof;
2. For all past, current, and future medical and incidental expenses, according to proof;
3. For all loss of earnings, present and future, and loss of earning capacity, according to proof;
4. For punitive and/or exemplary damages in an amount sufficient to punish Defendants and deter similar conduct in the future, according to proof;
5. For prejudgment interest, as provided by law;
6. For reasonable attorneys' fees;
7. For costs of litigation; and

///

///

///

///

///

///

8. For such other and further relief as this Court may deem just and proper.

Dated: March 14, 2012

KIESEL BOUCHER LARSON LLP

By: [signature]
Raymond P. Boucher
Paul R. Kiesel
Helen Zukin
Fontaine Yuk

Attorneys for Plaintiff
KYM STEINBERG

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

Dated: March 14, 2012

KIESEL BOUCHER LARSON LLP

By: [signature]
Raymond P. Boucher
Paul R. Kiesel
Helen Zukin
Fontaine Yuk

Attorneys for Plaintiff
KYM STEINBERG

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

# EXHIBIT 6

Lowell W. Finson (CA Bar 275586)
lowell@justiceforyou.com
**PHILLIPS WEBSTER**
CITIGROUP CENTER BUILDING
444 South Flower Street, 33rd Floor
Los Angeles, CA 90071
Tel: (213) 808-6748
Fax: (213) 330-0298

Attorneys for Plaintiff
**GREGORY A. JONES**

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**02/27/2012** at 03:22:17 PM
Clerk of the Superior Court
By Enrique Veloz,Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ORANGE

CIVIL COMPLEX CENTER

GREGORY A. JONES,

Plaintiff,

v.

WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and WRIGHT MEDICAL GROUP, INC., a Delaware corporation; HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, a California corporation; HARLAN C. AMSTUTZ, M.D., an individual; and DOES 1 through 50, inclusive,

Defendants.

Case No. 30-2012-00548956-CU-PL-CXC

COMPLAINT FOR DAMAGES

1. Strict Products Liability – Manufacturing Defect
2. Strict Products Liability – Failure to Warn
3. Strict Products Liability – Unreasonably Dangerous Design
4. Negligence
5. Negligence – Failure to Recall/Retrofit
6. Breach of Express Warranty
7. Breach of Implied Warranty
8. Fraudulent Misrepresentation
9. Fraudulent Concealment
10. Negligent Misrepresentation

DEMAND FOR JURY TRIAL

Judge Steven L. Perk

COMES NOW the plaintiff, GREGORY A. JONES, by and through her attorneys of record, PHILLIPS WEBSTER, to allege the following causes of action against Defendants, and each of them, as follows:

**NATURE OF THE ACTION**

1. This is an action for strict products liability, negligence, breach of express and implied warranties, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and punitive damages brought by Plaintiff GREGORY A. JONES ("Plaintiff") for injuries arising out of the Wright Medical Total Hip System ("Wright Hip System") she received as part of her total hip replacement surgery.

2. On December 13,, 2005, Plaintiff received a Wright Hip System as part of a left total hip replacement surgery. On August 23, 2005, plaintiff received a Wright Hip System as part of a right total hip replacement surgery. On and prior to the date of that implantation surgery Defendants knew or should have known, based on hundreds of reports received from orthopedic surgeons around the U.S., that the Wright Hip System was defective and likely to fail. Defendants concealed this adverse information and continued to represent to Plaintiff, her healthcare providers, and the public that the Wright Hip System was a safe, effective medical device with a low failure rate.

3. Subsequent to implantation of the Wright Hip System, Plaintiff began to experience the painful effects of the product's defective design and manufacture. Plaintiff began suffering persistent pain and decreased mobility, both worsening over time. While Plaintiff's physicians searched for the cause of Plaintiff's pain, Plaintiff continued to endure persistent, debilitating pain and decreased mobility. Plaintiff began suffering emotional distress as a result of the defective product. Plaintiff was required to undergo emergency revision surgery to remove and replace the defective Wright Hip System.

4. Revision surgery to remove the failed Wright Hip System and replace it with a new implant is a complex, risky and painful procedure. Revision surgeries are generally more complex than the original hip replacement as there is less bone available to attach the new implant. Revision surgeries also are usually longer than the original hip replacement procedure and have a higher rate of complications.

5. After the revision surgery, Plaintiff endured a long recovery that was both physically and emotionally painful. Additionally, Plaintiff must live with a greater risk of future

complications as a revised hip implant presents a much higher risk of dislocation than an original implant.

## PARTIES

6. Plaintiff GREGORY A. JONES is, and at all times relevant hereto was, a resident of Parsons, County of Labette, State of Kansas. Plaintiff underwent a left total hip replacement surgery on December 13, 2005, and a right total hip replacement on August 23, 2005 in Labette County. At that time, the Wright Hip System manufactured, designed, distributed, and warranted by defendants was implanted into Plaintiff. Plaintiff's surgeon, medical staff, and other healthcare providers met or exceeded the standard of care applicable to the hip replacement surgery. The Wright Hip System subsequently failed.

7. Defendant WRIGHT MEDICAL GROUP, INC., is, and at all times relevant hereto was, a Delaware corporation, with its principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. At all times relevant hereto, Defendant WRIGHT MEDICAL GROUP, INC. conducted regular and sustained business in California by selling and distributing its products in California, and engaged in substantial commerce and business activity in the County of Los Angeles.

8. Defendant WRIGHT MEDICAL TECHNOLOGY, INC., is, and at all times relevant hereto was, a Delaware corporation, with its principal place of business at 5677 Airline Road, Arlington, Tennessee 38002. At all times relevant hereto, Defendant WRIGHT MEDICAL TECHNOLOGY, INC. conducted regular and sustained business in California by selling and distributing its products in California, and engaged in substantial commerce and business activity in the County of Los Angeles.

9. Defendant WRIGHT MEDICAL TECHNOLOGY, INC. is a wholly owned subsidiary of Defendant WRIGHT MEDICAL GROUP, INC.

10. Defendants WRIGHT MEDICAL TECHNOLOGY, INC. and WRIGHT MEDICAL GROUP, INC. are hereinafter collectively referred to as "Wright." "Wright" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and

their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant WRIGHT MEDICAL TECHNOLOGY, INC. and Defendant WRIGHT MEDICAL GROUP, INC.

11. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant HARLAN C. AMSTUTZ, M.D., an individual, is a resident of the County of Los Angeles, State of California. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant HARLAN C. AMSTUTZ, M.D., an individual, researched, designed, developed, and marketed the Wright Hip System throughout the United States, including California. Defendant HARLAN C. AMSTUTZ, M.D., an individual, also researched, designed, developed, and marketed the Wright surgical technique and instrumentation designed for use with Wright's CONSERVE® hip system.

12. Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION is, and at all times relevant hereto was, a California corporation with its principal place of business in Los Angeles, California. On information and belief, Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, by and through its shareholder, director and officer HARLAN C. AMSTUTZ, M.D., researched, designed, developed and marketed the defective Wright Hip System throughout the United States, including California. On information and belief, a primary purpose of Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION is to collect royalty payments and consulting fees arising out of the Wright Hip System on behalf of Defendant HARLAN C. AMSTUTZ, M.D., an individual.

13. Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION and Defendant HARLAN C. AMSTUTZ, M.D., an individual, are hereinafter collectively referred to as "Dr. Amstutz." "Dr. Amstutz" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents and representatives and any and all other persons acting on behalf of Defendant HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION and/or Defendant HARLAN C. AMSTUTZ, M.D., an individual.

14. The true names or capacities, whether individual, corporate, associate, or otherwise of

Defendants DOES 1 through 50, inclusive, and each of them, are unknown to Plaintiff who, therefore, sues said defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each defendant designated herein by a fictitious name is in some manner legally responsible for the events and happenings herein referred to, and proximately caused foreseeable damages to Plaintiff as alleged herein. Plaintiff will seek leave of Court to amend this Complaint when the names of said DOE defendants are ascertained.

15. As used herein, "Defendants" includes all named Defendants and Does 1-50, inclusive.

16. At all times relevant hereto, each of the Defendants was the representative, agent, employee, joint venturer, or alter ego of each of the other Defendants and was acting within the scope of its authority as such.

17. At all times relevant hereto, the Defendants, either directly or through their agents, apparent agents, servants or employees, sold, distributed and marketed the defective Wright Hip System in the State of California. Defendants derive substantial revenue from orthopedic products used or implanted in the State of California. As such, Defendants expected or should have expected that their business activities could or would subject them to legal action in the State of California.

18. Plaintiff has reviewed her potential legal claims and causes of action against Defendants and has chosen only to pursue state-law claims. Any reference to any federal agency, regulation or rule is stated solely as background information and does not raise a federal question. Dr. Amstutz, principal designer and promoter of the Wright Hip System hip implant, is a California resident. The liability of Dr. Amstutz is so intertwined with the liability of the other Defendants herein that no claims arising out of Plaintiff's Wright Hip System implant can be severed or removed. Accordingly, Plaintiff contends that this Court may rightfully exercise jurisdiction, and venue is proper in this case.

///

///

## FACTUAL BACKGROUND

19. The hip joint, connecting the femur and pelvis, consists of a femoral head rotating within the acetabulum. The femoral head is a ball-like structure at the top of the femur. The acetabulum is a cup-shaped bone structure at the bottom of the pelvis. Over time, the cartilage that cushions the rotation of the femoral head and acetabulum against each other breaks down. When the cartilage is depleted, the femoral head rubs directly against the acetabulum, causing extreme pain and immobility, and necessitating a total hip replacement surgery.

20. In a total hip replacement, an artificial hip joint is installed to replace the body's natural joint. Usually, the artificial joint is made of metal and plastic and consists of four parts: (1) an acetabular shell; (2) a plastic liner; (3) a femoral head; and (4) a femoral stem. In most hip replacement systems, the femoral head forms the hip joint when it is placed inside the plastic liner and acetabular shell.

21. Dr. Amstutz, Wright, and others designed and developed the Wright Hip System. The Wright Hip System differs from most hip implants in that the metal femoral head is in direct contact with a metal acetabular cup. Despite its unorthodox design, Defendants did not properly test the device for safety, efficacy, and durability. Other metal-on-metal prosthetic hip device manufacturers carefully screen, select, and train orthopedic surgeons on proper implant procedures for their respective devices. However, Defendants aggressively marketed, promoted and encouraged orthopedic surgeons in the U.S. to use the Wright Hip System without screening, selecting, or training the surgeons on how to implant the Wright Hip System

22. While Wright wanted to market its Wright Hip System in the U.S., it did not want to endure the long and expensive FDA approval process. Instead, Wright exploited a loophole in FDA regulations that would allow its device to enter the U.S. market without proper testing or approval. Wright represented that the Wright Hip System design was substantially equivalent to other hip replacement products already on the market.

23. While representing to the FDA that its Wright Hip System was "substantially equivalent" to other hip replacement products, Wright omitted the Wright Hip System's critical distinguishing features. The Wright Hip System's femoral head has a larger circumference than

industry standard. Also, the acetabular cup departs from industry standards in that it (1) is thinner; (2) has a smaller circumference; (3) is double-heat treated rather than single-heat treated; (4) has an exterior shell that lacks reliable bone ingrowth materials; (5) offers no obvious means of fixation other than the expectation that the patient's bone will grow into the porous exterior of the cup; and (6) has a low clearance which spreads the contact area out closer to the edge of the cup resulting in increased friction from the lack of lubrication entering the cup.

24. Shortly after the U.S. launch of the Wright Hip System, Defendants began receiving hundreds of complaints from doctors reporting Wright Hip System failures. By 2008, Defendants had received hundreds of such reports regarding their PROFEMUR® and CONSERVE® lines. Defendants failed to disclose or actively concealed these adverse reports from doctors and patients, including Plaintiff and Plaintiff's surgeon, and continued to promote the Wright Hip System as a safe and effective device.

25. Prior to Plaintiff's hip replacement surgery, Defendants knew or should have known that the Wright Hip System was failing frequently and causing serious post-implant complications for many patients. Those complications arising out of the implantation of the Wright Hip System that Defendants knew or should have known about included but were not limited to: bone cysts; pseudo-tumors; metallosis and osteolysis; high levels of metal ions, such as chromium and cobalt, in the bloodstream; detachment, disconnection, and/or loosening of the acetabular cup; loosening of the femoral component; and other complications requiring revision surgery. Armed with such knowledge, Defendants concealed the true risks of the Wright Hip System and instead continued to market, defend and promote the Wright Hip System.

26. From as early as 1996 through the present, Dr. Amstutz served as a consultant for Wright. Dr. Amstutz is one of the innovators and developers of the CONSERVE® and CONSERVE® Plus hip surface arthroplasty utilizing metal on metal bearing technology.

27. Dr. Amstutz and Wright representatives continued to market the superiority of the Wright Hip System despite their awareness of numerous, serious complications and alarmingly high failure rates. Dr. Amstutz and the Wright representatives concealed their knowledge of the Wright Hip System's unacceptably high failure rate.

28.     Despite legal and moral obligations to cease promoting, marketing, selling and defending the Wright Hip System upon awareness of its serious risks, Defendants did not notify physicians, including Plaintiff's orthopedic surgeon, of the device's propensity to fail and cause other serious complications.

29.     Defendants had a strong monetary motive not to reveal the dangers associated with the Wright Hip System.  In 2010, alone, Wright's sales revenue was over $518 million, with about $176 million comprising of sales from their hip products, making it one of its parent company's most profitable groups.  Likewise, Dr. Amstutz collected millions of dollars in royalties and consulting fees from Wright for designing, marketing, promoting and defending the Wright Hip System.  For example, in her consulting agreement with Wright, Dr. Amstutz was promised a consulting salary and a royalty of 5% of all net sales from Wright's CONSERVE® and CONSERVE® Plus hip implants.

30.     On December 13, 2005, Plaintiff underwent a left total hip replacement procedure using the Wright Hip System at Labette County Medical Center in Parsons, Kansas.

31.     Subsequently, as a direct and proximate result of the design, manufacture and composition of the device, Plaintiff's Wright Hip System detached, disconnected, created metallic debris, and/or loosened from Plaintiff's acetabulum.  As a result, the Wright Hip System has forced Plaintiff to live with debilitating pain, decreased mobility, and emotional distress.

32.     Defendants recklessly, knowingly, intentionally and fraudulently misrepresented to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, that the Wright Hip System was safe and effective for its intended use.

33.     Defendants recklessly, knowingly, intentionally and fraudulently concealed and suppressed adverse information relating to the safety and performance of the Wright Hip System from the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers.

34.     Defendants' misrepresentations were communicated to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, with the intent that the medical community and general public, including Plaintiff and Plaintiff's healthcare providers,

would rely on such in selecting the Wright Hip System.

35. Specifically, Defendants misrepresented and actively concealed material facts regarding the safety and performance of the Wright Hip System including, but not limited to:

(a) the Wright Hip System was not as safe as other available hip implant devices;

(b) the Wright Hip System had an unacceptably high rate of failures requiring revision surgery;

(c) the safety and performance of the Wright Hip System was not adequately tested and/or known by Defendants;

(d) patients implanted with the Wright Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip implant devices;

(e) the Wright Hip System was designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

(f) the design of the Wright Hip System increased the wear between the femoral component and the acetabular component, as compared to other hip implant products;

(g) metal corrosion was more likely to occur, and would occur with greater severity, as compared to other hip replacement products;

(h) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper surgical implantation was substantially less likely to occur;

(i) metal ion debris would be released into the patient's body; and

(j) safer alternatives were available.

36. To Plaintiff's detriment, Plaintiff and Plaintiff's healthcare provider justifiably relied on and/or were induced by Defendants' misrepresentations and/or active concealment to recommend, purchase, implant and/or use the Wright Hip System.

37. As a direct, legal, proximate and producing result of Defendants' misrepresentation

and active concealment of material facts, Plaintiff has suffered injuries as set forth herein.

38. Plaintiff files this lawsuit within two years of first suspecting that Wright Hip System was the cause of any appreciable harm sustained by Plaintiff. Plaintiff first suspected that the cause of her injuries was the defective Wright Hip System on or about 2010. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of Plaintiff's injuries at an earlier time because when Plaintiff's injuries were discovered, their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of Plaintiff's injury or the tortuous nature of the conduct causing injury until less than two years prior to the filing of this action. Additionally, Plaintiff was prevented from discovering this information sooner because Defendants misrepresented and continue to misrepresent to the public and to the medical profession that Wright Hip System did not have a propensity to fail or cause other serious complications, and Defendants have fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

39. Plaintiff alleges that she is entitled to prejudgment interest pursuant to California *Civil Code* § 3288 from the date of the implantation of the defective Wright Hip System into her body on December 13, 2005 and August 23, 2005, up to and including the date of judgment, according to proof.

**FIRST CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**
**(Against All Defendants)**

40. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 39, inclusive, as though fully set forth herein.

41. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System, including the 1)PROFEMUR® Z Femoral Component, 2) CONSERVE® Total Femoral Head, 3) PROFEMUR® Short ARVV-1 Neck, and 4) CONSERVE® PLUS Acetabular Component that were implanted in Plaintiff on or about December 13, 2005 and August 23, 2005.

42. At all times relevant hereto, the Wright Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without a substantial change in the condition in which it was sold.

43. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

44. At all times relevant hereto, the Wright Hip System was dangerous, unsafe and defective in manufacture. Such defects included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

45. Plaintiff is informed and believes, and thereupon alleges, that the Wright Hip System implanted in Plaintiff was defectively manufactured because it differed from the manufacturer's design and specifications, or from typical units of the same product line.

46. As a direct, legal, proximate and producing result of the defective manufacture of the Wright Hip System implanted in Plaintiff, Plaintiff sustained injuries as set forth above.

47. The dangerous, unsafe and defective manufacturing of the Wright Hip System implanted in Plaintiff was a substantial factor in causing Plaintiff's injuries as set forth above.

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY – FAILURE TO WARN
**(Against All Defendants)**

48. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 47 above, inclusive, as though fully set forth herein.

49. The Wright Hip System was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert the medical community and patients, including Plaintiff and Plaintiff's healthcare providers, to the dangerous risks associated with the Wright Hip System when used for its intended and reasonably foreseeable purpose. The dangers and risks included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a

patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

50. At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

51. Plaintiff and Plaintiff's healthcare providers could not have discovered any defect in the Wright Hip System through the exercise of due care.

52. Defendants knew or should have known, by the use of scientific knowledge available before, at and after the time of manufacture, distribution and sale of the Wright Hip System, of potential risks and side effects associated with the Wright Hip System. Defendants knew or should have known of the defective condition, characteristics, and risks associated with said product, as previously set forth herein.

53. The warnings and instructions provided with the Wright Hip System by Defendants did not adequately warn of the potential risks and side effects of the Wright Hip System, which risks were known or scientifically knowable to Defendants.

54. Defendants had a continuing duty to warn the medical community and public, including Plaintiff and Plaintiff's healthcare providers, of the potential risks and increased failure rate associated with the Wright Hip System.

55. As a direct, legal, proximate and producing result of Defendants' failure to warn, Plaintiff sustained injuries as set forth above.

56. Defendants' failure to adequately warn of the potential risks and side effects of the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**THIRD CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – UNREASONABLY DANGEROUS DESIGN**
**(Against All Defendants)**

57. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 56 above, inclusive, as though fully set forth herein.

58.     At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System, Acetabular Component that were implanted in Plaintiff on or about December 13, 2005 and August 23, 2005.

59.     At all times relevant hereto, the Wright Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff and Plaintiff's physician, without a substantial change in the condition in which it was sold.

60.     At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the Wright Hip System for its intended or reasonably foreseeable purpose.

61.     At all times relevant hereto, the Wright Hip System was dangerous, unsafe and defective in design.  Such defects included, but were not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

62.     Defendants knew or should have known of the unreasonably dangerous and serious risks associated with the design of the Wright Hip System.  Such risks were scientifically knowable to Defendants.  However, Defendants performed inadequate evaluation and testing of the Wright Hip System design.

63.     As a direct, legal, proximate and producing result of the defective manufacture of the Wright Hip System implanted in Plaintiff, Plaintiff sustained injuries as set forth above.

64.     Defendants' defective design and failure to adequately test the safety of the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Defendants)**

65.     Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 64 above, inclusive, as though fully set forth herein.

66. At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed and promoted the Wright Hip System for implantation into customers, such as Plaintiff, by physicians and surgeons in the U.S.

67. At all times relevant hereto, Defendants knew or should have known that the novel design of the Wright Hip System necessitated clinical trials and other pre-marketing evaluations of risk and efficacy. Such testing would have revealed the increased risk of failure and complications associated with the Wright Hip System. A reasonable manufacturer under the same or similar circumstances would have conducted additional testing and evaluation of the Wright Hip System's safety and performance prior to placing the Wright Hip System into the stream of commerce.

68. At all times relevant hereto, Defendants knew or should have known of the serious complications and high failure rate associated with the Wright Hip System. Despite receiving hundreds of reports of serious complications from healthcare providers, Defendants chose (1) not to perform any additional testing of the Wright Hip System; (2) not to investigate other potential causes of the reported complications; (3) suspend sales or distribution; or (4) warn physicians and patients of the propensity of the Wright Hip System's propensity to detach, disconnect, create metallic debris and/or loosen from the acetabulum.

69. As a direct, legal, proximate and producing cause of Defendants' negligent design, testing, manufacturing, marketing, selling, and promoting the Wright Hip System, Plaintiff suffered injuries as set forth above.

70. Defendants' negligent design, testing, manufacturing, marketing, selling, and promoting the Wright Hip System, was a substantial factor in causing Plaintiff's injuries as set forth above.

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE – FAILURE TO RECALL/RETROFIT**
**(Against All Defendants)**

71. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 70 above, inclusive, as though fully set forth herein.

72. At all times relevant hereto, Defendants knew or should have known that the design of the Wright Hip System and its warnings were dangerous or were likely to be dangerous when used in an intended or reasonably foreseeable manner.

73. Despite the severity and number of complaints Defendants received, Defendants failed to recall, retrofit, or warn patients or physicians about the danger of the Wright Hip System.

74. Reasonable manufacturers, distributors, sellers, promoters, and designers under the same or similar circumstances would have recalled the Wright Hip System.

75. As a direct, legal, proximate and producing result of Defendants' failure to recall the Wright Hip System, Plaintiff suffered injuries as set forth above.

76. Defendants' failure to recall the Wright Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

**SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(Against All Defendants)**

77. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 76 above, inclusive, as though fully set forth herein.

78. Through sales representatives, consultants, printed materials, and other advertising and marketing efforts, Defendants made express representations to healthcare providers and patients, including Plaintiff and Plaintiff's healthcare providers, about the safety and efficacy of the Wright Hip System.

79. The Wright Hip System does not conform to the express representations made by Defendants through sales representatives, consultants, printed materials, and other advertising and marketing efforts.

80. Defendants' conduct in this manner was a contributing cause of injuries and damages suffered by Plaintiff.

**SEVENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(Against All Defendants)**

81. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 80 above, inclusive, as though fully set forth herein.

82. At the time Defendants designed, tested, marketed, promoted, and sold the Wright Hip System, Defendants knew of the intended, reasonably foreseeable uses and impliedly warranted the Wright Hip System to be of merchantable quality and safe and fit for such use.

83. Plaintiff and Plaintiff's healthcare providers, in deciding to use the Wright Hip System as part of Plaintiff's total hip replacement, reasonably relied upon the skill and judgment of Defendants as to whether the Wright Hip System was of merchantable quality and safe and fit for its intended or reasonably foreseeable use.

84. In breach of the implied warranty given by Defendants, the Wright Hip System was not of merchantable quality or safe or fit for its intended or reasonably foreseeable use because the product was unmerchantable, in a defective condition and unreasonably dangerous and unfit for its intended use. The unmerchantable, defective, and unreasonably dangerous nature of the Wright Hip System included, but was not limited to, a tendency to (a) detach, disconnect and/or loosen from a patient's acetabulum, (b) generate dangerous and harmful metal debris in the patient's body; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery.

85. As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiff suffered injuries as set forth above.

**EIGHTH CAUSE OF ACTION**
**FRAUDULENT MISREPRESENTATION**
**(Against All Defendants)**

86. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 85 above, inclusive, as though fully set forth herein.

87.     The Defendants falsely and fraudulently represented to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, that the Wright Hip System had been properly tested and was safe and effective for its indicated use.

88.     The representations made by Defendants to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, regarding the safety and performance of the Wright Hip System were, in fact, false.

89.     Defendants knew or should have known that the Wright Hip System had not been sufficiently tested, was defectively designed, and lacked adequate warnings and instructions.

90.     Defendants knew or should have known that the Wright Hip System could and would cause severe and grievous injury to users of said product, and that the Wright Hip System's inherent dangers exceeded any purported, inaccurate, and/or downplayed warnings.

91.     When said representations were made by Defendants, Defendants knew those representations to be false and exhibited a willful, wanton and reckless disregard for the truth of said representations.

92.     Said representations were made by Defendants with the intent to defraud and deceive Plaintiff, Plaintiff's healthcare providers, the medical community, and the general public. Defendants intended said representations to induce Plaintiff, Plaintiff's healthcare providers, the medical community and the general public, to recommend, implant, and/or purchase the Wright Hip System for use as part of total hip replacement surgery.  Defendants' actions evinced a callous, reckless, willful, depraved indifference to the health, safety, and welfare of Plaintiff.

93.     At all relevant times, Plaintiff and Plaintiff's healthcare providers were unaware of the falsity of said representations and reasonably believed them to be true.

94.     In reliance upon Defendants' representations, Plaintiff was induced and did use the Wright Hip System, thereby sustaining severe and permanent personal injuries, and is now at an increased risk of sustaining further severe and permanent personal injuries in the future.

95.     Defendants brought the Wright Hip System to the market, and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

96. As a direct, legal, proximate and producing result of Defendants' false representations, Plaintiff suffered the injuries set forth herein.

**NINTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(Against All Defendants)**

97. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 96 above, inclusive, as though fully set forth herein.

98. Defendants knew their representations were false or recklessly disregarded the truth of said representations.

99. In representations to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, Defendants omitted, concealed or suppressed material information regarding the safety and performance of the Wright Hip System, including, but not limited to:

(a) the Wright Hip System was not as safe as other available hip implant devices;

(b) the Wright Hip System had an unacceptably high rate of failures requiring revision surgery;

(c) the safety and performance of the Wright Hip System was not adequately tested and/or known by Defendants;

patients implanted with the Wright Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip implant devices;

(d) the Wright Hip System was designed, manufactured, marketed, promoted, distributed and sold negligently, defectively, and/or improperly;

(e) the design of the Wright Hip System increased the wear between the femoral component and the acetabular component, as compared to other hip implant products;

(f) metal corrosion was more likely to occur, and would occur with greater severity, as compared to other hip replacement products;

(g) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper surgical implantation was substantially less likely to occur;

(h) metal ion debris would be released into the patient's body; and

(i) safer alternatives were available.

100. Defendants purposefully downplayed and understated the serious nature of the risks associated with the use of the Wright Hip System in order to increase and sustain sales.

101. Defendants had sole access to material facts regarding the safety and performance of the Wright Hip System. Defendants knew Plaintiff and Plaintiff's healthcare providers and/or the FDA had no way to determine the truth behind Defendants' concealment, omission and suppression of material facts as set forth herein.

102. Plaintiff and Plaintiff's healthcare providers relied on Defendants' incomplete and inaccurate representations as to the safety and performance of the Wright Hip System when selecting, recommending, and implanting the Wright Hip System.

103. As a direct, legal, proximate and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

**TENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against All Defendants)**

104. Plaintiff repeats, re-alleges and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 103 above, inclusive, as though fully set forth herein.

105. Defendants had a duty to truthfully represent to the medical community, and to Plaintiff, Plaintiff's healthcare providers, and the FDA, that the Wright Hip System had been properly tested and found to be safe and effective for its intended use.

106.     Defendants knew or should have known the representations regarding the safety and performance of the Wright Hip System were, in fact, false.

107.     Defendants failed to exercise ordinary care in determining the truth or falsity of their representations, and by misrepresenting the safety and performance of the Wright Hip System.

108.     Defendants breached their duty to present truthful representations by knowingly, or by want of ordinary care, misrepresenting the safety and performance of the Wright Hip System.

109.     As a direct, legal, proximate and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and/or severally, as follows:

1.     For general damages for personal injuries to Plaintiff, according to proof;

2.     For all past, current, and future medical and incidental expenses, according to proof;

3.     For all loss of earnings, present and future, and loss of earning capacity, according to proof;

4.     For punitive and/or exemplary damages in an amount sufficient to punish Defendants and deter similar conduct in the future, according to proof;

5.     For prejudgment interest, as provided by law;

6.     For reasonable attorneys' fees;

7.     For costs of litigation; and

8.     For such other and further relief as this Court may deem just and proper.

Dated: February 27, 2012

PHILLIPS WEBSTER

By: ______________________

Lowell W. Finson (CA Bar 275586)
lowell@justiceforyou.com
PHILLIPS WEBSTER
CITIGROUP CENTER BUILDING
444 South Flower Street, 33rd Floor
Los Angeles, CA 90071
Tel: (213) 808-6748
Fax: (213) 330-0298

Attorneys for Plaintiff
Gregory A. Jones

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

Dated: February 27, 2012

PHILLIPS WEBSTER

By: ______________________

Lowell W. Finson (CA Bar 275586)
lowell@justiceforyou.com
PHILLIPS WEBSTER
CITIGROUP CENTER BUILDING
444 South Flower Street, 33rd Floor
Los Angeles, CA 90071
Tel: (213) 808-6748
Fax: (213) 330-0298

Attorneys for Plaintiff
Gregory A. Jones

# EXHIBIT 7

Joseph H. Fagundes, Esq. #95264
Thomas M. Gray, Esq. #265212
CASSEL MALM FAGUNDES
6 El Dorado South, Suite 315
Stockton, CA 95202
Telephone: (209) 870-7900
Fax: (209) 870-7922

Attorneys for Plaintiffs
GREGORY K. TUCKER and REBECCA TUCKER

SUMMONS ISSUED
FILED
San Francisco County Superior Court

MAY - 6 2011

CLERK OF THE COURT
BY: DENNIS TOYAMA
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO

GREGORY K. TUCKER and REBECCA TUCKER,

Plaintiff,

vs.

WRIGHT MEDICAL TECHNOLOGY, INC., WRIGHT MEDICAL GROUP, INC., and DOES 1 through 100 inclusive,

Defendants.

Case No. CGC-11-510770

COMPLAINT FOR DAMAGES

FILE BY FAX

Plaintiffs complain of defendants and alleges:

1. Defendant WRIGHT MEDICAL TECHNOLOGY, INC. is Delaware corporation and maintains its principal place of business in Tennessee. Defendant WRIGHT MEDICAL TECHNOLOY, INC., is registered with the California Secretary of State as qualified to do business within California and maintains a California agent for service of process.

2. Defendants WRIGHT MEDICAL GROUP, INC., is Delaware corporation and maintains its principal place of business in Tennessee. Defendant WRIGHT MEDICAL GROUP, INC., is not registered with the California Secretary of State.

3. Plaintiffs are ignorant of the true names and capacities of defendants sued in the complaint as DOES 1-100, inclusive, and therefore sues these defendants by these fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

Plaintiffs are informed and believe and allege on this information and belief that each of the fictitiously named defendants is negligently responsible in some manner for the occurrences alleged in this complaint, and that plaintiffs' injuries as alleged in this complaint were proximately caused by that negligence.

4. Plaintiffs are informed and believe that on this information and belief allege that at all times mentioned in this complaint, each of the defendants, including each of the DOE defendants, was the agent and employee of each of the remaining defendants, and in so doing the things alleged in this complaint, was acting within the course and scope of this agency and employment.

5. On or about March 20, 2006, Plaintiff GREGORY K. TUCKER had total hip replacement surgery performed on his right hip by Kevin J. Bozic, M.D., at the University of California - San Francisco ("UCSF") Medical Center.

6. During the surgery performed on or about March 20, 2006, Defendants' PROFEMUR hip replacement implant was implanted in Plaintiff GREGORY K. TUCKER's right hip.

7. On or about May 7, 2010, Plaintiff GREGORY K. TUCKER was walking outside his home when Defendants' PROFEMUR hip implant catastrophically failed without warning resulting in total immobility of the right lower extremity.

8. On or about May 7, 2010, Plaintiff REBECCA TUCKER was with her husband, Plaintiff GREGORY K. TUCKER, when the catastrophic failure of the PROFEMUR hip implant occurred and rushed her husband to the emergency room.

9. On or about May 11, 2010, Plaintiff GREGORY K. TUCKER meet with orthopaedic surgeon, Dr. Kevin J. Bozic at UCSF Medical Center. Dr. Bozic scheduled emergency surgery for Monday, May 17, 2010.

10. On or about May 17, 2010, Plaintiff GREGORY K. TUCKER underwent emergency surgery to remove the failed PROFEMUR hip implant. The operation was performed by Dr. Bozic at the UCSF Medical Center.

///

///

Cassel Malm Fagundes
6 S. El Dorado St., Suite 315
Stockton, CA 95202
(209) 870-7900

**FIRST CAUSE OF ACTION**
**(STRICT LIABILITY)**

11. Plaintiffs hereby reallege and incorporate as though set forth in full paragraphs 1-10 as previously pled.

12. At all times it is believed that Defendants WRIGHT MEDICAL TECHNOLOGY, INC., WRIGHT MEDICAL GROUP, INC., and DOES 1-100 have been the manufacturer and distributor of the PROFEMUR series of hip replacement implants, including the PROFEMUR Z.

13. At all times from implantation to the catastrophic failure of the hip implant, the hip implant was used for its intended purpose by Plaintiff.

14. Plaintiff further alleges that Defendants', and each of them, product was defective when marketed as a result of a manufacturing defect, inadequate warnings and that the product fell well below the expectations of medical professionals and hip replacement patients.

15. As a result of the Defendants', and each of them, product being defective, Plaintiff suffered immense physical trauma. Plaintiff GREGORY K. TUCKER's emergency surgery required a cadaver bone to be implanted in him, has resulted in a case of Gout, left plaintiff with a 14" surgical incision scar, and plaintiff continues to have ongoing severe pain and limping that he will likely be with the rest of his life.

16. Further as a result of Defendants', and each of them, product being defective, Plaintiff GREGORY K. TUCKER suffered immense emotional trauma and has been diagnosed as clinically depressed and suffering from excessive anxiety. Plaintiff GREGORY TUCKER is currently under the care of professionals, participating in counseling sessions and has been prescribed anti-depressant medication.

17. Further as a proximate result of the catastrophic failure of Defendants', and each of them, defective product, the plaintiff GREGORY K. TUCKER required emergency medical attention and immediate invasive surgery that employed physicians and surgeons to examine, operate, treat and care for him and did incur hospital, medical and incidental expenses, and will continue to incur further medical treatment expenses for the care and treatment of his injuries. The exact amount of such expenses is unknown to plaintiff at this time and plaintiff will ask leave to

[illegible] 4 S. El Dorado St., Suite 315 Stockton, CA 95202 (209) 870-7900

amend his complaint to set forth the exact amount thereof when the same is ascertained.

18. Additionally, as a result of the catastrophic failure of Defendants', and each of them, defective product and the resulting corrective surgery, plaintiff GREGORY K. TUCKER, had to dramatically adjust his ongoing treatment for his severe allergic reactions including but not limited to fungus, molds, and pollens. Mr. TUCKER requires weekly medical injections to mitigate the affects of the allergies and during the surgical recovery period had to temporarily discontinue the injections, which has adversely impacted his allergic recovery and immunity buildup.

19. As a further and proximate result of said defective product of the defendants, and each of them, and because of plaintiff's injuries, the plaintiff has been, and will continue to be, prevented from attending to his occupation, as fully as before. The amount of earnings which will be lost to plaintiff is unknown at this time and plaintiff will ask leave to amend this complaint the set forth exact amount when the same is ascertained.

20. As a further and proximate result of said defective product of the defendants, and each of them, and because of plaintiff's injuries, the plaintiff has been, and will continue to be, prevented from attending to his part-time rancher duties on his 23 acres. Mr. TUCKER has been unable to take care of the livestock and to maintain the property and its buildings, fences, and pond.

**SECOND CAUSE OF ACTION**
**(NEGLIGENCE - DESIGN)**

21. Plaintiffs hereby reallege and incorporate as though set forth in full paragraphs 1-20 as previously pled.

22. Plaintiff alleges and believes that Defendants', and each of them, were careless and unreasonable in the design of the PROFEMUR model of hip replacement implants and that Defendants knew or should have known about the likelihood and severity of the potential harm of the PROFEMUR designed hip replacement device.

23. As a result of the Defendants' negligence, and each of them, Plaintiff suffered immense physical trauma. Plaintiff GREGORY K. TUCKER's emergency surgery required a cadaver bone to be implanted in him, has resulted in a case of Gout, left plaintiff with a 14" surgical

Cassel Malm Fagundes
6 S. El Dorado St., Suite 315
Stockton, CA 95202
(209) 870-3900

incision scar, and plaintiff continues to have ongoing severe pain and limping that he will likely be with the rest of his life.

24. Further as a result of Defendants', and each of them, negligence, Plaintiff GREGORY K. TUCKER suffered immense emotional trauma and has also been diagnosed as clinically depressed and suffering from excessive anxiety. Plaintiff GREGORY TUCKER is currently under the care of professionals, participating in counseling sessions and has been prescribed anti-depressant medication.

25. As a further and proximate result of the catastrophic failure of Defendants', and each of them, negligently designed product, the plaintiff GREGORY K. TUCKER required emergency medical attention and immediate invasive surgery that employed physicians and surgeons to examine, operate, treat and care for him and did incur hospital, medical and incidental expenses, and will continue to incur further medical treatment expenses for the care and treatment of his injuries. The exact amount of such expenses is unknown to plaintiff at this time and plaintiff will ask leave to amend his complaint to set forth the exact amount thereof when the same is ascertained.

26. Additionally, as a result of the catastrophic failure due to Defendants', and each of them, negligence and the resulting necessary corrective surgery, plaintiff GREGORY K. TUCKER, had to dramatically adjust his ongoing treatment for his severe allergic reactions including but not limited to fungus, molds, and pollens. Mr. TUCKER requires weekly medical injections to mitigate the affects of the allergies and during the surgical recovery period had to temporarily discontinue the injections, which has adversely impacted his allergic recovery and immunity buildup.

27. As proximate result of Defendants' negligence, and each of them, and because of plaintiff's injuries, the plaintiff has been, and will continue to be, prevented from attending to his occupation, as fully as before. The amount of earnings which will be lost to plaintiff is unknown at this time and plaintiff will ask leave to amend this complaint the set forth exact amount when the same is ascertained.

///

///

Carrel-Malm Facchini
6 S. El Dorado St., Suite 315
Stockton, CA 95202
(209) 870-7900

28. As a further and proximate result defendants' negligence, and each of them, and because of plaintiff's injuries, the plaintiff has been, and will continue to be, prevented from attending to his part-time rancher duties on his 23 acres. Mr. TUCKER has been unable to take care of the livestock and to maintain the property and its buildings, fences, and pond.

**THIRD CAUSE OF ACTION**
**(NEGLIGENCE - FAILURE TO WARN)**

29. Plaintiffs hereby reallege and incorporate as though set forth in full paragraphs 1-28 as previously pled.

30. Plaintiff alleges and believes that defendants, and each of them, failed to warn the plaintiff's physicians, doctors, and/or surgeons about the productions dangerous condition or facts about the product that make the product likely to be dangerous.

31. As a result of the Defendants', and each of them, negligence, Plaintiff suffered immense physical trauma. Plaintiff GREGORY K. TUCKER's emergency surgery required a cadaver bone to be implanted in him, has resulted in a case of Gout, left plaintiff with a 14" surgical incision scar, and plaintiff continues to have ongoing severe pain and limping that he will likely be with the rest of his life.

32. Further as a result of Defendants' negligence, and each of them, Plaintiff GREGORY K. TUCKER suffered immense emotional trauma and has also been diagnosed as clinically depressed and suffering from excessive anxiety. Plaintiff GREGORY TUCKER is currently under the care of professionals, participating in counseling sessions and been prescribed anti-depressant medication.

33. As a further and proximate result of the catastrophic failure of Defendants', and each of them, failure to warn about the dangers of their product, the plaintiff GREGORY K. TUCKER required emergency medical attention and immediate invasive surgery that employed physicians and surgeons to examine, operate, treat and care for him and did incur hospital, medical and incidental expenses, and will continue to incur further medical treatment expenses for the care and treatment of his injuries. The exact amount of such expenses is unknown to plaintiff at this time and plaintiff will

Carmel Malm Facchini
6 S. El Dorado St., Suite 315
Stockton, CA 95202
(209) 870-7900

ask leave to amend his complaint to set forth the exact amount thereof when the same is ascertained.

34. Additionally, as a result of the catastrophic failure due to Defendants' negligence, and each of them, the resulting necessary corrective surgery, plaintiff GREGORY K. TUCKER, had to dramatically adjust his ongoing treatment for his severe allergic reactions including but not limited to fungus, molds, and pollens. Mr. TUCKER requires weekly medical injections to mitigate the affects of the allergies and during the surgical recovery period had to temporarily discontinue the injections, which has adversely impacted his allergic recovery and immunity buildup.

35. As proximate result of defendants' negligence, and each of them, and because of plaintiff's injuries, the plaintiff has been, and will continue to be, prevented from attending to his occupation, as fully as before. The amount of earnings which will be lost to plaintiff is unknown at this time and plaintiff will ask leave to amend this complaint the set forth exact amount when the same is ascertained.

36. As a further and proximate result defendants' negligence, and each of them, and because of plaintiff's injuries, the plaintiff has been, and will continue to be, prevented from attending to his part-time rancher duties on his 23 acres. Mr. TUCKER has been unable to take care of the livestock and to maintain the property and its buildings, fences, and pond.

**FOURTH CAUSE OF ACTION**
**(REBECCA TUCKER FOR LOSS OF CONSORTIUM)**

37. Plaintiffs hereby reallege and incorporate as though set forth in full paragraphs 1-36 as previously pled.

38. As a proximate result of said negligent conduct of the defendants, and each of them, plaintiff REBECCA TUCKER has been injured by the loss of her husband's companionship and services, including, the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support all of which injuries have caused and continue to cause plaintiff mental pain and suffering.

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as follows:

1. General damages according to proof;

Carmel Mann Facundes
4 S. El Dorado St., Suite 315
Stockton, CA 95202
(209) 870-7900

2. Special damages for all medical, hospitalization, and incidental expenses according to proof;

3. Lost wages according to proof;

4. For costs of suit incurred herein; and

5. Further relief of the Court as the Court deems proper under the premises.

Dated: May 5, 2011

CASSEL MALM FAGUNDES

By: Joseph Fagundes for TKC

Joseph H. Fagundes
Attorneys for Plaintiffs
GREGORY K. TUCKER and REBECCA TUCKER

Cassel Malm Fagundes
6 E. El Dorado St., Suite 315
Stockton, CA 95202
(209) 870-7900

# EXHIBIT 8

Orden 10-20-2011

RANDALL RICH (SBN 137312)
LAW OFFICES OF RANDALL RICH
PO Box 66-1796
Los Angeles, California 90066
Telephone: (310) 739-2222
Facsimile: (310) 745-2880

**Attorney for Plaintiffs Inga Harris and Lowell Harris**

FILED
LOS ANGELES SUPERIOR COURT
OCT 20 2011
JOHN A. CLARKE, CLERK
BY RAUL SANCHEZ, DEPUTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES**

Inga Harris, an Individual;
Lowell Harris, an Individual

Plaintiffs,

v.

Wright Medical Technology, Inc; Brad Penenberg; Brad Penenberg, M.D., A Professional Corporation; W Seth Bolling; W. Seth Bolling, M.D., Inc.; Olympia Medical Center, Inc., a California Corporation; and DOES 1-80, inclusive.

Defendants

Case No. ~~BC456818~~ BC457818 D-13

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**1) Fraud;**
**2) Professional Negligence;**
**3) Elder Abuse;**
**4) Negligence;**
**5) Design Defect - Strict Liability;**
**6) Failure to Warn - Strict Liability;**
**7) Failure to Recall;**
**8) Breach of Implied Warranty of Fitness;**
**9) Intention Infliction of Emotional Distress;**
**10) Loss of Consortium**

**GENERAL ALLEGATIONS AS TO ALL CAUSES OF ACTION**

1. Plaintiff Inga Harris ("Plaintiff" or "Mrs. Harris") is an individual and resident of the County of Los Angeles, State of California. Lowell Harris ("Mr. Harris") is the spouse of Inga Harris and is also a resident of the County of Los Angeles, State of California. Plaintiffs are over seventy years old within the meaning of California Civil Procedure Code Sec. 36. At all times relevant herein, Plaintiffs are informed and believe that Defendants are residents of the State of California, and/or doing business in the State of California and are licensed to do business in California.

2. The true names of DOE defendants 1-80, whether individual, corporate or otherwise are unknown to Plaintiff and are sued under fictitious names pursuant to California Code of Civil

10/28/11

Procedure §474. Plaintiff will seek leave of the court to amend the complaint once their identities are ascertained.

3. Plaintiffs are informed and believe that each defendant, including all DOE Defendants, are jointly and severally liable for each act, omission and event, as well as the resulting damages.

4. Defendant Brad Penenberg, MD is a physician and surgeon licensed to practice medicine under California law and he operates Brad L. Penenberg, MD, a Professional Corporation ("Penenberg").

5. Defendant W. Seth Bolling, MD is a physician and surgeon licensed to practice medicine under California law and he operates W. Seth Bolling, MD, Inc. ("Bolling").

6. Defendants Bolling and Penenberg operate a medical practice group. Penenberg and Bolling use the same professional office space, have the same custodian of medical and radiology records, share websites, among other things indicative of a practice group.

7. DOES 1-20 are agents, employees and representatives of Defendants Penenberg and Bolling in both their individual capacities and as a part of each Defendant's professional corporations and practice group.

8. Wright Medical Technology, Inc. ("WMT") is a Delaware Corporation that, among other things, designs, manufactures, and sells medical instruments, devices and systems and is a wholly owned subsidiary of Wright Medical Group, Inc., a Delaware corporation. DOES 21-40 are agents, employees and representatives of Defendant WMT.

9. Olympia Medical Center ("OMC") and DOES 41-60 operate a doctor owned acute care medical surgical facility in Los Angeles, California. Does 41-60 are agents, employees and representatives of Defendant Olympia Medical Center.

10. On information and belief, Plaintiff alleges that at all times relevant to the complaint Penenberg had a management role in WMT. Penenberg received remuneration from WMT for a wide variety of services, including but not limited to medical device and instrument research and development, obtaining patents on behalf of WMT, consulting on packaging and labeling, speaking, lecturing, teaching, writing, advertising and for other acts according to proof. As a result of these wide-ranging arrangements, as well as a result of his management role in WMT, Penenberg was intimately familiar with WMT products, including the *Conserve* line of hip products. Similarly, Bolling had a financial relationship with WMT, including contracts to speak, lecture, teach, write, advertise, and for other acts according to proof.

11. In early 2005, Mrs. Harris saw her primary care physician, who informed her that because of her ongoing pain and difficult ambulation, she needed to consult an orthopedic surgeon to discuss the possibility of hip surgery. The physician referred Mrs. Harris to a list of surgeons, some of whom Mrs. Harris interviewed, including Penenberg. He told her that he recommended total hip replacement, that her ambulation would improve and her pain would diminish. He failed to disclose any financial relationship with Wright Medical. He failed to disclose that equivalent devices made by companies with whom he had no financial relationship, could have been used instead of the WMT *Conserve* device. He failed to tell her of any risks associated with the *Conserve* device he selected for Plaintiff.

12. Mrs. Harris was justified in relying on advice from Penenberg because she has no medical expertise, and had no reason to doubt the veracity of his statements and recommendations. He was recommended to her and he presented himself as knowledgable about her condition and an appropriate course of treatment. Penenberg signed and dated the Physisician Documentation of Informed Consent and forwarded it to OMC.

13. On or about June 29, 2005, Penenberg performed total left side hip replacement on Mrs. Harris at OMC. Penenberg implanted WMT components and devices in her hip. Mrs. Harris is informed and believes that the implants he used and implanted included, but were not limited to, the WMT *Conserve Plus Cup*, shell size 56mm, and *Conserve Total Femoral Head with BFH Technology*, 50mm. ("Implants"). She was not shown and did not view or examine the implants prior to surgery. The implants were a metal-on-metal device. The implant consists of components made of metals including cobalt and chromium. These metal components are either in direct or very near contact each other once implanted.

14. Mrs. Harris was informed the surgery was a success by Penenberg and he examined her on several occasions after the surgery. Plaintiff advised Penenberg of continuing difficulties and pain in the repaired hip. Over time, Penenberg took x-rays and recommended physical therapy and medication, neither of which markedly improved her condition. Mrs. Harris continued to experience pain, discomfort and difficulty in moving, which increased rather than decreased over the next couple of years. Penenberg never took blood tests.

15. In February 2008, Mrs. Harris fell and injured her leg, for which she saw Bolling in the emergency room. She also described for him her continuing hip pain. Because Bolling shared offices and records with Penenberg, she continued to be his patient. Over time, she complained to Bolling of the following, ongoing and worsening conditions: intermittent groin pain, clicking

in the repaired hip, inability to put on socks or cross her legs, inability to sleep comfortably, shortness of breath, stiffness from sitting and difficulty in rising from a seated position, and other difficulties. Mrs. Harris was seen by Bolling on at least one dozen occasions and was x-rayed by him on at least ten occasions. Bolling prescribed for her a series of epidurals over the course of a year, but they only provided temporary relief. In March 2010, Bolling suggested that Mrs. Harris' condition was a result of spinal stenosis and other factors, and not a result of the implants. He then suggested she see a spine specialist. Despite Bolling's knowledge that Plaintiff's hip was metal-on-metal, he never informed her of simple serum, erthrocyte or urine tests to monitor for chromium and cobalt levels.

16. Plaintiff was seen by her primary care physician in April 2010. After reviewing her history, symptoms and observing her condition, that doctor referred Mrs. Harris back to Penenberg. Penenberg then ordered blood tests specifically testing for cobalt and chromium, and ordered needle aspirations to check for infection near the implant site.

17. The blood test results showed a cobalt level of 10.4 mcg/L and a chromium level of 3.6 mcg/L. Both results were well in excess of standards promulgated by the American Conference of Governmental Industrial Hygienists.

18. As a result of the high cobalt and chromium levels, Penenberg notified Plaintiff of the need for revision surgery to remove the implant.

19. Penenberg removed the implant on June 6, 2010. At the same time, a new Zimmer *Implex* non-metal device was implanted, which is a product of a different manufacturer. That prosthesis has improved Mrs. Harris's condition. Penenberg's post-surgical report found a "Loose *Conserve Plus* acetabular component."

**FIRST CAUSE OF ACTION, FOR FRAUD, ON BEHALF OF PLAINTIFF INGA HARRIS AS TO DEFENDANTS WMT, PENENBERG AND BOLLING**

20. Plaintiff incorporates each and every allegation made in Paragraphs 1-19 as though fully set forth herein.

21. Plaintiff is informed and believes, that Penenberg is and was at all times relevant one of WMT's chief developers of medical techniques, instruments and devices, including the techniques, instruments and devices used in Plaintiff's surgery. A search of US Patent records showed that, beginning in 2003, Penenberg held several patents that were assigned to WMT. Information on the WMT website shows he received several hundred thousand of dollars compensation for royalties and other services and has received over $1.4 million since 2010.

This information contained on the website is reflected in Exhibit A, attached hereto and incorporated by reference. At the time of her original consultation with Penenberg, up through the time of the surgery for the removal of the defective implants and the implantation of the new device, Mrs. Harris was unaware of his relationship with WMT, and Penenberg failed to disclose to her that he had a financial interest in those same techniques, devices and instruments used on her and WMT.

22. Beginning at least as early as 2003, and prior to and while seeking FDA approval of the WMT products implanted in Mrs. Harris, and continuing to at least 2010, WMT sponsored and conducted several Canadian studies, tests and trials on their *Conserve* product line. The studies tests and trials also served as a laboratory for developing a technique using instruments Penenberg invented for what would later be marketed as WMT's PATH[1] surgical technique, a type of minimally invasive surgery that Penenberg used on Plaintiff. The PATH technique relied upon instruments developed by Penenberg to be used for implanting WMT devices, including the device Plaintiff received.

23. The results of those tests and trials show that there were some problems with technique and functionality as well as harm from chromimum and cobalt ions being released into the body. Penenberg, on behalf of and in conjunction withWMT, monitored the tests and trials, provided feedback and pursued patents to improve upon the instruments and technique. WMT sought approval for new devices specifically designed to reduce ion levels and improve clinical outcomes. Cinical trials for these devices began in Canada. The fact the *Conserve Plus* device Mrs. Harris received was causing metal ion harm was published in reports of the tests and trials and was known to Penenberg and WMT prior to Plaintiff's first surgery. Bolling also knew of the metal ion problems when he treated Plaintiff. He marketed *Conserve* products and WMT's trademarked surgical technique for WMT beginning as early as 2004 and had reviewed the *Conserve* clinical results as part of the marketing plan.

24. The device Plaintiff received is comprised of two components: A *Conserve Plus* Cup and a *Conserve Total Femoral* Head. WMT sought and obtained 510(k) approval (a partial approval) from the FDA, claiming the *Conserve Plus* Cup was substantially equivalent to predicate devices, and devoid of any defects or potential to cause harm to implant recipients. However, this was knowingly false information and an act in furtherance of a conspiracy to commit fraud.

[1] PATH means Percutaneously Assisted Total Hip Arthoplasty.

25. WMT sought 510(k) approval for the Head component one month prior to Plaintiff's surgery but did not obtain it until two months after her surgery occurred. That filing also contained false information regarding the Head component's safety and effectiveness.

26. Penenberg was a link in the marketing chain devised by WMT. WMT relied on Penenberg to perform surgeries, including Plaintiffs, for later advertising purposes. WMT advertised the PATH technique as being compatible with certain *Conserve* products. WMT encouraged and rewarded Penenberg for promoting their instruments, devices and technique to medical professionals and patients, one of whom was Mrs. Harris. Penenberg and Bolling actively and aggressively participated in WMT marketing. They traveled internationally to give promotional speeches, lecture and presented articles on the WMT website. On at least one occasion, they presented a paper indicating they were from Arlington, TN, the physical home of WMT.

27. The U.S. Attorney's Office conducted an investigation into WMT's business practices and in in 2007 served a subpoena on WMT seeking records evidencing a kickback scheme. The scheme involved illegally paying doctors and medical facilities to use WMT products instead of their competitors and other criminal actions. Less than four months after Plaintiff' surgery, the U.S. Attorney filed a criminal complaint against WMT for conspiracy to commit fraud. Additional allegations that WMT submitted false claims to Medicare were settled with the U.S. Attorney and WMT paid nearly $8 million dollars in fines and civil penalties. Plaintiff was one of the victims of the Defendants' conspiracy to commit fraud.

28. Prior to the initital surgery, OMC required plaintiff to initial a document acknowledging that patients using OMC facility have the right to know whether a doctor performing a procedure on them has any financial interest in any aspect of the procedure ("Exhibit B", attached hereto and incorporated by reference). At no time did Penenberg disclose to Mrs. Harris that he had a financial interest in the devices he implanted in her or the instruments he patented and assigned to WMT. At no time did Penenberg disclose to Plaintiff that he was, in fact an integral part of the overall design, production and marketing enterprise of WMT. At no time did Penenberg disclose to her that WMT was paying for a variety of services including advertising their products, instruments, devices and technique. At no time did he disclose to her that that the metal-on-metal configuration was new, that one of the implant components was not fully approved by the FDA and the other component had been submitted to, but not yet approved by the FDA. He failed to disclose that there were a variety of other substantially equivalent devices,

made of a variety of compositions, that could have been used as her implant. At no time did Penenberg disclose to Plaintiff that he was, in fact an integral part of the overall design, production and marketing enterprise of WMT. He did not disclose the devices he chose for implant were being clinically tested or the results and implications of the tests. At no time did he disclose to her that at the same time the devices were being implanted in her, he and WMT were designing and testing new technology to improve clinical outcomes and minimize the metal ion health problems in patients who, like Plaintiff, received the *Conserve Plus* implant. Plaintiff alleges these acts were committed in furtherance of the conspiracy to commit fraud.

29.     Mrs. Harris is also informed and believes that the WMT devices that Penenberg implanted in her were not obtained through the OMC ordering/purchasing procedures, but rather were brought by or delivered by Penenberg to the surgery, as Defendant OMC has no records indicating they ordered, purchased or billed for the implants Mrs. Harris received. In fact, the *Conserve* Head component of the implant had not been give pre-market approval by the FDA when implanted and was not commercially available.

30.     When Mrs. Harris sought help from Penenberg and Bolling following the first surgery, she presented with symptoms that were consistent with the problems revealed in the studies, trials and tests of which Penenberg and Bolling were already aware. WMT, Penenberg and Bolling all knew the *Conserve* product was defective and they knew of simple tests to determine blood ion levels. Nevertheless, they took steps to conceal this from Plaintiff. For literally years they failed to address Mrs. Harris' problems and failed to disclose to her that the implants might be defective and/or causing her additional harm, despite numerous doctor visits. She had no way of knowing that she was gradually being poisoned by metal ions being leached into her body. However, Penenberg and Bolling knew this was a known complication of the *Conserve* device, yet did nothing and said nothing. She had no way of knowing the devices implanted in her had been determined to be defective in other patients, yet Penenberg and Bolling knew this and did nothing and said nothing. Rather, Defendants prescribed treatments that did not help, and suggested her pain and suffering were caused by anything but the implants. On March 25, 2010, when Bolling saw Plaintiff in his office, he generated medical and billing records for that date that show that he examined Plaintiff and ordered only a left hip x-ray. However, he also took an x-ray of her pelvis, and subsequently made measurements and calculations upon it that demonstrated that the device had failed. He did not document the existence of the x-ray or his conclusions in the medical record. Bolling failed to inform Plaintiff that as a result of the

device failure she continued to be exposed to dangerous levels of cobalt and chromium ions and that she needed revision surgery. Instead Bolling recommended additional epidurals, referred Plaintiff to a spinal specialist and led her to believe her pain and condition were not because of a problem with the implant.

31. These were material facts that were concealed from Plaintiff and Plaintiff could not have discovered this information. Plaintiff alleges this conduct was fraudulent, reckless and evidenced a positive intent to do harm. WMT, Penenberg and Bolling conspired to defraud Plaintiff, and each of them aided and abetted the other in doing so. As a result, Plaintiff was harmed, continued to be harmed and Defendants are the direct and proximate cause of her harm.

32. Damages as a result of the harm are described more fully below in the section entitled "DAMAGES" and are incorporated herein as if fully put forth.

**SECOND CAUSE OF ACTION, PROFESSIONAL NEGLIGENCE ON BEHALF OF PLAINTIFF INGA HARRIS AS TO DEFENDANTS PENENBERG AND BOLLING**

33. Plaintiff incorporates each and every allegation made in Paragraphs 1-32 as though fully set forth herein.

34. Penenberg implanted the WMT hip in Plaintiff negligently and his negligence was a direct and proximate cause of Plaintiff's harm. The level of skill, knowledge and care in diagnosis and treatment of Plaintiff was below the standard of care that a reasonable doctor in a like position would exercise. Plaintiff would not have been injured but for the negligence of Penenberg and she was under his care and control at the time the negligence occurred. Moreover, nothing Plaintiff did caused or contributed to the events that harmed her. Penenberg did not provide sufficient information so that Plaintiff provided informed consent. He implanted a defective device in Plaintiff. He did not take appropriate medical intervention when Plaintiff presented with symptoms of a failed hip implant.

35. Defendants Penenberg and Bolling were negligent for failing to timely determine the WMT implant was not functioning properly and was causing Plaintiff harm. Defendant's negligence was a direct and proximate cause of Plaintiff's harm. The level of skill, knowledge and care in diagnosis and treatment of Plaintiff was below the standard of care.

36. Damages as a result of the harm are described more fully below in the section entitled "DAMAGES" and are incorporated herein as if fully put forth.

**THIRD CAUSE OF ACTION, ELDER ABUSE, ON BEHALF OF PLAINTIFF INGA HARRIS, AGAINST DEFENDANTS PENENBERG AND BOLLING**

37. Plaintiff incorporates each and every allegation made in Paragraphs 1-36 as though fully set forth herein.

38. Plaintiff alleges that she was neglected by Defendants in violation of the Elder Abuse and Dependent Adult Civil Protection Act. Plaintiff, Penenberg and Bolling were in a special relationship with Plaintiff who was over the age of 65 at all times relevant to the complaint. Defendants failed to use the degree of care that a reasonable person in the same situation would have used in providing medical care for the physical needs of Plaintiff as well as protecting her from health and safety hazards. Defendants withheld significant information from her regarding metal ion exposure and failed to timely acknowledge that the device was causing continuing harm to Plaintiff. A clinical study released in 2006 shows that well prior to Plaintiff's initial surgery WMT was developing newer technology to reduce the ion harm of the *Conserve Plus* device. Penenberg knew this and failed to disclose this to her or properly treat her, even after she presented with the symptoms associated with device failure. Plaintiff further alleges that clear and convincing evidence exists to prove Penenberg and Bolling acted with recklessness, fraud or malice in neglecting Plaintiff. As a result of their neglect, Plaintiff remained in imminent danger of the continued risk of serious physical harm from the Implants.

39. Penenberg and Bolling's conduct in hiding x-ray results and other acts caused mental suffering, including but not limited to confusion, or other forms of serious emotional distress that were brought about by deceptive acts performed and /or false or misleading statements maliciously made with intent to confuse plaintiff.

40. As a result of the conduct of Penenberg and Bolling, Plaintiff was harmed and Penenberg and Bolling's conduct was a substantial factor in causing her harm.

41. Damages as a result of the harm are described more fully below in the section entitled "DAMAGES" and are incorporated herein as if fully put forth.

**FOURTH CAUSE OF ACTION, PROFESSIONAL NEGLIGENCE, ON BEHALF OF PLAINTIFF INGA HARRIS, AS TO DEFENDANT OMC**

42. Plaintiff incorporates each and every allegation made in Paragraphs 1-41 as though fully set forth herein.

43. Plaintiff alleges Defendant OMC was negligent for failing to ensure compliance with state and federal patient rights provisions requiring informed consent to medical procedures. OMC policies and procedures governing Plaintiff's care failed to meet the duty of care to protect patient rights, ensure competence of the medical staff and require compliance with the ethics of their profession, and did not protect Plaintiff from unscrupulous conduct while under the care of OMC. OMC allowed Penenberg to implant a medical device into Plaintiff while circumventing any hospital purchasing protocols designed to comply with state and federal laws enacted to protect patient safety. OMC's conduct did not assure the achievement and maintenance of high standards of medical practice and patient care.

44. Plaintiff did not receive sufficient information about the course of treatment she was undergoing or the prospects for recovery so that her consent could be considered informed consent. Plaintiff was neither told that leaching metal ions was a significant health risk from the treatment, nor that other implants might be more appropriate or less risky. OMC took no steps to ensure that Defendant Penenberg was acting in the best interests of the patient in choosing an implant, free of any conflict of interest or in making proper disclosures to the patient. As a result, Plaintiff was not provided adequate medical care, she could not participate actively in decisions regarding her medical care and she was harmed.

45. After her discharge, OMC failed to provide Plaintiff with continuing care by giving notice to her once OMC learned metal-on-metal implants were causing heavy metal toxicity and associated health conditions.

46. As a result of OMC's negligence, Plaintiff has been harmed. Damages as a result of the harm are described more fully below in the section entitled "DAMAGES" and are incorporated herein as if fully put forth.

**FIFTH CAUSE OF ACTION, DESIGN DEFECT, STRICT LIABILITY, ON BEHALF OF PLAINTIFF INGA HARRIS, AS TO DEFENDANTS WMT AND PENENBERG**

47. Plaintiff incorporates each and every allegation made in Paragraphs 1-46 as though fully set forth herein.

48. WMT and Penenberg intended the implants they designed, manufactured, assembled and placed into the stream of commerce were to be used by members of the medical community for implantation and replacement. WMT and Penenberg knew and intended the implants would be

purchased by members of the public and used by those purchasers, including Plaintiff without inspection for defects.

49. WMT and Penenberg knew the implants they designed, manufactured, assembled and placed into the stream of commerce were defective and dangerous and, in clear disregard for public safety, placed them on the market without warning consumers of the defect. By withholding information they impliedly represented the device was safe for the intended purpose.

50. WMT and Penenberg were negligent for implanting a device that caused dangerous levels of cobalt and chromium to be relased into Plaintiff's blood system and tissues at and near the Implant site. Their negligence was a direct and proximate cause of Plaintiff's harm. Prior to the initial surgery, WMT and Penenberg knew of metal ion exposure from the metal-on-metal hip and associated health problems. Clinical test results of the *Conserve Plus* Implants showed metal ion exposure levels associated with known (and sometimes newly learned of) health problems and WMT and Penenberg took steps to alleviate the problem with their new generation of technology specifically designed to reduce the metal ion risks associated from the implants of the kind that Plaintiff received.

51. Given Penenberg's expertise regarding the implants, and the information regarding Plaintiff's condition including blood tests for cobalt and chromium levels and aspirations for possible infection at the implant site, one can reasonably conclude that Penenberg knew that the implants had failed, the design of the implants was causing Plaintiff harm, and that revision surgery and a replacement of the device was required.

52. Plaintiff contends that a medical device that becomes loose and causes harm through exposure to cobalt and chromium ions is defectively designed.

53. Plaintiff was harmed by a product distributed, manufactured and sold by Defendants WMT and Penenberg that was defectively designed and that did not include sufficient warning of potential safety hazards. The WMT hip implant design was defective because the implant did not perform as safely as an ordinary consumer would have expected it to perform. The ordinary consumer would not expect cobalt and chromium harm from an implanted artificial hip. The nature of the design was such that Plaintiff's ability to avoid injury was frustrated.

54. Plaintiff was harmed by the implant that she used in a reasonably foreseeable way and the implant's failure to perform safely was a substantial factor in causing Plaintiff's harm.

55. Damages as a result of the harm are described more fully below in the section entitled "DAMAGES" and are incorporated herein as if fully put forth.

**SIXTH CAUSE OF ACTION, FAILURE TO WARN AND STRICT LIABILITY,
ON BEHALF OF PLAINTIFF INGA HARRIS,
AGAINST DEFENDANTS WMT AND PENENBERG**

56.     Plaintiff incorporates each and every allegation made in Paragraphs 1- 55 as though fully set forth herein.

57.     Plaintiff alleges that the implant Plaintiff received lacked sufficient warning of potential risk, side effects or allergic reactions. The WMT implant is manufactured of cobalt, chromium and molybdenum. Cobalt and chromium have potential risks, side effects and allergic reactions that were known or knowable through scientific knowledge available at the time of manufacture, distribution or sale of the implant. The potential risks, side effects or allergic reactions presented a substantial danger to users of the implant and ordinary consumers would not have recognized the potential risks, side effects or allergic reactions. WMT and Penenberg failed to adequately warn or instruct of the potential risks, side effects or allergic reactions. Plaintiff was harmed by the implant in a reasonably foreseeable way and the lack of sufficient instructions or warnings was a substantial factor in causing Plaintiff's harm. Penenberg gave no warning or disclosure that included the potential risks, side effects, or allergic reactions that may follow the foreseeable use of the product. WMT has a continuing duty to warn physicians of the potential risks, side effects or allergic reactions as long as the product is in use.

58.     Damages as a result of the harm are described more fully below in the section entitled "DAMAGES" and are incorporated herein as if fully put forth.


**SEVENTH CAUSE OF ACTION, FAILURE TO RECALL,
ON BEHALF OF PLAINTIFF INGA HARRIS, AGAINST
DEFENDANTS WMT AND PENENBERG**

59.     Plaintiff incorporates each and every allegation made in Paragraphs 1- 58 as though fully set forth herein.

60.     Plaintiff alleges WMT and Penenberg were negligent because they failed to recall the defective hip implant. WMT and Penenberg knew or reasonably should have known that the implant was dangerous or was likely to be dangerous when either installed incorrectly or if it became loose, or when it was otherwise used in a reasonably foreseeable manner. WMT and Penenberg became aware of this defect prior to implant, ignored it and failed to recall or warn of the danger of the implant once the failure was obvious. This was true even though Plaintiff

had significant symptoms evidencing metal ion harm consistent with the clinical tests and trial rewults.

61. WMT submitted designs for 510(k) approval as "substantially equivalent" to the devices previously FDA approved. While the mechanical designs of the implants were substantially equivalent, the effects of the implants was far different. The devices, because of the material composition, created unintended consequences compromising the health of any person who, like Plaintiff, received a *Conserve Plus* implant.

62. A reasonable manufacturer, distributor or seller under the same or similar circumstances would have recalled the implant. Plaintiff was harmed and WMT and Penenberg failure to recall the implant was a substantial factor in causing Plaintiff's harm.

63. Damages as a result of the harm are described more fully below in the section entitled "DAMAGES" and are incorporated herein as if fully put forth.

## EIGHTH CAUSE OF ACTION, BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, ON BEHALF OF PLAINTIFF INGA HARRIS AGAINST DEFENDANTS WMT AND PENENBERG

64. Plaintiff incorporates each and every allegation made in Paragraphs 1-63 as though fully set forth herein.

65. At no time did WMT or Penenberg take steps to disclose or warn of the health effects of the *Conserve Plus* implant or advise recipients of simple serum, erthrocyte or urine testing to monitor for chromium and cobalt levels.

66. Plaintiff alleges that she was harmed by the implant in that it was not suitable for Plaintiff's intended purpose. WMT and Penenberg knew that Plaintiff was relying on their skill and judgment to select a device that was suitable for her particular purposes, improved ambulation and diminished pain, and she justifiably relied on WMT and Penenberg's skill and judgment.

67. The implant was not suitable for the particular intended purpose and Plaintiff took reasonable steps to notify WMT and Penenberg within a reasonable time that the implant was not suitable and was not functioning properly for its particular purpose.

68. Plaintiff was harmed and the failure of the implant to be suitable for its intended purpose was a substantial factor in causing Plaintiff's harm.

69. Damages as a result of the harm are described more fully below in the section entitled

"DAMAGES" and are incorporated herein as if fully put forth.

NINTH CAUSE OF ACTION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ON BEHALF OF PLAINTIFF INGA HARRIS AS TO DEFENDANTS WMT, PENENBERG AND BOLLING

70. Plaintiff incorporates each and every allegation made in Paragraphs 1- 69 as though fully set forth herein.

71. Plaintiff alleges that WMT, Penenberg and Bolling acted with intent to cause her harm and that their conduct was outrageous and WMT, Penenberg and Bolling acted with reckless disregard of the probability that Plaintiff would suffer emotional distress.

72. Plaintiff did suffer severe emotional distress and defendants are a substantial factor in causing her harm. Damages as a result of the harm are described more fully below in the section entitled "DAMAGES" and are incorporated herein as if fully put forth.

TENTH CAUSE OF ACTION, LOSS OF CONSORTIUM, ON BEHALF OF LOWELL HARRIS AGAINST ALL DEFENDANTS

73. Plaintiff Lowell Harris incorporates each and every allegation made in Paragraphs 1-72 as though fully set forth herein.

74. Plaintiff Lowell Harris alleges that as a result of the harm caused his wife, Plaintiff Inga Harris by the actions of all Defendants, he too has been harmed. He has lost her companionship and services, including the loss of love, companionship, comfort, care, assistance, protection, affection, society and moral support.

75. Damages as a result of the harm are described more fully below in the section entitled "DAMAGES" and are incorporated herein as if fully put forth.

VENUE

76. Venue as to each Defendant is proper in this judicial district. The implant surgery occurred in Los Angeles County and other actions and/or omissions leading to liability in this case occurred in the County of Los Angeles.

///

///

///

## DAMAGES

77. Plaintiff incorporates each and every allegation made in Paragraphs 1-75 as though fully set forth herein.

78. Plaintiff Inga Harris suffered economic damages including but not limited to past and future expenses and loss of earnings and she continues to suffer physical injury, severe mental distress, suffering and anguish as a legal result of Defendants' conduct, all of which is substantial and long lasting. Plaintiff's harm was neither the result of the natural course of any disease or condition nor was it the expected result of reasonable treatment for her disease or condition.

79. The foregoing conduct of WMT, Penenberg and Bolling was intentional, willful and malicious and Plaintiff is entitled to punitive damages in an amount to conform to proof.

80. Plaintiff will seek leave from the court to file an amended complaint seeking punitive damages against Defendants Penenberg, Bolling as appropriate.

81. Plaintiff Lowell Harris incorporates each and every allegation made in Paragraphs 1-79 as though fully set forth herein.

82. Plaintiff Lowell Harris has suffered and continues to suffer non-economic losses as a result of the harm caused his wife.

## PRAYER

Wherefore Plaintiffs prays for judgment against Defendants, and each of them, as follows:

On behalf of Inga Harris:

1. For general damages according to proof representing economic damages for past and future expenses, inconvenience, physical impairment and other non-pecuniary damage, loss of earnings and non-economic losses to compensate for pain and suffering against all Defendants.

2. For an award of punitive damages according to proof against WMT and Penenberg on product liability claims;

3. For costs of suit and;

4.For attorney fees against WMT, Penenberg and Bolling, pursuant to C.C.P. § 1021.5 and/or W.I.C §15657;

5. For any other relief that the Court determins is just and proper.

On behalf of Lowell Harris:

For a money judgment representing non-economic losses to compensate for non-pecuniary damage against all Defendants.

**PLAINTIFFS DEMAND TRIAL BY JURY**

Dated: Law Office of Randall Rich

By______________

Randall Rich, Attorney for Plaintiff's Inga and Lowell Harris

# EXHIBIT A

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit E
Page 274

WRIGHT

Corporate Home
About Wright
Wright WorldWide
Corporate Governance
Corporate Compliance
Tissue Licensing Information
Investor Info
Press Releases
Wright In the News
Employment
Legal Statements

Like Send

**PENENBERG, BRAD**

City: LOS ANGELES
State: CA
Also Reference:

| | Previous Year 2010 | YTD 2011 |
|---|---|---|
| **Payments for Fees** | | |
| Consulting | $63,600.00 | $0.00 |
| Royalties | $1,327,487.72 | $635,130.59 |
| **Payments In Kind** | | |
| Lodging | $1,353.24 | $156.54 |
| Meals | $2,194.60 | $253.91 |
| Travel | $5,643.04 | $1,340.85 |

« Go Back to Consultants List

Text Size: AAA

Copyright ©2011 Wright Medical Technology, Inc. All rights reserved.
Please see Site Disclaimers for complete information regarding contents, correspondence, surgical procedures, product information, and links to other web sites.

10/20/11

10/21/11

ExA

# EXHIBIT B

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit E
Page 276



200030

**CONSENT TO SURGERY / SPECIAL PROCEDURES / ANESTHESIA (WITH PHYSICIAN VERIFICATION)**

1. Your attending physician is Dr. Brad Penenberg
and your supervising physician or surgeon is Dr. Brad Penenberg

2. The hospital maintains personnel and facilities to assist your physicians and surgeons in their performance of various surgical operations and other special diagnostic or therapeutic procedures. These operations and procedures may all involve risks of unsuccessful results, complications including an unplanned admission to the hospital, injury, or even death, from both known and unforeseen causes, and no warranty or guarantee is made as to result or cure. You have the right [illegible] of such risks as well as the nature of the operation or procedure, the expected [illegible] operation or procedure, and the available alternative methods of treatment and their risks and benefits. You also have the right to be informed whether your physician has any independent medical research or economic interests related to the performance of the proposed operation or procedure. Except in cases of emergency, operations or procedures are not performed until you have had the opportunity to receive this information and have given your consent. You have the right to consent to or to refuse any proposed operation or procedure at any time prior to its performance.

3. The administration of anesthetics involves risks and consequences. You have the right to be informed of such risks, the available alternative methods of anesthesia administration, and their risks and benefits. With your consent, anesthesia and related treatments which in the opinion of your anesthesia provider are necessary, will be performed on you.

4. Your physicians and surgeons have recommended the following operation or procedure

Left Total Hip Replacement

Lay terminology ______

Upon your consent, this operation or procedure, together with any different or further procedures which in the opinion of the supervising physician or surgeon may be indicated due to any emergency, will be performed on you. The operations or procedures will be performed by the supervising physician or surgeon named above (or in the event that that physician is unable to perform or complete the procedure, a qualified substitute supervising physician or surgeon), together with associates and assistants, including anesthesiologists, pathologists and radiologists from the medical staff of *(name of hospital)* Olympia Medical Center
to whom the supervising physician or surgeon may assign designated responsibilities. The persons in attendance for the purpose of performing specialized medical services such as anesthesia, radiology or pathology are not agents, servants, or employees of the hospital or your supervising physician or surgeon. They are independent contractors and therefore are your agents, servants, or employees.

5. Occasionally an observer may be present to provide technical assistance to your physician or surgeon, particularly when your physician is using a new device or equipment, or when a device may need calibration or servicing before it is implanted or used.

Patient's Initials [initials]

TRC1000E (9/04) UMMS # 200030

**CONSENT TO SURGERY/ SPECIAL PROCEDURES/ ANESTHESIA (WITH PHYSICIAN VERIFICATION)**

AGONZALEZ

146346 Page 1 of 2

PATIENT I.D.

HARRIS, INCA
00104131008 OLYMPIA MEDICAL 12/29/1932
MR0 33-63-41 72Y F 1000
I 06/29/2005 MH
DR. PENENBERG, BRAD L

EX.B

# EXHIBIT 9

Steven R. Vartazarian, Esq. (SBN: 227635)
**THE VARTAZARIAN LAW FIRM, APC**
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403
(818) 990-9949

Attorney for Plaintiffs,
ALAN WARNER and PATRICIA WARNER

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES
DEC 27 2011
John A. Clarke, Executive Officer/Clerk
BY ________, Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| ALAN WARNER and PATRICIA WARNER,<br><br>Plaintiffs,<br>v.<br><br>BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,<br><br>Defendants. | CASE NO. BC 475958<br><br>**COMPLAINT FOR:**<br><br>**(1) Medical Malpractice**<br>**(2) Strict Products Liability**<br>**(3) Negligence**<br>**(4) Breach of Warranty**<br>**(5) Loss of Consortium**<br><br>**DEMAND FOR JURY TRIAL**<br><br>*[AMOUNT DEMANDED EXCEEDS $25,000]* |

Plaintiffs ALAN WARNER and PATRICIA WARNER bring this action against BRAD L. PENENBERG, M.D., and WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, and DOES 1 THROUGH 100, inclusive (collectively hereinafter referred to as "Defendants") and allege as follows:

**GENERAL ALLEGATIONS**

1. Plaintiff ALAN WARNER and his wife PATRICIA WARNER were and are residents of Los Angeles, California at all relevant times.

2. Defendant Brad L. Penenberg, M.D., was and is a resident of Los Angeles, California at all relevant times.

3. Defendant Wright Medical Group, Inc., a corporation, is a citizen of the

CIT/CASE: BC475958 LEA/DEF#:
RECEIPT #: CCH465980066
DATE PAID: 12/27/11 02:43:18 PM
PAYMENT: $395.00
RECEIVED:
CHECK: 395.00
CASH:
CHANGE:
CARD:
0310

State of Delaware (where incorporated) and the State of Tennessee (principal place of business), and is the parent company of Defendant Wright Medical Technology, Inc., a corporation, which is a citizen of the State of Delaware (where incorporated) and the State of Tennessee (principal place of business), collectively referred to hereinafter as the "WRIGHT" Defendants.

4. Directly or through its aforesaid subsidiaries, Defendants Wright Medical Group, Inc., and Wright Medical Technology, Inc., designed, manufactured, distributed and sold in California various orthopedic hardware systems including the ProFemur R hip prosthesis component at issue in this case.

5. The ProFemur R hip prosthesis component was approved for marketing by the Food and Drug Administration via its 510(K) Premarket Notification procedure filed by one of the "Wright" defendants, and therefore defendants are not exempt from suit in State Court.

6. The true names and capacities, whether individual, corporate, associate, governmental, or otherwise of DOE 1 through DOE 100, inclusive, are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants are ascertained, plaintiffs will amend this Complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each of the defendants designated herein as a DOE was and is responsible in some manner for the events and happenings herein referred to and their conduct directly, proximately and legally caused the injuries and damages sustained by plaintiffs as herein alleged, either through said defendants' own conduct or through the conduct of their agents, servants, or employees, or in some other manner.

7. At all times herein mentioned, each defendant named herein was and is the duly authorized agent, employee, servant, partner and/or joint venturer of the other co-defendants, acting within the course and scope of said relationship. Further, when acting as a principal, each defendant approved, consented to, and ratified the acts and conduct of his, her or its co-defendants.

///

## FACTUAL CONTENTIONS

8. On November 27, 2007, plaintiff ALAN WARNER underwent a revision of his existing left hip implant using a ProFemur R femoral component manufactured by the "WRIGHT" Defendants. Specifically, the femoral component was a ProFemur R 176mm x 14mm bearing serial number 037409895; and was manufactured and caused to be distributed to California by defendants WRIGHT MEDICAL GROUP, INC., and, WRIGHT MEDICAL TECHNOLOGY, INC. At the time the femoral component was implanted in plaintiff, it was in the same condition in all respects as when it left the Defendants' control.

9. Less than three years later, and on October 27, 2010, as plaintiff ALAN WARNER was walking in his home he suddenly felt severe pain in and around his left groin. He was unable to ambulate and immediately laid down. The next morning Mr. Warner presented to Cedars Sinai Medical Center and was diagnosed with a left femoral stem fracture and scheduled for surgery to revise his left total hip implant. The X-Ray depicting the broken femoral component taken on October 29, 2010, is hereby identified and incorporated herein by reference:

10. On November 1, 2010, plaintiff underwent revision surgery whereby his entire left hip implant system was revised again using components manufactured by the "WRIGHT" defendants.

11. Several months later, and in and around February 1, 2011, the revised hip implant system failed when the acetabular component did not take to plaintiff's pelvis causing an anterior dislocation and resulting subsidence of the femoral component. On that day, plaintiff presented to Cedars-Sinai Medical Center's emergency department, where he was admitted. The following day, plaintiff was taken to the operating room where a closed reduction of the hip was performed under general anesthesia, but still felt by the physicians to be unstable. Therefore, on February 7, 2011, plaintiff again underwent a revision of his total hip implant system, but this time with the use of a hip implant system from a different manufacturer (Stryker Homemedica Osteonics) from which plaintiff has since been recovering.

**FIRST CAUSE OF ACTION**

**(By ALAN WARNER For Medical Malpractice (failure to obtain informed consent) against Defendant Brad L. Penenberg, M.D.)**

12. Plaintiff re-alleges and incorporates herein by reference the above paragraphs 1 through 11 as if fully set forth herein.

13. Plaintiff contends that Defendant, Brad L. Penenberg, M.D., was negligent in and around November 27, 2007, because he performed a revision of plaintiff's left total hip arthroplasty without first obtaining plaintiff's informed consent.

14. Plaintiff contends that defendant, Brad L. Penenberg, M.D., performed a revision of plaintiff's left total hip arthroplasty on November 27, 2007, using a Wright Medical Technology Profemur R femoral component. Plaintiff contends that he did not give his informed consent to the procedure. Plaintiff further contends that a reasonable person in plaintiff's position would not have agreed to the revision surgery if had been fully informed of the results, risks, and alternatives to the surgery, including the use of hip replacement systems manufactured by companies other than WRIGHT. Plaintiff contends

that he was harmed by a result/risk that defendant should have explained before the revision surgery was performed, such as the failure rate of hip replacement systems manufactured by WRIGHT.

15. As a direct, proximate, and legal result of defendant's negligence as described herein, plaintiff ALAN WARNER suffered debilitating injury when the femoral component of his hip replacement system fractured and thereby required plaintiff to undergo two (2) invasive revision surgeries. As a result, plaintiff has suffered from past, and will suffer from future, physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress.

16. As a further direct, proximate, and legal result of Defendant's negligence as described herein, plaintiff has incurred past medical expenses and will incur future medical expenses in an amount to be ascertained at the time of trial.

## SECOND CAUSE OF ACTION

**(By ALAN WARNER For Strict Products Liability Against Defendants Wright Medical Group Inc., and Wright Medical Technology, Inc., for defectively designing, manufacturing, and failing to warn of the potential for breakage of the Profemur R femoral component as described above)**

17. Plaintiff re-alleges and incorporates herein by reference the above paragraphs 1 through 16 as if fully set forth herein.

18. MANUFACTURING DEFECT

Based on information and belief, Plaintiff contends that the Profemur R femoral component as described herein and used to revise plaintiff's left hip prosthesis on November 27, 2007, contained a manufacturing defect. Plaintiff contends that Defendants manufactured, distributed, and sold the Profemur R femoral component in California. Plaintiff contends that the product contained a manufacturing defect when it left the Defendants' possession. Plaintiff further contends that the product caused harm to plaintiff by fracturing as set forth above in Paragraph nine (9) and thereby necessitated

two (2) extensive revision surgeries. Plaintiff claims that the products manufacturing defect was a substantial factor, and the only factor, in causing plaintiff's harm as stated herein.

19. **DESIGN DEFECT**

A. **Consumer Expectation Test**

1. Plaintiff claims that the products design was defective because the product did not perform as safely as an ordinary consumer would have expected it to perform. Specifically, plaintiff who was an ordinary consumer, formed a reasonable minimum safety expectation that the hip implant component manufactured by Defendants would not fracture when being used as intended, and require avoidable surgery to revise.

2. Plaintiff further alleges that Defendants manufactured, distributed, and sold the defective product within California. Plaintiff alleges that the product did not perform as safely as an ordinary consumer would have expected it to perform when used in the manner intended by the manufacturer. Plaintiff further contends that he was harmed by the defective design of the product when it fractured and required removal. Plaintiff contends that the products failure to perform safely was a substantial factor, and the only factor, in causing plaintiff's harm as stated herein.

B. **Risk-Benefit Test**

1. Plaintiff claims that the product's design caused harm to plaintiff. Plaintiff contends that Defendants manufactured, distributed and sold the subject product in California. Plaintiff contends that he was harmed by the product as a result of its design when it fractured and required surgical removal. Plaintiff contends that the products design was a substantial factor, and the only factor, in causing his harm as stated herein.

///

20. **FAILURE TO WARN**

Plaintiff claims that the Profemur R femoral component lacked sufficient warning of its potential risk for fracturing. Plaintiff contends and alleges that the Profemur R femoral component had a potential risk of fracturing that was known and/or knowable by the use of scientific knowledge available at the time of the manufacture, distribution, and/or sale. Plaintiff further contends that the potential risk of fracturing presented a substantial danger to users of the Profemur R femoral component and that ordinary consumers could not have recognized. Plaintiff further contends and alleges that Defendants failed to adequately warn of the potential risk of the Profemur R femoral component fracturing. Furthermore, as Plaintiff was using the Profemur R femoral component in a way that was reasonably foreseeable to Defendants, Plaintiff was harmed and the lack of sufficient warnings was a substantial factor in causing Plaintiff's harm.

21. As a direct, proximate, and legal result of the actions of Defendants described herein, plaintiff ALAN WARNER suffered debilitating injury which required two (2) invasive revision surgeries, which caused plaintiff to suffer from past and future physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress.

22. As a further direct, proximate, and legal result of defendant's negligence as described herein, plaintiff has incurred past medical expenses and will incur future medical expenses in an amount to be ascertained.

**THIRD CAUSE OF ACTION**

**(By ALAN WARNER for Negligence Against Defendants Wright Medical Group Inc., and Wright Medical Technology, Inc.)**

23. Plaintiff ALAN WARNER re-alleges and incorporates the above paragraphs 1 through 22 as if fully set forth herein.

24. Defendants owed a duty of reasonable care to plaintiff ALAN WARNER to design, manufacture, sell, and/or distribute the Profemur R femoral Component, as described above, in a condition that was safe for its intended purpose. Defendants' duty

includes a duty to ensure that the Profemur R femoral component did not cause users to suffer from failure once implanted. Defendants failed to exercise ordinary care in the manufacture, design, sale, testing, quality assurance, quality control, marketing, and/or distribution of the Profemur R femoral component in that Defendants knew or should have known that the defective Profemur R femoral component created a risk of failure that could result in painful and debilitating injury, which could only be alleviated by revision surgery.

25. Defendants breached their duty to plaintiff ALAN WARNER in the testing, design, manufacture, packaging, warning, advertising, promotion, distribution and sale of its Profemur R femoral component in that Defendants failed to use ordinary care in designing and manufacturing the Profemur R femoral component so as to avoid the manufacturing and design defects that cause the Profemur R femoral component to fail.

26. Defendants also breached their duty to plaintiff ALAN WARNER by failing to properly design, manufacture, inspect, and/or prepare the Profemur R femoral component that was implanted into plaintiff and others similarly situated.

27. Although Defendants knew or should have known since 2007, or earlier that the Profemur R femoral component was defective and could fail, Defendants failed to warn the medical community and the public of said risk. Defendants knew or reasonably should have known that the Profemur R femoral component was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner. Defendants knew or reasonably should have known that users would not realize the danger and Defendants failed to adequately warn of the danger. A reasonable manufacturer, distributor, and/or seller under the same or similar circumstances would have warned of the danger. As a result of the negligent failure to warn, plaintiff was harmed. Defendants' failure to warn was a substantial factor in causing plaintiff's harm.

28. Defendants knew or should have known that consumers such as plaintiff ALAN WARNER risked injury as a result of Defendants' failure to exercise ordinary care as described above.

29. Plaintiff further alleges that Defendants knew or should have known of the Profemur R femoral components defective nature, as set forth herein, but continued to manufacture, design, market, and sell the Profemur R femoral component so as to maximize sales and profits at the expense of the health and safety of the public, including plaintiff, in conscious or reckless disregard of the foreseeable harm caused by the defective Profemur R femoral component.

30. Alternatively, Plaintiff contends that Defendants were negligent because they failed to recall and/or retrofit the Profemur R femoral component so that it would not fracture when being used as intended. Plaintiff is informed and believes that prior to 2007 Defendants knew or should have known of the potential for the Profemur R femoral component to fracture and should have therefore recalled the product. Furthermore, defendants knew or reasonably should have known that the Profemur R femoral component was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner. Defendants became aware of this defect after the Profemur R femoral component was sold. Defendants failed to recall and/or retrofit the Profemur R femoral component as a reasonable manufacturer, distributor or seller under the same or similar circumstances would have done. As a result of Defendants' failure to recall and/or retrofit the Profemur R femoral component it was implanted in plaintiff and proximately caused him to suffer injury as described herein.

31. As a direct, proximate, and legal result of Defendants' negligence as described herein, plaintiff ALAN WARNER suffered debilitating injury which required two (2) invasive revision surgeries, which caused plaintiff to suffer from past and future physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress.

32. As a further direct, proximate, and legal result of defendant's negligence as described herein, plaintiff has incurred past medical expenses and will incur future medical expenses in an amount to be ascertained.

///

**FOURTH CAUSE OF ACTION**

**(By ALAN WARNER for Breach of Warranty Against Defendants Wright Medical Group Inc., and Wright Medical Technology, Inc.)**

33. Plaintiff ALAN WARNER re-alleges and incorporates the above paragraphs 1 through 32 as if fully set forth herein.

34. Plaintiff contends that he was harmed by the Profemur R femoral component because it did not have the quality that a buyer would expect and/or that it was not suitable for its intended purpose.

35. Defendants impliedly warranted that they would sell and deliver the Profemur R femoral component that was fit for the particular purposes for which it was intended. Defendants also knew that plaintiff ALAN WARNER and her physician intended to use the Profemur R femoral component for the particular purpose of hip replacement.

36. Plaintiff ALAN WARNER and his physician relied upon Defendants' skill and/or judgment in furnishing a suitable Profemur R femoral component.

37. Defendants, by selling and delivering a defective Profemur R femoral component, which was used during Plaintiff's surgery, breached the implied warranties of merchantability and fitness in that the defective Profemur R femoral component presented an unreasonable risk of failure resulting in pain, discomfort, anxiety, emotional distress, partial disability, and the necessity of painful, invasive surgery.

38. As a direct, proximate, and legal result of defendant's actions as described herein, plaintiff ALAN WARNER suffered debilitating injury which required two (2) invasive revision surgeries, which caused plaintiff to suffer from past and future physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress, and was caused to suffer from, and continues to suffer from emotional distress, pain, discomfort, and anxiety.

39. As a further direct, proximate, and legal result of defendant's negligence as

described herein, plaintiff has incurred medical expenses and will incur future medical expenses in an amount to be ascertained.

**FIFTH CAUSE OF ACTION**

**(By Plaintiff Patricia Warner Against All Defendants For Loss of Consortium Against All Defendants)**

40. Plaintiff PATRICIA WARNER re-alleges and incorporates the above paragraphs 1 through 39 as if fully set forth herein.

41. At all times material to this action, Plaintiffs ALAN WARNER and PATRICIA WARNER were husband and wife. Plaintiff PATRICIA WARNER contends that she has been harmed as a result of the wrongful acts alleged herein against defendants collectively.

42. Prior to plaintiff ALAN WARNER sustaining the above described injuries, he was able to and did perform his duties as Plaintiff PATRICIA WARNER'S husband. Subsequent to sustaining the injuries as described above, Plaintiff ALAN WARNER has been unable to do so, including performing and assisting with certain of the work, services, and society usually performed in the care of the family home and as Plaintiff PATRICIA WARNER'S husband, and will be unable to do so in the future. By reason thereof, Plaintiff PATRICIA WARNER has been and will be deprived of the consortium of her spouse and/or the enjoyment of her husband's love, companionship, comfort, care, assistance, protection, affection, society, solace, moral support, economic support, and loss of the enjoyment of sexual relations, in a sum to be proved at time of trial.

**WHEREFORE,** Plaintiffs request the following relief:

On the First through Fourth Causes of Action by Plaintiff ALAN WARNER Against All Defendants:

(a) general damages in an amount according to proof;

(b) special damages according to proof;

(c) interest, costs and expenses in this litigation;

(d) pre-judgment interest on the amount of damages attributable to personal injury pursuant to Civil Code section 3291;

(e) such other and further relief as may be just and proper;

On the Fifth Cause of Action by Plaintiff PATRICIA WARNER Against All Defendants:

(a) for general damages and damages for loss of consortium against all defendants, according to proof;

(b) interest, costs and expenses in this litigation;

(c) pre-judgment interest on the amount of damages attributable to personal injury pursuant to Civil Code section 3291; and

(d) such other and further relief as may be just and proper.

Dated: December 22, 2011

THE VARTAZARIAN LAW FIRM

Steven R. Vartazarian
Attorney for Plaintiffs

# EXHIBIT 10

Steven R. Vartazarian, Esq. (SBN: 227635)
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403
(818) 990-9949

Attorney for Plaintiffs,
JANET STERNFELD and EARL STERNFELD

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JAN 30 2012

John A. Clarke, Executive Officer/Clerk
BY Mary Flores, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

JANET STERNFELD and EARL STERNFELD,

Plaintiffs,

v.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,

Defendants.

CASE NO. BC478032

COMPLAINT FOR:

(1) Medical Malpractice
(2) Strict Products Liability
(3) Negligence
(4) Breach of Warranty
(5) Loss of Consortium

DEMAND FOR JURY TRIAL

*[AMOUNT DEMANDED EXCEEDS $25,000]*

Plaintiffs JANET STERNFELD and EARL STERNFELD bring this action against BRAD L. PENENBERG, M.D., and WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, and DOES 1 THROUGH 100, inclusive (collectively hereinafter referred to as "Defendants") and allege as follows:

GENERAL ALLEGATIONS

1. Plaintiff JANET STERNFELD and her husband EARL STERNFELD were and are residents of Los Angeles, California at all relevant times.

2. Defendant BRAD L. PENENBERG, M.D., was and is a resident of Los Angeles, California at all relevant times.

3. Defendant WRIGHT MEDICAL GROUP, INC., a corporation, is a citizen of the

Exhibit E
Page 292

State of Delaware (where incorporated) and the State of Tennessee (principal place of business), and is the parent company of Defendant WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, which is a citizen of the State of Delaware (where incorporated) and the State of Tennessee (principal place of business), collectively referred to hereinafter as the "WRIGHT" Defendants.

4. Directly or through its aforesaid subsidiaries, the WRIGHT Defendants designed, manufactured, distributed and sold in California various orthopedic hardware systems including the Conserve Plus Total Hip Replacement System at issue in this case.

5. The Conserve Plus Total Hip Replacement System was approved for marketing by the Food and Drug Administration via its 510(K) Premarket Notification procedure filed by one of the WRIGHT defendants, and therefore defendants are not exempt from suit in State Court.

6. The true names and capacities, whether individual, corporate, associate, governmental, or otherwise of DOE 1 through DOE 100, inclusive, are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants are ascertained, plaintiffs will amend this Complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each of the defendants designated herein as a DOE was and is responsible in some manner for the events and happenings herein referred to and their conduct directly, proximately and legally caused the injuries and damages sustained by plaintiffs as herein alleged, either through said defendants' own conduct or through the conduct of their agents, servants, or employees, or in some other manner.

7. At all times herein mentioned, each defendant named herein was and is the duly authorized agent, employee, servant, partner and/or joint venturer of the other co-defendants, acting within the course and scope of said relationship. Further, when acting as a principal, each defendant approved, consented to, and ratified the acts and conduct of his, her or its co-defendants.

## FACTUAL CONTENTIONS

8. In and around August of 2005, plaintiff JANET STERNFELD underwent a total hip replacement of her right hip with Defendant BRAD L PENENBERG, M.D., at Cedars Sinai Medical Center. Based on information and belief, Plaintiff contends that her right hip was replaced using the Conserve Plus Total Hip Replacement System manufactured by the WRIGHT Defendants. It is important to note that the femoral component (the ball portion of the implant) and the acetabular component (the socket portion of the implant) are both metal such that when the System is completely assembled it becomes a metal on metal prosthetic joint.

9. In and around 2009, Plaintiff JANET STERNFELD, began having pain in and around her right hip. She presented to her physicians and the etiology of the pain was said to be unknown. Plaintiff was prescribed pain medications, which she took for the pain. In and around January of 2011, and because Plaintiff's right hip pain was not improving a CT scan of her right hip was performed. The CT was positive for a fluid collection in and around her right hip joint, which was aspirated shortly thereafter. Because Plaintiff's hip pain continued, Dr. Penenberg suspected metal toxicity and ordered a blood test for plaintiff the results of which showed that she was suffering from metal toxicity, which was likely secondary to the Conserve Plus Total Hip Replacement System.

10. Based on this finding, a revision surgery was performed in and around August 18, 2011, whereby the Conserve Plus Total Hip Replacement System manufactured by defendants was removed and another hip replacement system was put in. Shortly following this surgery plaintiff for the first time discovered that the Conserve Plus Total Hip Replacement System manufactured by the WRIGHT defendants was defective when it was initially implanted in 2005.

11. Based on information and belief, plaintiff contends that the Conserve cup component manufactured by the WRIGHT Defendants and implanted in her right hip in 2005 is essentially an unlined cast cobalt chromium component, which during its use endures constant friction from rubbing on the metal ball component of the hip implant

system. As a result of this friction, small particles of metal are released into the hip joint and surrounding tissue resulting in metallosis and biologic toxicity. As a result of this phenomenon, plaintiff began experiencing the pain, discomfort, loss of mobility and decreasing in the quality of her life that indicated the implants removal and subsequent revision surgery of August 18, 2011.

**FIRST CAUSE OF ACTION**

**(By JANET STERNFELD For Medical Malpractice (failure to obtain informed consent) against Defendant Brad L. Penenberg, M.D.)**

12. Plaintiff re-alleges and incorporates herein by reference the above paragraphs 1 through 11 as if fully set forth herein.

13. Plaintiff contends that Defendant, BRAD L PENENBERG, M.D., was negligent in and around August of 2005, because he performed a right total hip arthroplasty on Plaintiff using the Conserve Plus Total Hip Replacement System without first obtaining Plaintiff's informed consent.

14. Plaintiff contends that defendant, BRAD L PENENBERG, M.D., performed a right total hip arthroplasty on Plaintiff using the Conserve Plus Total Hip Replacement System. Plaintiff contends that she did not give her informed consent to use this device prior to the procedure. Plaintiff further contends that a reasonable person in Plaintiff's position would not have agreed to hip replacement surgery using the Conserve Plus Total Hip Replacement System if she had been fully informed of the results, risks, and alternatives to the surgery, including the use of hip replacement systems manufactured by companies other than WRIGHT. Plaintiff contends that she was harmed by a result/risk that Defendant knew or should have known about and should have explained to plaintiff prior to surgery being performed.

15. As a direct, proximate, and legal result of Defendant's negligence as described herein, plaintiff JANET STERNFELD suffered debilitating injury when small metal particles were released into her hip joint and surrounding soft tissue causing metal toxicity and indicating revision surgery. As a result, Plaintiff has suffered from past, and

01/30/12

will suffer from future, physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation, and emotional distress.

16. As a further direct, proximate, and legal result of Defendant's negligence as described herein, plaintiff has incurred past medical expenses and will incur future medical expenses in an amount to be ascertained at the time of trial.

## SECOND CAUSE OF ACTION

**(By JANET STERNFELD For Strict Products Liability Against Defendants Wright Medical Group Inc., and Wright Medical Technology, Inc., for defectively designing, manufacturing, and failing to warn of the potential for breakage of the Profemur R femoral component as described above)**

17. Plaintiff re-alleges and incorporates herein by reference the above paragraphs 1 through 16 as if fully set forth herein.

18. **MANUFACTURING DEFECT**

Plaintiff contends that the Conserve Plus Total Hip Replacement System as described herein and used to replace her right hip in August of 2005 contained a manufacturing defect. Plaintiff contends that Defendants manufactured, distributed, and sold the Conserve Plus Total Hip Replacement System in California. Plaintiff contends that the product contained a manufacturing defect when it left the Defendants' possession. Plaintiff further contends that the product caused harm to the Plaintiff by resulting in metal toxicity and indicating an extensive revision surgery. Plaintiff claims that the product's manufacturing defect was a substantial factor, and the only factor, in causing Plaintiff's harm as stated herein.

19. **DESIGN DEFECT**

A. **Consumer Expectation Test**

1. Plaintiff claims that the product's design was defective because the product did not perform as safely as an ordinary consumer would have expected it to perform. Specifically, Plaintiff who was an ordinary consumer formed a

01/30/12

reasonable minimum safety expectation that the hip implant system manufactured by Defendants would not result in metal toxicity within five years and require removal. Plaintiff expected that the product would last upwards of 15 years without causing any toxicity or complication of any kind.

2. Plaintiff further alleges that Defendants manufactured, distributed, and sold the defective product within California. Plaintiff alleges that the product did not perform as safely as an ordinary consumer would have expected it to perform when used in the manner intended by the manufacturer. Plaintiff further contends that she was harmed by the defective design of the product when it caused her to develop metal toxicity and require the implants removal. Plaintiff contends that the product's failure to perform safely was a substantial factor, and the only factor, in causing Plaintiff's harm as stated herein.

B. <u>**Risk-Benefit Test**</u>

Plaintiff claims that the product's design caused harm to plaintiff. Plaintiff contends that Defendants manufactured, distributed and sold the subject product in California. Plaintiff contends that she was harmed by the product as a result of its design when it caused plaintiff to develop metal toxicity, which indicated the product's removal from her right hip. Plaintiff contends that the product's design was a substantial factor, and the only factor, in causing her harm as stated herein.

20. <u>**FAILURE TO WARN**</u>

Plaintiff claims that the Conserve Plus Total Hip Replacement System lacked sufficient warning of its potential risks and/or side effects. Plaintiff contends and alleges that the Conserve Plus Total Hip Replacement System had potential risks and/or side effects that were known and/or knowable by the use of scientific knowledge available at the time of the manufacture, distribution, and/or sale. Plaintiff is further informed and

Exhibit E
Page 297

01/30/12

believes and thereon alleges that the potential risks and/or side effects presented a substantial danger to users of the Conserve Plus Total Hip Replacement System and that ordinary consumers would not have recognized the potential risks and/or side effects. Plaintiff further contends and alleges that Defendants failed to adequately warn of the potential risks and/or side effects of the Conserve Plus Total Hip Replacement System. Furthermore, here, the Conserve Plus Total Hip Replacement System was used in a way that was reasonably foreseeable to Defendants and as a result of its usage Plaintiff was harmed and the lack of sufficient warnings was a substantial factor in causing Plaintiff's harm.

21. As a direct, proximate, and legal result of the actions of Defendants alleged herein and the wrongful conduct of Defendants, plaintiff JANET STERNFELD suffered debilitating injury which required painful, invasive revision surgery, and was caused to suffer from, and continues to suffer from physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, anxiety, humiliation and emotional distress.

22. As a direct, proximate, and legal result of actions of Defendants alleged herein and the wrongful conduct of Defendants, plaintiff JANET STERNFELD has required and will require in the future medical and/or hospital care, attention, and services, and has incurred and will incur in the future damages consisting of the cost of health and related care, in an amount as yet unascertained.

**THIRD CAUSE OF ACTION**

**(By JANET STERNFELD for Negligence Against Defendants Wright Medical Group Inc., and Wright Medical Technology, Inc.)**

23. Plaintiff JANET STERNFELD re-alleges and incorporates the above paragraphs 1 through 22 as if fully set forth herein.

24. Defendants owed a duty of reasonable care to plaintiff JANET STERNFELD to design, manufacture, sell, and/or distribute the Conserve Plus Total Hip Replacement System, as described above, in a condition that was safe for its intended purpose.

Defendants' duty includes a duty to ensure that the Conserve Plus Total Hip Replacement System did not cause users to suffer from failure and/or unreasonable, dangerous side effects once implanted. Defendants failed to exercise ordinary care in the manufacture, design, sale, testing, quality assurance, quality control, marketing, and/or distribution of the Conserve Plus Total Hip Replacement System in that Defendants knew or should have known that the defective Conserve Plus Total Hip Replacement System created a high risk of failure and/or unreasonable, dangerous side effects, some of which are painful and debilitating and can only be alleviated by revision surgery.

25. Defendants breached their duty to plaintiff JANET STERNFELD in the testing, design, manufacture, packaging, warning, advertising, promotion, distribution and sale of the Conserve Plus Total Hip Replacement System in that Defendants failed to use ordinary care in designing and manufacturing the Conserve Plus Total Hip Replacement System so as to avoid the manufacturing and design defects that cause the Conserve Plus Total Hip Replacement System to fail.

26. Defendants also breached their duty to plaintiff JANET STERNFELD by failing to properly design, manufacture, inspect, and/or prepare the Conserve Plus Total Hip Replacement System that were implanted into plaintiff and others similarly situated.

27. Although Defendants knew or should have known prior to 2005 that the Conserve Plus Total Hip Replacement System was defective, had a high rate of failure and unreasonably dangerous side effects, they failed to warn the medical community and the public. Defendants knew or reasonably should have known that the Conserve Plus Total Hip Replacement System was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner. Defendants knew or reasonably should have known that users would not realize the danger and defendants failed to adequately warn of the danger. A reasonable manufacturer, distributor, and/or seller under the same or similar circumstances would have warned of the danger. As a result of the negligent failure to warn, plaintiff was harmed. Defendants' failure to warn was a substantial factor in causing plaintiffs harm.

01/30/12

28. Defendants knew or should have known that consumers such as plaintiff JANET STERNFELD risked injury as a result of Defendants' failure to exercise ordinary care as described above.

29. Based upon information and belief, plaintiffs allege further that Defendants knew or should have known of the Conserve Plus Total Hip Replacement System defective nature, as set forth herein, but continued to manufacture, design, market, and sell the Conserve Plus Total Hip Replacement System so as to maximize sales and profits at the expense of the health and safety of the public, including plaintiff, of the Conserve Plus Total Hip Replacement System, in conscious or reckless disregard of the foreseeable harm caused by the defective Conserve Plus Total Hip Replacement System.

30. Plaintiff further contends that Defendants were negligent because they failed to recall and/or retrofit the Conserve Plus Total Hip Replacement System. Plaintiff is informed and believes that prior to 2005 Defendants knew or should have known of the potential for the metal particles being released into the hip and surrounding tissue and failed to recall the product. Furthermore, defendants knew or reasonably should have known that the Conserve Plus Total Hip Replacement System was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner. Defendants became aware of this defect after the Conserve Plus Total Hip Replacement System was sold. Defendants failed to recall and/or retrofit the Conserve Plus Total Hip Replacement System that a reasonable manufacturer, distributor or seller under the same or similar circumstances would have recalled and/or retrofitted the product. As a result of Defendants' failure to recall and/or retrofit the Conserve Plus Total Hip Replacement System it was implanted in plaintiff and harmed her.

31. As a direct, proximate, and legal result of the negligence, carelessness, and other wrongdoing and actions of Defendants described herein, plaintiff JANET STERNFELD suffered debilitating injury which required painful, invasive revision surgery, and was caused to suffer from, and continues to suffer from physical pain, mental suffering, loss

01/30/12

of enjoyment of life, disfigurement, physical impairment, inconvenience, anxiety, humiliation and emotional distress.

32. As a direct, proximate, and legal result of the negligence, carelessness, and other wrongdoing and actions of Defendants described herein, plaintiff JANET STERNFELD has required and will require in the future medical and/or hospital care, attention, and services, and has incurred and will incur in the future damages consisting of the cost of health and related care, in an amount as yet unascertained.

**FOURTH CAUSE OF ACTION**

**(By JANET STERNFELD for Breach of Warranty Against Defendants Wright Medical Group Inc., and Wright Medical Technology, Inc.)**

33. Plaintiff JANET STERNFELD re-alleges and incorporates the above paragraphs 1 through 32 as if fully set forth herein.

34. Plaintiff also contends that she was harmed by the Conserve Plus Total Hip Replacement System because it did not have the quality that a buyer would expect and/or that it was not suitable for its intended purpose.

35. Defendants impliedly warranted that they would sell and deliver the Conserve Plus Total Hip Replacement System that was fit for the particular purposes for which it was intended. Defendants also knew that plaintiff JANET STERNFELD and her physician intended to use the Conserve Plus Total Hip Replacement System for the particular purpose of hip replacement.

36. Plaintiff JANET STERNFELD and her physician relied upon Defendants' skill and/or judgment in furnishing a suitable total hip replacement system. Defendants, by selling and delivering a defective Consrve Plus Total Hip Replacement System to plaintiff JANET STERNFELD , breached the implied warranties of merchantability and fitness in that the defective Conserve Plus Total Hip Replacement System presented an unreasonable risk of failure and/or toxicity, resulting in pain, discomfort, anxiety, emotional distress, partial disability, and the necessity of painful, invasive surgery.

37. As a direct, proximate, and legal result of Defendants' breach of warranties

described herein, plaintiff JANET STERNFELD suffered debilitating injury which required painful, invasive surgery, and was caused to suffer from, and continues to suffer from physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, anxiety, humiliation and emotional distress.

38. As a direct result of Defendants' breach of warranties described herein, plaintiff JANET STERNFELD has required and will require in the future medical and/or hospital care, attention, and services, and has incurred and will incur in the future damages consisting of the cost of health and related care, in an amount as yet unascertained.

## FIFTH CAUSE OF ACTION

**(By Plaintiff EARL STERNFELD Against All Defendants For Loss of Consortium)**

39. Plaintiff EARL STERNFELD re-alleges and incorporates the above paragraphs 1 through 38 as if fully set forth herein.

40. At all times material to this action, Plaintiffs JANET STERNFELD and EARL STERNFELD were husband and wife. Plaintiff EARL STERNFELD contends that he has been harmed as a result of the wrongful acts alleged herein against defendants collectively.

41. Prior to plaintiff JANET STERNFELD sustaining the above described injuries, she was able to and did perform her duties as Plaintiff EARL STERNFELD'S wife. Subsequent to sustaining the injuries as described above, Plaintiff JANET STERNFELD has been unable to carry out her duties as a wife, including performing and assisting with certain of the work, services, and society usually performed in the care of the family home and as Plaintiff EARL STERNFELD'S husband, and will be unable to do so in the future. By reason thereof, Plaintiff EARL STERNFELD has been and will be deprived of the consortium of his spouse and/or the enjoyment of his wife's love, companionship, comfort, care, assistance, protection, affection, society, solace, moral support, economic support, and loss of the enjoyment of sexual relations, in a sum to be proved at time of trial.

///

**WHEREFORE,** Plaintiffs request the following relief:

On the First through Fourth Causes of Action by Plaintiff JANET STERNFELD Against All Defendants:

(a) general damages in an amount according to proof;

(b) special damages according to proof;

(c) interest, costs and expenses in this litigation;

(d) pre-judgment interest on the amount of damages attributable to personal injury pursuant to Civil Code section 3291;

(e) such other and further relief as may be just and proper;

On the Fifth Cause of Action by Plaintiff EARL STERNFELD Against All Defendants;

(a) for general damages and damages for loss of consortium against all defendants, according to proof;

(b) interest, costs and expenses in this litigation;

(c) pre-judgment interest on the amount of damages attributable to personal injury pursuant to Civil Code section 3291; and

(d) such other and further relief as may be just and proper.

Dated: January 16, 2012

THE VARTAZARIAN LAW FIRM

Steven R. Vartazarian
Attorney for Plaintiffs

01/30/12

**DECLARATION OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910.

On March 21, 2012, I served true copies of the following document(s) described as **NOTICE OF SUBMISSION OF PETITION FOR COORDINATION AND DECLARATION OF SERVICE** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Kiesel Boucher Larson LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 21, 2012, at Beverly Hills, California.

Sylvia T. Mendoza

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

**SERVICE LIST**

Michael L. Kirby, Esq.
KIRBY, NOONAN, LANCE & HOGE LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101

Attorneys for Defendants
Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Steven R. Vartazarian, Esq.
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403

Attorneys for Plaintiffs
Alan Warner and Patricia Warner

Suhasini S. Sawkar, Esq.
HERZFELD & RUBIN, LLP
1925 Century Park East, Suite 900
Los Angeles, CA 90067

Attorneys for Defendant
Brad L. Penenberg, M.D

**HERZFELD & RUBIN LLP**
Michael A. Zuk, Esq. (SBN 83102)
Suhasini S. Sawkar, Esq. (SBN 129111)
1925 Century Park East, Suite 900
Los Angeles, California 90067-2783
Telephone: (310) 553-0451
Facsimile: (310) 553-0648
mzuk@hrllp-law.com
ssawkar@hrllp-law.com

Attorneys for Defendant,
BRAD L. PENENBERG, M.D.

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES
APR 17 2012
John A. Clarke, Executive Officer/Clerk
BY Roxana Arellano, Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

| | |
|---|---|
| ALAN WARNER and PATRICIA WARNER,<br><br>Plaintiffs,<br><br>vs.<br><br>BRAD L. PENENBERG M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive<br><br>Defendants. | **CASE NO.: BC475958**<br>[Assigned to Dept. 33, Hon. Charles P. Palmer Presiding]<br><br>**DECLARATION OF TRIAL ATTORNEY FOR BRAD L. PENENBERG, M.D.**<br><br>*Trial Date:* *None*<br>*Complaint Filed:* *December 27, 2911* |

I, MICHAEL A. ZUK, ESQ., declare and state as follows:

1. I am an attorney licensed to practice in all courts in the State of California and am a member of the law firm of Herzfeld & Rubin, LLP, attorneys of record for defendant, Brad L. Penenberg, M.D.

2. That this matter was assigned to this law firm, it was assigned to me for all purposes, including trial, that this declarant and no other attorney in this firm is capable and available to try the case and/or could be prepared to do so.

3. This declarant and no other attorney in this firm will be available and prepared to try this case.

4. That defendant, Brad L. Penenberg, M.D., has specifically requested that I be his trial attorney and that he will consent to no other.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 17th day of April 2012, at Los Angeles, California.

Michael A. Zuk, Declarant

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**
**[Warner vs. Penenberg, et al, Los Angeles County Superior Court Case No. BC475958]**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Herzfeld & Rubin, LLP, 1925 Century Park East, Suite 900, Los Angeles, California 90067.

On **April 17, 2012,** I served, in the manner indicated below, the foregoing document described as **DECLARATION OF TRIAL ATTORNEY FOR BRAD L. PENENBERG, M.D.** on the following interested parties in this action:

Steven R. Vartazarian, Esq.
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403
Tel: 818.990.9949

/ XX / **BY MAIL** by placing true copies thereof enclosed in sealed envelopes addressed as stated above. I further state that I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under this practice it is deposited with the U.S. postal service on the same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

/___/ **BY FAX** transmission to the numbers as stated on the service list attached hereto.: The facsimile machine I used complied with Rule 2003(3), and no error was reported by the machine. Pursuant to Rule 2005(i), I caused the machine to print a record of the transmission, a copy of which is attached to this declaration.

/___/ **BY PERSONAL SERVICE** by placing true copies thereof in a sealed envelope and causing such envelope to be delivered by hand to the offices of the addressee.

/___/ **BY OVERNIGHT COURIER:** By depositing copies of the above document(s) in a box or other facility regularly maintained by FEDERAL EXPRESS, in an envelope or package designed by FEDERAL EXPRESS with delivery fees paid or provided for and sent to the person(s) named on the attached service list [*C.C.P.* §1013, 2015.5].

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on this 17th day of April 2012 at Los Angeles, California.

Joyce K. Holiday

3

RECEIVED
MAY 14 2012
KIRBY NOONAN LANCE & HOGE LLP

COPY

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

APR 17 2012

John A. Clarke, Executive Officer/Clerk
BY ________, Deputy
Rugena Juliano

**HERZFELD & RUBIN LLP**
Michael A. Zuk, Esq. (SBN 83102)
Suhasini S. Sawkar, Esq. (SBN 129111)
1925 Century Park East, Suite 900
Los Angeles, California 90067-2783
Telephone: (310) 553-0451
Facsimile: (310) 553-0648
mzuk@hrllp-law.com
ssawkar@hrllp-law.com

Attorneys for Defendant,
BRAD L. PENENBERG, M.D.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive

Defendants.

**CASE NO.: BC475958**
[Assigned to Dept. 33, Hon. Charles P. Palmer Presiding]

**BRAD L. PENENBERG, M.D.'S ANSWER TO COMPLAINT**

*Trial Date:* *None*
*Complaint Filed:* *December 27, 2911*

**COMES NOW** defendant Brad L. Penenberg, M.D. and answers the Complaint for Medical Malpractice ("Complaint") on file for himself, alone and for no other defendant, and admits, denies and alleges as follows:

**GENERAL DENIAL**

1. Pursuant to *Code of Civil Procedure* Section 431.30(d), this answering defendant generally denies each and every allegation of the Complaint and further denies that plaintiffs

sustained any injuries, damages or loss by reason of any act or omission on the part of this answering defendant, or any agents, servants or employees of this answering defendant.

**AFFIRMATIVE DEFENSES**

2. Brad L. Penenberg, M.D. sets forth below his affirmative defenses. Each is asserted as to all causes of action against Brad L. Penenberg, M.D. By setting forth these affirmative defenses, Brad L. Penenberg, M.D. does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to plaintiff. Moreover, nothing stated herein is intended or shall be construed as an acknowledgement that any particular issue or subject matter is relevant to plaintiffs' allegations.

**FIRST SEPARATE AND AFFIRMATIVE DEFENSE:**

3. This answering defendant herewith places in issue the negligence, if any, of all persons, who contributed in any degree to the happening of the incident alleged in the Complaint, and the degree that such negligence contributed to the incident and/or the injuries sustained, if any, as a result of said incident.

**SECOND SEPARATE AND AFFIRMATIVE DEFENSE:**

4. If said incident and/or injuries alleged were caused by negligence, this answering defendant requests that the negligence of all persons or parties and the degree to which such negligence contributed to the happening of the incident and/or the nature and extent of the injuries actually sustained, if any, be determined by the trier of fact.

**THIRD SEPARATE AND AFFIRMATIVE DEFENSE:**

5. At the time of the incident alleged in the Complaint, plaintiffs and other persons or parties, failed to exercise ordinary care, and such failure was a contributing cause of the incident and/or injuries allegedly sustained by plaintiff, as a result of said incident; and the trier of fact is requested to determine the existence of such negligence and the degree that such negligence contributed to the incident and/or injuries.

**FOURTH SEPARATE AND AFFIRMATIVE DEFENSE:**

6. The Complaint does not state facts sufficient to constitute a cause of action.

**FIFTH SEPARATE AND AFFIRMATIVE DEFENSE:**

7. The negligence, if any, of this answering defendant was not a substantial factor in bringing about plaintiffs' alleged injuries, and therefore, was not a contributing cause thereof, but was superseded by the negligence of others whose negligence was an independent, intervening, and proximate cause of any injury or damage suffered by plaintiffs.

**SIXTH SEPARATE AND AFFIRMATIVE DEFENSE:**

8. The acts or omissions, if any, of this answering defendant were not a substantial factor in bringing about the plaintiffs' alleged injuries, and therefore, were not a contributing cause thereof, but were superseded by the acts or omissions of others, which were independent, intervening and proximate causes of any injury or damage suffered by plaintiff.

**SEVENTH SEPARATE AND AFFIRMATIVE DEFENSE:**

9. All the risks and dangers involved in the undertaking in which plaintiffs were engaged at the time and place alleged were well known, understood and appreciated by plaintiff, who knowingly, willfully and without coercion or compulsion undertook and assumed all risks involved in such undertaking.

**EIGHTH SEPARATE AND AFFIRMATIVE DEFENSE:**

10. This answering defendant places in issue the provisions of *Civil Code* Section 1431.1 et seq., limiting defendant's liability, if any, for noneconomic damages by direct proportion to the percentage of fault as allocated by the trier of fact.

**NINTH SEPARATE AND AFFIRMATIVE DEFENSE:**

11. Plaintiffs' claims are barred in that the action was not filed and served within the time prescribed by the applicable statute of limitations, including but not limited to *Code of Civil Procedure* Section 340.5.

**TENTH SEPARATE AND AFFIRMATIVE DEFENSE:**

12. Plaintiffs' claims are barred by the doctrine of laches in that plaintiffs have neglected to pursue their claim within a reasonable time, which has resulted in disadvantage and prejudice to this answering defendant.

**ELEVENTH SEPARATE AND AFFIRMATIVE DEFENSE:**

13. Plaintiffs failed to reasonably mitigate the alleged injuries and alleged damages,

though such allegations are denied in whole and in part.

**TWELFTH SEPARATE AND AFFIRMATIVE DEFENSE:**

14. In the event this answering defendant is found to be negligent (which supposition is denied and merely stated for the purpose of this affirmative defense), defendant may elect to introduce evidence of any amounts paid or payable, if any, as a benefit to plaintiff, pursuant to *Civil Code* Section 3333.1.

**THIRTEENTH SEPARATE AND AFFIRMATIVE DEFENSE:**

15. In the event this answering defendant is found to be negligent (which supposition is denied and merely stated for the purpose of this affirmative defense), the damages for noneconomic losses shall not exceed the amount specified in *Civil Code* Section 3333.2.

**FOURTEENTH SEPARATE AND AFFIRMATIVE DEFENSE:**

16. In the event this answering defendant is found to be negligent (which supposition is denied and merely stated for the purpose of this affirmative defense), and the judgment entered for future damages is in excess of $50,000.00, the Court should order that said judgment be made in periodic payments rather than a lump sum payment pursuant to *Code of Civil Procedure* Section 667.7.

**FIFTEENTH SEPARATE AND AFFIRMATIVE DEFENSE:**

17. Plaintiffs' action herein is barred by the provisions of *Civil Code* Section 1714.8 in that the injuries and damages complained of by plaintiff, if any, were solely as a result of the natural course of disease or a condition and/or the expected result of reasonable treatment rendered for the disease or condition by this answering defendant.

**SIXTEENTH SEPARATE AND AFFIRMATIVE DEFENSE:**

18. Plaintiffs were fully informed of the risks and benefits associated with the medical care and treatment performed by defendant and expressly and/or impliedly assumed each and every risks associated with undergoing or refusing to undergo said medical care and treatment.

**SEVENTEENTH SEPARATE AND AFFIRMATIVE DEFENSE:**

19. Even if this answering defendant failed to disclose to plaintiffs all material information to enable plaintiffs to make an informed decision regarding the proposed operation or treatment, plaintiffs would have consented to the proposed operation or treatment, even though a reasonable person, fully informed, would not have done so.

**EIGHTEENTH SEPARATE AND AFFIRMATIVE DEFENSE:**

20. The wrongful conduct of any agent or employee of defendant, which wrongful conduct defendant specifically denies, was not authorized or ratified by this answering defendant.

**NINETEENTH SEPARATE AND AFFIRMATIVE DEFENSE:**

21. Each and every cause of action asserted by plaintiffs is subject to arbitration as provided by written agreement; arbitration is a condition precedent to commencement and maintenance of this action and this answering defendant hereby asserts the right to stay the proceedings in this action until arbitration of the claim and controversies alleged herein have been completed.

**TWENTIETH SEPARATE AND AFFIRMATIVE DEFENSE:**

22. If plaintiffs suffered any injury or damages by reason of any act or omission on the part of this answering defendant, this answering defendant is immune from liability for such injury or damages under the applicable Good Samaritan statutes, including, but not limited to, *Business and Professions Code* Sections 2395, 2395.5, and 2396, *Civil Code* Section 1714.8, and *Health and Safety Code* Section 1799.102.

**TWENTY-FIRST SEPARATE AND AFFIRMATIVE DEFENSE:**

23. Brad L. Penenberg, M.D. reserves the right to raise additional affirmative defenses at any time up to and including the time of trial.

**PRAYER**

**WHEREFORE,** having fully answered plaintiffs' unverified Complaint, this answering defendant prays as follows:

1. Plaintiffs take nothing by way of their Complaint;
2. This answering defendant be dismissed with costs of suit, including attorneys' fees; and,
3. For such other and further relief as the Court may deem just.

DATED: April 17, 2012

HERZFELD & RUBIN LLP

By: ______________________

Michael A. Zuk, Esq.
Suhasini S. Sawkar, Esq.
Attorneys for Defendant,
BRAD PENENBERG, M.D.

6

BRAD L. PENENBERG, M.D.'S ANSWER TO COMPLAINT

Exhibit E
Page 314

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**
**[Warner vs. Penenberg, et al, Los Angeles County Superior Court Case No. BC475958]**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Herzfeld & Rubin, LLP, 1925 Century Park East, Suite 900, Los Angeles, California 90067.

On **April 17, 2012,** I served, in the manner indicated below, the foregoing document described as **BRAD L. PENENBERG, M.D.'S ANSWER TO COMPLAINT** on the following interested parties in this action:

Steven R. Vartazarian, Esq.
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403
Tel: 818.990.9949

/ XX / **BY MAIL** by placing true copies thereof enclosed in sealed envelopes addressed as stated above. I further state that I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under this practice it is deposited with the U.S. postal service on the same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

/___/ **BY FAX** transmission to the numbers as stated on the service list attached hereto.: The facsimile machine I used complied with Rule 2003(3), and no error was reported by the machine. Pursuant to Rule 2005(i), I caused the machine to print a record of the transmission, a copy of which is attached to this declaration.

/___/ **BY PERSONAL SERVICE** by placing true copies thereof in a sealed envelope and causing such envelope to be delivered by hand to the offices of the addressee.

/___/ **BY OVERNIGHT COURIER:** By depositing copies of the above document(s) in a box or other facility regularly maintained by FEDERAL EXPRESS, in an envelope or package designed by FEDERAL EXPRESS with delivery fees paid or provided for and sent to the person(s) named on the attached service list [*C.C.P.* §1013, 2015.5].

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on this 17th day of April 2012 at Los Angeles, California.

Joyce K. Holiday

4/17

MICHAEL A. ZUK, ESQ. (SBN 83102)
mzuk@hrllp-law.com
SUHASINI S. SAWKAR, ESQ. (SBN 129111)
ssawkar@hrllp-law.com
**HERZFELD & RUBIN LLP**
1925 Century Park East, Suite 900
Los Angeles, California 90067-2783
Telephone: (310) 553-0451
Facsimile: (310) 553-0648

Attorneys for Defendants,
BRAD PENENBERG, M.D., and
BRAD PENENBERG, M.D., A Professional Corporation

RECEIVED
APR 18 2012
KIRBY NOONAN LANCE & HOGE LLP

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

ALAN WARNER and PARTICIA WARNER,

Plaintiffs,

v.

BRAD PENENBERG, M.D.; WRIGHT MEDICAL GROUP, INC., a corporation; WRIGHT MEDICAL TECHNOLOGY, INC.; and DOES 1-100, inclusive,

Defendants.

CASE NO.: BC 475958
[Honorable Charles Palmer, Dept. 33]

**NOTICE OF OPPOSITION AND OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF SUHASINI S. SAWKAR**

Date: None Set
Time: None Set
Dept: 33

Trial Date:
Complaint Filed: December 27, 2011

1

OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E
Page 316

MICHAEL A. ZUK, ESQ. (SBN 83102)
mzuk@hrllp-law.com
SUHASINI S. SAWKAR, ESQ. (SBN 129111)
ssawkar@hrllp-law.com
**HERZFELD & RUBIN LLP**
1925 Century Park East, Suite 900
Los Angeles, California 90067-2783
Telephone: (310) 553-0451
Facsimile: (310) 553-0648

Attorneys for Defendants,
BRAD PENENBERG, M.D., and
BRAD PENENBERG, M.D., A Professional Corporation

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

MARY WRIGHT,

Plaintiff and Petitioner,

v.

WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware Corporation; WRIGHT MEDICAL GROUP, INC., a Delaware Corporation; HARLAN V. AMSTUTZ, MN.D., A MEDICAL CORPORATION, a California corporation; HARLAN V. AMSTUTZ, M.D., an individual; and DOES 1-50, inclusive,

Defendants.

CASE NO.: BC 476196

**NOTICE OF OPPOSITION AND OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF SUHASINI S. SAWKAR**

Date: None Set
Time: None Set
Dept: 13

Trial Date:
Complaint Filed: March 22, 2011

MICHAEL A. ZUK, ESQ. ( 83102)
mzuk@hrllp-law.com
SUHASINI S. SAWKAR, ESQ. (SBN 129111)
ssawkar@hrllp-law.com
**HERZFELD & RUBIN LLP**
1925 Century Park East, Suite 900
Los Angeles, California 90067-2783
Telephone: (310) 553-0451
Facsimile: (310) 553-0648

Attorneys for Defendants,
BRAD PENENBERG, M.D., and
BRAD PENENBERG, M.D., A Professional Corporation

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

INGA HARRIS an Individual; LOWELL HARRIS, an Individual,

Plaintiffs,

v.

WRIGHT MEDICAL TECHNOLOGY, INC., a Subsidiary of Wright Medical, Inc., a Delaware Corporation; BRAD PENENBERG; BRAD PENENBERG, M.D., A Professional Corporation; W. SETH BOLLING; W. SETH BOLLING, M.D., INC.; OLYMPIA MEDICAL CENTER, INC., a California Corporation; and DOES 1-80, inclusive,

Defendants.

CASE NO.: BC 457818
[Assigned to the Hon. Luis A. Lavin, Dept. 13]

**NOTICE OF OPPOSITION AND OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF SUHASINI S. SAWKAR**

Date: None Set
Time: None Set
Dept: 13

Trial Date:
Complaint Filed: March 22, 2011

TO THE CLERK OF THE COUT, TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN, AND TO THE CHAIR OF THE JUDICIAL COUNCIL, SAN FRANCISCO:

NOTICE IS HEARBY GIVEN BY BRAD PENENBERG, M.D. AND BRAD PENENBERG, M.D., A Professional Corporation (hereafter as "Penenberg Defendants") of their opposition to the Petition for Coordination filed by Petitioner Mary Wright.

1

OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E
Page 318

The Opposition is pr[illegible]ed on the fact that in none of the othe[illegible]es sought to be coordinated by the Petition, have the plaintiffs sued the surgeon performing the hip replacement surgeries. Dr. Brad Penenberg is an Orthopaedic Surgeon who performed hip replacement surgeries in the case of Inga Harris vs. Penenberg, Case No. BC 457818, LASC.(Hon. Luis A. Lavin) Dept. "13". Dr. Penenberg did not design, develop, or innovate the Wright Hip Replacement System nor did Dr. Penenberg act as Wright Medical Technology's principal investigator or assist Wright Medical Technology in obtaining FDA approval for the hip implant, which is the subject of the coordinated litigation. Harlan C. Amstutz, M.D. has been alleged to be the designer, innovator and principal investigator, and consultant for Wright Medical Technology. Thus, there are no common issues with the other cases, whereas the unique issues in the Eleven Causes of Action, in the *Harris* case, as they pertain to the Penenberg defendants stand separate and apart as they would be limited to Dr. Penenberg's role as the surgeon.

The *Warner v. Penenberg* case, Case No. BC 475958 (Hon. Charles Palmer) pending in Department 33 of the Los Angeles Superior Court, Central District does not involve the issue of chromium or cobalt sensitivity, or metal debris.The Warner case involves a fracture of the stem manufactured by Wright Medical Technology. The surgeon, who performed the initial surgery utilizing Wright Hip Replacement System was Dr Payman Emmanuel, not Dr. Penenberg. Dr. Penenberg is a party and is being sued in the sole cause of action for medical malpractice.

It would be in the interests of justice that Dr. Penenberg defendants are not a part of the coordinated cases because there are no issues common. In fact the issues unique to Dr. Penenberg [1] are limited to the two cases identified above. Therefore, the Petition should be denied and these two cases removed from the Petition to Coordinate.

///

///

///

///

///

///

---

[1] Herzfeld & Rubin, LLP represents the Penenberg defendants in the above two cases.

2

OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E

Page 319

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Petition filed by Mary Wright seeks coordination of a number of cases on the grounds that the interests of justice will be served and that there are common issues of fact and law predominating the litigation against Wright Medical Technology, Inc. ("Wright").

## I. THERE ARE UNIQUE ISSUES APPLICABLE ONLY TO PENENBERG DEFENDANTS AND THERE ARE NO COMMON ISSUES OF LAW AND FACT APPLICABLE TO THE PENENBERG DEFENDANTS

**Alan Warner v. Brad Penenberg, M.D., Case No. BC 475958 – LASC, Dept. 33 [Honorable Charles Palmer]**

In this case it was Dr. Payman Emmanuel, who performed left hip replacement surgery on plaintiff Alan Warner using Wright Hip System. When the system failed, Plaintiff Warner consulted Dr. Brad Penenberg and underwent another surgery. It is alleged: "The next morning, Mr. Warner presented to Cedars Sinai Medical Center and was diagnosed with a left femoral stem fracture and was scheduled for surgery to revise his left total hip implant." Complaint, ¶ 9. A Cause of Action for medical malpractice is the only cause of action alleged against Dr. Brad Penenberg.

This case does not involve common issues in that there is no allegation of chromium or cobalt sensitivity or metal ions, therefore, this case does not belong in the many cases included in the Petition for Coordination and should be removed.

As to Dr. Penenberg, he is being sued as the surgeon performing surgery whereas the other cases in the Petition do not have the surgeons, performing the hip replacement surgeries as defendants. All of those other cases except *Inga Harris v. Brad Penenberg* case, and *Warner v. Penenberg* case have named Harlan Amstutz, M.D., who was not the surgeon performing the surgeries but was the one who allegedly designed, developed, marketed, innovated and consulted with Wright with respect to CONSERVE and PROFEMUR Hip Systems.

///

///

///

3

OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E

Page 320

**Inga Harris v. Brad Penen[illegible], M.D., Case No. BC 456818 – LASC Dept. 13**

**Honorable Luis Lavin, Judge**

In this case, plaintiff alleges eleven causes of action against Dr. Brad Penenberg, who performed the initial hip replacement surgery at Olympia Hospital using Wright Medical Technology's Hip System in June of 2005. Inga Harris subsequently saw Dr. Bolling and later Dr. Penenberg, who obtained blood tests and performed revision surgery, during which he removed the Wright hip implant and replaced it with an implant manufactured by another company. Plaintiff alleges eleven causes of action against Dr. Penenberg and his corporation namely, 1) Fraud, 2) Professional Negligence, 3) Elder Abuse, 4) Negligence, 5) Design Defect Strict Liability, 6) Failure to Warn Strict Liability, 7) Failure to Recall, 8) Breach of Implied Warranty of Fitness, 9) Intentional Infliction of Emotional Distress, and 10) Loss of Consortium by Mr. Harris, and 11) Battery.

Dr. Penenberg did not design, develop, and/or innovate, Wright Medical Technology's Hip System. Dr. Penenberg was not Wright Medical Technology's Principal Investigator, nor did Dr. Penenberg conduct clinical trials for Wright Medical to test the implants for metal ions. Dr. Penenberg was not involved and did not assist Wright Medical Technology in securing FDA approval for the Hip System. Thus, the Penenberg defendants have no nexus to Wright Medical Technology's product at issue in the various cases included in the Petition for Coordination.

Dr. Penenberg is not a party in the other cases, except for *Warner* and *Sternfeld* Cases (both filed by Steven Vartazarian, Esq., in which, Dr. Harlan Amstutz is not a named defendant but Dr. Penenberg is), nor did any of the other cases sue the orthopedic surgeons who performed the surgeries. As the orthopedic surgeon involved in one or more surgeries, the issues applicable to Dr. Penenberg only surround medical malpractice, i.e., standard of care applicable to a joint replacement specialist performing hip replacement surgeries. Thus, Dr. Penenberg is separated from the crux of the coordinated cases, which are Products Liability cases. Those cases center around the allegedly defective Hip System manufactured and marketed by Wright Medical Technology with Dr. Harlan Amstutz, named in those actions as the Chief Investigator for Wright Medical Technology who, allegedly designed, innovated, and developed Wright Medical's Hip Implant System, and consulted with Wright Medical Technology in various ways with respect to the subject Hip Implant.

It is clear that the *Inga Harris* case simply does not belong with the coordinated cases given that Olympia Hospital, Dr. Brad Penenberg, and Dr. Seth Bolling, who are being sued in the case, can have no other applicable issues other than alleged medical malpractice. Furthermore, given that no healthcare providers of plaintiffs have been sued in any of the other cases, it is clear that defendants such as Dr. Penenberg, and Dr. Bolling, and Olympia Hospital should not have to participate in discovery motions that are not common to the allegations applicable to them. Similarly, the witnesses, discovery, legal issues, the scope of trial would predominantly revolve around "Products liability" issues in the coordinated cases, which are not relevant or applicable to Dr. Bolling, Dr. Penenberg or Olympia Hospital.

Additionally, the eleven causes of action alleged, have absolutely no nexus to Dr. Penenberg's role as the orthopedic surgeon performing the surgeries and therefore, those allegations will be rigorously defended in a separate trial given that punitive damages, and enhanced remedies are being sought against Dr. Penenberg.

## II. THE ISSUES AS TO THE DEFENSE OF PENENBERG DEFENDANTS ARE UNIQUE AND SEPARATE AND APART FROM THE CASES TO BE COORDINATED

The issues as to Dr. Penenberg's performance of the surgeries in 2005 and 2010 and the intervening medical care Inga Harris received between the two surgeries, where Dr. Bolling is allegedly involved and the allegations against Olympia Hospital, which is being sued in only the *Inga Harris* case, causes the *Inga Harris* case to stand out in more than one way. The scope of the evidence at trial in the *Inga Harris* case simply does not match the type of evidence that will be presented to the jury in the product liability cases to be coordinated. Given that the issues involved in the *Inga Harris* case, applicable to Dr. Penenberg, Dr. Bolling and Olympia Hospital are unique and involve entirely

///

///

///

///

///

5

OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E

Page 322

different theories of liability the removal of this case from the Petition for Coordination of the cases is proper. (Calif. Code of Civil Procedure Section 404).

Respectfully submitted,

DATED: April 17, 2012

HERZFELD & RUBIN LLP

By: [signature]

MICHAEL A. ZUK
SUHASINI S. SAWKAR
Attorneys for Defendants,
BRAD PENENBERG and BRAD P PENENBERG, M.D., A Professional Corporation

6

OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E
Page 323

**DECLARATION OF SUHASINI S. SAWKAR**

I, Suhasini S. Sawkar, Esq., declare as follows:

1. I am an attorney at law duly licensed to practice law in the State of California and am a partner in the law firm of Herzfeld & Rubin, LLP, attorneys of record for defendants, Brad Penenberg, M.D., and Brad Penenberg, M.D., A Professional Corporation in the following cases: *Alan Warner vs. Brad Penenberg, M.D., et al.*, Case No. BC 475958 – Dept. 33, Honorable Charles Palmer; and *Inga Harris v. Penenberg, M.D., et al*, Case No. BC 456818 – Dept. 13, Honorable Luis Lavin. I have personal knowledge of the facts stated herein, and, if called to testify as a witness, I could and would testify to the following:

2. In the above-referenced two cases, Brad Penenberg, M.D., an orthopedic surgeon performed hip replacement surgeries on the plaintiffs. The *Warner* case involves allegations of fracture of the stem and therefore simply does not belong in the coordinated cases, as the *Warner* case involves a very different and distinct issue of fracture. The allegations in the cases included in the Petition for Coordination center around metal debris caused by the Wright Medical Technology's Hip System.

3. The *Inga Harris* case involves eleven causes of action against Dr. Penenberg and his corporation. Dr. Penenberg performed hip replacement surgery in 2005 and a revision hip replacement surgery in 2010 on Inga Harris. As to the surgeon performing the procedures, eleven causes of action have been alleged against him which include 1) Fraud, 2) Professional Negligence, 3) Elder Abuse, 4) Negligence, 5) Design Defect Strict Liability, 6) Failure to Warn Strict Liability, 7) Failure to Recall, 8) Breach of Implied Warranty of Fitness, 9) Intentional Infliction of Emotional Distress, and 10) Loss of Consortium by Mr. Harris, and 11) Battery. Additionally, Olympia Hospital and Seth Bolling, M.D. are two other healthcare providers in this case.

4. The issues are unique as they are applicable to Dr. Pananberg because he acted in the capacity of the orthopedic surgeon performing the surgeries and they center around, if at all there is any basis for, under medical malpractice – negligence theory of liability. In none of the other coordinated cases except for the two cases filed by Steven Vartazarian (he also filed the *Alan Warner* case), is the surgeon, Dr. Penenberg, named as a defendant and in *Warner* case, only one cause of action for medical

7

OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E
Page 324

malpractice is alleged again[illegible]m. All of the other cases name Harla[illegible]nstutz, M.D., who allegedly designed, developed, innovated and consulted with Wright Medical Technology in developing their hip system, OR Wright Medical Technology only. Thus, Dr. Penenberg's cases stand out as having unique issues not common to other cases, which are primarily Products Liability cases brought against the designer/developer of the product, Dr. Amstutz, and manufacturer of the product, Wright Medical Technology. There are no common issues of fact or law predominating and there are no common witnesses or common issues to be addressed in discovery or at trial.

5. It is therefore respectfully requested that the above two cases be removed from the Petition for Coordination and be separately tried in their respective departments where they are currently filed.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed this 17th day of April, 2012, at Los Angeles, California.

SSSawkar

Suhasini S. Sawkar

8

OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E

Page 325

PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Herzfeld & Rubin, LLP, 1925 Century Park East, Suite 900, Los Angeles, California 90067.

On April 17, 2012, I served the foregoing document described as: **NOTICE OF OPPOSITION AND OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF SUHASINI S. SAWKAR** on the interested parties in this action in the manner indicated below:

/X/ **BY MAIL** by placing true copies thereof enclosed in sealed envelopes addressed as stated on the service list attached hereto. I further state that I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under this practice it will be deposited with the U.S. postal service on the same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

/ / **BY FAX** transmission to the numbers as stated on the service list attached hereto.: The facsimile machine I used complied with Rule 2003(3), and no error was reported by the machine. Pursuant to Rule 2005(i), I caused the machine to print a record of the transmission, a copy of which is attached to this declaration.

/ / **BY PERSONAL SERVICE** by placing true copies thereof in a sealed envelope and causing such envelope to be delivered by hand to the offices of the addressee.

/ / **BY OVERNIGHT COURIER**: By depositing copies of the above document(s) in a box or other facility regularly maintained by FEDERAL EXPRESS, in an envelope or package designed by FEDERAL EXPRESS with delivery fees paid or provided for and sent to the person(s) named on the attached service list [C.C.P. §1013, 2015.5].

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on April 17, 2012, at Los Angeles, California.

Dawn Pitt

Dawn Pitt

9

OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E

Page 326

SERVICE LIST

Randall Rich, Esq.
Law Offices of Randall Rich
P. O. Box 66-1796
Los Angeles, CA 90066
(310) 739-2222 – Phone
(310) 745-2880 – Fax
*Attorney for Plaintiffs, Inga Harris and Lowell Harris*

James J. Kjar, Esq.
Reback, McAndrews, Kjar, Warford & Stockalper LLP
1230 Rosecrans Avenue, Suite 450
Manhattan Beach, CA 90266-2436
(310) 297-9900 – Phone
(310) 297-9800 – Fax
*Attorneys for W. Seth Bolling, M.D., and W. Seth Bolling, M.D., Inc.*

Christopher B. Yeh, Esq.
Duane Morris LLP
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
(213) 689-7400 – Phone
(213) 689-7401 – Fax
*Attorneys for Defendant, Wright Medical Technology, Inc.*

Dana J. Ash, Esq.
Sean K. Burke, Esq.
Duane Morris, LLP
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1197
*Attorneys for Defendant, Wright Medical Technology, Inc.*

Steven Dennis Karbelnig, Esq.
Even & Associates
5550 Topanga Canyon Boulevard, Suite 280
Woodland Hills, CA 91367
(818) 226-5444 – Phone
(818) 226-5455 – Fax
*Attorneys for Defendant, Olympia Medical Center, Inc.*

10

OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E
Page 327

Michael L. Kirby, Esq.
KIRBY, NOONAN, LANCE & HOGE LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101

*Attorneys for Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.*

Steven R. Vartazarian, Esq.
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Boulevard, Suite 505
Sherman Oaks, CA 91403
*Attorneys for Plaintiffs Alan Warner and Patricia Warner*

Raymond P. Boucher, Esq.
Helen Zukin, Esq.
Kiesel, Boucher, Larson, LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
(310) 854-4444
*Attorneys for Plaintiff/Petitioner, Mary Wright*

Neil C. Newson, Esq.
Neil C. Newson & Associates
8447 Wilshire Boulevard, Suite 204
Beverly Hills, CA 90211

Lowell W. Finson, Esq.
Citigroup Center Building
444 South Flower Street, 33rd Floor
Los Angeles, CA 90071

Joseph D. Herling, Esq.
Keller & Heckman, LLP
Three Embarcadero Ctr., Suite 450
San Francisco, CA 94111

Joseph H. Fagundes, Esq.
Cassel Malm Fagundes
6 El Dorado South, Suite 315
Stockton, CA 95202

Douglass Kreis, Esq.
Aylstock, Witkin, Kreis & Overholtz
803 North Palafox Street
Pensacola, Florida 32501

11

OPPOSITION OF DEFENDANTS BRAD PENENBERG, M.D., AND BRAD PENENBERG, M.D., A PROFESSIONAL CORPORATION, TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E
Page 328

4/23

RECEIVED
APR 2 3 2012
KIRBY NOONAN LANCE & HOGE LLP

Raymond P. Boucher, State Bar No. 115364
*boucher@kbla.com*
Paul R. Kiesel, State Bar No. 119854
*kiesel@kbla.com*
Helen Zukin, State Bar No. 117933
*zukin@kbla.com*
Fontaine Yuk, State Bar No. 267973
*fyuk@kbla.com*
Matthew A. Young, State Bar No. 266291
*young@kbla.com*
KIESEL BOUCHER LARSON LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

Attorneys for Petitioner
MARY WRIGHT

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ALAN WARNER and PATRICIA WARNER,<br><br>Plaintiffs,<br><br>v.<br><br>BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. BC475958<br><br>Assigned to Hon. Charles Palmer<br>Dept. 33<br><br>Action Filed: December 27, 2011<br><br>**NOTICE OF ORDER ASSIGNING COORDINATION MOTION JUDGE AND SETTING DATE FOR HEARING RE PETITION FOR COORDINATION TO JCCP 4710**<br><br>Date: May 14, 2012<br>Time: 11:00 a.m.<br>Dept.: 324, Room 1715<br>Place: Los Angeles Superior Court<br>Central Civil West<br>600 South Commonwealth Avenue<br>Los Angeles, CA 90005 |

Exhibit E
Page 329

**TO THE CLERK OF THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on April 13, 2012, the Honorable Tani G. Cantil-Sakauye, Chief Justice of California and Chair of the Judicial Council, issued an Order Assigning Coordination Motion Judge and Setting Date For Hearing in a coordination proceeding given the special title of "WRIGHT HIP SYSTEM CASES" and numbered Judicial Council Coordination Proceeding No. 4710. A true and correct copy of that Order is attached as Exhibit A.

PLEASE TAKE FURTHER NOTICE that the hearing on the Petition for Coordination is set for May 14, 2012, at 11:00 a.m., in the Los Angeles Superior Court, Central Civil West, Department 324, 600 South Commonwealth Avenue, Los Angeles, California 90005.

DATED: April 20, 2012

Respectfully submitted,

KIESEL BOUCHER LARSON LLP

By: [signature]
RAYMOND P. BOUCHER
PAUL R. KIESEL
HELEN ZUKIN
FONTAINE YUK
MATTHEW A. YOUNG

Attorneys for Petitioner
MARY WRIGHT

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

Exhibit E
Page 330

# EXHIBIT A

**CHAIR, JUDICIAL COUNCIL OF CALIFORNIA**
**455 Golden Gate Avenue, San Francisco, CA 94102-3688**

| | | |
|---|---|---|
| Coordination Proceeding<br>Special Title (Rule 3.550)<br><br>**WRIGHT HIP SYSTEM CASES** | ) | JUDICIAL COUNCIL<br>COORDINATION PROCEEDING<br>NO. **4710** |

**ORDER ASSIGNING COORDINATION MOTION JUDGE AND SETTING DATE FOR HEARING**

THE ASSISTANT SUPERVISING JUDGE of Complex Litigation Courts of the Superior Court of California, County of Los Angeles, is hereby assigned pursuant to Code of Civil Procedure section 404 and rule 3.524 of the California Rules of Court to sit as coordination motion judge to determine whether the included actions listed below are complex (rule 3.502), and if so, whether coordination of those actions is appropriate. If the coordination motion judge grants the petition for coordination, he or she must (1) recommend a particular superior court for the site of the coordination proceedings, pursuant to rule 3.530, and (2) select the reviewing court having appellate jurisdiction if the actions to be coordinated are within the jurisdiction of more than one reviewing court, pursuant to rule 3.505(a).

**INCLUDED ACTIONS**

| COURT | NUMBER | SHORT TITLE |
|---|---|---|
| Superior Court of California County of Los Angeles | BC479487 | Stevens v. Wright Medical Technology, Inc., et al. |

| COURT | NUMBER | SHORT TITLE |
|---|---|---|
| Superior Court of California County of Los Angeles | BC476193 | Wright v. Wright Medical Technology, Inc., et al. |
| Superior Court of California County of Los Angeles | BC479149 | Judenfriend v. Wright Medical Technology, Inc., et al. |
| Superior Court of California County of Los Angeles | BC480987 | Steinberg v. Wright Medical Technology, Inc., et al. |
| Superior Court of California County of Los Angeles | BC457818 | Harris, et al. v. Wright Medical Technology, Inc., et al. |
| Superior Court of California County of Los Angeles | BC475958 | Warner, et al. v., Brad L. Penenberg M.D., et al. |
| Superior Court of California County of Los Angeles | BC478032 | Sternfeld, et al. v. Brad L. Penenberg, M.D., et al. |
| Superior Court of California County of Orange | 30201200548956 CUPLCXC | Jones v. Wright Medical Technology, Inc., et al. |
| Superior Court of California County of San Diego | 37201200051926 CUPLNC | Steinman v. Wright Medical Technology, Inc., et al. |
| Superior Court of California County of San Francisco | CGC11510778 | Tucker, et al. v. Wright Medical Technology, Inc., et al. |

Pursuant to Code of Civil Procedure section 404.5 and rule 3.515, pending the determination of whether coordination is appropriate, the coordination motion judge may stay any action being considered for, or affecting an action being considered for, coordination.

Pursuant to rule 3.524, the clerk of each court in which an included action is pending is directed to file this order in the included action. Also pursuant to rule 3.524, all documents required to be submitted to the coordination motion judge must be transmitted to the court address designated below:

Assistant Supervising Judge of Complex Litigation Courts
Superior Court of California,
County of Los Angeles
Central Civil West, Dept. 324, Room 1715
600 South Commonwealth Avenue
Los Angeles, CA 90005

Pursuant to rule 3.511, a copy of every notice of opposition, application for stay order, stay order, notice of hearing on the petition, and order granting or denying coordination must be transmitted to the Chair of the Judicial Council at the following address:

Chair, Judicial Council of California
Administrative Office of the Courts
Attn: Court Programs and Services Division
(Civil Case Coordination)
455 Golden Gate Avenue
San Francisco, CA 94102-3688

Unless otherwise ordered by the coordination motion judge, it is ordered that a hearing on the petition for coordination be set before the coordination motion judge at the time and place as follows:

May 14, 2012; 11:00 a.m.
Central Civil West, Dept. 324, Room 1715
600 South Commonwealth Avenue
Los Angeles, CA 90005

Petitioner is directed to serve a copy of this order on (1) all parties to the included actions, and (2) the clerk of each court for filing in each included action.

Dated: 4/13/12

T. C. W.

Chief Justice of California and
Chair of the Judicial Council

# CHAIR, JUDICIAL COUNCIL OF CALIFORNIA

## PROOF OF SERVICE BY MAIL

| JUDICIAL COUNCIL COORDINATION NUMBER: **4710** | CASE NUMBER: |
|---|---|

1. I am over the age of 18 and not a party to this legal action.

2. I am employed in the City and County of San Francisco and my business address is

**455 Golden Gate Avenue**
**San Francisco, CA 94102-3688**

3. On April 17, 2012, I served a copy of the following documents:

- [X] ORDER ASSIGNING COORDINATION MOTION JUDGE
- [ ] ORDER ASSIGNING COORDINATION TRIAL JUDGE
- [ ] ORDER ASSIGNING COORDINATION MOTION JUDGE AND SETTING DATE FOR HEARING
- [ ] AMENDED ORDER ASSIGNING COORDINATION MOTION JUDGE
- [ ] AMENDED ORDER ASSIGNING COORDINATION TRIAL JUDGE
- [ ] OTHER

on the interested parties listed on the attached mailing list by placing a true copy enclosed in a sealed envelope with postage fully prepaid in the outgoing mailbox in my office, in accordance with ordinary business practices for deposit with the United States Postal Service in San Francisco, California. I am readily familiar with my office's business practice for collection of and processing of correspondence for mailing, and under that practice the above document is being deposited with the United States Postal Service this date in San Francisco, California, in the ordinary course of business.

4. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: April 17, 2012

Shawn Parsley
Shawn Parsley

**MAILING LIST**

**JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4710**

Raymond P. Boucher
Paul R. Kiesel
Helen Zukin
Fontaine Yuk
Matthew Young
KIESEL BOUCHER LARSON LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910

**DECLARATION OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910.

On April 23, 2012, I served true copies of the following document(s) described as **NOTICE OF ORDER ASSIGNING COORDINATION MOTION JUDGE AND SETTING DATE FOR HEARING RE PETITION FOR COORDINATION TO JCCP 4710** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Kiesel Boucher Larson LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 23, 2012, at Beverly Hills, California.

Sylvia T. Mendoza

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

Exhibit E
Page 337

KIESEL BOUCHER LARSON LLP
Attorneys at Law
Beverly Hills, California

## SERVICE LIST

Michael L. Kirby, Esq.
KIRBY, NOONAN, LANCE & HOGE LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101

Attorneys for Defendants
Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Suhasini S. Sawkar, Esq.
HERZFELD & RUBIN, LLP
1925 Century Park East, Suite 900
Los Angeles, CA 90067

Attorneys for Defendant
Brad L. Penenberg, M.D.

Steven R. Vartazarian, Esq.
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403

Attorneys for Plaintiffs
Alan Warner and Patricia Warner

Exhibit E
Page 338

NOTICE OF ORDER ASSIGNING COORDINATION MOTION JUDGE AND SETTING DATE FOR HEARING RE PETITION FOR COORDINATION TO JCCP 4710



CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Michael L. Kirby (50895) / Micaela P. Banach (226656)<br>KIRBY NOONAN LANCE & HOGE, LLP<br>350 Tenth Avenue, Suite 1300<br>San Diego, CA 92101<br>TELEPHONE NO.: 619-231-8666 FAX NO. (Optional): 619-231-9593<br>E-MAIL ADDRESS (Optional): mbanach@knlh.com<br>ATTORNEY FOR (Name): Defendants Wright Medical Group and Wright Medical Tech | CONFORMED COPY<br>ORIGINAL FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br>APR 30 2012<br>John A. Clarke, Executive Officer/Clerk<br>BY Mary Flores, Deputy |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>STREET ADDRESS: 111 N. Hill Street<br>MAILING ADDRESS: Same<br>CITY AND ZIP CODE: Los Angeles, CA 90012<br>BRANCH NAME: Central | |
| PLAINTIFF/PETITIONER: Alan Warner and Patricia Warner<br>DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D., et al. | |
| CASE MANAGEMENT STATEMENT<br>*(Check one):* ☒ UNLIMITED CASE (Amount demanded exceeds $25,000) ☐ LIMITED CASE (Amount demanded is $25,000 or less) | CASE NUMBER:<br>BC 476958 |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date: May 15, 2012 Time: 8:30 a.m. Dept.: 33 Div.: Room: 409

Address of court *(if different from the address above):*

☒ Notice of Intent to Appear by Telephone, by *(name):* Micaela P. Banach

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☒ This statement is submitted by party *(name):* Wright Medical Group, Inc. and Wright Medical Technology, Inc.
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in ☒ complaint ☐ cross-complaint *(Describe, including causes of action):*
   Products liability, negligence, medical malpractice

Page 1 of 5

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

CASE MANAGEMENT STATEMENT

Cal. Rules of Court, rules 3.720–3.730
www.courts.ca.gov

American LegalNet, Inc.
www.FormsWorkFlow.com

Exhibit E
Page 339

CM-110

| PLAINTIFF/PETITIONER: Alan Warner and Patricia Warner | CASE NUMBER: BC 475958 |
|---|---|
| DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D., et al. | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
Plaintiff Alan Warner alleges that he received a Wright Medical hip implant which subsequently fractured. Plaintiff Patricia Warner seeks damages for loss of consortium. Damages are unknown. Wright Medical denies liability.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☒ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐ The trial has been set for *(date):*
   b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
   a. ☒ days *(specify number):* 7-10
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:
   a. Attorney:
   b. Firm:
   c. Address:
   d. Telephone number:
   e. E-mail address:
   f. Fax number:
   g. Party represented:

   ☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
   a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
      (1) For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
      (2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.
   b. **Referral to judicial arbitration or civil action mediation** (if available).
      (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
      (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
      (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110 [Rev. July 1, 2011] CASE MANAGEMENT STATEMENT Page 2 of 5
American LegalNet, Inc. www.FormsWorkFlow.com

Exhibit E
Page 340

CM-110

| PLAINTIFF/PETITIONER: Alan Warner and Patricia Warner<br>DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D., et al. | CASE NUMBER:<br>BC 475958 |
|---|---|

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form are willing to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case have agreed to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☒ | ☒ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☒ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)* :<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

American LegalNet, Inc. www.FormsWorkFlow.com

CM-110

| PLAINTIFF/PETITIONER: Alan Warner and Patricia Warner<br>DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D., et al. | CASE NUMBER:<br>BC 475958 |
|---|---|

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☒ There are companion, underlying, or related cases.

(1) Name of case: Mary Wright v. Wright Medical Technology, Inc., et al.

(2) Name of court: Los Angeles Superior Court

(3) Case number: BC476193

(4) Status: Motion to Coordinate recently filed

☐ Additional cases are described in Attachment 13a.

b. ☒ A motion to ☐ consolidate ☒ coordinate will be filed by *(name party):* Mary Wright and is set for hearing on May 14, 2012, which Wright Medical will oppose.

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☒ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*
Motion for Summary Judgment and/or Adjudication

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b ☒ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| Wright Medical | Written Discovery | July 2012 |
| Wright Medical | Depositions | October 2012 |
| Wright Medical | Expert Discovery | January 2013 |

c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*
None at this time assuming this case is not coordinated with the others.

American LegalNet, Inc. www.FormsWorkFlow.com

CM-110

| PLAINTIFF/PETITIONER: Alan Warner and Patricia Warner | CASE NUMBER: BC 475958 |
|---|---|
| DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D., et al. | |

17. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

19. **Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):* Message left with Plaintiff's counsel but call was not returned by the time of filing.

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* ________

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: April 30, 2012

Micaela P. Banach
(TYPE OR PRINT NAME)

▶ MBanach
(SIGNATURE OF PARTY OR ATTORNEY)

(TYPE OR PRINT NAME)

▶
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

American LegalNet, Inc. www.FormsWorkFlow.com

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**PROOF OF SERVICE**

***Warner v. Penenberg, et al.***
LASC Case No. BC 475958

I, the undersigned, declarc: That I am, and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to the action; and I am employed in the County of San Diego, California. My business address is 350 Tenth Avenue, Suite 1300, San Diego, California 92101-8700.

On April 30, 2012, at San Diego, California, I served the following document(s) described as **CASE MANAGEMENT STATEMENT** on the parties in said action by placing a true copy thereof in a separate sealed envelope for each addressee named hereafter, addressed to each such addressee respectively as stated below, which reflects the address last given by each such addressee on any document filed in the action and served on this office.

| | |
|---|---|
| Steven R. Vartazarian (227635)<br>THE VARTAZARIAN LAW FIRM, APC<br>15250 Ventura Blvd., Suite 505<br>Sherman Oaks, CA 91403<br>Ph: 818-990-9949 | Attorneys for Plaintiff ALAN WARNER and PATRICIA WARNER |
| Michael A. Zuk (83102)<br>mzuk@hrllp-law.com<br>Suhasini S. Sawkar (129111)<br>ssawkar@hrllp-law.com<br>HERZFELD & RUBIN LLP<br>1925 Century Park East, Suite 900<br>Los Angeles, CA 90067-2783<br>Ph: 310-553-0451<br>Fax: 310-553-0648 | Attorneys for Defendant<br>BRAD L. PENENBERG, M.D. |

☒ **BY MAIL:** I am readily familiar with our business practice for collecting, processing and mailing correspondence and pleadings with the United States Postal Service. Such correspondence and pleadings are deposited with the United States Postal Service on the same day that they are placed for mailing in the ordinary course of business. I sealed each envelope and, with the postage thereon fully prepaid, placed it for mailing in accord with our business' practice. (C.C.P. § 1013(a) and (b))

☒ **STATE COURT:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 30, 2012, at San Diego, California.

Lorri A. Tavlor

MICHAEL A. ZUK, ESQ. (SBN 83102)
mzuk@hrllp-law.com
SUHASINI S. SAWKAR, ESQ. (SBN 129111)
ssawkar@hrllp-law.com
**HERZFELD & RUBIN LLP**
1925 Century Park East, Suite 900
Los Angeles, California 90067-2783
Telephone: (310) 553-0451
Facsimile: (310) 553-0648

Attorneys for Defendant,
BRAD PENENBERG, M.D.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

ALAN WARNER and PARTICIA WARNER,

Plaintiffs,

v.

BRAD PENENBERG, M.D.; WRIGHT MEDICAL GROUP, INC., a corporation; WRIGHT MEDICAL TECHNOLOGY, INC.; and DOES 1-100, inclusive,

Defendants.

CASE NO.: BC 475958
[Honorable Charles Palmer, Dept. 33]

**NOTICE OF OPPOSITION AND OPPOSITION OF DEFENDANT BRAD PENENBERG, M.D., TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF SUHASINI S. SAWKAR**

Date: May 14, 2012
Time: 11:00 a.m.
Dept: 324

TO THE CLERK OF THE COURT, TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN; TO THE CHAIR OF THE JUDICIAL COUNCIL, SAN FRANCISCO, AND THE ASSISTANT SUPERVISING JUDGE OF COMPLEX LITIGATION COURTS OF THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES:

NOTICE IS HEREBY GIVEN by BRAD PENENBERG, M.D. (hereafter as "Penenberg Defendant") of his opposition to the Petition for Coordination filed by Petitioner Mary Wright.

1

OPPOSITION OF DEFENDANT BRAD PENENBERG, M.D., TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E

Page 345

| COURT | CASE NUMBER | SHORT TITLE |
|---|---|---|
| Superior Court of California, County of Los Angeles | BC 475958 | Warner, et al. v. Brad Penenberg, M.D., et al. |

The *Warner v. Penenberg* case, Case No. BC 475958 (Hon. Charles Palmer) pending in Department "33" of the Los Angeles Superior Court, Central District does not involve the issue of chromium or cobalt sensitivity, or metal debris. The Warner case involves a fracture of the stem manufactured by Wright Medical Technology. The surgeon, who performed the initial surgery utilizing Wright Hip Replacement System was Dr. Payman Emmanuel, not Dr. Penenberg. Dr. Penenberg is a party and is being sued in the sole cause of action for medical malpractice for performing the revision surgery.

It would be in the interests of justice that Dr. Penenberg is not a part of the coordinated cases because there are no issues common. In fact the issues unique to Dr. Penenberg are limited to his role as a surgeon. Therefore, the Petition should be denied and this case removed from the Petition to Coordinate.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

2

OPPOSITION OF DEFENDANT BRAD PENENBERG, M.D., TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E
Page 346

## MEMORANDUM OF POINTS AND AUTHORITIES

The Petition filed by Mary Wright seeks coordination of a number of cases on the grounds that the interests of justice will be served and that there are common issues of fact and law predominating the litigation against Wright Medical Technology, Inc. ("Wright").

### I. THERE ARE UNIQUE ISSUES APPLICABLE ONLY TO BRAD PENENBERG, M.D. AND THERE ARE NO COMMON ISSUES OF LAW AND FACT APPLICABLE TO BRAD PENENBERG, M.D.

**Alan Warner v. Brad Penenberg, M.D., Case No. BC 475958 – LASC, Dept. 33 [Honorable Charles Palmer]**

In this case it was Dr. Payman Emmanuel, who performed the initial left hip replacement surgery on plaintiff Alan Warner using Wright Hip System. When the system failed, Plaintiff Warner consulted Dr. Brad Penenberg and underwent another surgery. It is alleged: "The next morning, Mr. Warner presented to Cedars Sinai Medical Center and was diagnosed with a left femoral stem fracture and was scheduled for surgery to revise his left total hip implant." Complaint, ¶ 9. A Cause of Action for medical malpractice is the only cause of action alleged against Dr. Brad Penenberg.

This case does not involve common issues in that there is no allegation of chromium or cobalt sensitivity or metal ions emanating from the metal-on-metal implant. Therefore, this case does not belong with the many cases included in the Petition for Coordination and should be removed.

As to Dr. Penenberg, he is being sued as the surgeon performing surgery whereas the other cases in the Petition do not name the surgeons performing the hip replacement surgeries as defendants. All of those other cases except *Inga Harris v. Brad Penenberg* case, and *Warner v. Penenberg* case have named Harlan Amstutz, M.D., who was not the surgeon performing the surgeries but was the one who allegedly designed, developed, marketed, innovated and consulted with Wright with respect to CONSERVE and PROFEMUR Hip Systems.

///

///

///

3

OPPOSITION OF DEFENDANT BRAD PENENBERG, M.D., TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E

Page 347

**II. THE ISSUES AS TO THE DEFENSE OF BRAD PENENBERG, M.D. ARE UNIQUE AND SEPARATE AND APART FROM THE CASES TO BE COORDINATED**

The issues as to Dr. Penenberg's performance of the revision surgeries stand out in more than one way. The scope of the evidence at trial in the *Alan Warner* case simply does not match the type of evidence that will be presented to the jury in the product liability cases to be coordinated. Given that the issues involved in the *Alan Warner* case, applicable to Dr. Penenberg are unique and involve entirely different theories of liability, the removal of this case from the Petition for Coordination of the cases is proper. (Calif. Code of Civil Procedure Section 404).

Respectfully submitted,

DATED: May 1, 2012

HERZFELD & RUBIN LLP

By: [signature]

MICHAEL A. ZUK
SUHASINI S. SAWKAR
Attorneys for Defendant,
BRAD PENENBERG, M.D.

4

OPPOSITION OF DEFENDANT BRAD PENENBERG, M.D., TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E
Page 348

## DECLARATION OF SUHASINI S. SAWKAR

I, Suhasini S. Sawkar, Esq., declare as follows:

1. I am an attorney at law duly licensed to practice law in the State of California and am a partner in the law firm of Herzfeld & Rubin, LLP, attorneys of record for defendants, Brad Penenberg, M.D., and Brad Penenberg, M.D., A Professional Corporation in the following cases: *Alan Warner vs. Brad Penenberg, M.D., et al.*, Case No. BC 475958 – Dept. 33, Honorable Charles Palmer; and *Inga Harris v. Penenberg, M.D., et al*, Case No. BC 456818 – Dept. 13, Honorable Luis Lavin. I have personal knowledge of the facts stated herein, and, if called to testify as a witness, I could and would testify to the following:

2. In the above-referenced two cases, Brad Penenberg, M.D., an orthopedic surgeon performed hip replacement surgeries on the plaintiffs. The *Warner* case involves allegations of fracture of the stem and therefore simply does not belong in the coordinated cases, as the *Warner* case involves a very different and distinct issue of fracture. The allegations in the cases included in the Petition for Coordination center around metal debris caused by the Wright Medical Technology's Hip System.

3. The *Inga Harris* case involves eleven causes of action against Dr. Penenberg and his corporation.. Dr. Penenberg performed hip replacement surgery in 2005 and a revision hip replacement surgery in 2010 on Inga Harris. As to the surgeon performing the procedures, eleven causes of action have been alleged against him which include 1) Fraud, 2) Professional Negligence, 3) Elder Abuse, 4) Negligence, 5) Design Defect Strict Liability, 6) Failure to Warn Strict Liability, 7) Failure to Recall, 8) Breach of Implied Warranty of Fitness, 9) Intentional Infliction of Emotional Distress, and 10) Loss of Consortium by Mr. Harris, and 11) Battery. Additionally, Olympia Hospital and Seth Bolling, M.D. are two other healthcare providers in this case.

4. The issues are unique as they are applicable to Dr. Penenberg because he acted in the capacity of the orthopedic surgeon performing the surgeries and they center around, if at all there is any basis for, under medical malpractice – negligence theory of liability. In none of the other coordinated cases except for the two cases filed by Steven Vartazarian (he also filed the *Alan Warner* case), is the surgeon, Dr. Penenberg, named as a defendant and in *Warner* case, only one cause of action for medical

5

OPPOSITION OF DEFENDANT BRAD PENENBERG, M.D., TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E
Page 349

malpractice is alleged against him. All of the other cases name Harlan Amstutz, M.D., who allegedly designed, developed, innovated and consulted with Wright Medical Technology in developing their hip system, OR Wright Medical Technology only. Thus, Dr. Penenberg's cases stand out as having unique issues not common to other cases, which are primarily Products Liability cases brought against the designer/developer of the product, Dr. Amstutz, and manufacturer of the product, Wright Medical Technology. There are no common issues of fact or law predominating and there are no common witnesses or common issues to be addressed in discovery or at trial.

5. It is therefore respectfully requested that the above two cases be removed from the Petition for Coordination and be separately tried in their respective departments where they are currently filed.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed this 30th day of April, 2012, at Los Angeles, California.

Suhasini S. Sawkar

6

OPPOSITION OF DEFENDANT BRAD PENENBERG, M.D., TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E
Page 350

PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Herzfeld & Rubin, LLP, 1925 Century Park East, Suite 900, Los Angeles, California 90067.

On May 1, 2012, I served the foregoing document described as: **NOTICE OF OPPOSITION AND OPPOSITION OF DEFENDANT BRAD PENENBERG, M.D., TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF SUHASINI S. SAWKAR** on the interested parties in this action in the manner indicated below:

/X/ **BY MAIL** by placing true copies thereof enclosed in sealed envelopes addressed as stated on the service list attached hereto. I further state that I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under this practice it will be deposited with the U.S. postal service on the same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

/ / **BY FAX** transmission to the numbers as stated on the service list attached hereto.: The facsimile machine I used complied with Rule 2003(3), and no error was reported by the machine. Pursuant to Rule 2005(i), I caused the machine to print a record of the transmission, a copy of which is attached to this declaration.

/ / **BY PERSONAL SERVICE** by placing true copies thereof in a sealed envelope and causing such envelope to be delivered by hand to the offices of the addressee.

/ / **BY OVERNIGHT COURIER**: By depositing copies of the above document(s) in a box or other facility regularly maintained by FEDERAL EXPRESS, in an envelope or package designed by FEDERAL EXPRESS with delivery fees paid or provided for and sent to the person(s) named on the attached service list [C.C.P. §1013, 2015.5].

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on May 1, 2012, at Los Angeles, California.

Dawn Pitt

Dawn Pitt

7

OPPOSITION OF DEFENDANT BRAD PENENBERG, M.D., TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E

Page 351

SERVICE LIST

Steven R. Vartazarian, Esq.
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403
Tel: 818.990.9949
Attorneys for Plaintiffs

Michael L. Kirby, Esq.
KIRBY, NOONAN, LANCE & HOGE LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101
Attorneys for Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

8

OPPOSITION OF DEFENDANT BRAD PENENBERG, M.D., TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E
Page 352

MAILING LIST

JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4710

Raymond P. Boucher, Esq.
Paul R. Kiesel, Esq.
Helen Zukin, Esq.
Fontaine Yuk, Esq.
Matthew Young, Esq.
KIESEL BOUCHER LARSON LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910

9

OPPOSITION OF DEFENDANT BRAD PENENBERG, M.D., TO PETITION OF MARY WRIGHT FOR COORDINATION OF WRIGHT HIP SYSTEM PRODUCT LIABILITY ACTIONS

Exhibit E
Page 353

CM-110

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Michael A. Zuk, Esq. (SBN 83102)
Suhasini S. Sawkar, Esq. (SBN 129111)
HERZFELD & RUBIN LLP
1925 Century Park East, Suite 900
Los Angeles, CA 90067-2783
TELEPHONE NO.: (310) 553-0451 FAX NO. (Optional): (310) 553-0648
E-MAIL ADDRESS (Optional): mzuk@hrllp-law.com; ssawkar@hrllp-law
ATTORNEY FOR (Name): Defendant, BRAD L. PENENBERG, M.D.

FOR COURT USE ONLY

RECEIVED
MAY 14 2012
KIRBY NOONAN LANCE & HOGE LLP

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

PLAINTIFF/PETITIONER: ALAN WARNER and PATRICIA WARNER

DEFENDANT/RESPONDENT: BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL

## CASE MANAGEMENT STATEMENT

(Check one): [x] UNLIMITED CASE (Amount demanded exceeds $25,000) [ ] LIMITED CASE (Amount demanded is $25,000 or less)

CASE NUMBER: BC475958

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date: May 15, 2012 Time: 8:30 a.m. Dept.: 33 Div.: Room:

Address of court (if different from the address above):

[ ] Notice of Intent to Appear by Telephone, by (name):

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):
   a. [x] This statement is submitted by party (name): Defendant Brad L. Penenberg, M.D.
   b. [ ] This statement is submitted **jointly** by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date):
   b. [ ] The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a. [ ] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served (specify names and explain why not):
      (2) [ ] have been served but have not appeared and have not been dismissed (specify names):
      (3) [ ] have had a default entered against them (specify names):
   c. [ ] The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**
   a. Type of case in [x] complaint [ ] cross-complaint (Describe, including causes of action):
   Medical Malpractice

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

CASE MANAGEMENT STATEMENT

Legal Solutions Plus

Page 1 of 5
Cal. Rules of Court, rules 3.720–3.730

Exhibit E
Page 354

| PLAINTIFF/PETITIONER: ALAN WARNER and PATRICIA WARNER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL | BC475958 |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

Plaintiff Alan Warner alleges that he received a Wright Medical hip implant which subsequently fractured. Plaintiff Patricia Warner seeks damages for loss of consortium.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**

The party or parties request ☒ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**

a. ☐ The trial has been set for *(date):*

b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*
11/13/12; 11/27/12; 12/3/12; 12/10/2012; 1/14/2013; 1/24/2013; 2/19/13; 6/23/13 (trials)

7. **Estimated length of trial**

The party or parties estimate that the trial will take *(check one):*

a. ☒ days *(specify number):* 10-12

b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:

a. Attorney:
b. Firm:
c. Address:
d. Telephone number:
e. E-mail address:
f. Fax number:
g. Party represented:

☐ Additional representation is described in Attachment 8.

9. **Preference**

☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b. **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

| PLAINTIFF/PETITIONER: ALAN WARNER and PATRICIA WARNER<br>DEFENDANT/RESPONDENT: BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL | CASE NUMBER:<br>BC475958 |
|---|---|

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | [X] | [X] Mediation session not yet scheduled<br>[ ] Mediation session scheduled for *(date)*:<br>[ ] Agreed to complete mediation by *(date)*:<br>[ ] Mediation completed on *(date)*: |
| (2) Settlement conference | [X] | [X] Settlement conference not yet scheduled<br>[ ] Settlement conference scheduled for *(date)*:<br>[ ] Agreed to complete settlement conference by *(date)*:<br>[ ] Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | [ ] | [ ] Neutral evaluation not yet scheduled<br>[ ] Neutral evaluation scheduled for *(date)*:<br>[ ] Agreed to complete neutral evaluation by *(date)*:<br>[ ] Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | [ ] | [ ] Judicial arbitration not yet scheduled<br>[ ] Judicial arbitration scheduled for *(date)*:<br>[ ] Agreed to complete judicial arbitration by *(date)*:<br>[ ] Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | [ ] | [ ] Private arbitration not yet scheduled<br>[ ] Private arbitration scheduled for *(date)*:<br>[ ] Agreed to complete private arbitration by *(date)*:<br>[ ] Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | [ ] | [ ] ADR session not yet scheduled<br>[ ] ADR session scheduled for *(date)*:<br>[ ] Agreed to complete ADR session by *(date)*:<br>[ ] ADR completed on *(date)*: |

| PLAINTIFF/PETITIONER: ALAN WARNER and PATRICIA WARNER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL | BC475958 |

**11. Insurance**

a. [ ] Insurance carrier, if any, for party filing this statement *(name)*:

b. Reservation of rights: [ ] Yes [ ] No

c. [ ] Coverage issues will significantly affect resolution of this case *(explain)*:

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

[ ] Bankruptcy [ ] Other *(specify)*:

Status:

**13. Related cases, consolidation, and coordination**

a. [x] There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

[ ] Additional cases are described in Attachment 13a.

b. [x] A motion to [ ] consolidate [x] coordinate will be filed by *(name party)*: Mary Wright and is set for hearing on May 14, 2012 in Dept. 324 of Central Civil West Division.

**14. Bifurcation**

[ ] The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**15. Other motions**

[x] The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*: Motion for Summary Judgment and/or Adjudication

**16. Discovery**

a. [ ] The party or parties have completed all discovery.

b. [x] The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| Brad Penenberg, M.D. | Written discovery | July 2012 to July 2013 |
| Brad Penenberg, M.D. | Depositions | Sept. 2012 to March 2013 |
| Brad Penenberg, M.D. | Expert Discovery | Per Code |
| Brad Penenberg, M.D. | IME of Plaintiff | 90 days before trial |

c. [x] The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*: Unknown at this time

CM-110

| PLAINTIFF/PETITIONER: ALAN WARNER and PATRICIA WARNER<br>DEFENDANT/RESPONDENT: BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL | CASE NUMBER:<br>BC475958 |
|---|---|

17. **Economic litigation**

a. [ ] This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. [ ] This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

[ ] The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

19. **Meet and confer**

a. [x] The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):* Message left with Plaintiff's counsel but call was not returned by the time of filing.

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* ________

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: May 3, 2012

Suhasini S. Sawkar
(TYPE OR PRINT NAME)

▶ S S Sawkar
(SIGNATURE OF PARTY OR ATTORNEY)

________________________
(TYPE OR PRINT NAME)

▶ ________________________
(SIGNATURE OF PARTY OR ATTORNEY)

[ ] Additional signatures are attached.

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**
**[Warner vs. Penenberg, et al, Los Angeles County Superior Court Case No. BC475958]**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Herzfeld & Rubin, LLP, 1925 Century Park East, Suite 900, Los Angeles, California 90067.

On **May** 4th, **2012,** I served, in the manner indicated below, the foregoing document described as **DEFENDANT BRAD PENENBERG, M.D.'S CASE MANAGEMENT STATEMENT** on the interested parties in this action as stated on the **Service List** attached hereto:

/ X / **BY MAIL** by placing true copies thereof enclosed in sealed envelopes addressed as on the **Service List** attached hereto. I further state that I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under this practice it is deposited with the U.S. postal service on the same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

/___/ **BY FAX** transmission to the numbers as stated on the **Service List** attached hereto.: The facsimile machine I used complied with Rule 2003(3), and no error was reported by the machine. Pursuant to Rule 2005(i), I caused the machine to print a record of the transmission, a copy of which is attached to this declaration.

/___/ **BY PERSONAL SERVICE** by placing true copies thereof in a sealed envelope and causing such envelope to be delivered by hand to the offices of the addressee.

/___/ **BY OVERNIGHT COURIER:** By depositing copies of the above document(s) in a box or other facility regularly maintained by FEDERAL EXPRESS, in an envelope or package designed by FEDERAL EXPRESS with delivery fees paid or provided for and sent to the person(s) named on the attached service list [*C.C.P.* §1013, 2015.5].

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on this 4th day of May 2012, at Los Angeles, California.

Dawn Pitt
Dawn Pitt

Exhibit E
Page 359

## SERVICE LIST

**[Warner vs. Penenberg, et al, Los Angeles County Superior Court Case No. BC475958]**

Steven R. Vartazarian, Esq.
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403
Telephone: (818) 990-9949
Facsimile: (818) 990-6124
***Attorneys for Plaintiffs***

Michael O. Fawaz, Esq.
KIRBY, NOONAN, LANCE & HOGE LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101
Telephone: (619) 231-8666
Facsimile: (619) 231-9593
***Attorneys for Defendant, Wright Medical Technology, Inc.***

CM-110

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Collette Vartazarian, (SBN 232726)
The Vartazarian Law Firm
15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403
TELEPHONE NO.: 818-990-9949 FAX NO. (Optional): 818-990-6124
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Alan Warner et. al., Plaintiff

FOR COURT USE ONLY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES
MAY 8 2012
John A. Clarke, Executive Officer/Clerk
BY [signature], Deputy
Mary Flores

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

PLAINTIFF/PETITIONER: Alan Warner et. al.
DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D. et. al.

## CASE MANAGEMENT STATEMENT

(Check one): [✓] UNLIMITED CASE (Amount demanded exceeds $25,000) [ ] LIMITED CASE (Amount demanded is $25,000 or less)

CASE NUMBER: BC475958

A CASE MANAGEMENT CONFERENCE is scheduled as follows:
Date: May 15, 2012 Time: 8:30 a.m. Dept.: 33 Div.: Room:
Address of court (if different from the address above):

[ ] Notice of Intent to Appear by Telephone, by (name):

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):
   a. [✓] This statement is submitted by party (name): Plaintiff Alan Warner et. al.
   b. [ ] This statement is submitted jointly by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date): December 27, 2011
   b. [ ] The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a. [✓] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served (specify names and explain why not):
      (2) [ ] have been served but have not appeared and have not been dismissed (specify names):
      (3) [ ] have had a default entered against them (specify names):
   c. [ ] The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**
   a. Type of case in [✓] complaint [ ] cross-complaint (Describe, including causes of action):
   Medical malpractice, strict products liability, negligence, breach of warranty and loss of consortium.

05/08/12

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]
CASE MANAGEMENT STATEMENT
Page 1 of 5
Cal. Rules of Court, rules 3.720-3.730
www.courts.ca.gov

Exhibit E
Page 361

CM-110

| PLAINTIFF/PETITIONER: Alan Warner et. al. | CASE NUMBER: |
| --- | --- |
| DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D. et. al. | BC475958 |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
Defendants manufactured and placed a prosthetic hip in plaintiff that broke causing plaintiff to under go several subsequent procedures

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☑ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☑ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*
Please see attached trial list.

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☑ days *(specify number):* 10 days
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☑ by the following:
a. Attorney: Steven R. Vartazarian
b. Firm: The Vartazarian Law Firm
c. Address: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403
d. Telephone number: 818-990-9949
e. E-mail address:
f. Fax number: 818-990-6124
g. Party represented: Plaintiff
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
(1) For parties represented by counsel: Counsel ☑ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.
b. **Referral to judicial arbitration or civil action mediation** (if available).
(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

05/08/12

CM-110

| PLAINTIFF/PETITIONER: Alan Warner et. al. | CASE NUMBER: |
| --- | --- |
| DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D. et. al. | BC475958 |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form are willing to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case have agreed to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
| --- | --- | --- |
| (1) Mediation | ☑ | ☑ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☑ | ☑ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☐ Settlement conference completed on *(date):* |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date):*<br>☐ Agreed to complete neutral evaluation by *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date):*<br>☐ Agreed to complete judicial arbitration by *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date):*<br>☐ Agreed to complete private arbitration by *(date):*<br>☐ Private arbitration completed on *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date):*<br>☐ Agreed to complete ADR session by *(date):*<br>☐ ADR completed on *(date):* |

05/08/12

CM-110

| PLAINTIFF/PETITIONER: Alan Warner et. al. | CASE NUMBER: |
| --- | --- |
| DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D. et. al. | BC475958 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify)*:

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**15. Other motions**

☑ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

Motions in limine

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☑ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
| --- | --- | --- |
| Plaintiff | Written discovery | Within 30 days |
| Plaintiff | Deposition of Defendant/Witnesses | Within 90 days |

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*:

CM-110

| PLAINTIFF/PETITIONER: Alan Warner et. al. | CASE NUMBER: BC475958 |
|---|---|
| DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D. et. al. | |

17. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

18. **Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

19. **Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

20. Total number of pages attached *(if any)*: ________

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: May 3, 2012

Collette Vartazarian
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF PARTY OR ATTORNEY)

(TYPE OR PRINT NAME) ▶ (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

05/08/12

PROOF OF SERVICE
1013A (3) CCP
STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403

On May 7, 2012, I served the foregoing document described as **Case Management Statement** on the interested parties in this action:

XXX by placing the true copies thereof enclosed in sealed envelopes addressed as follows:

Michael A. Zuk, Esq.
Suhasini S. Sawkar, Esq.
HERZFELD & RUBIN LLP
1925 Century Park East, Suite 900
Los Angeles, CA 90067-2783

Michael O. Fawaz, Esq.
KIRBY, NOONAN, LANCE & HOGE LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101

I deposited such envelope in the Overnite Express box at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

XXX (BY MAIL) I caused such envelope to be deposited in the mail at Studio City, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was________ The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

XXX I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 7, 2012, at Sherman Oaks, California.

[signature]
Dahlia Smith

05/08/12

5/22

RECEIVED
JUN 11 2012
KIRBY NOONAN LANCE & HOGE LLP

MICHAEL A. ZUK, ESQ. (Bar # 83102)
mzuk@hrllp-law.com
NAPOLEON G. TERCERO, III, ESQ. (Bar # 140314)
ntercero@hrllp-law.com
**HERZFELD & RUBIN LLP**
1925 Century Park East, Suite 900
Los Angeles, California 90067-2783
Telephone: (310) 553-0451
Facsimile: (310) 553-0648

Attorneys for Defendant
BRAD PENENBERG, M.D.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES—CENTRAL DISTRICT**

ALAN WARNER and PARTICIA WARNER,

Plaintiffs,

v.

BRAD PENENBERG, M.D.; WRIGHT MEDICAL GROUP, INC., a corporation; WRIGHT MEDICAL TECHNOLOGY, INC.; and DOES 1-100, inclusive,

Defendants.

**CASE NO.: BC475958**
[Honorable Charles F. Palmer, Dept. 33]

**NOTICE OF RULING**

**Date:** May 15, 2012
**Time:** 8:30 a.m.
**Dept.:** 33

Complaint Filed: December 27, 2011

Exhibit E
Page 367

**TO ALL PARTIES AND/OR THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 15, 2012, appearance was made in Department 33 of the Los Angeles Court of Unlimited Jurisdiction before the Honorable Charles F. Palmer, judge presiding, for a Case Management Conference. Appearing for plaintiffs was Nareg Vartazarian, Esq. of The Vartazarian Law Firm; Napoleon G. Tercero, III, Esq. of Herzfeld & Rubin LLP, appeared on behalf of defendant Brad L. Penenberg, M.D.; and, Michaela Vannach, Esq. of Kirby, Noonan, Lance & Hoge LLP, appeared on behalf of Wright Medical Group.

The Court ordered as follows:

1. The case is ordered into mediation (the parties chose the Party Select Panel, which costs $150 split three (3) ways);

2. The mediation completion date is January 15, 2013;

3. The mediation return date is January 16, 2013, at 8:30 a.m., Dept. 33;

4. The Final Status Conference is scheduled for April 26, 2013, at 8:30 a.m., Dept. 33;

5. The Trial is May 6, 2013, at 9:30 a.m., Dept. 33;

6. All parties are ordered to comply with the Case Management Conference Order re Final Status Conference, which is attached hereto as **Exhibit A**.

DATED: May 22, 2012

HERZFELD & RUBIN LLP

By: ______________________

MICHAEL A. ZUK
NAPOLEON G. TERCERO, III
Attorneys for Defendant,
BRAD PENENBERG, M.D.

Exhibit E
Page 368

# EXHIBIT A

**CASE MANAGEMENT CONFERENCE ORDER RE FINAL STATUS CONFERENCE**

Pursuant to Local Rule 3.25 (i) counsel are ordered to meet and confer telephonically or in person at least five days prior to the final status conference concerning the submission of joint trial documents. The submission of the following joint trial documents is ordered: a joint statement of the case to be read to the jury, a joint witness list (with time estimates for each counsel for each witness), a joint exhibit list of premarked exhibits, a set of agreed jury instructions and, if necessary, a separate set as to which there is disagreement, and an agreed-upon special verdict form. Bring courtesy copies of the joint trial documents to the final status conference. The CACI jury instructions should be printed out with all blanks and bracketed information completed, to the extent possible.

The court requests that counsel jointly prepare and bring to the Final Status Conference a binder of the in limine motions with a tab for each motion, with the motion, opposition, and reply behind the tab

With respect to deposition testimony which counsel intend to introduce at trial, other than for impeachment purposes, Counsel should meet and confer prior to the status conference, designate and counter-designate all testimony intended to be used with different colored highlighters for each party, note any objections in the margin using different colored ink for each party, and lodge the transcripts with the court no later than the day of the Final Status Conference. Counsel are reminded to comply with Local Rule 3.25(h) with respect to the Final Status Conference. Counsel should agree on the allocation of exhibit numbers consistent with Local Rule 3.53.

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**
[Warner vs. Penenberg, et al]
LASC No. BC475958

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1925 Century Park East, Suite 900, Los Angeles, California 90067.

On **May 22, 2012,** I served the foregoing document described as: **NOTICE OF RULING** on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows:

**[XX] BY MAIL** as follows: I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing an affidavit.

[ ] BY FACSIMILE TRANSMISSION: I transmitted the above-named document to the above-listed interested parties today. A copy of the transmission record is attached hereto.

[ ] BY FEDERAL EXPRESS: By delivering a true copy thereof, enclosed in a sealed envelope, to a designated Federal Express box or facility to be delivered next business day to the addressee(s) shown below.

[ ] BY EMAIL: I transmitted the above-named document to the above-listed interested parties today. A copy of the transmission record is attached hereto.

[X] (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **May 22, 2012,** at Los Angeles, California.

Roman R. Block

Exhibit E
Page 371

**SERVICE LIST**
[Warner vs. Penenberg, et al]
LASC No. BC475958

Steven R. Vartazarian, Esq.
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403
Telephone: (818) 990-9949
Facsimile: (818) 990-6124
***Attorneys for Plaintiffs***

Michael O. Fawaz, Esq.
KIRBY, NOONAN, LANCE & HOGE LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101
Telephone: (619) 231-8666
Facsimile: (619) 231-9593
***Attorneys for Defendant, Wright Medical Technology, Inc.***

Superior Court of California, County of Los Angeles
JOHN A. CLARKE, EXECUTIVE OFFICER/CLERK — ALTERNATIVE DISPUTE RESOLUTION (ADR)

# ADR CASE REFERRAL INTAKE

(Please type or print clearly)

CASE INFORMATION

**Case Number:** BC475958 **Courthouse:** Stanley Mosk **Dept.:** 33

**Case Name:** Warner v. Penenberg, et. al.

**Litigation Type:** ☒ Civil ☐ Family Law ☐ Probate ☐ Other (specify):

RECEIVED

**ADR Process:** ☒ MEDIATION ☐ ARBITRATION ☐ NEUTRAL EVALUATION ☐ SETTLEMENT CONFERENCE

**Case Type: See Page 2** **ADR Completion Date:** 1/15/13

JUN 05 2012

**Amount in Dispute:**

Plaintiff/Petitioner or attorney: ☐ $0-$25,000 ☐ $25,000-$50,000 ☐ $50,000-$100,000 ☐ $100,000-$250,000 ☒ $250,000-$500,000 ☐ $500,000-$750,000 ☐ $750,000-$1,000,000 ☐ Over $1,000,000

Defendant/Respondent or attorney: ☐ $0-$25,000 ☐ $25,000-$50,000 ☐ $50,000-$100,000 ☐ $100,000-$250,000 ☐ $250,000-$500,000 ☐ $500,000-$750,000 ☐ $750,000-$1,000,000 ☐ Over $1,000,000

NEUTRAL SELECTION

**Party Select Panel:**

☑ The parties select the following Neutrals in order of preference from the Court ADR Party Pay Panel and acknowledge they are undertaking a financial commitment in selecting a Party Pay Panel Neutral.

1) NAME: Steve Marzi NEUTRAL NO.: ____

2) NAME: Walter Klein NEUTRAL NO.: ____

(signature of plaintiff/petitioner or attorney) (signature of defendant/respondent or attorney)

☑ ADDITIONAL SIGNATURES LISTED ON ATTACHED PAGE → MBanach, for def. Wright Medical

**Random Select Panel:**

☐ The parties understand that a Neutral from the Court ADR Pro Bono Panel will be as

NAME OF ASSIGNED NEUTRAL: ____

PARTIES

ATTORNEY NAME: Micaela P. Banach
FIRM: Kirby Noonan Lance & Hoge
ADDRESS: 350 Tenth Ave St 1300
CITY: San Diego STATE: Ca ZIP: 92101
PHONE: (619) 231 8666 FAX: (619) 231-9593
E-MAIL: mbanach@knlh.com
ATTORNEY FOR: Wright Medical Group (party name) Defendant (party type)

Kirby Noonan Lance & Hoge LLP
ATTORNEYS AT LAW
MICAELA P. BANACH
Partner
350 Tenth Avenue, Suite 1300, San Diego, California 92101-8700
ph.: 619.231.8666 fax: 619.231.9593 www.knlh.com
email: mbanach@knlh.com

HERZFELD & RUBIN, LLP
ATTORNEYS AT LAW
H&R
NAPOLEON G. TERCERO, III
PARTNER
1925 CENTURY PARK EAST, SUITE 900
LOS ANGELES, CALIFORNIA 90067
WWW.HRLLP-LAW.COM
DIRECT: 310 691-2048
MAIN: 310 553-0451
FAX: 310 553-0648
NTERCERO@HRLLP-LAW.COM

THE VARTAZARIAN LAW FIRM
A Professional Corporation
Vartazarian, Esq.
Nareg
15250 Ventura Blvd. • Suite 505 • Sherman Oaks, CA 91403
(O) 818 • 990 • 9949
collette@thevlf.com

ATTORNEY FOR: Brad Penenberg M.D. (party name) Defendant (party type)

FOR OFFICE USE ONLY

Received by: ____ Name ____ Date ____

Case Mgr Assigned: ____ Name ____

Exhibit E
Page 373

# ADR CASE REFERRAL INTAKE
(continued)

| Case Name: | Case Number: |
|---|---|

## CASE SELECTION CRITERIA

| | CASE TYPE |
|---|---|
| ☐ | Antitrust/Trade Regulation |
| ☐ | Auto Tort - Personal Injury/Property Damage/Wrongful Death (PI/PD/WD) |
| ☐ | Auto Tort - Uninsured Motorist - PI/PD/WD |
| ☐ | Civil Harassment |
| ☐ | Construction Defect |
| ☐ | Contract - Breach of Rental/Lease Contract (not insurance, UD, or wrongful eviction) |
| ☐ | Contract - Collections |
| ☐ | Contract - Contract/Warranty Breach - Seller Plaintiff (not insurance, fraud, or negligence) |
| ☐ | Contract - Contractual Fraud |
| ☐ | Contract - Insurance Coverage/Subrogation |
| ☐ | Contract - Negligent Breach of Contract/Warranty (not insurance or fraud) |
| ☐ | Contract - Other Breach of Contract/Warranty (not insurance, fraud, or negligence) |
| ☐ | Contract - Tortious Interference |
| ☐ | Declaratory Relief Only |
| ☐ | Elder/Dependent Adult Abuse |
| ☐ | Employment - Labor Commissioner Appeals |
| ☐ | Employment - Other (not wrongful termination or labor commissioner appeal) |
| ☐ | Employment - Wrongful Termination |
| | Family |
| ☐ | Injunctive Relief Only (not domestic/harassment) |
| ☐ | Non-PI/PD/WD Tort - Business/Commercial Tort (not fraud or breach of contract) |
| ☐ | Non-PI/PD/WD Tort - Civil Rights (e.g., discrimination, false arrest) |
| ☐ | Non-PI/PD/WD Tort - Defamation (e.g., slander, libel) |
| ☐ | Non-PI/PD/WD Tort - Fraud (no contract) |
| ☐ | Non-PI/PD/WD Tort - Intellectual Property |
| ☐ | Non-PI/PD/WD Tort - Legal Malpractice |
| ☐ | Other PI/PD/WD Tort - Asbestos |
| ☐ | Other PI/PD/WD Tort - Intentional (e.g., assault, vandalism, etc.) |
| ☐ | Other PI/PD/WD Tort - Intentional Infliction of Emotional Distress |
| ☐ | Other PI/PD/WD Tort - Medical Malpractice |
| ☐ | Other PI/PD/WD Tort - Premises Liability |
| ☒ | Other PI/PD/WD Tort - Product Liability (not asbestos, toxic/environmental) |
| ☐ | Partnership & Corporate Governance |
| | Probate |
| ☐ | Real Property - Eminent Domain/Condemnation |
| ☐ | Real Property - Mortgage Foreclosure |
| ☐ | Real Property - Quiet Title |
| ☐ | Real Property - Wrongful Eviction |
| ☐ | Real Property - Other |
| ☐ | Securities |
| ☐ | Toxic Tort/Environmental |
| ☐ | Workplace Harassment |
| ☐ | Writ of Mandate |

Do you need a neutral who accepts cases on short notice? ☐ Yes ☒ No

Jurisdiction Type: ☒ Unlimited ☐ Limited

Language ability needed other than English: ____________________

ADA Accommodations

- ☐ Accessible parking
- ☐ Accessible elevators
- ☐ Accessible public phones
- ☐ Accessible tables/counters
- ☐ Accessible entrance
- ☐ Accessible restrooms
- ☐ Accessible listening devices
- ☐ Other (specify):____________

Exhibit E

Page 374

Location: Zip Code: ______________ City: ____________________

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
# ALTERNATIVE DISPUTE RESOLUTION (ADR) DEMOGRAPHIC INFORMATION

JOHN A. CLARKE, EXECUTIVE OFFICER/CLERK — ALTERNATIVE DISPUTE RESOLUTION (ADR) DEPARTMENT

The provision of Court ADR services is made possible through major support from the Los Angeles County Department of Community and Senior Services through the California Dispute Resolution Program Act. As part of the funding requirements, the collection of demographic information is required. All information is confidential.

| I. Disputant Description | | II. Disputant Frequency | | III. Gender | |
|---|---|---|---|---|---|
| **Self-Representing:** | | First Time Client | | Male | ✓ |
| Business | | Repeat Client | | Female | |
| Individual/Self | | Unknown | | N/A (business, organizations, etc.) | |
| Insurance Company | | | | | |
| Other | | | | | |
| **Attorney Representing:** | | | | | |
| Business | | | | | |
| Government Entity | | | | | |
| Individual/Self | ✓ | | | | |
| Insurance Company | | | | | |
| Other | | | | | |

| IV. Age | | V. Supervisorial District of Residence/Business/ Organization | |
|---|---|---|---|
| 17 and Under | | Supervisorial District 1 – Gloria Molina | |
| 18 - 39 | | Supervisorial District 2 – Mark Ridley-Thomas | |
| 40 - 64 | | Supervisorial District 3 – Zev Yaroslavsky | |
| 65 and over | | Supervisorial District 4 – Don Knabe | |
| Declined to State | | Supervisorial District 5 – Mike Antonovich | |
| N/A (business, organizations, etc.) | | Outside of LA County | |

| VI. Self-Identified Ethnicity | | VII. Self-Identified Primary Language | |
|---|---|---|---|
| American Indian/Native Alaskan | | Armenian | |
| Asian/Pacific Islander | | Cambodian | |
| Black/African-American | | Chinese | |
| Hispanic/Latino | | English | |
| White | | Farsi | |
| Multiple Ethnicities/Races | | Korean | |
| Other | | Russian | |
| Declined to State | | Spanish | |
| N/A (businesses, organizations, etc.) | | Tagalog | |
| | | Vietnamese | |
| | | Other | |
| | | Declined to State | |
| | | N/A (businesses, organization, etc.) | |

| VIII. Self-Identified Annual Household/Business Income | | IX. Self-Identified Disability Status (participants must self-identify; inquiring outside of self-identification may violate certain laws) | |
|---|---|---|---|
| $20,000 or less | | Yes | |
| $20,001-$30,000 | | No | |
| $30,001-$50,000 | | Declined to State | |
| $50,001 and Over | | N/A (businesses, organizations, etc.) | |
| Declined to State | | | |
| N/A (businesses, organizations, etc.) | | | |

Exhibit E
Page 375

LAADR 011 (Rev. 01-12)
LASC Adopted 11-03
For Mandatory Use

ALTERNATIVE DISPUTE RESOLUTION (ADR) DEMOGRAPHIC INFORMATION

Cal. DRPA Statutes and Regulations, §§ 467.6 & 471.5
Local Rules, rule 3.255

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
# ALTERNATIVE DISPUTE RESOLUTION (ADR) DEMOGRAPHIC INFORMATION

JOHN A. CLARKE, EXECUTIVE OFFICER/CLERK — ALTERNATIVE DISPUTE RESOLUTION (ADR) DEPARTMENT

The provision of Court ADR services is made possible through major support from the Los Angeles County Department of Community and Senior Services through the California Dispute Resolution Program Act. As part of the funding requirements, the collection of demographic information is required. All information is confidential.

| I. Disputant Description | | II. Disputant Frequency | | III. Gender | |
|---|---|---|---|---|---|
| **Self-Representing:** | | First Time Client | | Male | |
| Business | | Repeat Client | | Female | |
| Individual/Self | | Unknown | | N/A (business, organizations, etc.) | |
| Insurance Company | | | | | |
| Other | | | | | |
| **Attorney Representing:** | | | | | |
| Business | ✓ | | | | |
| Government Entity | | | | | |
| Individual/Self | | | | | |
| Insurance Company | | | | | |
| Other | | | | | |

| IV. Age | | V. Supervisorial District of Residence/Business/ Organization | |
|---|---|---|---|
| 17 and Under | | Supervisorial District 1 – Gloria Molina | |
| 18 - 39 | | Supervisorial District 2 – Mark Ridley-Thomas | |
| 40 - 64 | | Supervisorial District 3 – Zev Yaroslavsky | |
| 65 and over | | Supervisorial District 4 – Don Knabe | |
| Declined to State | | Supervisorial District 5 – Mike Antonovich | |
| N/A (business, organizations, etc.) | | Outside of LA County | |

| VI. Self-Identified Ethnicity | | VII. Self-Identified Primary Language | |
|---|---|---|---|
| American Indian/Native Alaskan | | Armenian | |
| Asian/Pacific Islander | | Cambodian | |
| Black/African-American | | Chinese | |
| Hispanic/Latino | | English | |
| White | | Farsi | |
| Multiple Ethnicities/Races | | Korean | |
| Other | | Russian | |
| Declined to State | | Spanish | |
| N/A (businesses, organizations, etc.) | | Tagalog | |
| | | Vietnamese | |
| | | Other | |
| | | Declined to State | |
| | | N/A (businesses, organization, etc.) | |

| VIII. Self-Identified Annual Household/Business Income | | IX. Self-Identified Disability Status (participants must self-identify; inquiring outside of self-identification may violate certain laws) | |
|---|---|---|---|
| $20,000 or less | | Yes | |
| $20,001-$30,000 | | No | |
| $30,001-$50,000 | | Declined to State | |
| $50,001 and Over | | N/A (businesses, organizations, etc.) | |
| Declined to State | | | |
| N/A (businesses, organizations, etc.) | | | |

Exhibit E
Page 376

LAADR 011 (Rev. 01-12)
LASC Adopted 11-03
For Mandatory Use

ALTERNATIVE DISPUTE RESOLUTION (ADR) DEMOGRAPHIC INFORMATION

Cal. DRPA Statutes and Regulations, §§ 467.6 & 471.5
Local Rules, rule 3.255

Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
KIRBY NOONAN LANCE & HOGE LLP
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUL 20 2012

John A. Clarke, Executive Officer/Clerk
BY ______, Deputy
Mary Flores

Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, DOES 1 through 100, inclusive,

Defendants.

Case No. BC 475958

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL *PRO HAC VICE***

Judge: Hon. Charles F. Palmer
Dept.: 33

DATE: September 14, 2012
TIME: 8:30 a.m.
DEPT: 33

TRIAL: Not Set

## I. ARGUMENT

### A. The Court Has Authority to Permit Michael O. Fawaz to Appear *Pro Hac Vice* in This Matter.

Rule 9.40(a) of the California Rules of Court provides, in pertinent part, that:

> A person who is not a member of the State Bar of California but who is a member in good standing of and eligible to practice before the bar of any United States court or the highest court in any state . . . and who has been retained to appear in a particular cause pending in a court of this state, may in the discretion of such court be permitted upon written application to appear as counsel *pro hac vice* provided that an active member of the State Bar of California is associated as attorney of record.

Exhibit E
Page 377

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Cal. Rules of Court, rule 9.40(a).

An applicant must meet the following criteria to be eligible for admission to practice in the California state courts pursuant to Rule 9.40(a):

1) He must not be a resident of the State of California;

2) He must not be regularly employed in the State of California;

3) He must not be regularly engaged in substantial business, professional, or other activities in the State of California; and

4) He must be a member in good standing and eligible to practice before the bar of any United States court or the highest court in any other state.

*Id.*

Subpart (d) of Rule 9.40 sets forth the information that the applicant must include in his verified application for admission *pro hac vice* pursuant to Rule 9.40. The application must state:

1) The applicant's residence and office address;

2) The Courts to which the applicant has been admitted to practice and the dates of admission;

3) That the applicant is a member in good standing in those courts;

4) That the applicant is not currently suspended or disbarred in any court;

5) The title of the court and cause in which the applicant has filed an application to appear as counsel *pro hac vice* in this state in the preceding two years, the date of each application, and whether or not it is granted; and

6) The name, address, and telephone number of the active member of the State Bar of California who is attorney of record.

Cal. Rules of Court, rule 9.40(d).

**B. The Verified Application of Michael O. Fawaz Permits Him to Appear *Pro Hac Vice*.**

The undersigned counsel submits that the verified application of Mr. Fawaz and the additional moving papers filed herein comply in all respects with the requirements of Rule 9.40

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

and that no sound reason exists to deny Mr. Fawaz's application for admission *pro hac vice* in this Court.

## II. CONCLUSION

Based upon the foregoing, it is respectfully submitted that this motion and application be granted and that Michael O. Fawaz be permitted to appear as counsel *pro hac vice* on behalf of Wright Medical Group, Inc. and Wright Medical Technology, Inc.

DATED: July 19, 2012

KIRBY NOONAN LANCE & HOGE LLP

By: [signature]
Michael L. Kirby
Micaela P. Banach
Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 379

KNLH\949833.1

-3-

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL PRO HAC VICE

Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES
JUL 20 2012
John A. Clarke, Executive Officer/Clerk
BY Mary Flores, Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, DOES 1 through 100, inclusive,

Defendants.

Case No. BC 475958

**NOTICE OF HEARING ON APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL *PRO HAC VICE***

Judge: Hon. Charles F. Palmer
Dept.: 33

DATE: September 14, 2012
TIME: 8:30 a.m.
DEPT: 33

TRIAL: Not Set

PLEASE TAKE NOTICE that at the above time and place, defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc. ("Wright Medical") will and hereby do apply for the Court to grant permission for Michael O. Fawaz to appear as counsel *Pro Hac Vice* and represent Wright Medical in this matter.

This application is made and based on Rule 9.40 of the California Rules of Court, on the grounds that Michael O. Fawaz has been retained to represent Wright Medical in this action; he is a member in good standing of the State Bar of Michigan; he is not a resident of the State of California; he is not regularly employed in California; he is not regularly engaged in substantial

Exhibit E
Page 380

business, professional, or other activities in California; and he has not made repeated appearances as counsel *pro hac vice* in cases pending in California.

This application is based upon this Notice of Application, the Memorandum of Points and Authorities in support of the application, the concurrently-filed Verified Application of Michael O. Fawaz, the concurrently filed Declaration of Micaela P. Banach, and on such other and further evidence as may be presented on the hearing of this application.

DATED: July 19, 2012

KIRBY NOONAN LANCE & HOGE LLP

By: [signature]

Michael L. Kirby
Micaela P. Banach
Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 381

KNLH\949716.1

-2-

NOTICE OF HEARING ON APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL PRO HAC VICE

Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUL 20 2012

John A. Clarke, Executive Officer/Clerk
BY [signature] Mary Flores, Deputy

Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, DOES 1 through 100, inclusive,

Defendants.

Case No. BC 475958

**PROOF OF SERVICE**

Judge: Hon. Charles F. Palmer
Dept.: 33

DATE: September 14, 2012
TIME: 8:30 a.m.
DEPT: 33

TRIAL: Not Set

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 382

**Warner v. Peneberg, et al.**
**Los Angeles, Superior Court Case No. BC475958**

I, the undersigned, declare: That I am, and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to the action; and I am employed in the County of San Diego, California. My business address is 350 Tenth Avenue, Suite 1300, San Diego, California 92101-8700.

On July 19, 2012, at San Diego, California, I served the following document(s) described as (1) **NOTICE OF HEARING ON APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL *PRO HAC VICE*; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL *PRO HAC VICE*; (3) VERIFIED APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL *PRO HAC VICE* IN THIS ACTION FOR WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.; (4) DECLARATION OF MICAELA P. BANACH IN SUPPORT OF APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL *PRO HAC VICE*; and (5) [PROPOSED] ORDER ON APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL *PRO HAC VICE* IN THIS ACTION FOR WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.** on the parties in said action by placing a true copy thereof in a separate sealed envelope for each addressee named hereafter, addressed to each such addressee respectively as stated on the attached service list, which reflects the address last given by each such addressee on any document filed in the action and served on this office.

**SEE ATTACHED SERVICE LIST**

☒ **BY MAIL:** I am readily familiar with our business practice for collecting, processing and mailing correspondence and pleadings with the United States Postal Service. Such correspondence and pleadings are deposited with the United States Postal Service on the same day that they are placed for mailing in the ordinary course of business. I sealed each envelope and, with the postage thereon fully prepaid, placed it for mailing in accord with our business' practice. (C.C.P. § 1013(a) and (b))

☒ **STATE COURT:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 19, 2012, at San Diego, California.

Virginia Soto Perez

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**Warner v. Peneberg, et al.**
**Los Angeles, Superior Court Case No. BC475958**

Steven R. Vartazarian (227635)
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403
Ph: 818-990-9949
Fx: 818-990-6124

Attorneys for Plaintiff ALAN WARNER and PATRICIA WARNER

Michael A. Zuk (83102)
mzuk@hrllp-law.com
Suhasini S. Sawkar (129111)
ssawkar@hrllp-law.com
HERZFELD & RUBIN LLP
1925 Century Park East, Suite 900
Los Angeles, CA 90067-2783
Ph: 310-553-0451
Fax: 310-553-0648

Attorneys for Defendant BRAD L. PENENBERG, M.D.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700



CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES
JUL 20 2012
John A. Clarke, Executive Officer/Clerk
BY ________, Deputy
Mary Flores

Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| ALAN WARNER and PATRICIA WARNER,<br><br>Plaintiffs,<br><br>vs.<br><br>BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. BC 475958<br><br>**DECLARATION OF MICAELA P. BANACH IN SUPPORT OF APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL *PRO HAC VICE***<br><br>Judge: Hon. Charles F. Palmer<br>Dept.: 33<br><br>DATE: September 14, 2012<br>TIME: 8:30 a.m.<br>DEPT: 33<br><br>TRIAL: Not Set |

I, MICAELA P. BANACH, declare as follows:

1. I am an attorney at law licensed to practice before all courts in the State of California. I am a partner at the firm Kirby Noonan Lance & Hoge, LLP, attorneys of record for Defendant Wright Medical Group, Inc. and Wright Medical Technology, Inc. in the above captioned matter. I have personal knowledge of the facts stated herein and if called to testify thereto, I could and would competently so testify.

2. I have been licensed, admitted and in good standing to practice in the State of California since 2003.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

3. My office is located at 350 Tenth Avenue, Suite 1300, San Diego, California 92101.

4. My firm and I are readily available for opposing counsel to contact regarding the conduct of this case and for service of process.

5. On behalf of Michael O. Fawaz, I provided copies of the notice and applications, including supporting documents, for his admission *pro hac vice*, along with payment in the amount of $50.00, to the State Bar of California pursuant to California Rules of Court rule 9.40(e).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration is executed this 19th day of July, 2012, at San Diego, California.

Micaela P. Banach

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 386

KNLH\949856.1

-2-

DECLARATION OF MICAELA P. BANACH IN SUPPORT OF APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL PRO HAC VICE

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUL 20 2012

John A. Clarke, Executive Officer/Clerk
BY [signature], Deputy
Mary Flores

Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, DOES 1 through 100, inclusive,

Defendants.

Case No. BC 475958

**VERIFIED APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL *PRO HAC VICE* IN THIS ACTION FOR WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.**

Judge: Hon. Charles F. Palmer
Dept.: 33

DATE: September 14, 2012
TIME: 8:30 a.m.
DEPT: 33

TRIAL: Not Set

I, Michael O. Fawaz, declare as follows:

1. I am an attorney at law licensed to practice before the Courts of the State of Michigan and I am an associate with the law firm of Howard & Howard. Howard & Howard is counsel of record for defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc. ("Wright Medical"). By this verified application, I request leave of this Court to appear in the above-captioned action as counsel *pro hac vice* on behalf of Wright Medical. Except where noted to be otherwise, I state the following of my own knowledge and if called upon to do so, could and would testify competently to the following.

Exhibit E
Page 387

KNLH\949858.1

VERIFIED APPLICATION OF MICHAEL O. FAWAZ FOR ADMISSION AS COUNSEL PRO HAC VICE IN THIS ACTION FOR WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.

Kirby Noonan Lance & Hoge LLP

2. My office address is Howard & Howard, 450 West Fourth Street, Royal Oak, MI 48067-2557. My residence address is 3708 Kensington Drive, Royal Oak, Michigan 48073. I am not a resident of the State of California.

3. I am not now, nor have I ever been, regularly employed in the State of California, nor do I regularly engage in substantial business, professional, or other activities in the State of California.

4. I have been admitted to practice law before the following courts:

| | | |
|---|---|---|
| a. | Michigan Supreme Court | December, 2005 |
| b. | USDC Eastern District of Michigan | 2006 |
| c. | USDC Western District of Michigan | 2006 |
| d. | Sixth Circuit Court of Appeals | 2006 |
| e. | Illinois Supreme Court | November, 2006 |
| f. | Federal Circuit | 2010 |
| g. | USDC Northern District Illinois | March, 2011 |
| h. | USDC Central District Illinois | March, 2006 |
| i. | USDC WD Tennessee | January 2012 |
| j. | Seventh Circuit Court of Appeals | January 2012 |

5. I am a member in good standing in these courts and have never been suspended or disbarred from practicing law before any court or tribunal.

6. In the preceding two years, I have been admitted *pro hac vice* in the following cases in California:

a. *Gregory Staples v. Wright Medical Technology*, United States District Court, Central District of California, Case No. SACV11-00977 CJC, September 6, 2011.

b. *Gregory Tucker and Rebecca Tucker v. Wright Medical Technology*, et al., United States District Court, Northern District of California, Case No. CV11-03086 YGR, July 15, 2011.

Kirby Noonan Lance & Hoge LLP

Exhibit E
Page 388

KNLH\949858.1 -2-

VERIFIED APPLICATION OF MICHAEL O. FAWAZ FOR ADMISSION AS COUNSEL PRO HAC VICE IN THIS ACTION FOR WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.

7. The purpose of the *pro hac vice* motion filed concurrently with my Verified Application is to permit me to act as counsel *pro hac vice* for Wright Medical, with Michael L. Kirby (SBN 50895) and Micaela P. Banach (SBN 226656) of Kirby Noonan Lance & Hoge, LLP, 350 Tenth Avenue, Suite 1300, San Diego, CA, 92101, Ph.: 619-231-8666.

8. Howard & Howard has been retained to represent Wright Medical in this action and Wright Medical wishes to have me participate in their legal representation in this action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration is executed this 17th day of July, 2012, at Royal Oak, Michigan.

Michael O. Fawaz

Kirby Noonan Lance & Hoge LLP

Exhibit E
Page 389

KNLH\949858.1

-3-

VERIFIED APPLICATION OF MICHAEL O. FAWAZ FOR ADMISSION AS COUNSEL PRO HAC VICE IN THIS ACTION FOR WRIGHT MEDICAL GROUP. INC. AND WRIGHT MEDICAL TECHNOLOGY. INC.

REC'D
JUL 20 2012
FILING WINDOW

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, DOES 1 through 100, inclusive,

Defendants.

Case No. BC 475958

**[PROPOSED] ORDER ON APPLICATION OF MICHAEL O. FAWAZ TO APPEAR AS COUNSEL *PRO HAC VICE* IN THIS ACTION FOR WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.**

Judge: Hon. Charles F. Palmer
Dept.: 33

DATE: September 14, 2012
TIME: 8:30 a.m.
DEPT: 33

TRIAL: Not Set

GOOD CAUSE HAVING BEEN SHOWN THEREFOR:

IT IS HEREBY ORDERED that the application of Michael O. Fawaz to appear as counsel *pro hac vice* for Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc. in this matter is granted.

IT IS SO ORDERED.

Dated: ____________________

____________________________________
Honorable Charles F. Palmer
Superior Court Judge

Exhibit E
Page 390

KNLH\949859.1

ADR NEUTRAL NAME, ADDRESS, TELEPHONE, FAX, AND E-MAIL:
Steven L. Martin (310) 479-2345
Law Offices of Steven L. Martin
11400 West Olympic Boulevard, Suite 1150
Los Angeles, CA 90064

Reserved for Clerk's File Stamp

RECEIVED
AUG 14 2012
KIRBY NOONAN LANCE & HOGE LLP

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
Los Angeles (Mosk) 111 N. Hill St., Los Angeles, CA 90012

PLAINTIFF/PETITIONER:
ALAN WARNER, et al.

DEFENDANT/RESPONDENT:
BRAD L. PENENBERG, M.D., et al.

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION (ADR) HEARING

☐ Arbitration ☑ Mediation ☐ Neutral Evaluation ☐ Settlement Conference

CASE NUMBER:
BC475958

**YOU ARE HEREBY NOTIFIED THAT:**

1. The above matter has been scheduled for an ADR hearing as follows:

| DATE | TIME | LOCATION |
|---|---|---|
| 01/04/2013 | 3:00 ☐ a.m. ☑ p.m. | 11400 W. Olympic Boulevard, Ste. 1150<br>Los Anglees, CA 9067 |

2. The ADR process must be conducted and any ADR related documents filed on or before the court ordered completion date of 1/15/13.

**Continuances are not favored and can only be granted by the ADR neutral up to the completion date. Continuances beyond said date can only be granted by the department that referred the ADR process. Counsel should check with the clerk of said department for procedures.**

Dated: 8/10/12

STEVEN L. MARTIN
(PRINT NAME)

[signature]
(SIGNATURE OF NEUTRAL)

## PROOF OF SERVICE

I am over the age of 18 and not a party to this action. I am a resident of or employed in the county where the mailing occurred. My residence or business address is noted above. I served this Notice of ADR Hearing on the date noted below upon each party named on the attached mailing list, by means of (check one):

☑ United States mail at Los Angeles (CITY), California, one copy of the original herein in a separate sealed envelope to each address as show on the attached mailing list with postage thereon fully prepaid.

☐ Fax transmission, based on an agreement of the parties to accept service by fax, I faxed the documents to the persons at the fax numbers listed on the attached mailing list. No error was reported by the fax machine I used. A copy of the record of the fax transmission is printed and attached.

☐ Electronic service, based on an agreement of the parties to accept electronic service, I sent the documents to the persons at the electronic service address listed on the attached mailing list.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: August 10, 2012

Geraldine Ledesma-Harper
(PRINT NAME)

[signature]
(SIGNATURE OF DECLARANT)

**Counsel shall immediately notify ADR neutral and ADR department if any party is not listed in the proof of service.**

Exhibit E
Page 391

**PROOF OF SERVICE**
**1013a (3) CCP Revised 1/1/88**

STATE OF CALIFORNIA )
) .ss
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 11400 W. Olympic Boulevard, Suite 1150, Los Angeles, California 90067.

On **August 10, 2012,** I served the foregoing document described as **NOTICE OF ADR HEARING** on the interested parties in this action as listed below:

ADR Office
111 No. Hill Street
Room 113
Los Angeles, CA 90012

Steven R. Vartazarian, Esq.
The Vartazarian Law Firm
15250 Ventura Boulevard, Suite 505
Sherman Oaks, CA 91403

Micaela P. Banach, Esq.
Kirby, Noonan, Lance & Hodges, LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101-8700

Napoleon G. Tercero, III
Law Offices of Herzfield & Rubin
1925 Century Park East, Suite 900
Los Angeles, CA 90064

___ **VIA FACSIMILE**

___ **VIA AIRBORNE EXPRESS**

<u>XX</u> **VIA U.S. GROUND MAIL**
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Santa Monica, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

___ **BY PERSONAL SERVICE**
Messenger Service delivered such envelope by hand to the office of the addressee.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **August 10, 2012**, at Santa Monica, California.

Gerri Ledesma-Harper

Exhibit E
Page 392

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| Steven R. Vartazarian<br>The Vartazarian Law Firm<br>15250 Ventura Blvd., Suite 505<br>Sherman Oaks, CA. 91403<br>ATTORNEY FOR (Name): Plaintiffs | 227635 | RECEIVED<br>AUG [illegible]<br>KIRBY NOONAN LANCE & HOGE LLP |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS:<br>111 N. Hill Street, Los Angeles, CA. 90012 | | |
| PLAINTIFF:<br>Alan Warner and Patricia Warner | | |
| DEFENDANT:<br>Brad L. Penenberg, M.D. et. al. | | |
| **AMENDMENT TO COMPLAINT (Fictitious /Incorrect Name)** | | CASE NUMBER:<br>BC475958 |

☑ **FICTITIOUS NAME** ***(No order required)***

Upon the filing of the complaint, the plaintiff, being ignorant of the true name of the defendant and having designated the defendant in the complaint by the fictitious name of:

| FICTITIOUS NAME |
|---|
| DOE 2 |

and having discovered the true name of the defendant to be:

| TRUE NAME |
|---|
| HARLAN C. AMSTUTZ, M.D., an individual |

amends the complaint by substituting the true name for the fictitious name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
|---|---|---|
| August 15, 2012 | Steven R. Vartazarian | [signature] |

☐ **INCORRECT NAME** ***(Order required)***

The plaintiff, having designated a defendant in the complaint by the incorrect name of:

| INCORRECT NAME |
|---|
| |

and having discovered the true name of the defendant to be:

| TRUE NAME |
|---|
| |

amends the complaint by substituting the true name for the incorrect name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
|---|---|---|
| | | |

## ORDER

THE COURT ORDERS the amendment approved and filed.

Dated

Judicial Officer

PROOF OF SERVICE
1013A (3) CCP
STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403.

On August 15, 2012, I served the foregoing document described as **AMENDMENT TO COMPLAINT** on the interested parties in this action:

PLEASE SEE SERVICE LIST

__X___By placing the true copies thereof enclosed in sealed envelopes addressed as follows:

_____ I deposited such envelope with Federal Express in Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid for Priority Overnight Delivery.

__X___ I caused such envelope to be deposited in the mail at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

_____(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

______(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was ________________. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

______By attaching the document described above as a PDF document and emailing the same to all parties identified on the Service List below.

XXX 1 declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 15, 2012, at Sherman Oaks, California.

Dahlia Smith

Exhibit E
Page 394

**SERVICE LIST**

Michael L. Kirby
**KIRBY NOONAN LANCE & HOGE, LLP**
350 Tenth Avenue, Suite 1300
San Diego, Ca 92101
Attorneys for: Wright Medical Group, Inc. And Wright Medical Technology, Inc.

Suhasini S. Sawkar, Esq.
**HERZFELD & RUBIN, LLP**
1925 Century Park East, Suite 900
Los Angeles, Ca 90067
Attorneys for: Brad Penenberg

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| Steven R. Vartazarian<br>The Vartazarian Law Firm<br>15250 Ventura Blvd., Suite 505<br>Sherman Oaks, CA. 91403<br>ATTORNEY FOR (Name): Plaintiffs | 227635 | RECEIVED<br>AUG ... <br>KIRBY NOONAN LANCE & HOGE LLP |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS:<br>111 N. Hill Street, Los Angeles, CA. 90012 | | |
| PLAINTIFF:<br>Alan Warner and Patricia Warner | | |
| DEFENDANT:<br>Brad L. Penenberg, M.D. et. al. | | |
| **AMENDMENT TO COMPLAINT (Fictitious /Incorrect Name)** | | CASE NUMBER:<br>BC475958 |

☑ **FICTITIOUS NAME** ***(No order required)***

Upon the filing of the complaint, the plaintiff, being ignorant of the true name of the defendant and having designated the defendant in the complaint by the fictitious name of:

| FICTITIOUS NAME |
|---|
| DOE 1 |

and having discovered the true name of the defendant to be:

| TRUE NAME |
|---|
| HARLAN C. AMSTUTZ, M.D., A MEDICAL CORPORATION, a California corporation. |

amends the complaint by substituting the true name for the fictitious name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
|---|---|---|
| August 15, 2012 | Steven R. Vartazarian | [signature] |

☐ **INCORRECT NAME** ***(Order required)***

The plaintiff, having designated a defendant in the complaint by the incorrect name of:

| INCORRECT NAME |
|---|
| |

and having discovered the true name of the defendant to be:

| TRUE NAME |
|---|
| |

amends the complaint by substituting the true name for the incorrect name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
|---|---|---|
| | | |

## ORDER

THE COURT ORDERS the amendment approved and filed.

Dated

Judicial Officer

PROOF OF SERVICE
1013A (3) CCP
STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403.

On August 15, 2012, I served the foregoing document described as **AMENDMENT TO COMPLAINT** on the interested parties in this action:

PLEASE SEE SERVICE LIST

__X___By placing the true copies thereof enclosed in sealed envelopes addressed as follows:

_____ I deposited such envelope with Federal Express in Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid for Priority Overnight Delivery.

__X___ I caused such envelope to be deposited in the mail at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

_____(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

______(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was ________________. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

______By attaching the document described above as a PDF document and emailing the same to all parties identified on the Service List below.

XXX I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 15, 2012, at Sherman Oaks, California.

Dahlia Smith

Exhibit E
Page 397

**SERVICE LIST**

Michael L. Kirby
**KIRBY NOONAN LANCE & HOGE, LLP**
350 Tenth Avenue, Suite 1300
San Diego, Ca 92101
Attorneys for: Wright Medical Group, Inc. And Wright Medical Technology, Inc.

Suhasini S. Sawkar, Esq.
**HERZFELD & RUBIN, LLP**
1925 Century Park East, Suite 900
Los Angeles, Ca 90067
Attorneys for: Brad Penenberg



THE LAW OFFICES
STEVEN L. MARTIN

11400 West Olympic Blvd, Suite 1150
Los Angeles, CA 90064
310.479.2345 F: 310.479.2346
slmartinlaw@att.net

RECEIVED
AUG 2_ 20__
KIRBY NOONAN LANCE & HOGE LLP

August 24, 2012

ADR Office
111 No. Hill Street
Room 113
Los Angeles, CA 90012

Steven R. Vartazarian, Esq.
The Vartazarian Law Firm
15250 Ventura Boulevard, Suite 505
Sherman Oaks, CA 91403

Micaela P. Banach, Esq.
Kirby, Noonan, Lance & Hodge, LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101-8700

Napoleon G. Tercero, III
Law Offices of Herzfield & Rubin
1925 Century Park East, Suite 900
Los Angeles, CA 90064

Re: ***Alan Warner, et al. vs. Brad Penenberg, M.D., et al.***
**Case No.: BC 475958**

Dear Counsel:

Please be advised that the Mediation presently scheduled for Friday, January 4, 2013 at 3:00 p.m. has been ***rescheduled to take place at 10:00 a.m.***

If there are any problems concerning this change, please contact this office immediately.

Very truly yours,

LAW OFFICES OF STEVEN L. MARTIN

Gerri Ledesma-Harper, Assistant

GLH/hs

COPY
CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES
AUG 30 2012
John A. Clarke, Executive Officer/Clerk
By ______, Deputy
Gina Grider

BY FAX

Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, DOES 1 through 100, inclusive,

Defendants.

Case No. BC 475958

**WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS**

Judge: Hon. Charles F. Palmer
Dept.: 33

DATE: January 7, 2013
TIME: 8:30 a.m.
DEPT: 33

TRIAL: May 6, 2013

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 7, 2013 at 8:30 a.m. in Department 33 of the above-captioned Court, Defendants WRIGHT MEDICAL GROUP, INC. and WRIGHT MEDICAL TECHNOLOGY, INC. (collectively "Defendants") will and hereby do move this Court for an order compelling Plaintiffs ALAN and PATRICIA WARNER (collectively "Plaintiffs") to further respond to Defendants' Form Interrogatories (Set One), Special

L.A.S.C. - FILINGS #32
111 N. HILL STREET
LOS ANGELES CA 90012

DATE PAID: 08/30/12 04:22:42 PM
RECEIPT #: CCH507417041

CIT/CASE: BC475958 LEA/DEF#:

PAYMENT: $60.00 0310
RECEIVED:
CHECK: 60.00
CASH:
CHANGE:
CARD:

Interrogatories (Set One), and Request for Production of Documents (Set One). Defendants seek monetary sanctions from Plaintiffs and their attorney, jointly and severally, in the amount of $6,832.50, representing reasonable attorneys' fees and costs incurred in preparation of this motion and Plaintiffs' continued failure to comply with the discovery process.

This motion is made pursuant to California Code of Civil Procedure sections 2030.300 et seq., 2031.310 et seq., and California Rules of Court 3.1345 and 3.1348, is based on good cause, and is made on the grounds that the information and documents sought are relevant to the subject matter of this action and Plaintiffs' refusal to provide documents is without substantial justification.

The motion is based on this Notice of Motion, the Memorandum of Points and Authorities filed concurrently herewith, the Separate Statement filed concurrently herewith, the Declaration of Micaela P. Banach and attached exhibits, the Court's files and records with respect to this case, and on such other and further evidence as this Court deems appropriate.

DATED: August 30, 2012

KIRBY NOONAN LANCE & HOGE LLP

By: [signature]
Michael L. Kirby
Micaela P. Banach
Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 402

KNLH\1007311.1

-2-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

COPY

Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

AUG 30 2012

John A. Clarke, Executive Officer/Clerk
By ______, Deputy
Gina Grider

Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| ALAN WARNER and PATRICIA WARNER,<br>Plaintiffs,<br>vs.<br>BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, DOES 1 through 100, inclusive,<br>Defendants. | Case No. BC 475958<br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS**<br>Judge: Hon. Charles F. Palmer<br>Dept.: 33<br>DATE: January 7, 2013<br>TIME: 8:30 a.m.<br>DEPT: 33<br>TRIAL: May 6, 2013 |

FAXED

Exhibit E
Page 403

KNLH\1007313.1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

## TABLE OF CONTENTS

Page

I. FACTUAL BACKGROUND ..... 1

A. Responses to Form Interrogatories ..... 2

1. Plaintiff ALAN WARNER Responses ..... 2

2. Plaintiff PATRICIA WARNER Responses ..... 4

B. Responses to Special Interrogatories ..... 4

1. Plaintiff ALAN WARNER Responses ..... 4

2. Plaintiff PATRICIA WARNER Responses ..... 5

C. Plaintiff ALAN WARNER's Responses to Request for Production of Documents ..... 5

D. Meet and Confer Efforts ..... 6

II. A PARTY MAY COMPEL FURTHER RESPONSES TO DISCOVERY ..... 7

A. Discovery is Liberally Permitted ..... 8

B. Defendants' Motion to Compel is Timely ..... 9

C. Good Cause Exists to Order Further Responses to Interrogatories ..... 9

D. Good Cause Exists to Order Further Responses to Requests for Production of Documents and the Immediate Production of All Documents ..... 9

III. DEFENDANTS ARE ENTITLED TO MONETARY SANCTIONS ..... 9

IV. CONCLUSION ..... 12

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 404

KNLH\1007313.1

-i-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Burke v. Superior Court* (1969) 71 Cal.2d 276 .......... 8

*Gonzalez v. Superior Court* (1995) 33 Cal.App.4th 1539 .......... 9

*Lantz v. Superior Court* (1994) 28 Cal.App.4th 1839 .......... 9

*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599 .......... 9

*Pacific Telephone and Telegraph Co. v. Superior Court* (1970) 2 Cal.3d 161 .......... 8

*Townsend v. Superior Court* (1998) 61 Cal.App.4th 1431 .......... 11

**STATUTES**

Code of Civil Procedure § 2017.010 .......... 8, 9

Code of Civil Procedure § 2023.010 .......... 10

Code of Civil Procedure § 2023.030 .......... 11

Code of Civil Procedure § 2023.030(a) .......... 11

Code of Civil Procedure § 2030.220 .......... 2, 4

Code of Civil Procedure § 2030.220(c) .......... 2

Code of Civil Procedure § 2030.290(c) .......... 11

Code of Civil Procedure § 2030.300 .......... 4

Code of Civil Procedure § 2030.300(a) .......... 7

Code of Civil Procedure § 2030.300(a)(1) .......... 9

Code of Civil Procedure § 2030.300(a)(3) .......... 9

Code of Civil Procedure § 2030.300(c) .......... 9

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 405

KNLH\1007313.1

-ii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Code of Civil Procedure § 2031.210. ..... 5
Code of Civil Procedure § 2031.310 ..... 7, 10
Code of Civil Procedure § 2031.310(d) ..... 11
Code of Civil Procedure § 2031.320 ..... 10
Code of Civil Procedure § 2033.290(d) ..... 11

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 406

KNLH\1007313.1 -iii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Defendants WRIGHT MEDICAL GROUP, INC. and WRIGHT MEDICAL TECHNOLOGY, INC. (collectively "Defendants") move this Court for an order compelling Plaintiffs ALAN WARNER and PATRICIA WARNER (collectively "Plaintiffs") to further respond to Defendants' Form Interrogatories (Set One), Special Interrogatories (Set One), and Request for Production of Documents (Set One). Defendants seek sanctions from Plaintiffs and their attorney, jointly and severally, in the amount of $6,832.50, representing Defendants' request for reimbursement of the reasonable attorneys' fees and costs incurred in the preparation of this motion and Plaintiffs' continued failure to comply with the discovery process.

## I. FACTUAL BACKGROUND

This is a case where Plaintiff ALAN WARNER alleges he suffered injuries caused by his left hip implant revisions surgeries and the manufacturing and design defects associated with his implant system component. He alleges that he receive a Wright Medical hip implant which subsequently fractured. Plaintiff ALAN WARNER's Complaint filed on December 27, 2011 also includes allegations of medical malpractice, strict products liability, negligence, and breach of warranty. Plaintiff PATRICIA WARNER, ALAN WARNER's wife, seeks damages for loss of consortium due to her husband's injuries.

Defendants' propounded written discovery, including Form Interrogatories (Set One), Special Interrogatories (Set One), and Request for Production of Documents (Set One), to both ALAN WARNER and PATRICIA WARNER. Plaintiffs' responses are incomplete and unsatisfactory. Despite attempts by Defendants to meet and confer and informally resolve these issues, Plaintiffs have failed to address said deficiencies. As a result, Defendants are forced to seek judicial intervention for this discovery matter.

On March 26, 2012, Defendants served Plaintiffs with Form Interrogatories (Set One), Special Interrogatories (Set One), and Request for Production of Documents (Set One), separate sets to each individual Plaintiff. (Micaela P. Banach Declaration ("Decl.") at ¶2, Exhs. 1-5.) The interrogatories and request for documents were due within thirty (30) days or on or before April

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 407

KNLH\1007313.1 -1-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

30, 2012. (Decl. at ¶3.) Thereafter, Defendants' agreed to an extension, making May 30, 2012, the new response deadline. (*Id.*) No responses were provided as of that date. (*Id.*)

On July 10, 2012, Defendants sent a meet and confer letter to Plaintiffs' counsel reiterating that Plaintiffs' responses were overdue and requesting objection-free responses no later than July 17, 2012. (Decl. at ¶4, Exh. 6.) No responses were provided as of that date. (*Id.*) After additional meet and confer efforts and out of professional courtesy and a desire to resolve informally, Defendants agreed not to file a motion compel at that time because Plaintiffs' counsel confirmed that substantive responses would be forthcoming. (Decl. at ¶5.) Not until July 30, 2012, over *three* (3) *months* after the original due date, did Defendants receive Plaintiffs' past due responses. (Decl. at ¶6, Exhs. 7-11.) However, even despite the lengthy delay, Plaintiffs' responses were incomplete and deficient, necessitating this motion. (*Id.*)

Again, on August 6, 2012, Defendants' sent an extensive meet and confer letter to Plaintiffs' counsel, providing notice that Plaintiffs' written responses were incomplete and insufficient. (Decl. at ¶7, Exh. 12.) Defendants requested supplemental responses to specified requests by August 20, 2012. (*Id.*) As of the date of this motion, no supplemental responses were provided. (Decl. at ¶8.) As such, this Court should issue an order compelling further responses to discovery, as well as order that monetary sanctions are issued for forcing Defendants to bring this current motion.

**A. <u>Responses to Form Interrogatories</u>**

Plaintiffs' responses to Defendants' Form Interrogatories are insufficient and must be supplemented. Pursuant to California Code of Civil Procedure § 2030.220, responses to the interrogatories "shall be as complete and straightforward as the information reasonably available to the responding party permits" and must be answered to the extent possible. In addition, Plaintiff is requires to make a "reasonable and good faith effort to obtain the information" requested. Code Civ. Proc. §2030.220(c). Plaintiffs' perpetual evasiveness severely prejudices Defendants' ability to suitably defend this action.

**1. Plaintiff ALAN WARNER Responses**

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 408

KNLH\1007313.1

-2-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

For example, Form Interrogatory No. 6.4 asks for information regarding health care providers where Plaintiff claims to have received treatment allegedly attributed to the incident. (See, Exhibit 1.) The interrogatory specifically requires the responding party to provide information regarding the specific type of treatment provided, the dates when treatment was received *and* the specific charges incurred in relation to each medical provider. In Plaintiff's response to this interrogatory, he merely states general information and addresses for two (2) providers. This list appears incomplete, as Defendants are aware that Plaintiff has been treated with various physicians at Cedars-Sinai Medical Center, and his response to Form Interrogatory No. 10.3 identifies additional medical providers that were excluded from this response. (See, Exhibit 7.) It is not Defendants' duty to obtain this information through other means; instead, it is Plaintiffs' obligation to respond completely and sufficiently to the interrogatories asked. Furthermore, the alleged onset of injuries occurred on or around October 27, 2010 (See, Plaintiffs' Complaint); therefore, Plaintiff has had close to two (2) years to acquire and obtain the specified information to which he now alleges to be attributed to this incident, but he has yet to do so. Plaintiff ALAN WARNER has not provided any substantiation for his general damage allegations.

Another example of Plaintiff's unsatisfactory Form Interrogatory responses would be to No. 6.6. (See, Exhibit 1.) This interrogatory asks Plaintiff to identify any other medical services necessitated by the injuries that he attributes to the incident, including nature, date, cost and the name/address/telephone number of each provider. Plaintiff's response fails to sufficiently respond to this interrogatory he merely states, "various expensive RX not covered by insurance." (See, Exhibit 7.) This interrogatory requires more specific information pertaining to related medical treatment and Plaintiff's response fails to provide any actual information at all. Plaintiff provides no detailed information despite the nearly two (2) years of time he had to acquire. Accordingly, Plaintiff's answer is deficient and warrants a further response.

Plaintiff ALAN WARNER's responses to Form Interrogatory Nos. 2.6, 6.3, 6.5, 8.3, 8.4, 8.7, 9.1, 9.2, 10.1 and 10.3 are similarly deficient and the improprieties of these responses are

Exhibit E
Page 409

KNLH\1007313.1

-3-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

individually addressed in Defendants' Separate Statement of Discovery Requests and Responses in Dispute.

**2. Plaintiff PATRICIA WARNER Responses**

Plaintiff PATRICIA WARNER's responses are likewise deficient. For example, Form Interrogatory No. 2.6 asks for information regarding Plaintiff PATRICIA WARNER's employment over the last five (5) years. (See, Exhibit 4.) The interrogatory specifically requires the responding party to provide detailed information regarding the name/address/telephone number of former employers, the nature of the work and her job title for the last five years. In Plaintiff's response to this interrogatory, she merely states she "is not making a claim for lost wages." (See, Exhibit 10.) However, that was not the question. Her employment information is relevant to her husband's damage claims and is discoverable.

Plaintiff PATRICIA WARNER's response to Form Interrogatory No. 2.7 is similarly deficient and the improprieties of this response is individually addressed in Defendants' Separate Statement of Discovery Requests and Responses in Dispute.

**B. <u>Responses to Special Interrogatories</u>**

Plaintiffs' responses to Defendants' Special Interrogatories are insufficient and must be supplemented. Pursuant to California Code of Civil Procedure § 2030.220, responses to the interrogatories "shall be as complete and straightforward as the information reasonably available to the responding party permits" and must be answered to the extent possible. Giving evasive or incomplete answers to discovery and making general or meritless objections serve as proper grounds to motion the Court for an order compelling your response. Code Civ. Proc. § 2030.300.

**1. Plaintiff ALAN WARNER Responses**

Plaintiffs' responses to Special Interrogatories were also deficient and failed to provide sufficient information. Special Interrogatory Nos. 1 and 2, for example, requests that Plaintiff ALAN WARNER state each fact upon which he relies to support his contention that there was a manufacturing and design defect in the hip prosthesis system at issue. (See, Exhibit 2.) Plaintiff's response only states simply that the neck of the component fractured. (See, Exhibit 8.) Simply

Exhibit E
Page 410
KNLH\1007313.1
-4-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

because the implant allegedly broke does not mean that it contained a manufacturing or design defect; thusly, Plaintiff's response is grossly inadequate. This answer is incomplete, as it fails to provide any information regarding Plaintiff's specific allegations in this action. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories so they may evaluate the claims alleged against them. His response to this interrogatory, as well as other similarly deficient responses, are clearly essential to the discovery process as it relates to the claims he is advancing in his initiated law suit. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

Plaintiff's response to Special Interrogatory Nos. 3, 5, 7, 11, 12, 14, 15, 17, 22, 25, 27, 28, 30, 31, 32, 33 are similarly deficient and the impropriety of these responses are individually addressed in Defendants' Separate Statement of Discovery Requests and Responses in Dispute.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**2. Plaintiff PATRICIA WARNER Responses**

For example, Special Interrogatory No. 1 requests that Plaintiff PATRICIA WARNER state each fact upon which he relies to support her loss of consortium claim. (See, Exhibit 5.) Plaintiff responded that the femoral head of her husband's hip prosthesis fractured. (See, Exhibit 11.) This response does not include any additional facts that purportedly support her claim for loss of consortium. It also fails to include facts supporting the loss of companionship, care, assistance, affection, etc. that she claims to have allegedly suffered. Without any factual support, Defendants cannot evaluate her claim. This information is highly relevant, as it is the basis for her alleged claims against Defendants.

Plaintiff's response to Special Interrogatory No. 6 is similarly deficient and the impropriety of this response is individually addressed in Defendants' Separate Statement of Discovery Requests and Responses in Dispute.

**C. <u>Plaintiff ALAN WARNER's Responses to Request for Production of Documents</u>**

Plaintiff's responses to Request for Production of Documents are deficient in several regards. Pursuant to California Code of Civil Procedure § 2031.210, et. seq., responses to the request for production of documents must state either that you will comply with the request or that

you lack the ability to comply. Plaintiff must make a diligent search effort to look for the requested documents. Here, Plaintiff fails to provide any documents with its responses to any of Defendants' Request for Production of Documents Nos. 1-23, the improprieties of which are addressed in more detail in Defendants' Separate Statement of Discovery Requests and Responses in Dispute.

Defendants' Request for Production of Documents seek documents related to Plaintiff's contention that he was injured as a result of this incident and related medical records, invoices, receipts, etc. supporting damage items; the crux of Plaintiff's legal action. (See, Exhibit 3.) They also request income tax forms to support his claim for lost income. Not a single document was produced. (See, Exhibit 9.)

Plaintiff's response states that the medical records from Cedar's Sinai are already in Defendant's possession. (See, Exhibit 9.) Even if true, Defendants do not possess, nor have the unfettered access to Plaintiff's medical records as he does; Plaintiff is the proper person to obtain his own records and has a duty to provide same to Defendants when responding to said requests. Plaintiff has an obligation to provide a complete and full response to Defendants' requests within discovery; he has failed to do so sufficiently and further responses are warranted.

**D. Meet and Confer Efforts**

Defendants attempted to "meet and confer" with Plaintiffs on numerous occasions in an effort to resolve the discovery issues informally. Plaintiffs' interrogatories and request for documents were initially due on or before April 30, 2012. (Decl. at ¶3.)

On March 26, 2012, Defendants served Plaintiffs with Form Interrogatories (Set One), Special Interrogatories (Set One), and Request for Production of Documents (Set One), separate sets to each individual Plaintiff. (Decl. at ¶2, Exhs. 1-5.) Counsel for Plaintiff requested an extension of time in which to provide responses, Defendants' agreed to an extended response date of May 30, 2012. (Decl. at ¶3.) No responses were provided as of that date. (*Id.*)

On July 10, 2012, Defendants sent a meet and confer letter to Plaintiffs' counsel reminding him that responses were overdue and requesting objection-free responses no later than July 17.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 412
KNLH\1007313.1
-6-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

2012. (Decl. at ¶4, Exh. 6.) No responses were provided as of that date. (*Id.*) After additional meet and confer efforts, Defendants agreed not to file a motion compel at that time because Plaintiffs' counsel represented that substantive responses would be forthcoming. (Decl. at ¶5.) Not until July 30, 2012, over three (3) months after the original due date, did Defendants receive Plaintiffs' past due responses. (Decl. at ¶6, Exhs. 7-11.) However, even despite the lengthy delay, Plaintiffs' responses were incomplete and deficient. (*Id.*)

Again, on August 6, 2012, Defendants' sent a detailed meet and confer letter which explicitly specified each and every response that is deficient and requires more detailed responses. (Decl. at ¶7, Exh.12.) This was done to assist with Plaintiffs' ability to supplement and/or amend the provided responses, and to attempt to resolve these issues without seeking judicial intervention. Defendants asked that supplementation be produced on or before August 20, 2012. (*Id.*) To date, no further response or supplementation of Plaintiffs' discovery responses have been provided to Defendants. (Decl. at ¶8.) Therefore, Defendants respectfully ask that this Court issue an order compelling further responses to discovery, as well as order that monetary sanctions are issued for forcing Defendants to bring this current motion.

## II. A PARTY MAY COMPEL FURTHER RESPONSES TO DISCOVERY

When a party fails to provide full and complete responses to interrogatories, the propounding party may move for an order compelling further responses. Code of Civil Procedure section 2030.300(a).

Code of Civil Procedure section 2030.300[1] states in pertinent part:

> If the propounding party deems that *any* of the following apply, the propounding party may move for an order compelling further responses:
>
> (1) An answer to a particular interrogatory is evasive or incomplete.
>
> (2) An exercise of the option to produce documents under section 2030.230 is unwarranted or the required specification of those documents is inadequate.
>
> (3) An objection to an interrogatory is without merit or too general.

[1] Corresponding code section for Request for Production of Documents is Code Civ. Proc. §2031.310.

Exhibit E
Page 413

KNLH\1007313.1 -7-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

* * *

(b) A motion under subdivision (a) shall be accompanied by a meet and confer declaration under Section 2016.040.

As stated above, and as set forth in the attached Declaration of Micaela P. Banach and corresponding exhibits, Plaintiffs have failed to fully respond to the subject written discovery. This discovery was originally due on April 30, 2012. Additionally, given the non-responsiveness of counsel and lengthy delays, Defendants have been patient and reasonable in their efforts to obtain further responses to said discovery without the necessity of filing the subject motion. Specifically, defense counsel granted numerous extensions for Plaintiffs to provide its complete and sufficient responses to the subject discovery. Thereafter, Defendants "met and conferred" with Plaintiffs' attorney by letter in an attempt to obtain further responses to the written discovery.

Therefore, Defendants request that the Court order Plaintiffs to supplement their responses to Form Interrogatories (Set One), Special Interrogatories (Set One) and Request for Production of Documents (Set One) by providing all requested information and documents.

**A. Discovery is Liberally Permitted**

Any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible into evidence or appears reasonably calculated to lead to the discovery of admissible evidence. Code Civ. Proc. § 2017.010. Discovery may relate to the claims or defenses of the party seeking discovery, or of any other party to the action. *Id.* Any doubts as to relevance should be resolved in favor of permitting discovery. *Pacific Telephone and Telegraph Co. v. Superior Court* (1970) 2 Cal.3d 161, 173.

"The discovery laws in California are designed to expedite the trial of civil matters by (1) enabling counsel to more quickly and thoroughly obtain evidence and evidentiary leads, and thus to more quickly and effectively prepare for trial, and (2) enabling counsel to 'set at rest' issues that are not genuinely disputed." *Burke v. Superior Court* (1969) 71 Cal.2d 276, 280-81. Moreover, if the documents are directly relevant and the requesting party can show a compelling need, even

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 414
KNLH\1007313.1
-8-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

documents protected by the right to privacy can be ordered produced. *Lantz v. Superior Court* (1994) 28 Cal.App.4th 1839, 1853-54.

**B. Defendants' Motion to Compel is Timely**

The party seeking interrogatory responses or demanding a document inspection may move for an order compelling a further response to the demand if a representation of inability to comply is inadequate, incomplete or evasive, or if an objection to the demand is without merit. Code Civ. Proc. §§ 2030.300(a)(1) and (3); 2031.310(a)(2) and (3). The motion must be served within forty-five (45) days after service of the response in question, unless this deadline is extended by written stipulation of the parties. Code Civ. Proc. §§ 2030.300(c); 2031.310(c). This motion is being filed less than forty-five (45) days after service of the defendants' discovery responses.

**C. Good Cause Exists to Order Further Responses to Interrogatories**

Defendants' are entitled to conduct discovery regarding any matter that is either "itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." Code Civ. Proc. § 2017.010. For discovery purposes, information is regarded as "relevant to the subject matter" if it might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement thereof. *Gonzalez v. Superior Court* (1995) 33 Cal.App.4th 1539, 1546. Thus, the scope of permissible discovery is one of reason, logic and common sense. *Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1612. The information sought is discoverable and directly relevant to Defendants' defense.

**D. Good Cause Exists to Order Further Responses to Requests for Production of Documents and the Immediate Production of All Documents**

The documents requested by Defendants are relevant to their defenses in this litigation and are properly discoverable. Plaintiffs did not produce even a single document in response to Defendants' twenty-three (23) separate requests. Each request was different and relates specifically to Plaintiffs' alleged claims and damages sought. It is Plaintiffs' obligation to produce responsive documents when requested. They have failed to comply with this obligation.

**III. DEFENDANTS ARE ENTITLED TO MONETARY SANCTIONS**

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 415

KNLH\1007313.1 -9-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Defendants attempted to resolve this matter informally. Unfortunately, Plaintiffs chose not to cooperate and provide the requested information. Therefore, Plaintiffs' inaction and refusal to resolve this matter resulted in Defendants' filing of the instant motion and the Court should award a monetary sanction pursuant to Code of Civil Procedure sections 2023.010 and 2031.320, for Plaintiffs' failure to provide further responses to discovery.

Code of Civil Procedure sections 2023.010, et seq. and 2023.030, provide in pertinent part:

Misuses of the discovery process include, but are not limited to, the following,

* * *

(d) Failing to respond to or submit to an authorized method of discovery.

* * *

(f) Making an evasive response to discovery.

To the extent authorized by the section governing any particular discovery method or any other provision of this article, the court, after notice to any affected party, person or attorney, and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process.

(a) [Monetary Sanction]

The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. The court may also impose this sanction on one unsuccessfully asserting that another has engaged in the misuse of the discovery process or on any attorney who advised that assertion, or on both. If a monetary sanction is authorized by any provision of this article, the court <u>shall</u> impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. (Emphasis added.)

Code of Civil Procedure section 2030.300[2] states in pertinent part:

(a) …the propounding party may move for an order compelling a further response…

(d) The court <u>shall</u> impose a monetary under Chapter 7 (commencing with Section 2023.010) against any party, person or attorney who unsuccessfully makes or opposes a motion to compel a further response to interrogatories, unless it finds

---

[2] Corresponding code section for Request for Production of Documents is Code Civ. Proc. §2031.310.

Exhibit E

Page 416

KNLH\1007313.1

-10-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust.

Code of Civil Procedure Section 2023.030 allows the court to impose monetary sanctions against anyone engaging in conduct that constitutes a misuse of the discovery process. The Court may impose a monetary sanction against a party who unsuccessfully opposes a motion to compel discovery responses or requests for documents, unless it finds that the one subject to the sanction acted with substantial justification. Code Civ. Proc. §§ 2030.290(c), 2031.310(d), 2033.290(d). Appropriate monetary sanctions include the reasonable expenses and attorneys' fees incurred as a result of the wrongful conduct. Code Civ. Proc. § 2023.030(a). Monetary sanctions were designed to recompense those who are the victims of misuse of the Discovery Act. *Townsend v. Superior Court* (1998) 61 Cal.App.4th 1431, 1438.

Apparently Plaintiffs are unwilling to respond to Defendants' reasonable discovery requests and provide full and complete responses. There is no substantial justification for Plaintiffs' delay and refusal to provide the requested responses and produce the responsive documents. That refusal has led Defendants to expend additional time and resources in order to obtain Court assistance in seeking further responses to discovery which is both critical to the development of a defense to this matter and furthering this stagnating action. Defendants have been more than reasonable in attempting to meet and confer with Plaintiffs in order to avoid the motion to compel process. However, despite Defendants' best efforts, Plaintiffs have failed to provide further responses to Form Interrogatories, Special Interrogatories and Request for Production of Documents.

Plaintiffs' failure to appropriately respond to the subject written discovery has caused Defendants to incur needless costs. This motion required Defendants to address five (5) different sets of discovery for two (2) Plaintiffs. Due to extensive deficiencies, Defendants have spent 12.0 hours preparing this motion, and anticipate spending 6.5 hours preparing the reply to Plaintiffs' opposition and in preparation and attendance of the hearing on this matter. (Decl. at ¶9.) Defense counsel also anticipates 4.0 hours traveling to and appearing at the hearing on this motion. (*Id.*) Defense counsel bills at the hourly rate of $325 (partner) and $265 (associate) per hour. (*Id.*) Defendants also incurred a $60 fee for the filing of the subject motion. (*Id.*) Plaintiffs' failure to

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

KNLH\1007313.1
-11-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEI WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RES AND CORRESPONDING REQUEST FOR SANCTIONS
Exhibit E
Page 417

respond to discovery has caused Defendants to incur undue expense and compromises its ability to prepare it defense. (*Id.*) Therefore, Plaintiffs and their attorney, jointly and severally, should pay a total of $6,832.50 to Defendants in monetary sanctions for their outright refusal to comply with the discovery process.

**IV. CONCLUSION**

Based on the foregoing, Defendants, WRIGHT MEDICAL GROUP, INC. and WRIGHT MEDICAL TECHNOLOGY, INC. respectfully request the Court to order Plaintiffs to provide further responses to Form Interrogatories, Special Interrogatories and Request for Production of Documents. Defendants further requests that the Court order these responses are supplemented no later than ten (10) days after the hearing date, or as soon as the Court may otherwise order. Defendants also request that this Court order Plaintiffs and their attorney, jointly and severally, to pay sanctions to Defendants for the legal fees and costs incurred by the bringing of this motion.

DATED: August 30, 2012

KIRBY NOONAN LANCE & HOGE LLP

By: [signature]

Michael L. Kirby
Micaela P. Banach
Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 418

KNLH\1007313.1

-12-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS



Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

AUG 30 2012

John A. Clarke, Executive Officer/Clerk
By ______________, Deputy
Gina Grider

Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, DOES 1 through 100, inclusive,

Defendants.

Case No. BC 475958

**DECLARATION OF MICAELA P. BANACH IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS**

Judge: Hon. Charles F. Palmer
Dept.: 33

DATE: January 7, 2013
TIME: 8:30 a.m.
DEPT: 33

FAXED

TRIAL: May 6, 2013

I, MICAELA P. BANACH, declare as follows:

1. I am an attorney duly licensed to practice in all of the courts of the State of California and am a partner with the firm KIRBY NOONAN LANCE & HOGE LLP, attorneys of record for Wright Medical Group, Inc. and Wright Medical Technology, Inc. herein. The facts set forth in this declaration are true and correct of my own personal knowledge and, if called upon to testify, I could and would do so competently.

Exhibit E
Page 419

KNLH\1007312.1

DECLARATION OF MICAELA P. BANACH IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

2. On March 26, 2012, I propounded Form Interrogatories, Special Interrogatories and Requests for Production of Documents to Plaintiffs Alan Warner and Patricia Warner ("Plaintiffs") on behalf of Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc. ("Defendants"). A true and correct copy of the Form Interrogatories to Alan Warner is attached hereto as Exhibit 1. A true and correct copy of the Special Interrogatories to Alan Warner is attached hereto as Exhibit 2. A true and correct copy of the Requests for Production of Documents to Alan Warner is attached hereto as Exhibit 3. A true and correct copy of the Form Interrogatories to Patricia Warner is attached hereto as Exhibit 4. A true and correct copy of the Special Interrogatories to Patricia Warner is attached hereto as Exhibit 5.

3. The interrogatories and request for documents were due within thirty (30) days or on or before April 30, 2012. On or about April 30, 2012, I agreed on behalf of Defendants to an extension, making Plaintiffs' responses due on or before May 30, 2012. A true and correct copy of the confirmation letter from Plaintiffs' Counsel is attached hereto as Exhibit 13. No responses were provided as of that date.

4. On July 10, 2012, I sent a meet and confer letter to Plaintiffs' counsel to inquire about the late discovery responses. In that letter, I required Plaintiffs' overdue responses to be provided on or before July 17, 2012. No responses were provided as of that date. A true and correct copy of my July 10, 2012 letter is attached hereto as Exhibit 6.

5. After responses were not received on or before the deadline date, I spoke with Plaintiffs' counsel via telephone to discuss the overdue responses. Counsel assured me that responses would be forthcoming, so I agreed not to file a motion to compel at that time.

6. On July 30, 2012, I received Plaintiffs' responses to written discovery. A true and correct copy of Alan Warner's responses to Form Interrogatories is attached hereto as Exhibit 7. A true and correct copy of Alan Warner's responses to Special Interrogatories is attached hereto as Exhibit 8. A true and correct copy of Alan Warner's responses to Demand for Production is attached hereto as Exhibit 9. A true and correct copy of Patricia Warner's responses to Form Interrogatories is attached hereto as Exhibit 10. A true and correct copy of Patricia Warner's

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 420

KNLH\1007312.1 -2-

DECLARATION OF MICAELA P. BANACH IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

responses to Special Interrogatories is attached hereto as Exhibit 11. Plaintiffs did not produce any documents in response to discovery and the responses provided were incomplete and deficient.

7. On August 6, 2012, I sent an additional meet and confer letter to counsel for Plaintiffs. A true and correct copy of my August 6, 2012, letter is attached hereto as Exhibit 12. In the letter, I set forth my concerns about the responses and asked for supplemental responses and documents to be produced no later than August 20, 2012.

8. To date, I have not received any supplemental responses from Plaintiffs.

9. Defendants incurred significant expense for work in preparing and bringing this Motion. My time on this matter is billed at a reasonable rate of $325 per hour. Associate attorney Andrea K. Russell also worked on this matter at a reasonable rate of $265 per hour. Ms. Russell spent a total of 9.0 hours for researching case law, local rules, and statutes necessary to support the Motion, as well as drafting and revising the Motion and points and authorities, separate statement of responses in dispute, and the declaration in support of this motion. I spent a total of 3.0 hours on this matter in drafting and revising the Motion and all supporting documents, including this declaration. Additionally, Defendants seek sanctions in the amount of the filing fee for this motion ($60.00) and for the time which will be required to reply to Plaintiffs' opposition to this motion (estimated at 4.0 x $325 =$1,300), travel to and from (estimated at 4.0 hours x $325), preparation and attend the hearing in this matter (estimated at 2.5 x $325 =$812.50). Therefore, Defendants seek sanctions in the amount of $6,832.50 representing reimbursement to Defendants for the costs incurred in preparing this motion. Plaintiffs' failure to respond to discovery has caused Defendants to incur undue expense and compromises its ability to prepare its defense.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 30th day of August 2012, at San Diego, California.

MBanach
Micaela P. Banach

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 421

KNLH\1007312.1

-3-

DECLARATION OF MICAELA P. BANACH IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

**EXHIBIT 1**

DISC-001

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Michael L. Kirby (50895) / Micaela P. Banach (226656)
KIRBY NOONAN LANCE & HOGE, LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101
TELEPHONE NO.: 619-231-8666
FAX NO. (Optional): 619-231-9593
E-MAIL ADDRESS (Optional): mbanach@knlh.com
ATTORNEY FOR (Name): Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles

SHORT TITLE OF CASE:
Warner v. Penenberg, M.D./Wright Medical, et al.

**FORM INTERROGATORIES—GENERAL**

**Asking Party:** Wright Medical Group, Inc.

**Answering Party:** Alan Warner

**Set No.:** One

CASE NUMBER:
BC475958

**Sec. 1. Instructions to All Parties**

(a) Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in civil cases.

(b) For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010-2030.410 and the cases construing those sections.

(c) These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

**Sec. 2. Instructions to the Asking Party**

(a) These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000. Separate interrogatories, Form *Interrogatories—Limited Civil Cases (Economic Litigation)* (form DISC-004), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b) Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c) You may insert your own definition of **INCIDENT** in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d) The interrogatories in section 16.0, Defendant's Contentions-Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e) Additional interrogatories may be attached.

**Sec. 3. Instructions to the Answering Party**

(a) An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b) As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure sections 2030.260-2030.270 for details.

(c) Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d) If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e) Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f) Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g) If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h) Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

______________________ ______________________
(DATE) (SIGNATURE)

**Sec. 4. Definitions**

Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

(a) *(Check one of the following):*

☒ (1) **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

Page 1 of 8

Form Approved for Optional Use
Judicial Council of California
DISC-001 [Rev. January 1, 2008]

FORM INTERROGATORIES—GENERAL

Code of Civil Procedure, §§ 2030.010-2030.410, 2033.710
www.courtinfo.ca.gov

Exhibit E
Page 423

DISC-001

☐ (2) **INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(a)(2)"):*

(b) **YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

(c) **PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

(d) **DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

(e) **HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

(f) **ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

CONTENTS

1.0 Identity of Persons Answering These Interrogatories
2.0 General Background Information—Individual
3.0 General Background Information—Business Entity
4.0 Insurance
5.0 *[Reserved]*
6.0 Physical, Mental, or Emotional Injuries
7.0 Property Damage
8.0 Loss of Income or Earning Capacity
9.0 Other Damages
10.0 Medical History
11.0 Other Claims and Previous Claims
12.0 Investigation—General
13.0 Investigation—Surveillance
14.0 Statutory or Regulatory Violations
15.0 Denials and Special or Affirmative Defenses
16.0 Defendant's Contentions Personal Injury
17.0 Responses to Request for Admissions
18.0 *[Reserved]*
19.0 *[Reserved]*
20.0 How the Incident Occurred—Motor Vehicle
25.0 *[Reserved]*
30.0 *[Reserved]*
40.0 *[Reserved]*
50.0 Contract
60.0 *[Reserved]*
70.0 Unlawful Detainer *[See separate form DISC-003]*
101.0 Economic Litigation *[See separate form DISC-004]*
200.0 Employment Law *[See separate form DISC-002]*
Family Law *[See separate form FL-145]*

**1.0 Identity of Persons Answering These Interrogatories**

☒ 1.1 State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. *(Do not identify anyone who simply typed or reproduced the responses.)*

**2.0 General Background Information—Individual**

☒ 2.1 State:
(a) your name;
(b) every name you have used in the past; and
(c) the dates you used each name.

☒ 2.2 State the date and place of your birth.

☒ 2.3 At the time of the **INCIDENT**, did you have a driver's license? If so state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☒ 2.4 At the time of the **INCIDENT**, did you have any other permit or license for the operation of a motor vehicle? If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☒ 2.5 State:
(a) your present residence **ADDRESS**;
(b) your residence **ADDRESSES** for the past five years; and
(c) the dates you lived at each **ADDRESS**.

☒ 2.6 State:
(a) the name, **ADDRESS**, and telephone number of your present employer or place of self-employment; and
(b) the name, **ADDRESS**, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

☒ 2.7 State:
(a) the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;
(b) the dates you attended;
(c) the highest grade level you have completed; and
(d) the degrees received.

☒ 2.8 Have you ever been convicted of a felony? If so, for each conviction state:
(a) the city and state where you were convicted;
(b) the date of conviction;
(c) the offense; and
(d) the court and case number.

☒ 2.9 Can you speak English with ease? If not, what language and dialect do you normally use?

☒ 2.10 Can you read and write English with ease? If not, what language and dialect do you normally use?

American LegalNet, Inc.
www.FormsWorkflow.com

☒ 2.11 At the time of the **INCIDENT** were you acting as an agent or employee for any **PERSON?** If so, state:
(a) the name, **ADDRESS,** and telephone number of that **PERSON:** and
(b) a description of your duties.

☒ 2.12 At the time of the **INCIDENT** did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the **INCIDENT?** If so, for each person state:
(a) the name, **ADDRESS,** and telephone number;
(b) the nature of the disability or condition; and
(c) the manner in which the disability or condition contributed to the occurrence of the **INCIDENT.**

☒ 2.13 Within 24 hours before the **INCIDENT** did you or any person involved in the **INCIDENT** use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
(a) the name, **ADDRESS,** and telephone number;
(b) the nature or description of each substance;
(c) the quantity of each substance used or taken;
(d) the date and time of day when each substance was used or taken;
(e) the **ADDRESS** where each substance was used or taken;
(f) the name, **ADDRESS,** and telephone number of each person who was present when each substance was used or taken; and
(g) the name, **ADDRESS,** and telephone number of any **HEALTH CARE PROVIDER** who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

**3.0 General Background Information—Business Entity**

☐ 3.1 Are you a corporation? If so, state:
(a) the name stated in the current articles of incorporation;
(b) all other names used by the corporation during the past 10 years and the dates each was used;
(c) the date and place of incorporation;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

☐ 3.2 Are you a partnership? If so, state:
(a) the current partnership name;
(b) all other names used by the partnership during the past 10 years and the dates each was used;
(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;
(d) the name and **ADDRESS** of each general partner; and
(e) the **ADDRESS** of the principal place of business.

☐ 3.3 Are you a limited liability company? If so, state:
(a) the name stated in the current articles of organization;
(b) all other names used by the company during the past 10 years and the date each was used;
(c) the date and place of filing of the articles of organization;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

☐ 3.4 Are you a joint venture? If so, state:
(a) the current joint venture name;
(b) all other names used by the joint venture during the past 10 years and the dates each was used;
(c) the name and **ADDRESS** of each joint venturer; and
(d) the **ADDRESS** of the principal place of business.

☐ 3.5 Are you an unincorporated association? If so, state:
(a) the current unincorporated association name;
(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and
(c) the **ADDRESS** of the principal place of business.

☐ 3.6 Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
(a) the name;
(b) the dates each was used;
(c) the state and county of each fictitious name filing; and
(d) the **ADDRESS** of the principal place of business.

☐ 3.7 Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:
(a) identify the license or registration;
(b) state the name of the public entity; and
(c) state the dates of issuance and expiration.

**4.0 Insurance**

☒ 4.1 At the time of the **INCIDENT,** was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, for each policy state:
(a) the kind of coverage;
(b) the name and **ADDRESS** of the insurance company;
(c) the name, **ADDRESS,** and telephone number of each named insured;
(d) the policy number;
(e) the limits of coverage for each type of coverage contained in the policy;
(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
(g) the name, **ADDRESS,** and telephone number of the custodian of the policy.

☒ 4.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, specify the statute.

**5.0** *[Reserved]*

**6.0 Physical, Mental, or Emotional Injuries**

☒ 6.1 Do you attribute any physical, mental, or emotional injuries to the **INCIDENT?** *(If your answer is "no," do not answer interrogatories 6.2 through 6.7).*

☒ 6.2 Identify each injury you attribute to the **INCIDENT** and the area of your body affected.

American LegalNet, Inc.
www.FormsWorkflow.com

☒ 6.3 Do you still have any complaints that you attribute to the **INCIDENT?** If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

☒ 6.4 Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) or treatment from a **HEALTH CARE PROVIDER** for any injury you attribute to the **INCIDENT?** If so, for each **HEALTH CARE PROVIDER** state:
(a) the name, **ADDRESS,** and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

☒ 6.5 Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the **INCIDENT?** If so, for each medication state:
(a) the name;
(b) the **PERSON** who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

☒ 6.6 Are there any other medical services necessitated by the injuries that you attribute to the **INCIDENT** that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the nature;
(b) the date;
(c) the cost; and
(d) the name, **ADDRESS,** and telephone number of each provider.

☒ 6.7 Has any **HEALTH CARE PROVIDER** advised that you may require future or additional treatment for any injuries that you attribute to the **INCIDENT?** If so, for each injury state:
(a) the name and **ADDRESS** of each **HEALTH CARE PROVIDER;**
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment.

**7.0 Property Damage**

☐ 7.1 Do you attribute any loss of or damage to a vehicle or other property to the **INCIDENT?** If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;
(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, **ADDRESS,** and telephone number of the seller, the date of sale, and the sale price.

☐ 7.2 Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, **ADDRESS,** and telephone number of the **PERSON** who prepared it and the date prepared;
(b) the name, **ADDRESS,** and telephone number of each **PERSON** who has a copy of it; and
(c) the amount of damage stated.

☐ 7.3 Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, **ADDRESS,** and telephone number of the **PERSON** who repaired it;
(e) the name, **ADDRESS,** and telephone number of the **PERSON** who paid for the repair.

**8.0 Loss of Income or Earning Capacity**

☒ 8.1 Do you attribute any loss of income or earning capacity to the **INCIDENT?** *(If your answer is "no," do not answer interrogatories 8.2 through 8.8).*

☒ 8.2 State:
(a) the nature of your work;
(b) your job title at the time of the **INCIDENT**; and
(c) the date your employment began.

☒ 8.3 State the last date before the **INCIDENT** that you worked for compensation.

☒ 8.4 State your monthly income at the time of the **INCIDENT** and how the amount was calculated.

☒ 8.5 State the date you returned to work at each place of employment following the **INCIDENT.**

☒ 8.6 State the dates you did not work and for which you lost income as a result of the **INCIDENT.**

☒ 8.7 State the total income you have lost to date as a result of the **INCIDENT** and how the amount was calculated.

☒ 8.8 Will you lose income in the future as a result of the **INCIDENT?** If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

American LegalNet, Inc. www.FormsWorkflow.com

**9.0 Other Damages**

☒ 9.1 Are there any other damages that you attribute to the **INCIDENT?** If so, for each item of damage state:
(a) the nature;
(b) the date it occurred;
(c) the amount; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** to whom an obligation was incurred.

☒ 9.2 Do any **DOCUMENTS** support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**10.0 Medical History**

☒ 10.1 At any time before the **INCIDENT** did you have complaints or injuries that involved the same part of your body claimed to have been injured in the **INCIDENT?** If so, for each state:
(a) a description of the complaint or injury;
(b) the dates it began and ended; and
(c) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER** whom you consulted or who examined or treated you.

☒ 10.2 List all physical, mental, and emotional disabilities you had immediately before the **INCIDENT.** *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the **INCIDENT.**)*

☒ 10.3 At any time after the **INCIDENT,** did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:
(a) the date and the place it occurred;
(b) the name, **ADDRESS,** and telephone number of any other **PERSON** involved;
(c) the nature of any injuries you sustained;
(d) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER** who you consulted or who examined or treated you; and
(e) the nature of the treatment and its duration.

**11.0 Other Claims and Previous Claims**

☒ 11.1 Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:
(a) the date, time, and place and location (closest street **ADDRESS** or intersection) of the **INCIDENT** giving rise to the action, claim, or demand;
(b) the name, **ADDRESS,** and telephone number of each **PERSON** against whom the claim or demand was made or the action filed;
(c) the court, names of the parties, and case number of any action filed;
(d) the name, **ADDRESS,** and telephone number of any attorney representing you;
(e) whether the claim or action has been resolved or is pending; and
(f) a description of the injury.

☒ 11.2 In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:
(a) the date, time, and place of the **INCIDENT** giving rise to the claim;
(b) the name, **ADDRESS,** and telephone number of your employer at the time of the injury;
(c) the name, **ADDRESS,** and telephone number of the workers' compensation insurer and the claim number;
(d) the period of time during which you received workers' compensation benefits;
(e) a description of the injury;
(f) the name, **ADDRESS,** and telephone number of any **HEALTH CARE PROVIDER** who provided services; and
(g) the case number at the Workers' Compensation Appeals Board.

**12.0 Investigation—General**

☒ 12.1 State the name, **ADDRESS,** and telephone number of each individual:
(a) who witnessed the **INCIDENT** or the events occurring immediately before or after the **INCIDENT;**
(b) who made any statement at the scene of the **INCIDENT;**
(c) who heard any statements made about the **INCIDENT** by any individual at the scene; and
(d) who **YOU OR ANYONE ACTING ON YOUR BEHALF** claim has knowledge of the **INCIDENT** (except for expert witnesses covered by Code of Civil Procedure section 2034).

☒ 12.2 Have **YOU OR ANYONE ACTING ON YOUR BEHALF** interviewed any individual concerning the **INCIDENT?** If so, for each individual state:
(a) the name, **ADDRESS,** and telephone number of the individual interviewed;
(b) the date of the interview; and
(c) the name, **ADDRESS,** and telephone number of the **PERSON** who conducted the interview.

☒ 12.3 Have **YOU OR ANYONE ACTING ON YOUR BEHALF** obtained a written or recorded statement from any individual concerning the **INCIDENT?** If so, for each statement state:
(a) the name, **ADDRESS,** and telephone number of the individual from whom the statement was obtained;
(b) the name, **ADDRESS,** and telephone number of the individual who obtained the statement;
(c) the date the statement was obtained; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original statement or a copy.

American LegalNet, Inc.
www.FormsWorkflow.com

☒ 12.4 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** know of any photographs, films, or videotapes depicting any place, object, or individual concerning the **INCIDENT** or plaintiff's injuries? If so, state:

(a) the number of photographs or feet of film or videotape;
(b) the places, objects, or persons photographed, filmed, or videotaped;
(c) the date the photographs, films, or videotapes were taken;
(d) the name, **ADDRESS,** and telephone number of the individual taking the photographs, films, or videotapes; and
(e) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of the photographs, films, or videotapes.

☒ 12.5 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** know of any diagram, reproduction, or model of any place or thing (except for items developed by expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) concerning the **INCIDENT?** If so, for each item state:

(a) the type (i.e., diagram, reproduction, or model);
(b) the subject matter; and
(c) the name, **ADDRESS,** and telephone number of each **PERSON** who has it.

☒ 12.6 Was a report made by any **PERSON** concerning the **INCIDENT?** If so, state:

(a) the name, title, identification number, and employer of the **PERSON** who made the report;
(b) the date and type of report made;
(c) the name, **ADDRESS,** and telephone number of the **PERSON** for whom the report was made; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of the report.

☒ 12.7 Have **YOU OR ANYONE ACTING ON YOUR BEHALF** inspected the scene of the **INCIDENT?** If so, for each inspection state:

(a) the name, **ADDRESS,** and telephone number of the individual making the inspection (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310); and
(b) the date of the inspection.

**13.0 Investigation—Surveillance**

☐ 13.1 Have **YOU OR ANYONE ACTING ON YOUR BEHALF** conducted surveillance of any individual involved in the **INCIDENT** or any party to this action? If so, for each surveillance state:

(a) the name, **ADDRESS,** and telephone number of the individual or party;
(b) the time, date, and place of the surveillance;
(c) the name, **ADDRESS,** and telephone number of the individual who conducted the surveillance; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of any surveillance photograph, film, or videotape.

☐ 13.2 Has a written report been prepared on the surveillance? If so, for each written report state:

(a) the title;
(b) the date;
(c) the name, **ADDRESS,** and telephone number of the individual who prepared the report; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy.

**14.0 Statutory or Regulatory Violations**

☒ 14.1 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** contend that any **PERSON** involved in the **INCIDENT** violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the **INCIDENT?** If so, identify the name, **ADDRESS,** and telephone number of each **PERSON** and the statute, ordinance, or regulation that was violated.

☒ 14.2 Was any **PERSON** cited or charged with a violation of any statute, ordinance, or regulation as a result of this **INCIDENT?** If so, for each **PERSON** state:

(a) the name, **ADDRESS,** and telephone number of the **PERSON;**
(b) the statute, ordinance, or regulation allegedly violated;
(c) whether the **PERSON** entered a plea in response to the citation or charge and, if so, the plea entered; and
(d) the name and **ADDRESS** of the court or administrative agency, names of the parties, and case number.

**15.0 Denials and Special or Affirmative Defenses**

☐ 15.1 Identify each denial of a material allegation and each special or affirmative defense in your pleadings and for each:

(a) state all facts upon which you base the denial or special or affirmative defense;
(b) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(c) identify all **DOCUMENTS** and other tangible things that support your denial or special or affirmative defense, and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**16.0 Defendant's Contentions—Personal Injury**

☐ 16.1 Do you contend that any **PERSON,** other than you or plaintiff, contributed to the occurrence of the **INCIDENT** or the injuries or damages claimed by plaintiff? If so, for each **PERSON:**

(a) state the name, **ADDRESS,** and telephone number of the **PERSON;**
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.2 Do you contend that plaintiff was not injured in the **INCIDENT?** If so:

(a) state all facts upon which you base your contention;
(b) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(c) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

American LegalNet, Inc.
www.FormsWorkflow.com

☐ 16.3 Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the **INCIDENT?** If so, for each injury:

(a) identify it;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.4 Do you contend that any of the services furnished by any **HEALTH CARE PROVIDER** claimed by plaintiff in discovery proceedings thus far in this case were not due to the **INCIDENT?** If so:

(a) identify each service;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.5 Do you contend that any of the costs of services furnished by any **HEALTH CARE PROVIDER** claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable? If so:

(a) identify each cost;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.6 Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the **INCIDENT?** If so:

(a) identify each part of the loss;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.7 Do you contend that any of the property damage claimed by plaintiff in discovery Proceedings thus far in this case was not caused by the **INCIDENT?** If so:

(a) identify each item of property damage;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.8 Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable? If so:

(a) identify each cost item;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.9 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the **INCIDENT** by a plaintiff in this case? If so, for each plaintiff state:

(a) the source of each **DOCUMENT**;
(b) the date each claim arose;
(c) the nature of each claim; and
(d) the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

☐ 16.10 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a **HEALTH CARE PROVIDER** not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310)? If so, for each plaintiff state:

(a) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER**;
(b) a description of each **DOCUMENT**; and
(c) the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

**17.0 Responses to Request for Admissions**

☐ 17.1 Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

(a) state the number of the request;
(b) state all facts upon which you base your response;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your response and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**18.0** *[Reserved]*

**19.0** *[Reserved]*

**20.0 How the Incident Occurred—Motor Vehicle**

☐ 20.1 State the date, time, and place of the **INCIDENT** (closest street **ADDRESS** or intersection).

☐ 20.2 For each vehicle involved in the **INCIDENT**, state:

(a) the year, make, model, and license number;
(b) the name, ADDRESS, and telephone number of the driver;

American LegalNet, Inc. www.FormsWorkflow.com

(c) the name, **ADDRESS**, and telephone number of each occupant other than the driver;

(d) the name, **ADDRESS**, and telephone number of each registered owner;

(e) the name, **ADDRESS**, and telephone number of each lessee;

(f) the name, **ADDRESS**, and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

☐ 20.3 State the **ADDRESS** and location where your trip began and the **ADDRESS** and location of your destination.

☐ 20.4 Describe the route that you followed from the beginning of your trip to the location of the **INCIDENT**, and state the location of each stop, other than routine traffic stops, during the trip leading up to the **INCIDENT**.

☐ 20.5 State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the **INCIDENT** for the 500 feet of travel before the **INCIDENT**.

☐ 20.6 Did the **INCIDENT** occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

☐ 20.7 Was there a traffic signal facing you at the time of the **INCIDENT?** If so, state:

(a) your location when you first saw it;

(b) the color;

(c) the number of seconds it had been that color; and

(d) whether the color changed between the time you first saw it and the **INCIDENT**.

☐ 20.8 State how the **INCIDENT** occurred, giving the speed, direction, and location of each vehicle involved:

(a) just before the **INCIDENT**;

(b) at the time of the **INCIDENT**; and (c) just after the **INCIDENT**.

☐ 20.9 Do you have information that a malfunction or defect in a vehicle caused the **INCIDENT?** If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.10 Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the **INCIDENT?** If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.11 State the name, **ADDRESS**, and telephone number of each owner and each **PERSON** who has had possession since the **INCIDENT** of each vehicle involved in the **INCIDENT**.

**25.0** *[Reserved]*

**30.0** *[Reserved]*

**40.0** *[Reserved]*

**50.0 Contract**

☐ 50.1 For each agreement alleged in the pleadings:

(a) identify each **DOCUMENT** that is part of the agreement and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

(b) state each part of the agreement not in writing, the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to that provision, and the date that part of the agreement was made;

(c) identify all **DOCUMENTS** that evidence any part of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

(d) identify all **DOCUMENTS** that are part of any modification to the agreement, and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

(e) state each modification not in writing, the date, and the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to the modification, and the date the modification was made;

(f) identify all **DOCUMENTS** that evidence any modification of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**.

☐ 50.2 Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

☐ 50.3 Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

☐ 50.4 Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated, the date of termination, and the basis of the termination.

☐ 50.5 Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

☐ 50.6 Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**60.0** *[Reserved]*

American LegalNet, Inc. www.FormsWorkflow.com

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**PROOF OF SERVICE**

*Warner v. Penenberg/Wright Medical, et al.*
LASC Case No. BC 475958

I, the undersigned, declare: That I am, and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to the action; and I am employed in the County of San Diego, California. My business address is 350 Tenth Avenue, Suite 1300, San Diego, California 92101-8700.

On March 26, 2012, at San Diego, California, I served the following document(s) described as

**Propounded to Alan Warner**

**FORM INTERROGATORIES – Set One**

**SPECIAL INTERROGATORIES – Set One**

**REQUEST FOR PRODUCTION OF DOCUMENTS – Set One**

**Propounded to Patricia Warner**

**FORM INTERROGATORIES – Set One**

**SPECIAL INTERROGATORIES – Set One**

**REQUEST FOR PRODUCTION OF DOCUMENTS – Set One**

on the parties in said action by placing a true copy thereof in a separate sealed envelope for each addressee named hereafter, addressed to each such addressee respectively as stated on the attached service list, which reflects the address last given by each such addressee on any document filed in the action and served on this office.

**SEE ATTACHED SERVICE LIST**

☒ **BY MAIL:** I am readily familiar with our business practice for collecting, processing and mailing correspondence and pleadings with the United States Postal Service. Such correspondence and pleadings are deposited with the United States Postal Service on the same day that they are placed for mailing in the ordinary course of business. I sealed each envelope and, with the postage thereon fully prepaid, placed it for mailing in accord with our business' practice. (C.C.P. § 1013(a) and (b))

☒ **STATE COURT:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 26, 2012, at San Diego, California.

Lorri A. Taylor

**SERVICE LIST**
***Warner v. Penenberg, et al.***
**Los Angeles Superior Court Case No. BC475958**

| | |
|---|---|
| Steven R. Vartazarian (227635)<br>THE VARTAZARIAN LAW FIRM, APC<br>15250 Ventura Blvd., Suite 505<br>Sherman Oaks, CA 91403<br>Ph: 818-990-9949 | Attorneys for Plaintiff ALAN WARNER and PATRICIA WARNER |

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 433

**EXHIBIT 2**

Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

Attorneys for Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,

Defendants.

Case No. BC 475958

**SPECIAL INTERROGATORIES TO PLAINTIFF ALAN WARNER, SET ONE**

PROPOUNDING PARTY: Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

RESPONDING PARTY: Plaintiff Alan Warner

SET NO: One

Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc. ("Wright Medical") hereby request that Plaintiff Alan Warner ("Plaintiff") respond to the following interrogatories separately and fully in writing and under oath, pursuant to Section 2030.010 et seq. of the Code of Civil Procedure and that the response be signed by the person making them and be served on the attorneys for the requesting party within thirty (30) days after service of these interrogatories.

Exhibit E

Page 434

In answering these interrogatories, furnish all information that is available to you, including information known to your attorneys or anyone acting on your or their behalf. If you cannot answer an interrogatory completely, answer it to the extent possible. If you do not have personal knowledge sufficient to respond fully to an interrogatory, so state, but make a reasonable and good faith effort to obtain the information by inquiry to other natural persons or organizations.

**INTERROGATORIES**

**INTERROGATORY NO. 1.:**

Describe with specificity each fact upon which you rely to support your contention that there was a manufacturing defect in the Hip Prosthesis System. (For purposes of these Interrogatories, the term "you" refers to Plaintiff Alan Warner, and all agents, representatives, attorneys, experts and all other persons acting or purporting to act on his behalf. For purposes of these Interrogatories, the term "Hip Prosthesis System" refers to the Wright Medical prosthesis system that was placed in Plaintiff's left hip on or about 11/27/07 and which is allegedly at issue in this matter. For purposes of these Interrogatories, the term "describe" means that you are to give all the facts necessary to explain your contention and to enable Wright Medical to determine whether such contention is true.)

**INTERROGATORY NO. 2.:**

Describe with specificity each fact upon which you rely to support your contention that there was a design defect in the Hip Prosthesis System.

**INTERROGATORY NO. 3.:**

Describe with specificity each fact upon which you rely to support your contention that Wright Medical failed to warn you of the Hip Prosthesis System's alleged potential risk of fracturing.

**INTERROGATORY NO. 4.:**

Identify each document upon which you rely to support your contention that there was a defect in the design or manufacture of the Hip Prosthesis System. (For purposes of these Interrogatories, the term "identify" with regard to a document means to state as to each

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

document: the date on which the document was made; the names, business addresses and position of the person or persons who made the document, and any of the signatories, addressees, or persons who received copies of the document; the nature of the document, for example, that it is a letter; the subject matter of the document; the present location of the document; the present custodian of the document; the present location of any copy of the document; and the present custodian of any copy of the document. For purposes of these interrogatories, the term "document" shall include, without limitation, all written or graphic communications and all written or graphic matter of every kind and description however produced or reproduced, whether draft or final, original or reproduction, including, but not limited to, letters, correspondence, memoranda, minutes, notes, films, e-mail transmittals and recordings of any type, transcripts, contracts, memoranda of telephone or personal conversations or meetings, diaries, desk calendars, telegrams, circulars, pamphlets, manuals, statements, notices, reports, telexes, interoffice or intraoffice communications, reports, studies, books or records of accounts, bank account records, checks, bank drafts, invoices, requisitions, microfilm, movies, slides, photographs, data stored in any computer media, computer runs or printouts, tabulations, charts, guides, outlines, summaries, abstracts, plans, drawings, specifications, blueprints, graphs, studies or materials similar to any of the foregoing, however denominated and by whomever prepared and to whomever addressed.)

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**INTERROGATORY NO. 5.:**

Identify each person which you believe has knowledge of the facts supporting your contention that there was a defect in the design or manufacture of the Hip Prosthesis System. (For purposes of these Interrogatories, the term "identify" with regard to a person means to state the person's name, home or business address, home or business telephone number and business position.)

**INTERROGATORY NO. 6.:**

Identify each document upon which you rely to support your contention that Wright Medical failed to warn you of the Hip Prosthesis System's alleged potential risk of fracturing.

**INTERROGATORY NO. 7.:**

Identify each person which you believe has knowledge of the facts supporting your contention that Wright Medical failed to warn you of the Hip Prosthesis System's alleged potential risk of fracturing.

**INTERROGATORY NO. 8.:**

Describe with specificity each fact upon which you rely to support your contention that Wright Medical owed you a duty of care.

**INTERROGATORY NO. 9.:**

Describe with specificity each fact upon which you rely to support your contention that Wright Medical breached a duty of care owed to you.

**INTERROGATORY NO. 10.:**

Identify each document upon which you rely to support your claim for negligence.

**INTERROGATORY NO. 11.:**

Identify each person which you believe has knowledge of the facts supporting your claim for negligence.

**INTERROGATORY NO. 12.:**

Describe with specificity each fact upon which you rely to support your contention that Wright Medical committed a breach of warranty.

**INTERROGATORY NO. 13.:**

Identify each document upon which you rely to support your claim that Wright Medical committed a breach of warranty.

**INTERROGATORY NO. 14.:**

Identify each person which you believe has knowledge of the facts supporting your contention that Wright Medical committed a breach of warranty.

**INTERROGATORY NO. 15.:**

Identify every health care practitioner who you have consulted with or been examined by in the last ten (10) years, including each health care practitioner who has consulted or examined you in connection with the Hip Prosthesis System at issue and any other hip

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

prosthesis systems you may have or have had. (For purposes of these Interrogatories, the term "health care practitiooner" means a physician, surgeon, orthopod, cardiac specialist, neurologist, osteopath, chiropractor, physiotherapist, occupational therapist, psychiatrist or other type of medical practitioner or any person who practices the healing or curing arts, including family or personal physicians.)

**INTERROGATORY NO. 16.:**

Describe all injuries, ailments, disabilities and physical complaints you attribute to the subject Hip Prosthesis System, the frequency and manner of said complaints and when you last had such complaints.

**INTERROGATORY NO. 17.:**

Describe any injury or illness you have suffered during the past ten (10) years that required medical care and identify the hospitals and/or health care practitioners treating you for each such injury or illness.

**INTERROGATORY NO. 18.:**

Describe with specificity all medical care you received related to the alleged failure of the Hip Prosthesis System, including hospitals, physicians, surgeons, nurses, other professional services, ambulance service, medicine, x-rays and other medical supplies and services.

**INTERROGATORY NO. 19.:**

Describe with specificity all medical expenses you incurred related to the alleged failure of the Hip Prosthesis System, including those for hospitals, physicians, surgeons, nurses, other professional services, ambulance service, medicine, x-rays and other medical supplies and services.

**INTERROGATORY NO. 20.:**

Describe all medical care you contend you will need in the future related to the alleged failure of the Hip Prosthesis System, including the cost thereof.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**INTERROGATORY NO. 21.:**

Identify the name and address of each of your employers for the last ten (10) years and the dates of employment for each.

**INTERROGATORY NO. 22.:**

Identify your salary or average weekly wage earned at each of your employers for the last ten (10) years.

**INTERROGATORY NO. 23.:**

Describe your general job duties performed at each of your employers for the last ten (10) years, including the dates of each.

**INTERROGATORY NO. 24.:**

Describe any temporary or permanent work restrictions you attribute to the alleged fracture of the Hip Prosthesis System.

**INTERROGATORY NO. 25.:**

If you have ever received any income or benefits in lieu of earnings (i.e., insurance payment, worker's compensation, social security, no fault benefits, other disability benefits, etc.) for the ten (10) years, please state the period(s) of time said income or benefits were received, the amount received each week, and the source of such payment(s).

**INTERROGATORY NO. 26.:**

If you have ever made a claim for personal injuries, other than the claim raised in this case, describe the injury giving rise to said claim, the date of said injury, the nature of the incident or accident causing said injury and identify the persons and companies to whom said claim(s) was made.

**INTERROGATORY NO. 27.:**

If you have ever suffered trauma to your hip or proximal body tissues or the subject Hip Prosthesis System from such things as, inter alia, accidents, falls or other events, please detail the nature of each trauma, including the date it occurred, the identity of all witnesses to each trauma, and the effect said trauma had upon your left hip, proximal body tissues or the subject Hip Prosthesis System.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**INTERROGATORY NO. 28.:**

Identify all medications you have taken in the past ten (10) years, including the reason(s) for taking said medications, the daily dosage, and each health care practitioner(s) who prescribed each medication.

**INTERROGATORY NO. 29.:**

Describe any usual affairs, duties and activities you are prevented permanently from attending or participating in due to the alleged failure of the Hip Prosthesis System.

**INTERROGATORY NO. 30.:**

Please itemize all damages you are claiming in this matter.

**INTERROGATORY NO. 31.:**

Identify each person who will testify in support of each item of damage you are claiming in this matter.

**INTERROGATORY NO. 32.:**

Identify each document that support of each item of damage you are claiming in this matter.

**INTERROGATORY NO. 33.:**

Identify each lienholder (e.g. medical, insurance, worker's compensation and/or government) on any recovery you ultimately receive for injuries and damages due to alleged failure of the hip prosthesis system at issue in this matter, and the amount of any claimed lien.

**INTERROGATORY NO. 34.:**

Identify, with particularity, all activities you were engaged in for the one week leading up to, and including the time you allege the Hip Prosthesis System failed or fractured.

**INTERROGATORY NO. 35.:**

Identify each person, company, hospital or other entity that has inspected or conducted any kind of special studies, tests or x-rays on the subject Hip Prosthesis System and the dates thereof.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

DATED: March 26, 2012

KIRBY NOONAN LANCE & HOGE LLP

By: [signature]

Micaela P. Banach
Attorneys for Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 441

-8-
BC 475958
SPECIAL INTERROGATORIES TO PLAINTIFF ALAN WARNER. SET ONE

Exhibit E
Page 442

EXHIBIT 3

Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

Attorneys for Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,

Defendants.

Case No. BC 475958

**REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF ALAN WARNER, SET ONE**

PROPOUNDING PARTY: Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

RESPONDING PARTY: Plaintiff Alan Warner

SET NO: One

Pursuant to the California Code of Civil Procedure §§ 2031.010, et seq., Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc. ("Wright Medical") requests that Plaintiff Alan Warner produce for inspection and copying within thirty (30) days of service the documents and writings described in the following inspection demands at the law offices of Kirby Noonan Lance & Hoge LLP,.350 Tenth Avenue, Suite 1300, San Diego, California 92101.

You are also notified that you are required to serve a verified written response hereto within thirty (30) days of service pursuant to California Code of Civil Procedure §§ 2031.010, et seq.

**INSTRUCTIONS**

In preparing the verified written response required under California Code of Civil Procedure § 2031.210, please respond separately to each item or category of item by a statement that you will comply with a particular request for inspection and any related activities, a representation that you lack the ability to comply with the request for inspection of a particular item or category of item, or an objection to the particular request.

In responding to this request, the responding party shall furnish all documents in his possession, custody or control or in the possession, custody or control of his agents and/or representatives, including his attorneys, and shall supplement its responses as necessary pursuant to the California Code of Civil Procedure.

Each document requested herein is requested to be produced in its entirety with all attachments and enclosures, regardless of whether the responding party considers the attachments and enclosures to be relevant or responsive to these requests. Produce each document requested herein in its original file folder, file jacket or cover, if the document is an electronic communication, it should be produced in native format, metadata intact, and if the document is kept in electronic form, each printout should include all metadata and other historical or access information, including, but not limited to, directory listings. If the document is not an electronic communication or is not kept in electronic form and if the original file folder, file jacket or cover cannot be produced, you may designate in writing the titles of such folders, jackets or covers, and identify the person from whose file the documents are being produced

If any documents requested herein are not produced, you shall state the location of the documents, what efforts were undertaken to locate the documents, and why the documents have not been produced.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

If any responding party claims any form of privilege, whether based on statute or otherwise, as a ground for not producing a document, you are required to state the following: (a) the identity of the person who prepared or authored the document, and if applicable, the person to whom the document was addressed or transmitted; (b) the date on which the document was prepared or is dated; (c) the general subject matter of the document; (d) the nature of the document (e.g., letter, telegram, memorandum, etc.); (e) a brief statement of the legal ground upon which the document is claimed to be privileged and the facts supporting that legal ground; and (f) the paragraph of this request to which the document relates. Notwithstanding the assertion of any privilege or objection, any document which contains both privileged or objectionable and non-privileged or non-objectionable information which is responsive to a request must be produced with the privileged or objectionable information redacted from the document.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**DEFINITIONS**

1. As used herein, the term "you" refers to Plaintiff Alan Warner, and all agents, representatives, attorneys, experts and all other persons acting or purporting to act on his behalf.

2. As used herein, the term "documents" shall include, without limitation, all written or graphic communications and all written or graphic matter of every kind and description however produced or reproduced, whether draft or final, original or reproduction, including, but not limited to, letters, correspondence, memoranda, minutes, notes, films, e-mail transmittals and recordings of any type, transcripts, contracts, memoranda of telephone or personal conversations or meetings, diaries, desk calendars, telegrams, circulars, pamphlets, manuals, statements, notices, reports, telexes, interoffice or intraoffice communications, reports, studies, books or records of accounts, bank account records, checks, bank drafts, invoices, requisitions, microfilm, movies, slides, photographs, data stored in any computer media, computer runs or printouts, tabulations, charts, guides, outlines, summaries, abstracts, plans, drawings, specifications, blueprints, graphs, studies or materials similar to any of the foregoing, however denominated and by whomever prepared and to whomever addressed.

3. As used herein, "Hip Prosthesis System" refers to the Wright Medical prosthesis system that was placed in Plaintiff's left hip on or about 11/27/07 and which is allegedly at issue in this matter.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1.:**

All documents identified in response to Wright Medical's Special Interrogatories, Set One, served concurrently herewith.

**REQUEST FOR PRODUCTION NO. 2.:**

All documents identified in response to Wright Medical's Form Interrogatories, Set One, served concurrently herewith.

**REQUEST FOR PRODUCTION NO. 3.:**

All documents supporting your contention that the Hip Prosthesis System contained a design defect.

**REQUEST FOR PRODUCTION NO. 4.:**

All documents supporting your contention that the Hip Prosthesis System contained a manufacturing defect.

**REQUEST FOR PRODUCTION NO. 5.:**

All documents supporting your contention that Wright Medical failed to warn you of the Hip Prosthesis System's alleged potential risk of fracturing.

**REQUEST FOR PRODUCTION NO. 6.:**

All documents supporting your contention that the Hip Prosthesis System was defective at the time it left the control of Wright Medical.

**REQUEST FOR PRODUCTION NO. 7.:**

All documents supporting your contention that Wright Medical breached a duty of care owed to you.

**REQUEST FOR PRODUCTION NO. 8.:**

All documents supporting your contention that Wright Medical knew or should have known of an alleged risk of failure in the Hip Prosthesis System or any of its components.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**REQUEST FOR PRODUCTION NO. 9.:**

All documents supporting your claim for breach of warranty.

**REQUEST FOR PRODUCTION NO. 10.:**

All documents, including but not limited to, instructions concerning the Hip Prosthesis System.

**REQUEST FOR PRODUCTION NO.11.:**

All reports or other documents concerning studies, tests, photographs, or x-rays of the Hip Prosthesis System.

**REQUEST FOR PRODUCTION NO. 12.:**

All photographs, videos, charts, diagrams, or models of the Hip Prosthesis System.

**REQUEST FOR PRODUCTION NO. 13.:**

All documents that evidence or relate to any statements you have made regarding the alleged failure of the Hip Prosthesis System (other than those made to your present attorney).

**REQUEST FOR PRODUCTION NO. 14.:**

All documents that evidence or relate to statements concerning the alleged failure of the Hip Prosthesis System made to you (or anyone on your behalf).

**REQUEST FOR PRODUCTION NO. 15.:**

All reports, medical records or other documents prepared by the doctors who attended, operated, treated, consulted, or examined you regarding your hip surgeries, including the initial insertion of the Hip Prosthesis System and subsequent removal and replacement surgeries.

**REQUEST FOR PRODUCTION NO. 16.:**

All medical bills and related documents reflecting medical expenses you incurred in the medical procedures to remove and replace the Hip Prosthesis System, including medical procedures and therapy associated with your recovery.

**REQUEST FOR PRODUCTION NO. 17.:**

All documents which support your contention that you have suffered mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation and emotional distress.

**REQUEST FOR PRODUCTION NO. 18.:**

Your federal and state income tax forms for the past seven (7) years.

**REQUEST FOR PRODUCTION NO. 19.:**

All reports or other documents concerning any tests, examinations, inspections or investigations of the Hip Prosthesis System or any component part thereof.

**REQUEST FOR PRODUCTION NO. 20.:**

All documents which support your claim for lost income (past and future).

**REQUEST FOR PRODUCTION NO. 21.:**

All documents supporting, referencing or relating to all liens on any recovery you may receive in this matter.

**REQUEST FOR PRODUCTION NO. 22.:**

All invoices, receipts, cancelled checks and all other documents which support or otherwise relate to your damage claims.

**REQUEST FOR PRODUCTION NO. 23.:**

All exhibits you may offer as evidence at trial.

DATED: March 26, 2012

KIRBY NOONAN LANCE & HOGE LLP

By: [signature]
Micaela P. Banach
Attorneys for Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 449

EXHIBIT 4

DISC-001

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Michael L. Kirby (50895) / Micaela P. Banach (226656)
KIRBY NOONAN LANCE & HOGE, LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101
TELEPHONE NO.: 619-231-8666
FAX NO. *(Optional)*: 619-231-9593
E-MAIL ADDRESS *(Optional)*: mbanach@knlh.com
ATTORNEY FOR *(Name)*: Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Los Angeles**

SHORT TITLE OF CASE:
Warner v. Penenberg, M.D./Wright Medical, et al.

**FORM INTERROGATORIES—GENERAL**

**Asking Party:** Wright Medical Group, Inc.

**Answering Party:** Patricia Warner

**Set No.:** One

CASE NUMBER: BC475958

**Sec. 1. Instructions to All Parties**

(a) Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in civil cases.

(b) For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010-2030.410 and the cases construing those sections.

(c) These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

**Sec. 2. Instructions to the Asking Party**

(a) These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000. Separate interrogatories, Form *Interrogatories—Limited Civil Cases (Economic Litigation)* (form DISC-004), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b) Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c) You may insert your own definition of **INCIDENT** in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d) The interrogatories in section 16.0, Defendant's Contentions-Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e) Additional interrogatories may be attached.

**Sec. 3. Instructions to the Answering Party**

(a) An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b) As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure sections 2030.260-2030.270 for details.

(c) Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d) If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e) Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f) Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g) If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h) Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_______________ (DATE) _______________ (SIGNATURE)

**Sec. 4. Definitions**

Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

(a) *(Check one of the following)*:

☒ (1) **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

Page 1 of 8

Form Approved for Optional Use
Judicial Council of California
DISC-001 [Rev. January 1, 2008]

FORM INTERROGATORIES—GENERAL

Code of Civil Procedure, §§ 2030.010-2030.410, 2033.710
www.courtinfo.ca.gov

Exhibit E
Page 450

DISC-001

☐ (2) **INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(a)(2)"):*

(b) **YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

(c) **PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

(d) **DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

(e) **HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

(f) **ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

CONTENTS

1.0 Identity of Persons Answering These Interrogatories
2.0 General Background Information—Individual
3.0 General Background Information—Business Entity
4.0 Insurance
5.0 *[Reserved]*
6.0 Physical, Mental, or Emotional Injuries
7.0 Property Damage
8.0 Loss of Income or Earning Capacity
9.0 Other Damages
10.0 Medical History
11.0 Other Claims and Previous Claims
12.0 Investigation—General
13.0 Investigation—Surveillance
14.0 Statutory or Regulatory Violations
15.0 Denials and Special or Affirmative Defenses
16.0 Defendant's Contentions Personal Injury
17.0 Responses to Request for Admissions
18.0 *[Reserved]*
19.0 *[Reserved]*
20.0 How the Incident Occurred—Motor Vehicle
25.0 *[Reserved]*
30.0 *[Reserved]*
40.0 *[Reserved]*
50.0 Contract
60.0 *[Reserved]*
70.0 Unlawful Detainer *[See separate form DISC-003]*
101.0 Economic Litigation *[See separate form DISC-004]*
200.0 Employment Law *[See separate form DISC-002]*
Family Law *[See separate form FL-145]*

**1.0 Identity of Persons Answering These Interrogatories**

☒ 1.1 State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. *(Do not identify anyone who simply typed or reproduced the responses.)*

**2.0 General Background Information—Individual**

☒ 2.1 State:
(a) your name;
(b) every name you have used in the past; and
(c) the dates you used each name.

☒ 2.2 State the date and place of your birth.

☒ 2.3 At the time of the **INCIDENT**, did you have a driver's license? If so state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☒ 2.4 At the time of the **INCIDENT**, did you have any other permit or license for the operation of a motor vehicle? If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☒ 2.5 State:
(a) your present residence **ADDRESS**;
(b) your residence **ADDRESSES** for the past five years; and
(c) the dates you lived at each **ADDRESS**.

☒ 2.6 State:
(a) the name, **ADDRESS**, and telephone number of your present employer or place of self-employment; and
(b) the name, **ADDRESS**, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

☒ 2.7 State:
(a) the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;
(b) the dates you attended;
(c) the highest grade level you have completed; and
(d) the degrees received.

☒ 2.8 Have you ever been convicted of a felony? If so, for each conviction state:
(a) the city and state where you were convicted;
(b) the date of conviction;
(c) the offense; and
(d) the court and case number.

☒ 2.9 Can you speak English with ease? If not, what language and dialect do you normally use?

☒ 2.10 Can you read and write English with ease? If not, what language and dialect do you normally use?

American LegalNet, Inc.
www.FormsWorkflow.com

☒ 2.11 At the time of the **INCIDENT** were you acting as an agent or employee for any **PERSON?** If so, state:
(a) the name, **ADDRESS,** and telephone number of that **PERSON:** and
(b) a description of your duties.

☒ 2.12 At the time of the **INCIDENT** did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the **INCIDENT?** If so, for each person state:
(a) the name, **ADDRESS,** and telephone number;
(b) the nature of the disability or condition; and
(c) the manner in which the disability or condition contributed to the occurrence of the **INCIDENT.**

☒ 2.13 Within 24 hours before the **INCIDENT** did you or any person involved in the **INCIDENT** use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
(a) the name, **ADDRESS,** and telephone number;
(b) the nature or description of each substance;
(c) the quantity of each substance used or taken;
(d) the date and time of day when each substance was used or taken;
(e) the **ADDRESS** where each substance was used or taken;
(f) the name, **ADDRESS,** and telephone number of each person who was present when each substance was used or taken; and
(g) the name, **ADDRESS,** and telephone number of any **HEALTH CARE PROVIDER** who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

**3.0 General Background Information—Business Entity**

☐ 3.1 Are you a corporation? If so, state:
(a) the name stated in the current articles of incorporation;
(b) all other names used by the corporation during the past 10 years and the dates each was used;
(c) the date and place of incorporation;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

☐ 3.2 Are you a partnership? If so, state:
(a) the current partnership name;
(b) all other names used by the partnership during the past 10 years and the dates each was used;
(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;
(d) the name and **ADDRESS** of each general partner; and
(e) the **ADDRESS** of the principal place of business.

☐ 3.3 Are you a limited liability company? If so, state:
(a) the name stated in the current articles of organization;
(b) all other names used by the company during the past 10 years and the date each was used;
(c) the date and place of filing of the articles of organization;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

☐ 3.4 Are you a joint venture? If so, state:
(a) the current joint venture name;
(b) all other names used by the joint venture during the past 10 years and the dates each was used;
(c) the name and **ADDRESS** of each joint venturer; and
(d) the **ADDRESS** of the principal place of business.

☐ 3.5 Are you an unincorporated association? If so, state:
(a) the current unincorporated association name;
(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and
(c) the **ADDRESS** of the principal place of business.

☐ 3.6 Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
(a) the name;
(b) the dates each was used;
(c) the state and county of each fictitious name filing; and
(d) the **ADDRESS** of the principal place of business.

☐ 3.7 Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:
(a) identify the license or registration;
(b) state the name of the public entity; and
(c) state the dates of issuance and expiration.

**4.0 Insurance**

☒ 4.1 At the time of the **INCIDENT,** was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, for each policy state:
(a) the kind of coverage;
(b) the name and **ADDRESS** of the insurance company;
(c) the name, **ADDRESS,** and telephone number of each named insured;
(d) the policy number;
(e) the limits of coverage for each type of coverage contained in the policy;
(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
(g) the name, **ADDRESS,** and telephone number of the custodian of the policy.

☒ 4.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, specify the statute.

**5.0** *[Reserved]*

**6.0 Physical, Mental, or Emotional Injuries**

☒ 6.1 Do you attribute any physical, mental, or emotional injuries to the **INCIDENT?** *(If your answer is "no," do not answer interrogatories 6.2 through 6.7).*

☒ 6.2 Identify each injury you attribute to the **INCIDENT** and the area of your body affected.

American LegalNet, Inc. www.FormsWorkflow.com

DISC-001

☒ 6.3 Do you still have any complaints that you attribute to the **INCIDENT?** If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

☒ 6.4 Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) or treatment from a **HEALTH CARE PROVIDER** for any injury you attribute to the **INCIDENT?** If so, for each **HEALTH CARE PROVIDER** state:
(a) the name, **ADDRESS,** and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

☒ 6.5 Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the **INCIDENT?** If so, for each medication state:
(a) the name;
(b) the **PERSON** who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

☒ 6.6 Are there any other medical services necessitated by the injuries that you attribute to the **INCIDENT** that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the nature;
(b) the date;
(c) the cost; and
(d) the name, **ADDRESS,** and telephone number of each provider.

☒ 6.7 Has any **HEALTH CARE PROVIDER** advised that you may require future or additional treatment for any injuries that you attribute to the **INCIDENT?** If so, for each injury state:
(a) the name and **ADDRESS** of each **HEALTH CARE PROVIDER;**
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment.

**7.0 Property Damage**

☐ 7.1 Do you attribute any loss of or damage to a vehicle or other property to the **INCIDENT?** If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;
(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, **ADDRESS,** and telephone number of the seller, the date of sale, and the sale price.

☐ 7.2 Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, **ADDRESS,** and telephone number of the **PERSON** who prepared it and the date prepared;
(b) the name, **ADDRESS,** and telephone number of each **PERSON** who has a copy of it; and
(c) the amount of damage stated.

☐ 7.3 Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, **ADDRESS,** and telephone number of the **PERSON** who repaired it;
(e) the name, **ADDRESS,** and telephone number of the **PERSON** who paid for the repair.

**8.0 Loss of Income or Earning Capacity**

☒ 8.1 Do you attribute any loss of income or earning capacity to the **INCIDENT?** *(If your answer is "no," do not answer interrogatories 8.2 through 8.8).*

☒ 8.2 State:
(a) the nature of your work;
(b) your job title at the time of the **INCIDENT;** and
(c) the date your employment began.

☒ 8.3 State the last date before the **INCIDENT** that you worked for compensation.

☒ 8.4 State your monthly income at the time of the **INCIDENT** and how the amount was calculated.

☒ 8.5 State the date you returned to work at each place of employment following the **INCIDENT.**

☒ 8.6 State the dates you did not work and for which you lost income as a result of the **INCIDENT.**

☒ 8.7 State the total income you have lost to date as a result of the **INCIDENT** and how the amount was calculated.

☒ 8.8 Will you lose income in the future as a result of the **INCIDENT?** If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

**9.0 Other Damages**

☒ 9.1 Are there any other damages that you attribute to the **INCIDENT?** If so, for each item of damage state:
(a) the nature;
(b) the date it occurred;
(c) the amount; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** to whom an obligation was incurred.

☒ 9.2 Do any **DOCUMENTS** support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**10.0 Medical History**

☒ 10.1 At any time before the **INCIDENT** did you have complaints or injuries that involved the same part of your body claimed to have been injured in the **INCIDENT?** If so, for each state:
(a) a description of the complaint or injury;
(b) the dates it began and ended; and
(c) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER** whom you consulted or who examined or treated you.

☒ 10.2 List all physical, mental, and emotional disabilities you had immediately before the **INCIDENT.** *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the **INCIDENT.**)*

☒ 10.3 At any time after the **INCIDENT,** did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:
(a) the date and the place it occurred;
(b) the name, **ADDRESS,** and telephone number of any other **PERSON** involved;
(c) the nature of any injuries you sustained;
(d) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER** who you consulted or who examined or treated you; and
(e) the nature of the treatment and its duration.

**11.0 Other Claims and Previous Claims**

☒ 11.1 Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:
(a) the date, time, and place and location (closest street **ADDRESS** or intersection) of the **INCIDENT** giving rise to the action, claim, or demand;
(b) the name, **ADDRESS,** and telephone number of each **PERSON** against whom the claim or demand was made or the action filed;
(c) the court, names of the parties, and case number of any action filed;
(d) the name, **ADDRESS,** and telephone number of any attorney representing you;
(e) whether the claim or action has been resolved or is pending; and
(f) a description of the injury.

☒ 11.2 In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:
(a) the date, time, and place of the **INCIDENT** giving rise to the claim;
(b) the name, **ADDRESS,** and telephone number of your employer at the time of the injury;
(c) the name, **ADDRESS,** and telephone number of the workers' compensation insurer and the claim number;
(d) the period of time during which you received workers' compensation benefits;
(e) a description of the injury;
(f) the name, **ADDRESS,** and telephone number of any **HEALTH CARE PROVIDER** who provided services; and
(g) the case number at the Workers' Compensation Appeals Board.

**12.0 Investigation—General**

☒ 12.1 State the name, **ADDRESS,** and telephone number of each individual:
(a) who witnessed the **INCIDENT** or the events occurring immediately before or after the **INCIDENT;**
(b) who made any statement at the scene of the **INCIDENT;**
(c) who heard any statements made about the **INCIDENT** by any individual at the scene; and
(d) who **YOU OR ANYONE ACTING ON YOUR BEHALF** claim has knowledge of the **INCIDENT** (except for expert witnesses covered by Code of Civil Procedure section 2034).

☒ 12.2 Have **YOU OR ANYONE ACTING ON YOUR BEHALF** interviewed any individual concerning the **INCIDENT?** If so, for each individual state:
(a) the name, **ADDRESS,** and telephone number of the individual interviewed;
(b) the date of the interview; and
(c) the name, **ADDRESS,** and telephone number of the **PERSON** who conducted the interview.

☒ 12.3 Have **YOU OR ANYONE ACTING ON YOUR BEHALF** obtained a written or recorded statement from any individual concerning the **INCIDENT?** If so, for each statement state:
(a) the name, **ADDRESS,** and telephone number of the individual from whom the statement was obtained;
(b) the name, **ADDRESS,** and telephone number of the individual who obtained the statement;
(c) the date the statement was obtained; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original statement or a copy.

American LegalNet, Inc. www.FormsWorkflow.com

☒ 12.4 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** know of any photographs, films, or videotapes depicting any place, object, or individual concerning the **INCIDENT** or plaintiff's injuries? If so, state:

(a) the number of photographs or feet of film or videotape;
(b) the places, objects, or persons photographed, filmed, or videotaped;
(c) the date the photographs, films, or videotapes were taken;
(d) the name, **ADDRESS**, and telephone number of the individual taking the photographs, films, or videotapes; and
(e) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of the photographs, films, or videotapes.

☒ 12.5 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** know of any diagram, reproduction, or model of any place or thing (except for items developed by expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) concerning the **INCIDENT?** If so, for each item state:

(a) the type (i.e., diagram, reproduction, or model);
(b) the subject matter; and
(c) the name, **ADDRESS**, and telephone number of each **PERSON** who has it.

☒ 12.6 Was a report made by any **PERSON** concerning the **INCIDENT?** If so, state:

(a) the name, title, identification number, and employer of the **PERSON** who made the report;
(b) the date and type of report made;
(c) the name, **ADDRESS**, and telephone number of the **PERSON** for whom the report was made; and
(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of the report.

☒ 12.7 Have **YOU OR ANYONE ACTING ON YOUR BEHALF** inspected the scene of the **INCIDENT?** If so, for each inspection state:

(a) the name, **ADDRESS**, and telephone number of the individual making the inspection (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310); and
(b) the date of the inspection.

**13.0 Investigation—Surveillance**

☐ 13.1 Have **YOU OR ANYONE ACTING ON YOUR BEHALF** conducted surveillance of any individual involved in the **INCIDENT** or any party to this action? If so, for each surveillance state:

(a) the name, **ADDRESS**, and telephone number of the individual or party;
(b) the time, date, and place of the surveillance;
(c) the name, **ADDRESS**, and telephone number of the individual who conducted the surveillance; and
(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of any surveillance photograph, film, or videotape.

☐ 13.2 Has a written report been prepared on the surveillance? If so, for each written report state:

(a) the title;
(b) the date;
(c) the name, **ADDRESS**, and telephone number of the individual who prepared the report; and
(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy.

**14.0 Statutory or Regulatory Violations**

☒ 14.1 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** contend that any **PERSON** involved in the **INCIDENT** violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the **INCIDENT?** If so, identify the name, **ADDRESS**, and telephone number of each **PERSON** and the statute, ordinance, or regulation that was violated.

☐ 14.2 Was any **PERSON** cited or charged with a violation of any statute, ordinance, or regulation as a result of this **INCIDENT?** If so, for each **PERSON** state:

(a) the name, **ADDRESS**, and telephone number of the **PERSON;**
(b) the statute, ordinance, or regulation allegedly violated;
(c) whether the **PERSON** entered a plea in response to the citation or charge and, if so, the plea entered; and
(d) the name and **ADDRESS** of the court or administrative agency, names of the parties, and case number.

**15.0 Denials and Special or Affirmative Defenses**

☐ 15.1 Identify each denial of a material allegation and each special or affirmative defense in your pleadings and for each:

(a) state all facts upon which you base the denial or special or affirmative defense;
(b) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(c) identify all **DOCUMENTS** and other tangible things that support your denial or special or affirmative defense, and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT.**

**16.0 Defendant's Contentions—Personal Injury**

☐ 16.1 Do you contend that any **PERSON**, other than you or plaintiff, contributed to the occurrence of the **INCIDENT** or the injuries or damages claimed by plaintiff? If so, for each **PERSON:**

(a) state the name, **ADDRESS**, and telephone number of the **PERSON;**
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.2 Do you contend that plaintiff was not injured in the **INCIDENT?** If so:

(a) state all facts upon which you base your contention;
(b) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(c) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

American LegalNet, Inc. www.FormsWorkflow.com

☐ 16.3 Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the **INCIDENT**? If so, for each injury:

(a) identify it;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.4 Do you contend that any of the services furnished by any **HEALTH CARE PROVIDER** claimed by plaintiff in discovery proceedings thus far in this case were not due to the **INCIDENT**? If so:

(a) identify each service;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.5 Do you contend that any of the costs of services furnished by any **HEALTH CARE PROVIDER** claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable? If so:

(a) identify each cost;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.6 Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the **INCIDENT**? If so:

(a) identify each part of the loss;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.7 Do you contend that any of the property damage claimed by plaintiff in discovery Proceedings thus far in this case was not caused by the **INCIDENT**? If so:

(a) identify each item of property damage;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.8 Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable? If so:

(a) identify each cost item;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.9 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the **INCIDENT** by a plaintiff in this case? If so, for each plaintiff state:

(a) the source of each **DOCUMENT**;
(b) the date each claim arose;
(c) the nature of each claim; and
(d) the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

☐ 16.10 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a **HEALTH CARE PROVIDER** not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310)? If so, for each plaintiff state:

(a) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER**;
(b) a description of each **DOCUMENT**; and
(c) the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

**17.0 Responses to Request for Admissions**

☐ 17.1 Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

(a) state the number of the request;
(b) state all facts upon which you base your response;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your response and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**18.0** *[Reserved]*

**19.0** *[Reserved]*

**20.0 How the Incident Occurred—Motor Vehicle**

☐ 20.1 State the date, time, and place of the **INCIDENT** (closest street **ADDRESS** or intersection).

☐ 20.2 For each vehicle involved in the **INCIDENT**, state:

(a) the year, make, model, and license number;
(b) the name, ADDRESS, and telephone number of the driver;

(c) the name, **ADDRESS**, and telephone number of each occupant other than the driver;
(d) the name, **ADDRESS**, and telephone number of each registered owner;
(e) the name, **ADDRESS**, and telephone number of each lessee;
(f) the name, **ADDRESS**, and telephone number of each owner other than the registered owner or lien holder; and
(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

☐ 20.3 State the **ADDRESS** and location where your trip began and the **ADDRESS** and location of your destination.

☐ 20.4 Describe the route that you followed from the beginning of your trip to the location of the **INCIDENT**, and state the location of each stop, other than routine traffic stops, during the trip leading up to the **INCIDENT**.

☐ 20.5 State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the **INCIDENT** for the 500 feet of travel before the **INCIDENT**.

☐ 20.6 Did the **INCIDENT** occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

☐ 20.7 Was there a traffic signal facing you at the time of the **INCIDENT**? If so, state:
(a) your location when you first saw it;
(b) the color;
(c) the number of seconds it had been that color; and
(d) whether the color changed between the time you first saw it and the **INCIDENT**.

☐ 20.8 State how the **INCIDENT** occurred, giving the speed, direction, and location of each vehicle involved:
(a) just before the **INCIDENT**;
(b) at the time of the **INCIDENT**; and (c) just after the **INCIDENT**.

☐ 20.9 Do you have information that a malfunction or defect in a vehicle caused the **INCIDENT**? If so:
(a) identify the vehicle;
(b) identify each malfunction or defect;
(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and
(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.10 Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the **INCIDENT**? If so:
(a) identify the vehicle;
(b) identify each malfunction or defect;
(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and
(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.11 State the name, **ADDRESS**, and telephone number of each owner and each **PERSON** who has had possession since the **INCIDENT** of each vehicle involved in the **INCIDENT**.

**25.0** *[Reserved]*

**30.0** *[Reserved]*

**40.0** *[Reserved]*

**50.0 Contract**

☐ 50.1 For each agreement alleged in the pleadings:
(a) identify each **DOCUMENT** that is part of the agreement and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;
(b) state each part of the agreement not in writing, the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to that provision, and the date that part of the agreement was made;
(c) identify all **DOCUMENTS** that evidence any part of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;
(d) identify all **DOCUMENTS** that are part of any modification to the agreement, and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;
(e) state each modification not in writing, the date, and the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to the modification, and the date the modification was made;
(f) identify all **DOCUMENTS** that evidence any modification of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**.

☐ 50.2 Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

☐ 50.3 Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

☐ 50.4 Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated, the date of termination, and the basis of the termination.

☐ 50.5 Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

☐ 50.6 Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**60.0** *[Reserved]*

American LegalNet, Inc. www.FormsWorkflow.com

Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

Attorneys for Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| ALAN WARNER and PATRICIA WARNER,<br><br>Plaintiffs,<br><br>vs.<br><br>BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. BC 475958<br><br>**SPECIAL INTERROGATORIES TO PLAINTIFF PATRICIA WARNER, SET ONE** |

PROPOUNDING PARTY: Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

RESPONDING PARTY: Plaintiff Patricia Warner

SET NO: One

Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc. ("Wright Medical") hereby request that Plaintiff Patricia Warner ("Plaintiff") respond to the following interrogatories separately and fully in writing and under oath, pursuant to Section 2030.010 et seq. of the Code of Civil Procedure and that the response be signed by the person making them and be served on the attorneys for the requesting party within thirty (30) days after service of these interrogatories.

In answering these interrogatories, furnish all information that is available to you, including information known to your attorneys or anyone acting on your or their behalf. If you cannot answer an interrogatory completely, answer it to the extent possible. If you do not have personal knowledge sufficient to respond fully to an interrogatory, so state, but make a reasonable and good faith effort to obtain the information by inquiry to other natural persons or organizations.

## INTERROGATORIES

**INTERROGATORY NO. 1.:**

Describe with specificity each fact upon which you rely to support your cause of action for loss of consortium. (For purposes of these Interrogatories, the term "you" refers to Plaintiff Patricia Warner, and all agents, representatives, attorneys, experts and all other persons acting or purporting to act on her behalf.)

**INTERROGATORY NO. 2.:**

Identify each person which you believe has knowledge of the facts supporting your claim for loss of consortium. (For purposes of these Interrogatories, the term "identify" with regard to a person means to state the person's name, home or business address, home or business telephone number and business position.)

**INTERROGATORY NO. 3.:**

Identify each document upon which you rely to support your claim for loss of consortium. (For purposes of these Interrogatories, the term "identify" with regard to a document means to state as to each document: the date on which the document was made; the names, business addresses and position of the person or persons who made the document, and any of the signatories, addressees, or persons who received copies of the document; the nature of the document, for example, that it is a letter; the subject matter of the document; the present location of the document; the present custodian of the document; the present location of any copy of the document; and the present custodian of any copy of the document. For purposes of these interrogatories, the term "document" shall include, without limitation, all written or graphic communications and all written or graphic matter of every kind and description

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

KNLH\949344.1 -2- BC 475958

SPECIAL INTERROGATORIES TO PLAINTIFF PATRICIA WARNER

Exhibit E
Page 460

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

however produced or reproduced, whether draft or final, original or reproduction, including, but not limited to, letters, correspondence, memoranda, minutes, notes, films, e-mail transmittals and recordings of any type, transcripts, contracts, memoranda of telephone or personal conversations or meetings, diaries, desk calendars, telegrams, circulars, pamphlets, manuals, statements, notices, reports, telexes, interoffice or intraoffice communications, reports, studies, books or records of accounts, bank account records, checks, bank drafts, invoices, requisitions, microfilm, movies, slides, photographs, data stored in any computer media, computer runs or printouts, tabulations, charts, guides, outlines, summaries, abstracts, plans, drawings, specifications, blueprints, graphs, studies or materials similar to any of the foregoing, however denominated and by whomever prepared and to whomever addressed.)

**INTERROGATORY NO. 4.:**

Identify the date on which you and Alan Warner were married.

**INTERROGATORY NO. 5.:**

Identify the names and ages of all children you and Alan Warner have, either together or individually, and whether these children still reside with you.

**INTERROGATORY NO. 6.:**

Describe with specificity the work, services, and society usually performed in the care of the family home that you contend Alan Warner is no longer able to do, contribute to or assist with.

**INTERROGATORY NO. 7.:**

Describe with specificity all damages you are seeking by your loss of consortium claim, and how those damages were calculated.

DATED: March 26, 2012

KIRBY NOONAN LANCE & HOGE LLP

By: [signature]
Micaela P. Banach
Attorneys for Defendants Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Exhibit E

**EXHIBIT 6**

Kirby Noonan Lance & Hoge LLP

ATTORNEYS AT LAW

350 Tenth Avenue, Suite 1300, San Diego, California 92101-8700

Telephone (619) 231-8666 Facsimile (619) 231-9593 www.knlh.com

MICAELA P. BANACH

Partner

Writer's E-Mail: mbanach@knlh.com

July 10, 2012

*VIA FAX AND U.S. MAIL*

Steven R. Vartazarian
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403

Re: ***Warner v. Penenberg, et al.***

Dear Mr. Vartazarian:

On March 26, 2012, my office propounded Form Interrogatories, Special Interrogatories and Requests for Production of Documents to Plaintiffs Alan Warner and Patricia Warner. Your office requested an extension of time in which to provide responses, which I granted until May 30, 2012. To date, no responses have been received. Please provide complete, objection-free responses no later than next Tuesday, July 17, 2012 or we will be filing a motion to compel.

Please contact me with any questions.

Very truly yours,

MBanach

Micaela P. Banach
of
Kirby Noonan Lance & Hoge LLP

MPS/lt

KNLH\983528.1

Kirby Noonan Lance & Hoge LLP

ATTORNEYS AT LAW

350 Tenth Avenue, Suite 1300, San Diego, California 92101-8700
Telephone (619) 231-8666 Facsimile (619) 231-9593 www.knlh.com

MICAELA P. BANACH
Partner
Writer's E-Mail: mbanach@knlh.com

# FACSIMILE TRANSMISSION

| | | FACSIMILE NO. | TELEPHONE NO. |
|---|---|---|---|
| TO: | **Steven R. Vartazarian**<br>**THE VARTAZARIAN LAW FIRM, APC** | (818) 990-6124 | (818) 990-9949 |

FROM: Micaela P. Banach
KIRBY NOONAN LANCE & HOGE LLP
Fax No.: (619) 231-9593

DATE: July 10, 2012

FILE NO.: 2912.3

PAGES: **2** (including this cover page)

ORIGINAL: To Follow via U.S. Mail

COMMENTS: Please see attached.

SHOULD YOU HAVE QUESTIONS CONCERNING THIS TRANSMISSION,
PLEASE CALL **LORRI A. TAYLOR** AT (619) 231-8666

NOTICE OF ATTORNEY-CLIENT PRIVILEGE

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE AND ANY ACCOMPANYING DOCUMENTS IS SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE AND/OR THE ATTORNEY WORK PRODUCT RULE AND IS CONFIDENTIAL BUSINESS INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR REPRODUCTION OF THIS COMMUNICATION TO ANYONE OTHER THAN THE ADDRESSEE BY ANY MEANS WHATSOEVER IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE CONTACT IMMEDIATELY BY TELEPHONE, AND RETURN ALL DOCUMENTS RECEIVED TO US BY MAIL, AT OUR EXPENSE. THANK YOU.

Fax Details
Recipient
Name:
Phone Number:
Status
Status:
Sent: Tue Jul 10 10:36:41 -0700
Pages:
Attempt # 1
# of retries 2
Retry Interval 300
Device Used FaxFinder at 10.1.0.11
Cover Page
No Cover Page Style: BoldComplete
Subject:
Notes:
Documents
Document Pages
image07-10-2012_10-35-... 2
View Fax

Exhibit E
Page 466

EXHIBIT 7

Steven R. Vartazarian, Esq. (SBN: 227635)
Nareg Bardakjian, Esq. (SBN 276240)
**THE VARTAZARIAN LAW FIRM, APC**
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403
(818) 990-9949

Attorney for Plaintiffs,
ALAN WARNER and PATRICIA WARNER

RECEIVED
JUL 30 2012
KIRBY NOONAN LANCE & HOGE LLP

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

v.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,

Defendants.

CASE NO. BC 475958

*Assigned to the Hon. Charles F. Palmer, Department 33, for all purposes*

**PLAINTIFF ALAN WARNER'S RESPONSES TO DEFENDANT WRIGHT MEDICAL GROUP, INC.'S FORM INTERROGATORIES, SET NO. 1**

PROPOUNDING PARTY: Defendant, WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY INC.

RESPONDING PARTY: Plaintiff, ALAN WARNER

SET NO.: ONE (1)

Plaintiff, ALAN WARNER, hereby responds to Defendant's Form Interrogatories, Set One as follows:

**PRELIMINARY STATEMENT**

Investigation and discovery on behalf of this answering party are not complete. As discovery proceeds, witnesses, facts and evidence may be discovered which are not set forth herein, but which may have been responsive to an interrogatory. Facts and evidence

now known may be imperfectly understood or the relevance or consequence of such facts and evidence may be imperfectly understood. Accordingly, such facts and evidence may, in good faith, not be included in the following responses. This answering party reserves all rights to refer to, conduct discovery with reference to, or offer into evidence at trial any and all such witnesses, facts and evidence notwithstanding the absence of reference to same herein. In addition, this answering party assumes no obligation to voluntarily supplement or amend these responses to reflect witnesses, facts and evidence discovered following the filing of these responses.

**FORM INTERROGATORY NO. 1.1:**

Plaintiff and attorney of record The Vartazarian Law Firm.

**FORM INTERROGATORY NO. 2.1:**

a. Alan Warner

b. Not applicable.

c. Not applicable.

**FORM INTERROGATORY NO. 2.2:**

August 7, 1943, Stamford, Lincolnshire, England.

**FORM INTERROGATORY NO. 2.3:**

Not applicable.

**FORM INTERROGATORY NO. 2.4:**

No.

**FORM INTERROGATORY NO. 2.5:**

8295 Hollywood Blvd., L.A. 90069, since 1978.

**FORM INTERROGATORY NO. 2.6:**

Plaintiff is self employed as a

**FORM INTERROGATORY NO. 2.7:**

Plaintiff attended highschool in England and does not have any degrees.

**FORM INTERROGATORY NO. 2.8:**

No.

Exhibit E
Page 468

///

**FORM INTERROGATORY NO. 2.9:**

Yes.

**FORM INTERROGATORY NO. 2.10:**

Yes.

**FORM INTERROGATORY NO. 2.11:**

No.

**FORM INTERROGATORY NO. 2.12:**

No.

**FORM INTERROGATORY NO. 2.13:**

Plaintiff took Simvastatin for high cholesterol.

**FORM INTERROGATORY NO. 4.1:**

Medicare.

Medicare claim number: 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.T

**FORM INTERROGATORY NO. 4.2:**

No.

**FORM INTERROGATORY NO. 6.1:**

Yes.

**FORM INTERROGATORY NO. 6.2:**

Plaintiff suffers from severe mental anguish, deep depression, ongoing pain due to the continuation of breakdown of health due to additional hospitalization and surgery required. Specifically, plaintiff's femur had to be broken in two places to release the broken femoral implant. Subsequent to the initial reparative surgery, plaintiff suffered several dislocations and 3 months after the replacement of the broken implant, had to have further surgery and another hip implant. Physical Therapy was extremely painful and arduous. In January of 2012, plaintiff suffered a massive infection of his latest hip implant, for which he underwent a course of antibiotics and is still in the recovery process.

**FORM INTERROGATORY NO. 6.3:**

Yes. Plaintiff continues to recover from the surgeries as stated above. Plaintiff also continues to suffer from extreme exhaustion and physical weakness.

**FORM INTERROGATORY NO. 6.4:**

Consultation or examination or treatment. Examined by Dr. Penenberg and his surgical assistant Michelle Riley on a regular basis.

Physical Therapy on a twice- weekly basis with:

PHYSICAL THERAPY SPECIALISTS 200 N. Robertson Blvd., Suite 301, Beverly Hills, CA. 90211.

Tel: 310.273.8256.

Yoga strengthening at home with licensed yoga therapist. Personal pilates visits at the P.T. Specialists office.

Home health care, including nursing visits. New charges are ongoing due to recent infection.

Dr. William Long, Orthopedic Surgeon
Dorr Arthritis Institute
637 S. Lucas, Ground Floor
Los Angeles, CA 90017

**FORM INTERROGATORY NO. 6.5:**

For the complications that occurred in January, 2012, plaintiff took Vancomycin and Cefepime for 6 weeks by pumps, along with Cath Flo Activase on 3 occasions at home, and once at the Cedars Procedure Center.

**FORM INTERROGATORY NO. 6.6:**

PENTA STAR DBA Eagle Wings Non-Emergency Medical Transportation
204 E. Chevy Chase Drive, #5, Glendale, CA. 91205
Tel.818 550.8150 Fax.818.550.8160

Plus various expensive RX not covered by insurance.

Plaintiff's out of pocket expenses are approximately $6,992.24. Discovery is continuing.

**FORM INTERROGATORY NO. 6.7:**

Yes. Dr. William Long, who is now plaintiff's orthopedist, has opined that plaintiff could suffer a reoccurrence of the infection for which he will be regularly monitored.

**FORM INTERROGATORY NO. 8.1:**

Yes.

**FORM INTERROGATORY NO. 8.2:**

Plaintiff has an extensive knowledge of the ownership and the creative background of songs. Plaintiff has written 10 professional trade books and 3 retail books tracing the origin and history of popular music, songs and melodies ranging from the 1920's to the 1990's. Plaintiff has also produced hundreds of retail CDs, creative bulletins for both EMI Music Publishing and SonyATV Music Publishing which were circulated to staff and clients on a worldwide basis. At the time of the incident plaintiff was, and still is, a creative consultant to SonyATV Music Publishing. Plaintiff's part time employment began in June 2007 after he left EMI Music Publishing where he was a Senior VP since 1997. Plaintiff was delivering creative materials a week before the incident.

**FORM INTERROGATORY NO. 8.3:**

Because of the 100 days of surgery, hip replacements, dislocations, etc. from Oct, 2010 to February 2011, and the present and unexpected hip infection in January 2012, plaintiff has been unable to pursue additional work due to constant exhaustion, hospitalization and recuperation.

**FORM INTERROGATORY NO. 8.4:**

Plaintiff received a minimum of $3,750 monthly for the 2 monthly creative bulletins and if plaintiff prepared presentation videos he would receive an additional $15,000, per video.

///

///

///

**FORM INTERROGATORY NO. 8.5:**

Plaintiff purchased a laptop computer for his bedroom, and with his wife's help, continued to submit work. Plaintiff returned to work shortly after the surgery in November 2010, and has tried to work in between hospitalizations and recovery.

**FORM INTERROGATORY NO. 8.6:**

Since the incident of October of 2010, plaintiff has not worked a majority of the time.

**FORM INTERROGATORY NO. 8.7:**

Plaintiff is in the course of calculating this figure.

**FORM INTERROGATORY NO. 8.8:**

Yes. Plaintiff is still recuperating and is unsure of what his prognosis is after the latest problems. Plaintiff is currently undergoing a regimen to intense physical therapy, and still suffers from extreme exhaustion.

**FORM INTERROGATORY NO. 9.1:**

Yes. Non emergency transportation, prescriptions not covered by insurance, and retrofitting of plaintiff's home in order to make it easier to get in and out of his home.

FORM INTERROGATORY NO. 9.2:

Yes, copies of all bills paid.

**FORM INTERROGATORY NO. 10.1:**

Yes. On January 22, 2007, plaintiff underwent hip replacement surgery on his left hip. In November of 2007, and because of complications with his hip, Plaintiff underwent revision surgery on his left hip.

**FORM INTERROGATORY NO. 10.2:**

From November 2007 to October 2010, plaintiff experienced pain on and off while having regular physical therapy.

**FORM INTERROGATORY NO. 10.3:**

Yes. On October 27, 2010, plaintiff experienced extraordinary pain while he was walking from one room to the other while at home. The paramedics were called and plaintiff was taken to Cedar's Sinai emergency room where xrays indicated that the femoral component of his implant had broken at the neck. Plaintiff then had a four hour reparative surgery, which involved breaking his femur in several places in order oto removes the broken femoral implant. femur in two places. Plaintiff was hospitalized for 10 days and then discharged home. Plaintiff then began physical therapy in February fo 2011.

On February 1 and 2, 2011, plaintiff again experienced severe pain. He was taken to Cedars Sinai's emergency room where an X-ray revealed that his left hip had dislocated. The E.R. doctors tried twice to relocate the hip without success. Late in the day on Wednesday, Dr Allawallea, an associate of Dr. Penenberg, took plaintiff to surgery to try and relocate the hip. Plaintiff's hip was relocated but felt to be unstable.

On Thursday February 3, plaintiff's left hip dislocated again, with a noticeable difference in the leg lengths of about 2 inches. An X-ray revealed that the femoral implant was subsiding, and therefore on February 7, 2011, Dr. Penenberg replaced the existing hip with a much larger ball. Plaintiff was then ordered to not bear weight on his left leg for 6 to 12 weeks.

On February 14, 2011, while in the bathroom, I reached for my walker and fell. I was checked out at E.R. and told that there were severe contusions of the pelvis but no problem with the new implant.

In March of 2011, plaintiff resumed with physical therapy. Toward the end of December, plaintiff developed a high temperature, and accelerating pain in his left hip. He was seen by his primary physician and on January 18, 2012, Dr. Witlin confirmed that plaintiff had a high temperature and a high white cell count which had elevated from 7,500 to 18,600. Plaintiff was then immediately sent to the emergency room, at which time plaintiff was now experiencing excruciating pain in his hip with a large lump forming on his surgical scar.

Dr. Rajan Patel, operated on plaintiff on January 21, 2012 to clear out a large infection. Plaintiff returned home on January 25, with a PICC line in to receive antibiotics and spent the next six weeks taking Vancomyacin and Cefepime on a 24/7 basis.

The PICC line was removed on March 7, 2012. However, plaintiff's wound was not close and continued to discharge. Plaintiff saw Dr. William Long for a second opinion. The wound finally stopped producing discharge the week of May 7, 2012. Plaintiff is continues to be observed by Dr. Long for recurrence of the infection. Plaintiff's wife also checks the wound daily.

**FORM INTERROGATORY NO. 11.1:**

No.

**FORM INTERROGATORY NO. 11.2:**

No.

**FORM INTERROGATORY NO. 12.1:**

Plaintiffs, Dr. Penenberg and all other physicians who cared for plaintiff as stated above.

**FORM INTERROGATORY NO. 12.2:**

No.

**FORM INTERROGATORY NO. 12.3:**

No.

**FORM INTERROGATORY NO. 12.4:**

Diagnostic imaging studies from the entities listed above.

**FORM INTERROGATORY NO. 12.5:**

No.

**FORM INTERROGATORY NO. 12.6:**

None other than plaintiff's medical records.

**FORM INTERROGATORY NO. 12.7:**

Not applicable.

///

**FORM INTERROGATORY NO. 14.1:**

Not at this time. Discovery is continuing.

**FORM INTERROGATORY NO. 14.2:**

No.

Dated: July 24, 2012

THE VARTAZARIAN LAW FIRM

Nareg Bardakjian, Esq.
Attorney for Plaintiff Alan Warner and Patricia Warner

Exhibit E
Page 475

9

PLAINTIFF ALAN WARNER'S RESPONSES TO DEFENDANT WRIGHT MEDICAL GROUP, INC.'S FORM INTERROGATORIES, SET NO. 1

**VERIFICATION**

I, ALAN WARNER, am a Plaintiff in the above cause of action. I have read the Form Interrogatories Set One, propounded to me by Defendant, Wright Medical, and my responses thereto.

I declare under penalty of perjury under the laws of the State of California that the foregoing responses are true and correct. Executed on July 24, 2012, in Hollywood, California.

[signature]
Alan Warner

Exhibit E
Page 476

PROOF OF SERVICE
1013A (3) CCP
STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403.

On July 24, 2012, I served the foregoing document described as **Responses to Form Interrogatories, From Wright Medical to Alan Warner, Set One** on the interested parties in this action:

PLEASE SEE SERVICE LIST

__X___By placing the true copies thereof enclosed in sealed envelopes addressed as follows:

_____ I deposited such envelope with Federal Express in Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid for Priority Overnight Delivery.

__X___ I caused such envelope to be deposited in the mail at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

_____(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

______(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was ________________. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

______By attaching the document described above as a PDF document and emailing the same to all parties identified on the Service List below.

XXX I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 24, 2012, at Sherman Oaks, California.

Dahlia Smith

Exhibit E
Page 477

**SERVICE LIST**

Michael L. Kirby
KIRBY NOONAN LANCE & HOGE, LLP
350 Tenth Avenue, Suite 1300
San Diego, Ca 92101
Attorneys for: Wright Medical Group, Inc. And Wright Medical Technology, Inc.

Napoleon G. Tercero, III
HERZFELD & RUBIN, LLP
1925 Century Park East, Suite 900
Los Angeles, Ca 90067

Exhibit E
Page 479

**EXHIBIT 8**

Steven R. Vartazarian, Esq. (SBN 227635)
Nareg Bardakjian, Esq. (SBN 276240)
THE VARTAZARIAN LAW FIRM
15250 Ventura Blvd., Suite 505
Sherman Oaks, California 91403
Telephone: 818/990-9949
Telecopier: 818/990-6124

RECEIVED
JUL 30 2012
KIRBY NOONAN LANCE & HOGE LLP

**Attorneys for Plaintiff,**
ALAN WARNER and PATRICIA WARNER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| ALAN WARNER and PATRICIA WARNER,<br><br>Plaintiffs,<br><br>v.<br><br>BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, inclusive<br><br>Defendants. | CASE NO. BC 475958<br><br>*Assigned to the Hon. Charles F. Palmer, Department 33, for all purposes*<br><br>**PLAINTIFF ALAN WARNER'S RESPONSES TO DEFENDANT WRIGHT MEDICAL GROUP, INC.'S SPECIAL INTERROGATORIES, SET NO. 1** |

PROPOUNDING PARTY: Defendant, WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY INC.

RESPONDING PARTY: Plaintiff, ALAN WARNER

SET NO.: ONE (1)

Plaintiff, ALAN WARNER, hereby responds to Defendant's Special Interrogatories, Set One as follows:

///

Exhibit E
Page 480

///

## PRELIMINARY STATEMENT

1. It is to be noted that this responding party has not fully completed investigation of the facts, discovery and preparation for the trial of this case AND AS SUCH DISCOVERY IN THIS MATTER IS ONGOING. The following responses are based only on such information and documents which are presently available to and specifically known to this responding party and discloses only those contentions presently known to the responding party. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, additional witnesses, add meaning to the known facts, as well as establish entirely new factual conclusions and legal contentions. This discovery, independent investigation, legal research and analysis may lead to additions, changes and/or variations from contentions set forth herein. This responding party assumes no obligation to voluntarily supplement or amend these responses to reflect witnesses, facts and evidence discovered following the filing of these responses

2. The following responses are given without prejudice to the responding party's right to produce any subsequently discovered evidence which this responding party may later recall. The responding party reserves the right to change any and all of the following responses as additional facts are ascertained, legal research is completed and analysis and contentions are made. The following responses are made in good faith to supply factual information and as much specification of legal contentions as are presently known, but shall in no way prejudice the responding party in relation to further discovery, research or analysis.

## GENERAL OBJECTIONS

1. The objections below are incorporated into the responding party's responses, whether or not specific reference is made to such objection in the response to a particular interrogatory.

2. This responding party objects generally to each interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege.

3. This responding party objects generally to each interrogatory to the extent it seeks disclosure of information protected by the attorney-work product doctrine.

4. This responding party objects generally to each interrogatory to the extent it seeks "all," "each," and "any" information concerning various subjects or events, or pertaining to them "in any way," on the ground that such interrogatories are overbroad, unduly burdensome and oppressive, and if interpreted literally, impossible to answer.

5. The responding party objects generally to each production as vague and ambiguous to the extent it implies terms that this responding party cannot interpret while understood in the context of these requests or this litigation. Where possible, this responding party has made reasonable assumptions as to the propounding party's intended meaning and has responded accordingly, while preserving the objection as to vagueness and ambiguity.

6. Without waiving said objections, responding party responds as follows:

**SPECIAL INTERROGATORY NO. 1:**

The femoral component of the hip prosthesis system manufactured and distributed by defendants fractured at its neck while it was being used as expected.

**SPECIAL INTERROGATORY NO. 2:**

The femoral component of the hip prosthesis system manufactured and distributed by defendants fractured at its neck while it was being used as expected.

**SPECIAL INTERROGATORY NO. 3:**

There is a lack of warning by Wright Medical that the hip prosthesis system carries with it a risk of fracture of the femoral component when being used as expected by the physician and the consumer.

**SPECIAL INTERROGATORY NO. 4:**

Thus far, only plaintiff's medical records that indicate the fracture of the femoral component. Discovery is continuing.

**SPECIAL INTERROGATORY NO. 5:**

Plaintiffs, Plaintiff Alan Warner's treaters, and Defendants.

**SPECIAL INTERROGATORY NO. 6:**

There are no documents that indicate a warning to the user of the product, which is either the physician or the patient, that the femoral component is at risk of fracturing when being used as expected.

**SPECIAL INTERROGATORY NO. 7:**

Plaintiffs, Plaintiff Alan Warner's treaters, and Defendants.

SPECIAL INTERROGATORY NO. 8:

Because it designed and manufactured the product, and enter the product into the stream of commerce to ultimately be used by a patient such as Plaintiff Alan Warner.

SPECIAL INTERROGATORY NO. 9:

The femoral component of plaintiff's hip prosthesis unexpectedly fractured when it was being used as intended by plaintiff and by defendant.

SPECIAL INTERROGATORY NO. 10:

Thus far, only plaintiff's medical records that indicate the fracture of the femoral component. Discovery is continuing.

SPECIAL INTERROGATORY NO. 11:

Plaintiffs, Plaintiff Alan Warner's treaters, and Defendants. Discovery is continuing.

SPECIAL INTERROGATORY NO. 12:

The femoral component of plaintiff's hip prosthesis unexpectedly fractured when it was being used as intended by plaintiff and by defendant.

SPECIAL INTERROGATORY NO. 13:

Thus far, only plaintiff's medical records that indicate the fracture of the femoral component. Discovery is continuing.

SPECIAL INTERROGATORY NO. 14:

Plaintiffs, Plaintiff Alan Warner's treaters, and Defendants. Discovery is continuing.

SPECIAL INTERROGATORY NO. 15:

Dr. P. Richard Emmanuel, Dr. Brad L. Peneberg, Dr. William Long and plaintiff's various treating physicians at Cedar's Sinai.

SPECIAL INTERROGATORY NO. 16:

On January 22, 2007, plaintiff underwent hip replacement surgery on his left hip. In November of 2007, and because of complications with his hip, Plaintiff underwent revision surgery on his left hip.

Exhibit E
Page 483

From November 2007 to October 2010, plaintiff experienced pain on and off while having regular physical therapy.

On October 27, 2010, plaintiff experienced extraordinary pain while he was walking from one room to the other while at home. The paramedics were called and plaintiff was taken to Cedar's Sinai emergency room where xrays indicated that the femoral component of his implant had broken at the neck. Plaintiff then had a four hour reparative surgery, which involved breaking his femur in several places in order oto removes the broken femoral implant. femur in two places. Plaintiff was hospitalized for 10 days and then discharged home. Plaintiff then began physical therapy in February fo 2011.

On February 1 and 2, 2011, plaintiff again experienced severe pain. He was taken to Cedars Sinai's emergency room where an X-ray revealed that his left hip had dislocated. The E.R. doctors tried twice to relocate the hip without success. Late in the day on Wednesday, Dr Allawallea, an associate of Dr. Penenberg, took plaintiff to surgery to try and relocate the hip. Plaintiff's hip was relocated but felt to be unstable.

On Thursday February 3, plaintiff's left hip dislocated again, with a noticeable difference in the leg lengths of about 2 inches. An X-ray revealed that the femoral implant was subsiding, and therefore on February 7, 2011, Dr. Penenberg replaced the existing hip with a much larger ball. Plaintiff was then ordered to not bear weight on his left leg for 6 to 12 weeks.

On February 14, 2011, while in the bathroom, I reached for my walker and fell. I was checked out at E.R. and told that there were severe contusions of the pelvis but no problem with the new implant.

In March of 2011, plaintiff resumed with physical therapy. Toward the end of December, plaintiff developed a high temperature, and accelerating pain in his left hip. He was seen by his primary physician and on January 18, 2012, Dr. Witlin confirmed that plaintiff had a high temperature and a high white cell count which had elevated from 7,500 to 18,600. Plaintiff was then immediately sent to the emergency room, at which time plaintiff

Exhibit E
Page 484

5

PLAINTIFF ALAN WARNER'S RESPONSES TO DEFENDANTS WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY'S SPECIAL INTERROGATORIES, SET NO. 1

was now experiencing excruciating pain in his hip with a large lump forming on his surgical scar.

Dr. Rajan Patel, operated on plaintiff on January 21, 2012 to clear out a large infection. Plaintiff returned home on January 25, with a PICC line in to receive antibiotics and spent the next six weeks taking Vancomyacin and Cefepime on a 24/7 basis.

The PICC line was removed on March 7, 2012. However, plaintiff's wound was not close and continued to discharge. Plaintiff saw Dr. William Long for a second opinion. The wound finally stopped producing discharge the week of May 7, 2012. Plaintiff is continues to be observed by Dr. Long for recurrence of the infection. Plaintiff's wife also checks the wound daily.

**SPECIAL INTERROGATORY NO. 17:**

Other than as stated immediately above, on January 22, 2007, plaintiff underwent hip replacement surgery on his left hip. In November of 2007, and because of complications with his hip, Plaintiff underwent revision surgery on his left hip.

**SPECIAL INTERROGATORY NO. 18:**

Please see plaintiff's response to Special Interrogatory No. 16.

**SPECIAL INTERROGATORY NO. 19:**

Plaintiff has incurred roughly $7,000 out of pocket, for doctor's visits, prescription medication that was not covered by Medicare.

**SPECIAL INTERROGATORY NO. 20:**

Unknown as of this time. Discovery is continuing.

**SPECIAL INTERROGATORY NO. 21:**

At the time of the incident plaintiff was, and still is, a creative consultant to SonyATV Music Publishing. Plaintiff's part time employment began in June 2007 after he left EMI Music Publishing where he was a Senior VP since 1997.

**SPECIAL INTERROGATORY NO. 22:**

Exhibit E
Page 485

6

PLAINTIFF ALAN WARNER'S RESPONSES TO DEFENDANTS WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY'S SPECIAL INTERROGATORIES, SET NO. 1

Plaintiff received a minimum of $3,750 monthly for the 2 monthly creative bulletins and if plaintiff prepared presentation videos he would receive an additional $15,000, per video.

///

**SPECIAL INTERROGATORY NO. 23:**

Plaintiff has an extensive knowledge of the ownership and the creative background of songs. Plaintiff has written 10 professional trade books and 3 retail books tracing the origin and history of popular music, songs and melodies ranging from the 1920's to the 1990's. Plaintiff has also produced hundreds of retail CDs, creative bulletins for both EMI Music Publishing and SonyATV Music Publishing which were circulated to staff and clients on a worldwide basis. At the time of the incident plaintiff was, and still is, a creative consultant to Sony ATV Music Publishing.

**SPECIAL INTERROGATORY NO. 24:**

Plaintiff is unable to work as he once used to as a result of the injury, the subsequent treatment plaintiff received for the injury, and the periods of convalescence following the surgical procedures he underwent following the injury.

**SPECIAL INTERROGATORY NO. 25:**

Plaintiff receives social security the details of which are currently being compiled.

**SPECIAL INTERROGATORY NO. 26:**

Not applicable.

**SPECIAL INTERROGATORY NO. 27:**

Not applicable.

**SPECIAL INTERROGATORY NO. 28:**

Prior to the injury in question plaintiff was taking cholesterol medication. Following the subject injury, plaintiff has been on numerous pain medications and antibiotics.

**SPECIAL INTERROGATORY NO. 29:**

Plaintiff has been unable to socialize and enjoy his life as he did prior to the injury. Most visits out of the home involve doctor's appointment's and physical therapy.

**SPECIAL INTERROGATORY NO. 30:**

Non-economic damages and economic damages for out of pocket medical expenses and lost wages.

**SPECIAL INTERROGATORY NO. 31:**

Plaintiffs, plaintiff Alan Warner's treaters and experts.

**SPECIAL INTERROGATORY NO. 32:**

Medical records, medical bills and evidence of plaintiff's lost wages.

**SPECIAL INTERROGATORY NO. 33:**

Medicare is the only potential lien holder plaintiff is aware of.

**SPECIAL INTERROGATORY NO. 34:**

Working, socializing and enjoying semi-retirement.

**SPECIAL INTERROGATORY NO. 35:**

Plaintiff is not in possession of any information responsive to this interrogatory at this time.

Dated: July 24, 2012

THE VARTAZARIAN LAW FIRM

Nareg Bardakjian, Esq.
Attorneys for Plaintiff, Patricia Warner and Allen Warner

Exhibit E
Page 487

**VERIFICATION**

I, ALAN WARNER, am a Plaintiff in the above cause of action. I have read the Special Interrogatories Set One, propounded to me by Defendant, Wright Medical, and my responses thereto.

I declare under penalty of perjury under the laws of the State of California that the foregoing responses are true and correct. Executed on July 24, 2012, in Hollywood, California.

[signature]
Alan Warner

Exhibit E
Page 488

Exhibit E
Page 489

**EXHIBIT 9**



Steven R. Vartazarian, Esq. (SBN 227635)
Nareg Bardakjian, Esq. (SBN 276240)
THE VARTAZARIAN LAW FIRM
15250 Ventura Blvd., Suite 505
Sherman Oaks, California 91403
Telephone: 818/990-9949
Telecopier: 818/990-6124

RECEIVED
JUL 30 2012
KIRBY NOONAN LANCE & HUGE LLP

**Attorneys for Plaintiff,**
ALAN WARNER and PATRICIA WARNER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

v.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, inclusive

Defendants.

CASE NO. BC 475958

*Assigned to the Hon. Charles F. Palmer, Department 33, for all purposes*

**PLAINTIFF ALAN WARNER'S RESPONSES TO DEFENDANT WRIGHT MEDICAL GROUP, INC.'S DEMAND FOR PRODUCTION, SET NO. 1**

PROPOUNDING PARTY: Defendant, WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY INC.

RESPONDING PARTY: Plaintiff, ALAN WARNER

SET NO.: ONE (1)

Plaintiff, ALAN WARNER, hereby responds to Defendant's Demand for production of Documents, Set One as follows:

///

Exhibit E
Page 490

1

PLAINTIFF ALAN WARNER'S RESPONSES TO DEFENDANTS WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY'S DEMAND FOR PRODUCTION, SET NO. 1

///

## PRELIMINARY STATEMENT

1. It is to be noted that this responding party has not fully completed investigation of the facts, discovery and preparation for the trial of this case AND AS SUCH DISCOVERY IN THIS MATTER IS ONGOING. The following responses are based only on such information and documents which are presently available to and specifically known to this responding party and discloses only those contentions presently known to the responding party. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, additional witnesses, add meaning to the known facts, as well as establish entirely new factual conclusions and legal contentions. This discovery, independent investigation, legal research and analysis may lead to additions, changes and/or variations from contentions set forth herein. This responding party assumes no obligation to voluntarily supplement or amend these responses to reflect witnesses, facts and evidence discovered following the filing of these responses

2. The following responses are given without prejudice to the responding party's right to produce any subsequently discovered evidence which this responding party may later recall. The responding party reserves the right to change any and all of the following responses as additional facts are ascertained, legal research is completed and analysis and contentions are made. The following responses are made in good faith to supply factual information and as much specification of legal contentions as are presently known, but shall in no way prejudice the responding party in relation to further discovery, research or analysis.

## GENERAL OBJECTIONS

1. The objections below are incorporated into the responding party's responses, whether or not specific reference is made to such objection in the response to a particular interrogatory.

2. This responding party objects generally to each interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege.

3. This responding party objects generally to each interrogatory to the extent it seeks disclosure of information protected by the attorney-work product doctrine.

Exhibit E
Page 491

2

PLAINTIFF ALAN WARNER'S RESPONSES TO DEFENDANTS WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY'S DEMAND FOR PRODUCTION, SET NO. 1

4. This responding party objects generally to each interrogatory to the extent it seeks "all," "each," and "any" information concerning various subjects or events, or pertaining to them "in any way," on the ground that such interrogatories are overbroad, unduly burdensome and oppressive, and if interpreted literally, impossible to answer.

5. The responding party objects generally to each production as vague and ambiguous to the extent it implies terms that this responding party cannot interpret while understood in the context of these requests or this litigation. Where possible, this responding party has made reasonable assumptions as to the propounding party's intended meaning and has responded accordingly, while preserving the objection as to vagueness and ambiguity.

6. Without waiving said objections, responding party responds as follows:

**REQUEST FOR PRODUCTION NO. 1 through 23:**

At this time, the only documents plaintiff has to substantiate his claim are his medical records from Cedar's Sinai Medical Center, which are already in Defendant's possession. As to documents supporting his wage loss claim, plaintiff will produce those forthwith.

Dated: July 24, 2012

THE VARTAZARIAN LAW FIRM

Nareg Bardakjian, Esq.
Attorneys for Plaintiff, Patricia Warner and Allen Warner

Exhibit E
Page 492

**VERIFICATION**

I, ALAN WARNER, am a Plaintiff in the above cause of action. I have read the Demand for Production of Documents, propounded to me by Defendant, Wright Medical, and my responses thereto.

I declare under penalty of perjury under the laws of the State of California that the foregoing responses are true and correct. Executed on July 24, 2012, in Hollywood, California.

Alan Warner

Alan Warner

Exhibit E
Page 493

Exhibit E
Page 494

EXHIBIT 10

Steven R. Vartazarian, Esq. (SBN: 227635)
Nareg Bardakjian, Esq. (SBN 276240)
**THE VARTAZARIAN LAW FIRM, APC**
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403
(818) 990-9949

Attorney for Plaintiffs,
ALAN WARNER and PATRICIA WARNER

RECEIVED
JUL 30 2012
KIRBY NOONAN LANCE & HOGE LLP

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

v.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,

Defendants.

CASE NO. BC 475958

*Assigned to the Hon. Charles F. Palmer, Department 33, for all purposes*

**PLAINTIFF PATRICIA WARNER'S RESPONSES TO DEFENDANT WRIGHT MEDICAL GROUP, INC.'S FORM INTERROGATORIES, SET NO. 1**

PROPOUNDING PARTY: Defendant, WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY INC.

RESPONDING PARTY: Plaintiff, PATRICIA WARNER

SET NO.: ONE (1)

Plaintiff, PATRICIA WARNER, hereby responds to Defendant's Form Interrogatories, Set One as follows:

**PRELIMINARY STATEMENT**

Investigation and discovery on behalf of this answering party are not complete. As discovery proceeds, witnesses, facts and evidence may be discovered which are not set forth herein, but which may have been responsive to an interrogatory. Facts and evidence

now known may be imperfectly understood or the relevance or consequence of such facts and evidence may be imperfectly understood. Accordingly, such facts and evidence may, in good faith, not be included in the following responses. This answering party reserves all rights to refer to, conduct discovery with reference to, or offer into evidence at trial any and all such witnesses, facts and evidence notwithstanding the absence of reference to same herein. In addition, this answering party assumes no obligation to voluntarily supplement or amend these responses to reflect witnesses, facts and evidence discovered following the filing of these responses.

**FORM INTERROGATORY NO. 1.1:**

Plaintiff Patricia Warner and her attorney of record The Vartazarian Law Firm.

**FORM INTERROGATORY NO. 2.1:**

a. Patricia Warner

b. Patricia Brennan; Patricia Hawkings

c. Patricia Hawkings from 1955-1963; Patricia Warner from 1979-present.

**FORM INTERROGATORY NO. 2.2:**

Born on November 4, 1935 in Montreal, Quebec, Canada.

**FORM INTERROGATORY NO. 2.3:**

Not applicable

**FORM INTERROGATORY NO. 2.4:**

No.

**FORM INTERROGATORY NO. 2.5:**

8295 Hollywood Blvd., L.A. 90069 since 1976.

**FORM INTERROGATORY NO. 2.6:**

Plaintiff Patricia Warner is not making a claim for lost wages.

**FORM INTERROGATORY 2.7:**

Plaintiff attended Luke Callaghan School in Montreal, Quebec, Canada.

**FORM INTERROGATORY NO. 2.8:**

No.

///

**FORM INTERROGATORY NO. 2.9:**

Yes.

**FORM INTERROGATORY NO. 2.10**

Yes.

**FORM INTERROGATORY NO. 2.11:**

Not Applicable.

**FORM INTERROGATORY NO. 2.12:**

No.

**FORM INTERROGATORY NO. 2.13:**

No.

**FORM INTERROGATORY NO. 4.1:**

No.

**FORM INTERROGATORY NO. 4.2:**

No.

**FORM INTERROGATORY NO. 6.1:**

Yes.

**FORM INTERROGATORY NO. 6.2:**

Plaintiff's life has changed considerably since her husband's implant broke. She has since been her husband's full time caretaker, and has been under a considerable amount of stress since the injury. As Mrs. Elderly it has been difficult for her to care for her husband full time and she does not know how much longer she can physically do it. She also suffers from anxiety about what the future holds for Mr. Warner.

Plaintiff suffers from symptomatic degenerative arthritis in her joints and back and has had knee replacement surgery. The added element of being a full time caretaker for her husband has caused daily physical problems for plaintiff.

Also, plaintiff's personal and intimate life with her husband has been profoundly affected by the incident and her husband's ongoing medical problems.

FORM INTERROGATORY NO. 6.3:

Yes. The complaints as stated above remain the same.

FORM INTERROGATORY NO. 6.4:

No.

FORM INTERROGATORY NO. 6.5:

No.

FORM INTERROGATORY NO. 6.6:

No.

FORM INTERROGATORY NO. 6.7:

No.

FORM INTERROGATORY NO. 8.1:

No.

FORM INTERROGATORY NO. 9.1:

No.

FORM INTERROGATORY NO. 10.1:

No.

FORM INTERROGATORY NO. 11.1:

No.

FORM INTERROGATORY NO. 11.2:

No.

FORM INTERROGATORY NO. 12.1:

Plaintiffs, Dr. Penenberg and all other physicians who cared for plaintiff as stated above.

FORM INTERROGATORY NO. 12.2:

No.

FORM INTERROGATORY NO. 12.3:

No.

Exhibit E
Page 498

4

PLAINTIFF PATRICIA WARNER'S RESPONSES TO DEFENDANT WRIGHT MEDICAL GROUP, INC.'S FORM INTERROGATORIES, SET NO. 1

**FORM INTERROGATORY NO. 12.4:**

None other than Mr. Warner's diagnostic imaging studies.

**FORM INTERROGATORY NO. 12.5:**

No.

**FORM INTERROGATORY NO. 12.6:**

None other than those contained in Mr. Warner's relevant medical records.

**FORM INTERROGATORY NO. 12.7:**

Not applicable.

**FORM INTERROGATORY NO. 14.1:**

Not at this time. Discovery is continuing.

Dated: July 24, 2012

THE VARTAZARIAN LAW FIRM

Nareg Bardakjian, Esq.
Attorney for Plaintiff Alan Warner and Patricia Warner

Exhibit E
Page 499

5

PLAINTIFF PATRICIA WARNER'S RESPONSES TO DEFENDANT WRIGHT MEDICAL GROUP, INC.'S FORM INTERROGATORIES, SET NO. 1

**VERIFICATION**

I, PATRICIA WARNER, am a Plaintiff in the above cause of action. I have read the Form Interrogatories Set One, propounded to me by Defendant(s), Wright Medical, and my responses thereto.

I declare under penalty of perjury under the laws of the State of California that the foregoing responses are true and correct. Executed on July 24, 2012, in Hollywood, California.

Patricia Warner

Patricia Warner

Exhibit E
Page 500

**EXHIBIT 11**

Steven R. Vartazarian, Esq. (SBN 227635)
Nareg Bardakjian, Esq. (SBN 276240)
THE VARTAZARIAN LAW FIRM
15250 Ventura Blvd., Suite 505
Sherman Oaks, California 91403
Telephone: 818/990-9949
Telecopier: 818/990-6124

RECEIVED
JUL 30 2012
KIRBY NOONAN LANCE & HOGE LLP

**Attorneys for Plaintiff,**
ALAN WARNER and PATRICIA WARNER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

v.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, inclusive

Defendants.

CASE NO. BC 475958

*Assigned to the Hon. Charles F. Palmer, Department 33, for all purposes*

**PLAINTIFF PATRICIA WARNER'S RESPONSES TO DEFENDANT WRIGHT MEDICAL GROUP, INC.'S SPECIAL INTERROGATORIES, SET NO. 1**

PROPOUNDING PARTY: Defendant, WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY INC.

RESPONDING PARTY: Plaintiff, PATRICIA WARNER

SET NO.: ONE (1)

Plaintiff, PATRICIA WARNER, hereby responds to Defendant's Special Interrogatories, Set One as follows:

///

Exhibit E
Page 502

1

PLAINTIFF PATRICIA WARNER'S RESPONSES TO DEFENDANTS WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY'S SPECIAL INTERROGATORIES, SET NO. 1

///

PRELIMINARY STATEMENT

1. It is to be noted that this responding party has not fully completed investigation of the facts, discovery and preparation for the trial of this case AND AS SUCH DISCOVERY IN THIS MATTER IS ONGOING. The following responses are based only on such information and documents which are presently available to and specifically known to this responding party and discloses only those contentions presently known to the responding party. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, additional witnesses, add meaning to the known facts, as well as establish entirely new factual conclusions and legal contentions. This discovery, independent investigation, legal research and analysis may lead to additions, changes and/or variations from contentions set forth herein. This responding party assumes no obligation to voluntarily supplement or amend these responses to reflect witnesses, facts and evidence discovered following the filing of these responses

2. The following responses are given without prejudice to the responding party's right to produce any subsequently discovered evidence which this responding party may later recall. The responding party reserves the right to change any and all of the following responses as additional facts are ascertained, legal research is completed and analysis and contentions are made. The following responses are made in good faith to supply factual information and as much specification of legal contentions as are presently known, but shall in no way prejudice the responding party in relation to further discovery, research or analysis.

GENERAL OBJECTIONS

1. The objections below are incorporated into the responding party's responses, whether or not specific reference is made to such objection in the response to a particular interrogatory.

2. This responding party objects generally to each interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege.

3. This responding party objects generally to each interrogatory to the extent it seeks disclosure of information protected by the attorney-work product doctrine.

4. This responding party objects generally to each interrogatory to the extent it seeks "all," "each," and "any" information concerning various subjects or events, or pertaining to them "in any way," on the ground that such interrogatories are overbroad, unduly burdensome and oppressive, and if interpreted literally, impossible to answer.

5. The responding party objects generally to each production as vague and ambiguous to the extent it implies terms that this responding party cannot interpret while understood in the context of these requests or this litigation. Where possible, this responding party has made reasonable assumptions as to the propounding party's intended meaning and has responded accordingly, while preserving the objection as to vagueness and ambiguity.

6. Without waiving said objections, responding party responds as follows:

**SPECIAL INTERROGATORY NO. 1:**

The femoral component of plaintiff's husband's hip prosthesis system manufactured and distributed by defendants fractured at its neck while it was being used as expected.

**SPECIAL INTERROGATORY NO. 2:**

Plaintiffs, Defendants and Mr. Warner's treaters.

**SPECIAL INTERROGATORY NO. 3:**

None other than the medical records reflecting Mr. Warner's injury. Discovery is continuing.

**SPECIAL INTERROGATORY NO. 4:**

Plaintiffs have been married since 1979.

**SPECIAL INTERROGATORY NO. 5:**

Plaintiffs do not have any children.

**SPECIAL INTERROGATORY NO. 6:**

Prior to the injury, Mr. Warner carried out the regular duties of a husband and the man around the house. As of the time of the injury in October of 2010, Mr. Warner has been essentially incapacitated as a result of several surgical procedures and complications experienced therefrom, which he underwent in an effort to treat the subject injury.

///

Exhibit E
Page 504

3

PLAINTIFF PATRICIA WARNER'S RESPONSES TO DEFENDANTS WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY'S SPECIAL INTERROGATORIES, SET NO. 1

///

///

**SPECIAL INTERROGATORY NO. 7:**

Plaintiff is seeking $250,000 in loss of consortium damages as set forth in CACI 3920.

Dated: July 24, 2012

THE VARTAZARIAN LAW FIRM

Nareg Bardakjian, Esq.
Attorneys for Plaintiff, Patricia Warner and Allen Warner

Exhibit E
Page 505

4

PLAINTIFF PATRICIA WARNER'S RESPONSES TO DEFENDANTS WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY'S SPECIAL INTERROGATORIES, SET NO. 1

**VERIFICATION**

I, PATRICIA WARNER, am a Plaintiff in the above cause of action. I have read the Special Interrogatories, Set one, propounded to me by Defendant(s), Wright Medical, and my responses thereto.

I declare under penalty of perjury under the laws of the State of California that the foregoing responses are true and correct. Executed on July 24, 2012, in Hollywood, California.

Patricia Warner

Patricia Warner

**EXHIBIT 12**

Kirby Noonan Lance & Hoge LLP

ATTORNEYS AT LAW

350 Tenth Avenue, Suite 1300, San Diego, California 92101-8700
Telephone (619) 231-8666 Facsimile (619) 231-9593 www.knlh.com

MICAELA P. BANACH
Partner
Writer's E-Mail: mbanach@knlh.com

August 6, 2012

*VIA FAX AND U.S. MAIL*

Steven R. Vartazarian
THE VARTAZARIAN LAW FIRM, APC
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA 91403

Re: ***Warner v. Penenberg, et al.***

Dear Mr. Vartazarian:

The purpose of this letter is to meet and confer with you regarding your clients' discovery responses. As you know, the discovery was propounded to your office on March 26, 2012. Your clients failed to respond at all. After a meet and confer effort, I agreed not to file a motion to compel because I was assured that substantive responses were forthcoming. Despite this agreement, and having over four months to respond, your clients have provided utterly deficient responses. Please provide supplemental responses to the following requests no later than August 20, 2012 or we will file a motion to compel.

**Form Interrogatories to Alan Warner**

**Form Interrogatory No. 2.6** asks your client to state the name, address and telephone number of his employer, the nature of the work and job title for the last five years. His response simply states, "Plaintiff is self employed as a." This incomplete response appears to be in error, so please provide the complete response.

**Form Interrogatory No 6.3** asks your client to set forth any complaints that he still has which are attributable to the incident. He simply responded that he continues to recover and has exhaustion and weakness. What does it mean that he "continues to recover"? This does not answer the description of his complaints, whether the complaints are subsiding, remaining the same or becoming worse, or the frequency and duration.

**Form Interrogatory No. 6.4** asks your client to identify information for each health care provider from which he has sought treatment related to the incident. Your client identifies Physical Therapy Specialists and Dr. William Long. This list appears incomplete, as we know

that your client treated with various physicians at Cedars-Sanai Medical Center, and his response to No. 10.3 also identifies a Dr. Witlin and a Dr. Patel. Therefore, please provide a complete response.

**Form Interrogatory No. 6.5** asks your client to identify any medications he has taken as a result of the incident. His response references medications he took in January 2012 as a result of complications. There is no response regarding medications taken following the incident in October of 2010. Please provide a complete response.

**Form Interrogatory No. 6.6** asks your client to identify any other medical services necessitated by the injuries that he attributes to the incident, including the nature, date, cost and the name/address/telephone number of each provider. He responded that he has incurred "various expensive RX not covered by insurance." Please provide the detailed information sought by this interrogatory, as that response does not provide any actual information that Wright Medical can evaluate.

**Form Interrogatory No. 8.3** asks your client to state the last date that he worked before the incident. His response does not answer the question, but rather states that he has been unable to pursue additional work since October of 2010. Please state the last date that he worked for compensation.

**Form Interrogatory No. 8.4** asks Mr. Warner to state his monthly income at the time of the incident and how it was calculated. His response is that he "received a minimum of $3,750 for the 2 monthly creative bulletins and if plaintiff prepared presentation videos he would receive an additional $15,000 per video." While I appreciate what he could have made, this interrogatory asks what he actually made on a monthly basis at the time of the incident.

**Form Interrogatory No. 8.7** asks your client to state the total income he has lost to date and how that amount was calculated. Despite having four months to prepare this response, none was given. Please provide a response, which can certainly be amended later. But Wright Medical needs to know what the current amount of his lost income claim is.

**Form Interrogatory No. 9.1** asks Mr. Warner for the details for all other damages he attributes to the incident, including the nature, date, amount and to whom an obligation was incurred. He responded that he has incurred damages for non-emergency transportation, prescriptions and retrofitting of his home. Please state the date and amount of these costs incurred.

**Form Interrogatory No. 9.2** asks for the identity of any documents supporting the damages described in No. 9.1. Mr. Warner references copies of all bills paid but does not state

whether he still has copies of the bills which can be produced. These documents were requested in Wright Medical's Request for Production No. 2, but nothing of this nature was produced. Please amend the response and produce the documents.

**Form Interrogatory No. 10.1** asks your client to state the name/address/telephone number of all health care providers with whom he treated for complaints or injuries involving his left hip. That information was not provided.

**Form Interrogatory No. 10.3** asks for the name/address/telephone number of any health care provider with whom Mr. Warner treated after the incident. Please provide that information for Dr. Witlin and Dr. Patel.

**Special Interrogatories to Alan Warner**

**Special Interrogatory Nos. 1 and 2** ask Mr. Warner to state each fact upon which he relies to support his contention that there was a manufacturing and design defect in the hip prosthesis system at issue. His response is simply that the neck fractured. Is that the only fact upon which your client intends to rely at trial? As you know, simply because the implant allegedly broke does not mean that it contained a manufacturing or design defect. This response is grossly inadequate, but if that is the only fact upon which you intend to rely, please simply confirm that.

**Special Interrogatory No. 3** asks your client to specify each fact upon which he relies to support his contention that Wright Medical failed to warn him of the potential risk of fracture. His response merely repeats that "there is a lack of warning." How was there a lack of warning? What were the warnings? What specifically did Wright Medical fail to warn your client about? This response offers absolutely no facts to support this cause of action.

**Special Interrogatory Nos. 5, 7, 11, 14** asks Mr. Warner to identify all individuals with knowledge of the facts supporting his claims. He simply identifies his "treaters." Please provide the name, address and telephone numbers of the specific treaters with knowledge of these facts. As you know, not every single person who has treated Mr. Warner over the past few years has knowledge about a defect in this specific implant. Please provide a response.

**Special Interrogatory No. 12** asks your client to set forth all facts upon which he relies to support his contention that Wright Medical committed a breach of warranty. Again, his response is simply that the hip prosthesis fractured. How did this breach a warranty to your client? Please provide the factual support for this cause of action.

**Special Interrogatory No. 15** asks for the identity of all health care practitioners who have treated Mr. Warner over the last ten years. He identifies his "various treating physicians at Cedar's Sinai" but without setting forth their identity, I have no idea who those individuals are. Please provide a full and complete response.

**Special Interrogatory No. 17** asks your client to describe any injury or illness over the past ten years that have required medical care. He fails to mention the hemiarthroplasty he underwent in January of 2006. Therefore, this response is incomplete and inadequate. Please provide an appropriate response.

**Special Interrogatory No. 22** asks Mr. Warner to identify his salary or average weekly wage earned for the last ten years. His response is that he received a minimum $3,750. Is that for every month for the last ten years? He went part time in 2007 and so this response does not appear accurate. He also responded that he could receive an additional $15,000 if he prepared presentation videos. How often did he receive the $15,000? Every month for the last ten years? More information is needed. Wright Medical cannot properly evaluate your client's lost income claim with such limited information.

**Special Interrogatory No. 25** asks for information about other income Mr. Warner has received over the last ten years. He responded that he receives social security. Please provide the amounts of that income received so that a proper evaluation of his lost income claim can be made.

**Special Interrogatory No. 27** asks Mr. Warner to describe any falls or other trauma he has experienced. His response is "not applicable" but that is a false response. His medical records indicate that he experienced a fall in July of 2006, There may be others as well, so please respond.

**Special Interrogatory No. 28** asks for the identity of all medications taken in the past ten years, including the reasons for the medication, the dosage and the health care practitioner who prescribed the medication. Mr. Warner responded that he has "been on numerous pain medications and antibiotics." This is an incomplete and insufficient response. It tells Wright Medical nothing about what medications he has taken. Please provide the information requested.

**Special Interrogatory No. 30** asks Mr. Warner to itemize all damages he is claiming in this matter. He stated only "non-economic and economic damages for out of pocket medical expenses and lost wages." I can glean that from reading the complaint. Please itemize the nature and amount of each damages item being sought in this litigation.

**Special Interrogatory No. 31** asks for the identity of all witnesses who will testify on Mr. Warner's behalf. He responds about his "treaters and experts." I don't need to know the identity of expert witnesses yet, but which treaters will Mr. Warner rely on? Wright Medical needs to evaluate the claim and know the identity of individuals to depose in this case.

**Special Interrogatory No. 32** asks your client to identify each document that supports his damages. He refers to "medical records, medical bills and evidence of plaintiff's lost wages." Again, this response tells me nothing. What specific documents support the damages? Does he have a breakdown of medical expenses? Does he have W2 forms or other documents which support his damages? Please provide a substantive response.

**Special Interrogatory No. 33** asks for the identity of any lienholder and the amount of any lien. Mr. Warner identifies Medicare but not the amount of the lien.

**Requests for Production of Documents to Alan Warner**

As noted above, Wright Medical has asked for copies of all documents identified in Mr. Warner's form and special interrogatory responses. Also requested were income tax forms for the past seven years, documents supporting his lost income claim, documents relating to any liens on recovery, and invoices/receipts/etc supporting damages items. Not a single document was produced. Please produce the responsive documents immediately or a motion to compel will be filed.

**Form Interrogatories to Patricia Warner**

**Form Interrogatory No. 2.6** asks Mrs. Warner to state the name, address and telephone number of her employer, the nature of the work and job title for the last five years. Her response simply states that she is not making a claim for lost income. That was not the question. Her employment information is relevant to her husband's damages claims and discoverable. Please respond.

**Form Interrogatory No. 2.7** asks Mrs. Warner to state the dates, highest grade completed, and degrees received from all schools. Her response states that she attended Luke Callaghan School in Canada. What was her highest grade completed? Has she obtained any degrees?

**Special Interrogatories to Patricia Warner**

**Special Interrogatory No. 1** asks Mrs. Warner to set forth all facts upon which she relies to support her loss of consortium claim. She responded that the femoral head of her husband's

hip prosthesis fractured. What other facts support the actual loss of consortium? This would include facts supporting the loss of companionship, care, assistance, affection, etc. that she has allegedly suffered. Wright Medical cannot evaluate her claim without the factual support.

**Special Interrogatory No. 6** asks Mrs. Warner to specify the work, services and society usually performed by Mr. Warner that she contends he is no longer able to do or contribute to. Her generic response states that he "carried out the regular duties of a husband and a man around the house." Like what? This response asks her to describe those duties so that a proper evaluation of her claim can be made. Please provide a substantive response.

Please provide full, complete and objection-free responses no later than August 20, 2012 so that we can avoid the motion to compel process.

Very truly yours,

MBanach

Micaela P. Banach
of
Kirby Noonan Lance & Hoge LLP

MPS/lt

**EXHIBIT 13**



A Professional Corporation
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA. 91403
Telephone (818) 990-9949
Facsimile (818) 990-6124

April 30, 2012

**SENT VIA FACSIMILE ONLY (619) 231-9593**

Micaela P. Banach
Kirby Noonan Lance & Hoge LLP.
350 Tenth Ave., Suite 1300
San Diego, CA. 92101

**Re: Warner v. Wright Medical Group**

Dear Ms. Banach,

Pursuant to our last conversation of today, this will confirm that you graciously granted our office an extension within which to respond to the discovery propounded by your office. The responses are now due May 30, 2012.

Thank you for your professional courtesy.

Very truly yours,

Collette Vartazarian

CV:ds

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**PROOF OF SERVICE**

DATE: January 7, 2013
TIME: 8:30 a.m.
DEPT: 33
TRIAL DATE: May 6, 2013
JUDGE: Charles F. Palmer

***Warner v. Wright Medical, et al.***
LASC Case No. BC475958

I, the undersigned, declare: That I am, and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to the action; and I am employed in the County of San Diego, California. My business address is 350 Tenth Avenue, Suite 1300, San Diego, California 92101-8700.

On August 30, 2012, at San Diego, California, I served the following document(s) described as

**1. WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS**

**2. WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS**

**3. WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS**

**4. DECLARATION OF MICAELA P. BANACH IN SUPPORT OF WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS**

**5. [PROPOSED] ORDER GRANTING WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS**

on the parties in said action by placing a true copy thereof in a separate sealed envelope for each addressee named hereafter, addressed to each such addressee respectively as stated on the attached service list, which reflects the address last given by each such addressee on any document filed in the action and served on this office.

**SEE ATTACHED SERVICE LIST**

☒ **BY MAIL:** I am readily familiar with our business practice for collecting, processing and mailing correspondence and pleadings with the United States Postal Service. Such correspondence and pleadings are deposited with the United States Postal Service on the same day that they are placed for mailing in the ordinary course of business. I

sealed each envelope and, with the postage thereon fully prepaid, placed it for mailing in accord with our business' practice. (C.C.P. § 1013(a) and (b))

☒ **STATE COURT:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 30, 2012, at San Diego, California.

Lorri A. Taylor

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**SERVICE LIST**
***Warner v. Penenberg, et al.***
**Los Angeles Superior Court Case No. BC475958**

| | |
|---|---|
| Steven R. Vartazarian (227635)<br>THE VARTAZARIAN LAW FIRM, APC<br>15250 Ventura Blvd., Suite 505<br>Sherman Oaks, CA 91403<br>Ph: 818-990-9949<br>Fx: 818-990-6124 | Attorneys for Plaintiff ALAN WARNER and PATRICIA WARNER |
| Michael A. Zuk (83102)<br>mzuk@hrllp-law.com<br>Suhasini S. Sawkar (129111)<br>ssawkar@hrllp-law.com<br>HERZFELD & RUBIN LLP<br>1925 Century Park East, Suite 900<br>Los Angeles, CA 90067-2783<br>Ph: 310-553-0451<br>Fax: 310-553-0648 | Attorneys for Defendant BRAD L. PENENBERG, M.D. |

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 518



BY FAX

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

AUG 30 2012

John A. Clarke, Executive Officer/Clerk
By ________________, Deputy
Gina Grider

Michael L. Kirby (50895)
mkirby@knlh.com
Micaela P. Banach (226656)
mbanach@knlh.com
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

vs.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, DOES 1 through 100, inclusive,

Defendants.

Case No. BC 475958

**WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS**

Judge: Hon. Charles F. Palmer
Dept.: 33

DATE: January 7, 2013
TIME: 8:30 a.m.
DEPT: 33

TRIAL: May 6, 2013

Defendants WRIGHT MEDICAL GROUP, INC. and WRIGHT MEDICAL TECHNOLOGY, INC. (collectively "Defendants") submit the following Separate Statement of Discovery Requests and Responses in Dispute, in support of their Motion to Compel further discovery responses and documents from Plaintiffs ALAN WARNER and PATRICIA WARNER (collectively "Plaintiffs"), and corresponding request for sanctions. For the reasons discussed below, Plaintiffs should be (1) compelled to provide supplemental responses to the interrogatories

KNLH\1007520.1

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E

Page 519

and requests in dispute; and (2) sanctioned for failing to comply with the applicable discovery rules, thereby forcing Defendants to bring the instant motion.

**PLAINTIFF ALAN WARNER AND RESPONSES IN DISPUTE**

**FORM INTERROGATORIES (SET ONE):**

**FORM INTERROGATORY NO. 2.6:**

State:

(a) the name, **ADDRESS**, and telephone number of your present employer or place of self-employment; and

(b) the name, **ADDRESS**, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

**RESPONSE TO FORM INTERROGATORY NO. 2.6:**

Plaintiff is self employed as a

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 2.6 SHOULD BE COMPELLED:**

This response is incomplete and appears to be in error. Plaintiff's response to this interrogatory is essential to the discovery process as it directly relates to his claimed damages for lost wages.

**FORM INTERROGATORY NO. 6.3:**

Do you still have any complaints that you attribute to the **INCIDENT**? If so, for each complaint state:

(a) a description;

(b) whether the complaint is subsiding, remaining the same, or becoming worse; and

(c) the frequency and duration.

**RESPONSE TO FORM INTERROGATORY NO. 6.3:**

Yes. Plaintiff continues to recover from the surgeries as stated above. Plaintiff also continues to suffer from extreme exhaustion and physical weakness.

Exhibit E
Page 520

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 6.3 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's complaints in connection with his alleged injuries from this incident. The provided response fails to provide sufficient information in response to this request. This response fails to state the specific description of his claimed continuing injuries, the nature of that condition, and the frequency and duration, as is specifically requested by this interrogatory.

Plaintiff is claiming damages for injuries he claims are related to the use of Defendants' product. No medical information or documentation has been provided to date. It is not Defendants' duty to obtain this information through other means; instead, it is Plaintiff's obligation to respond completely and sufficiently to the interrogatories asked. Plaintiff's response to this interrogatory is essential to the discovery process as it relates to his alleged injuries and damages.

**FORM INTERROGATORY NO. 6.4:**

Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure section 2034.210-2034.310) or treatment from a **HEALTH CARE PROVIDER** for any injury you attribute to the **INCIDENT**? If so, for each **HEALTH CARE PROVIDER** state:

(a) the name, **ADDRESS**, and telephone number;

(b) the type of consultation, examination, or treatment provided;

(c) the dates you received consultation, examination, or treatment; and

(d) the charges to date.

**RESPONSE TO FORM INTERROGATORY NO. 6.4:**

Consultation or examination or treatment. Examined by Dr. Penenberg and his surgical assistant Michelle Riley on a regular basis.

Physical Therapy on a twice-weekly basis with:

PHYSICAL THERAPY SPECIALISTS 200 N. Robertson Blvd., Suite 301, Beverly Hills, CA 90211.

Tel: 310.273.8256

Yoga strengthening at home with licensed yoga therapist. Personal pilates visits at the P.T. Specialists office.

Home health care, including nursing visits. New charges are ongoing due to recent infection.

Dr. William Long, Orthopedic Surgeon
Dorr Arthritis Institute
637 S. Lucas, Ground Floor
Los Angeles, CA 90017

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 6.4 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding the medical treatment Plaintiff received in connection with his alleged injuries. The response fails to provide sufficient information in response to this request and appears incomplete. This response fails to state the specific type of treatment provided, the dates treatment was received *and* the specific charges incurred in relation to each medical provider, as specifically requested by this interrogatory.

Plaintiff is claiming damages for injuries he claims are related to the use of Defendants' product. No medical information or documentation has been provided to date. The response does not provide the requisite information for his "home health care." Additionally, the list appears incomplete, as Plaintiff's later responses identify additional providers and physicians at Cedars-Sinai Medical Center which are not included in this response. It is not Defendants' duty to obtain this information through other means; instead, it is Plaintiff's obligation to respond completely and sufficiently to the interrogatories asked. Plaintiff's response to this interrogatory is essential to the discovery process as it relates to his alleged injuries and damages.

**FORM INTERROGATORY NO. 6.5:**

Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the **INCIDENT**? If so, for each medication state:

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 522

KNLH\1007520.1

-4-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

(a) the name;

(b) the **PERSON** who prescribed or furnished it;

(c) the date it was prescribed or furnished;

(d) the dates you began and stopped taking it; and

(e) the cost to date.

**RESPONSE TO FORM INTERROGATORY NO. 6.5:**

For the complications that occurred in January, 2012, plaintiff took Vancomycin and Cefepime for 6 weeks by pumps, along with Cath Flo Activase on 3 occasions at home and once at the Cedars Procedure Center.

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 6.5 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding any medication Plaintiff has taken in connection with his alleged injuries. The response fails to provide sufficient information in response to this request. This response fails to state the specific person prescribing the medication, the date it was furnished, *and* the specific costs incurred to date for those medications, as specifically requested by this interrogatory. It also lists only medications taken in January 2012 as a result of complications; there is no response regarding medications taken following the incident in October of 2010.

Plaintiff is claiming damages for injuries he claims are related to the use of Defendants' product. No medical information or documentation has been provided to date. It is not Defendants' duty to obtain this information through other means; instead, it is Plaintiff's obligation to respond completely and sufficiently to the interrogatories asked. Plaintiff's response to this interrogatory is essential to the discovery process as it relates to his alleged injuries and damages.

**FORM INTERROGATORY NO. 6.6:**

Are there any other medical services necessitated by the injuries that you attribute to the **INCIDENT** that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 523

KNLH\1007520.1

-5-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

(a) the nature;

(b) the date;

(c) the cost; and

(d) the name, **ADDRESS**, and telephone number of each provider.

**RESPONSE TO FORM INTERROGATORY NO. 6.6:**

PENTA STAR DBA Eagle Wings Non-Emergency Medical Transportation

204 E. Chevy Chase Drive, #5, Glendale, CA 91205

Tel: 818 550.8150 Fax. 818.550.8160

Plus various expensive RX not covered by insurance

Plaintiff's out of pocket expenses are approximately $6,992.24. Discovery is continuing.

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 6.6 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding other medical services necessitated by the alleged injuries. This response fails to provide sufficient information in response to this request. In addition, for any claimed medical service, Plaintiff must include the cost and contact information for the claimed provider.

This response does not provide any detailed information sought by this interrogatory; there is no actual information for Defendants to evaluate. Plaintiff's response that he will need "various expensive RX not covered by insurance" is an evasive and deficient response. It fails to identify what prescriptions he has needed, who prescribed them, when and the costs of each. No medical information or documentation has been provided to date. It is not Defendants' duty to obtain this information through other means; instead, it is Plaintiff's obligation to respond completely and sufficiently to the interrogatories asked. Plaintiff's response to this interrogatory is essential to the discovery process as it relates to his alleged injuries and damages.

**FORM INTERROGATORY NO. 8.3:**

State the last date before the **INCIDENT** that you worked for compensation.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 524

KNLH\1007520.1

-6-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

**RESPONSE TO FORM INTERROGATORY NO. 8.3:**

Because of the 100 days of surgery, hip replacements, dislocation, etc. from Oct, 2010 to February 2011, and the present and unexpected hip infection in January 2012, plaintiff has been unable to pursue additional work due to constant exhaustion, hospitalization and recuperation.

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 8.3 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's last date that he worked before the incident. This response fails to provide sufficient information in response to this request. His response does not answer the question, but rather states that he has been unable to pursue additional work since October of 2010. When was the last day he worked for compensation? This response does not provide sufficient information to evaluate Plaintiff's claim for lost wages/employment. This is unresponsive.

**FORM INTERROGATORY NO. 8.4:**

State your monthly income at the time of the **INCIDENT** and how the amount was calculated.

**RESPONSE TO FORM INTERROGATORY NO. 8.4:**

Plaintiff received a minimum of $3,750 monthly for the 2 monthly creative bulletins and if plaintiff prepared presentation videos he would receive an additional $15,000, per video.

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 8.4 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's actual amount of compensation received at the time of the incident. It does not ask for contemplated income. This response fails to provide sufficient information in response to this request. His response does not answer the question, but rather provides information that is highly speculative.

This response does not provide sufficient information to evaluate Plaintiff's claim for lost wages/employment. Additionally, Plaintiff does not provide any calculation for his damages claimed. This is unresponsive.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**FORM INTERROGATORY NO. 8.7:**

State the total income you have lost to date as a result of the **INCIDENT** and how the amount was calculated.

**RESPONSE TO FORM INTERROGATORY NO. 8.7:**

Plaintiff is in the course of calculating this figure.

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 8.7 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's total income he claims to have lost as a result of the incident. This response fails to provide sufficient information in response to this request. His response does not answer the question.

Despite having four (4) months to prepare this response, none was given. Also, considering the incident occurred several years ago, this information should be readily available to Plaintiff at this time. This response does not provide sufficient information to evaluate Plaintiff's claim for lost wages/employment. Additionally, Plaintiff does not provide any calculation for damages claimed. This is unresponsive and incomplete.

**FORM INTERROGATORY NO. 9.1:**

Are there any other damages that you attribute to the **INCIDENT**? If so, for each item of damage state:

(a) the nature;

(b) the date it occurred;

(c) the amount; and

(d) the name, **ADDRESS**, and telephone number of each **PERSON** to whom an obligation was incurred.

**RESPONSE TO FORM INTERROGATORY NO. 9.1:**

Yes. Non emergency transportation, prescriptions not covered by insurance, and retrofitting of plaintiff's home in order to make it easier to get in and out of his home.

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 9.1 SHOULD BE COMPELLED:**

This interrogatory seeks to determine if there are any other damages you attribute to the incident. The response indicates that Plaintiff attributes three (3) additional items of damages to the incident. However, Plaintiff fails to complete the response by including more specific information as to the date it occurred, the amount, and to whom an obligation was incurred. Plaintiff's response to this interrogatory is essential to the discovery process as it relates to his alleged injuries and damages. Defendants cannot evaluate Plaintiffs' claims or properly prepare for trial with such a deficient response.

**FORM INTERROGATORY NO. 9.2:**

Do any **DOCUMENTS** support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

**RESPONSE TO FORM INTERROGATORY NO. 9.2:**

Yes, copies of all bills paid.

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 9.2 SHOULD BE COMPELLED:**

Plaintiffs response refers to "copies of all bills paid"; however, much to our disappointment, no bills (paid or unpaid) pertaining to this incident or the Plaintiff's alleged injuries or damages have been provided. Plaintiff's response to this interrogatory is essential to the discovery process as it relates to his alleged injuries and damages. And despite having four (4) months to prepare this response, no description of these documents were specifically given. Also, considering the incident occurred several years ago, this information should be readily available to Plaintiff at this time.

**FORM INTERROGATORY NO. 10.1:**

At any time before the **INCIDENT** did you have complaints or injuries that involved the same part of your body claimed to have been injured in the **INCIDENT**? If so, for each state:

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

KNLH\1007520.1

-9-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLO( STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN : COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRE: SANCTIONS

Exhibit E

Page 527

(a) a description of the complaint or injury;

(b) the dates it began and ended; and

(c) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER** whom you consulted or who examined or treated you.

**RESPONSE TO FORM INTERROGATORY NO. 10.1:**

Yes. On January 22, 2007, plaintiff underwent hip replacement surgery on his left hip. In November of 2007, and because of complications with his hip, Plaintiff underwent revision surgery on his left hip.

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 10.1 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding any Plaintiff complaints or injuries pre-dating the incident that involve the same part of the body claimed injured in this incident. The response fails to provide sufficient information in response to this request. This response fails to state the specific descriptions of the complaint or injury, the dates it began and ended and the contact information of each provider who treated Plaintiff for that injury, as specifically requested by this interrogatory.

Plaintiff is claiming damages for injuries he claims are related to the use of Defendants' product. No medical information or documentation has been provided to date. It is not Defendants' duty to obtain this information through other means; instead, it is Plaintiff's obligation to respond completely and sufficiently to the interrogatories asked. Plaintiff's response to this interrogatory is essential to the discovery process as it relates to his alleged injuries and damages.

**FORM INTERROGATORY NO. 10.3:**

At any time after the **INCIDENT**, did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:

(a) the date and the place it occurred;

(b) the name, **ADDRESS**, and telephone number of any other **PERSON** involved;

(c) the nature of any injuries you sustained;

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

(d) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER** who you consulted or who examined or treated you; and

(e) the nature of the treatment and its duration.

**RESPONSE TO FORM INTERROGATORY NO. 10.3:**

Yes. On October 27, 2010, plaintiff experienced extraordinary pain while he was walking from one room to the other while at home. The paramedics were called and plaintiff was taken to Cedar's Sinai emergency room where xrays (sic) indicated that the femoral component of his implant had broken at the neck. Plaintiff then had a four hour reparative surgery, which involved breaking his femur in several places in order oto (sic) removes the broken femoral implant. (sic) femur in two places. Plaintiff was hospitalized for 10 days and then discharged home. Plaintiff then began physical therapy in February fo (sic) 2011.

On February 1 and 2, 2011, plaintiff again experienced severe pain. He was taken to Cedars Sinai's emergency room where an X-ray revealed that his left hip had dislocated. The E.R. doctors tried twice to relocate the hip without success. Late in the day on Wednesday, Dr. Allawallea, an associate of Dr. Penenberg, took plaintiff to surgery to try and relocate the hip. Plaintiff's hip was relocated but felt to be unstable.

On Thursday, February 3, plaintiff's left hip dislocated again, with a noticeable difference in the leg lengths of about 2 inches. An X-ray revealed that the femoral implant was subsiding, and therefore on February 7, 2011, Dr. Penenberg replaced the existing hip with a much larger ball. Plaintiff was then ordered to not bear weight on his left leg for 6 to 12 weeks.

On February 14, 2011, while in the bathroom, I reached for my walker and fell. I was checked out at E.R. and told that there were severe contusions on the pelvis but no problem with the new implant.

In March of 2011, plaintiff resumed with physical therapy. Toward the end of December, plaintiff developed a high temperature, and accelerating pain in his left hip. He was seen by his primary physician and on January 18, 2012, Dr. Witlin confirmed that plaintiff had a high temperature and a high white cell count which had elevated from 7,500 to 18,600. Plaintiff was

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

KNLH\1007520.1

-11-

Exhibit E
Page 529

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

then immediately sent to the emergency room, at which time plaintiff was not experiencing excruciating pain in his hip with a large lump forming on his surgical scar.

Dr. Rajan Patel, operated on plaintiff on January 21, 2012 to clear out a large infection. Plaintiff returned home on January 25, with a PICC line in to receive antibiotics and spent the next six weeks taking Vancomyacin and Cefepime on a 24/7 basis.

The PICC line was removed on March 7, 2012. However, plaintiff's wound was not close and continued to discharge. Plaintiff saw Dr. William Long for a second opinion. The wound finally stopped producing discharge the week of May 7, 2012. Plaintiff is continues (sic) to be observed by Dr. Long for recurrence of the infection. Plaintiff's wife also checks the wound daily.

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 10.3 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding any Plaintiff complaints or injuries post-dating the incident that involve the same part of the body claimed injured in this incident. The response fails to provide sufficient information in response to this request. This response fails to state the specific contact information of each provider whom is identified or treated Plaintiff after the incident, as is specifically requested by this interrogatory.

Plaintiff is claiming damages for injuries he claims are related to the use of Defendants' product. No medical information or documentation has been provided to date. It is not Defendants' duty to obtain this information through other means; instead, it is Plaintiff's obligation to respond completely and sufficiently to the interrogatories asked. Plaintiff's response to this interrogatory is essential to the discovery process as it relates to his alleged injuries and damages.

**PLAINTIFF ALAN WARNER AND RESPONSES IN DISPUTE**

**SPECIAL INTERROGATORIES (SET ONE):**

**SPECIAL INTERROGATORY NO. 1:**

Describe with specificity each fact upon which you rely to support your contention that there was a manufacturing defect in the Hip Prosthesis System. (For purposes of these Interrogatories, the term "you" refers to Plaintiff Alan Warner, and all agents, representatives,

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

KNLH\1007520.1 -12-
WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SU COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS
Exhibit E
Page 530

attorneys, experts and all other persons acting or purporting to act on his behalf. For purposes of these Interrogatories, the term "Hip Prosthesis System" refers to the Wright Medical prosthesis system that was placed in Plaintiff's left hip on or about 11/27/07 and which is allegedly at issue in this matter. For purposes of these Interrogatories, the term "describe" means that you are to give all the facts necessary to explain your contention and to enable Wright Medical to determine whether such contention is true.)

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

The femoral component of the hip prosthesis system manufactured and distributed by defendants fractured at its neck while it was being used as expected.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 1 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's primary claim against Defendants. Plaintiff alleges that Defendants' hip prosthesis system or product contains a manufacturing defect. However, when asked for specific facts upon which he relies in making this claim, he refuses to provide any such details. The alleged breaking or fracturing of the product does not necessarily mean that it contains a manufacturing or design defect; thusly, Plaintiff's response is grossly inadequate. This answer is incomplete, as it fails to provide any information regarding Plaintiff's specific allegations. How and where did the neck fracture? What aspect of the implant made it defective in its manufacturing? Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories so that they may evaluate and defend against claims alleged against them. His response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit. Defendants cannot adequately conduct discovery, retain experts or prepare for trial with such a deficient response. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

///

///

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**SPECIAL INTERROGATORY NO. 2:**

Describe with specificity each fact upon which you rely to support your contention that there was a design defect in the Hip Prosthesis System.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

The femoral component of the hip prosthesis system manufactured and distributed by defendants fractured at its neck while it was being used as expected.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 2 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's primary claim against Defendants. Plaintiff alleges that Defendants' hip prosthesis system or product contains a design defect. However, when asked for specific facts upon which he relies in making this claim, he refuses to provide any such details. The alleged breaking or fracturing of the product does not necessarily mean that it contains a manufacturing or design defect; thusly, Plaintiff's response is grossly inadequate. Plaintiff fails to identify which design is defective for which component part of his implant and how the design is allegedly defective. This answer is incomplete, as it fails to provide any information regarding Plaintiff's specific allegations. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories that they may evaluate and defend against claims alleged against them. His response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit. Defendants cannot adequately conduct an investigation, retain experts, and prepare for trial without knowing the basis for the alleged design defect. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

**SPECIAL INTERROGATORY NO. 3:**

Describe with specificity each fact upon which you rely to support your contention that Wright Medical failed to warn you of the Hip Prosthesis System's alleged potential risk of fracturing.

Exhibit E
Page 532

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

There is a lack of warning by Wright Medical that the hip prosthesis system carries with it a risk of fracture of the femoral component when being used as expected by the physician and the consumer.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 3 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's primary claim against Defendants. Plaintiff alleges that Defendants failed to warn him of the potential risk of fracture of the hip prosthesis system. However, when asked for specific facts upon which he relies in making this claim, he refuses to provide any such details. His response merely repeats that "there is a lack of warning" but provides nothing further. There are no details about the claimed "lack of warning," such as what were the warnings, what specifically did Defendants fail to warn about, or any details about this alleged failure. This is a mere recitation of his allegations in the complaint. This responses offers absolutely no facts to support this cause of action. This answer is incomplete, as it fails to provide any information regarding Plaintiff's specific allegations. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories that they may evaluate and defend against claims alleged against them. His response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit. Defendants cannot adequately conduct discovery, retain experts or prepare for trial without knowing which risks Plaintiff contends had inadequate warnings and the basis for this contention. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

**SPECIAL INTERROGATORY NO. 5:**

Identify each person which you believe has knowledge of the facts supporting your contention that there was a defect in the design or manufacture of the Hip Prosthesis System. (For purposes of these Interrogatories, the term "identify" with regard to a person means to state the

Exhibit E
Page 533

KNLH\1007520.1

-15-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

person's name, home or business address, home or business telephone number and business position.)

**RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

Plaintiffs, Plaintiff Alan Warner's treaters, and Defendants.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 5 SHOULD BE COMPELLED:**

This interrogatory asks Plaintiff to identify all individuals with knowledge of the facts supporting his claims against Defendants. Plaintiff 's response merely identifies his "treaters;" this is overbroad and fails to identify and provide the necessary contact information of said "treaters." This response does not discern between Plaintiff's "treaters" with or without knowledge of alleged defects with the specific implant; and as such, this answer is grossly incomplete. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories that they may evaluate and defend against claims alleged against them. Defendants should not be forced to depose every single one of Plaintiff's physicians to determine who has knowledge of these claims. His response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

**SPECIAL INTERROGATORY NO. 7:**

Identify each person which you believe has knowledge of the facts supporting your contention that Wright Medical failed to warn you of the Hip Prosthesis System's alleged potential risk of fracturing.

**RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

Plaintiffs, Plaintiff Alan Warner's treaters, and Defendants.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 7 SHOULD BE COMPELLED:**

This interrogatory asks Plaintiff to identify all individuals with knowledge of the facts supporting his claims against Defendants. Plaintiff 's response merely identifies his "treaters;" this

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

KNLH\1007520.1 -16-
WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SU[illegible] COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPO[illegible] SANCTIONS
Exhibit E
Page 534

is overbroad and fails to identify and provide the necessary contact information of said "treaters." This response does not discern between Plaintiff's "treaters" with or without knowledge of Defendants' alleged failure to warn against defects associated with the specific implant; and as such, this answer is grossly incomplete. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories that they may evaluate and defend against claims alleged against them. Defendants should not be forced to depose every single one of Plaintiff's physicians to determine who has knowledge of these claims. His response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**SPECIAL INTERROGATORY NO. 11:**

Identify each person which you believe has knowledge of the facts supporting your claim for negligence.

**RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

Plaintiffs, Plaintiff Alan Warner's treaters, and Defendants. Discovery is continuing.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 11 SHOULD BE COMPELLED:**

This interrogatory asks Plaintiff to identify all individuals with knowledge of the facts supporting his claims against Defendants. Plaintiff 's response merely identifies his "treaters;" this is overbroad and fails to identify and provide the necessary contact information of said "treaters." This response does not discern between Plaintiff's "treaters" with or without knowledge of alleged negligence of Defendants; and as such, this answer is grossly incomplete. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories that they may evaluate and defend against claims alleged against them. His response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit. Defendants should not be forced to depose every single one of Plaintiff's physicians to determine who has knowledge of these claims. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

Exhibit E
Page 535

KNLH\1007520.1

-17-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**SPECIAL INTERROGATORY NO. 12:**

Describe with specificity each fact upon which you rely to support your contention that Wright Medical committed a breach of warranty.

**RESPONSE TO SPECIAL INTERROGATORY NO. 12:**

The femoral component of plaintiff's hip prosthesis unexpectedly fractured when it was being used as intended by plaintiff and by defendant.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 12 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's claims against Defendants. Plaintiff alleges that Defendants' committed a breach of warranty with respect to its hip prosthesis system. However, when asked for specific facts upon which he relies in making this claim, he refuses to provide any such details. His response merely repeats that the "hip prosthesis unexpectedly fractured" but provides nothing further. There are no details about the claimed "breach of warranty," such as how the alleged fracture breached the warranty, what specifically was warranted by Defendants, and how they breached said warranty. This response offers absolutely no facts to support this cause of action, but is rather a recitation of his complaint. This answer is incomplete, as it fails to provide any information regarding Plaintiff's specific allegations. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories that they may evaluate and defend against claims alleged against them. His response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

**SPECIAL INTERROGATORY NO. 14:**

Identify each person which you believe has knowledge of the facts supporting your contention that Wright Medical committed a breach of warranty.

**RESPONSE TO SPECIAL INTERROGATORY NO. 14:**

Plaintiffs, Plaintiff Alan Warner's treaters, and Defendants. Discovery is continuing.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 14 SHOULD BE COMPELLED:**

This interrogatory asks Plaintiff to identify all individuals with knowledge of the facts supporting his claims against Defendants. Plaintiff 's response merely identifies his "treaters;" this is overbroad and fails to identify and provide the necessary contact information of said "treaters." This response does not discern between Plaintiff's "treaters" with or without knowledge of Defendants alleged breach of warranty; and as such, this answer is grossly incomplete. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories that they may evaluate and defend against claims alleged against them. Defendants should not be forced to depose every single one of Plaintiff's physicians to determine who has knowledge of these claims. His response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

**SPECIAL INTERROGATORY NO. 15:**

Identify every health care practitioner who you have consulted with or been examined by in the last ten (10) years, including each health care practitioner who has consulted or examined you in connection with the Hip Prosthesis System at issue and any other hip prosthesis systems you may have or have had. (For purposes of these Interrogatories, the term "health care practitioner" means a physician, surgeon, orthopod, cardiac specialist, neurologist, osteopath, chiropractor, physiotherapist, occupational therapist, psychiatrist or other type of medical practitioner or any person who practices the healing or curing arts, including family or personal physicians.)

**RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

Dr. P. Richard Emmanuel, Dr. Brad L. Peneberg (sic), Dr. William Long and plaintiff's various treating physicians at Cedar's Sinai.

Exhibit E
Page 537

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 15 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding the health practitioners Plaintiff received care from over the past ten (10) years. The response fails to provide sufficient information in response to this request and appears incomplete. For example, Plaintiff recently amended his complaint to add Dr. Harlan Amstutz, who is presumably one of his physicians not identified in this response. This response fails to identify and provide specific information (contact information) for each medical provider. Also, Plaintiff's general statement identifying "various treating physicians at Cedar's Sinai" is overbroad and evasive.

Plaintiff is claiming damages for injuries he claims are related to the use of Defendants' product. No medical information or documentation has been provided to date. Additionally, the list appears incomplete, as Plaintiff's response identifies "various treating physicians at Cedars-Sinai" that are not particularly identified in this response. There are many physicians at Cedars-Sinai and Defendants are entitled to know which treated Plaintiff. It is not Defendants' duty to obtain this information through other means; instead, it is Plaintiff's obligation to respond completely and sufficiently to the interrogatories asked. Plaintiff's response to this interrogatory is essential to the discovery process as it relates to his alleged injuries and damages.

**SPECIAL INTERROGATORY NO. 17:**

Describe any injury or illness you have suffered during the past ten (10) years that required medical care and identify the hospitals and/or health care practitioners treating you for each such injury or illness.

**RESPONSE TO SPECIAL INTERROGATORY NO. 17:**

Other than as stated immediately above, on January 22, 2007, plaintiff underwent hip replacement surgery on his left hip. In November of 2007, and because of complications with his hip, Plaintiff underwent revision surgery on his left hip.

///

///

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 17 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's injury or illnesses suffered over the past ten (10) years. The response fails to provide sufficient information in response to this request and appears incomplete. This response fails to identify and provide specific information about known injuries of Plaintiff for which he has received care in the past. For example, it is known that Plaintiff underwent a hemiarthroplasty in January of 2006, yet this injury is omitted from the response. Plaintiff is 69 years old and has undoubtedly treated with multiple health care providers over the past 10 years. Therefore, this response is clearly and deliberately incomplete and inadequate.

Plaintiff is claiming damages for injuries he claims are related to the use of Defendants' product. No medical information or documentation has been provided to date. It is not Defendants' duty to obtain this information through other means; instead, it is Plaintiff's obligation to respond completely and sufficiently to the interrogatories asked. Plaintiff's response to this interrogatory is essential to the discovery process as it relates to his alleged injuries and damages.

**SPECIAL INTERROGATORY NO. 22:**

Identify your salary or average weekly wage earned at each of your employers for the last ten (10) years.

**RESPONSE TO SPECIAL INTERROGATORY NO. 22:**

Plaintiff received a minimum of $3,750 monthly for the 2 monthly creative bulletins and if plaintiff prepared presentation videos he would receive an additional $15,000 per video.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 22 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's salary or earned wages at each of his employers for the last ten (10) years. This response fails to provide sufficient information in response to this request. This interrogatory seeks information regarding Plaintiff's actual amount of compensation received from former employment. It does not ask for contemplated income.

KNLH\1007520.1 -21-

Exhibit E
Page 539

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLC... STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN ... COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

His response does not answer the question, but rather provides information that is highly speculative and overly general. It does not indicate if Plaintiff received the same minimum amount every month for 10 years, when he prepared presentation videos, or any specific information about actual income earned. Additionally, Defendants are aware that Plaintiff was a part time employee starting in 2007; thusly, this response does not appear accurate and is incomplete.

Despite having four (4) months to prepare this response, none was given. Also, considering the incident occurred several years ago, this information should be readily available to Plaintiff at this time. This response does not provide sufficient information to evaluate Plaintiff's claim for lost wages/employment. Additionally, Plaintiff does not provide any calculation for damages claimed. Defendants cannot evaluate this claim without the requested information. This is unresponsive and incomplete.

**SPECIAL INTERROGATORY NO. 25:**

If you have ever received any income or benefits in lieu of earnings (i.e., insurance payment, worker's compensation, social security, no fault benefits, other disability benefits, etc.) for the ten (10) years, please state the period(s) of time said income or benefits were received, the amount received each week, and the source of such payment(s).

**RESPONSE TO SPECIAL INTERROGATORY NO. 25:**

Plaintiff receives social security the details of which are currently being compiled.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 25 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's income or earned benefits over the last ten (10) years. This response fails to provide sufficient information in response to this request. This interrogatory seeks information regarding Plaintiff's actual amount of compensation or benefits received from former employment. His response does not answer the question. It does not indicate if Plaintiff received income from any other source or the details of that. If

Exhibit E
Page 540

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Plaintiff received social security, he can easily identify the dates and amount received as requested.

Despite having four (4) months to prepare this response, none was given. Also, considering the incident occurred several years ago, this information should be readily available to Plaintiff at this time. This response does not provide sufficient information to evaluate Plaintiff's claim for lost wages/employment. Additionally, Plaintiff does not provide any calculation for damages claimed. Defendants cannot evaluate this claim without the requested information. This is unresponsive and incomplete.

**SPECIAL INTERROGATORY NO. 27:**

If you have ever suffered trauma to your hip or proximal body tissues or the subject Hip Prosthesis System from such things as, inter alia, accidents, falls or other events, please detail the nature of each trauma, including the date it occurred, the identity of all witnesses to each trauma, and the effect said trauma had upon your left hip, proximal body tissues or the subject Hip Prosthesis System.

**RESPONSE TO SPECIAL INTERROGATORY NO. 27:**

Not applicable.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 27 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding any past trauma or accidents Plaintiff has experienced. His response is "not applicable" but that is a false response. Certain information has suggested to Defendants that Plaintiff experienced a fall in July of 2006; however, this information is omitted from Plaintiff's response. This response appears accurate deliberately inaccurate.

Despite having four (4) months to prepare this response, none was given. Also, considering the incident occurred several years ago, this information should be readily available to Plaintiff at this time. This response does not provide sufficient information to evaluate Plaintiff's claims of injury and damages. His response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit.

KNLH\1007520.1

-23-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SU[PPORT OF MOTION TO] COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Exhibit E

Page 541

Defendants should not be forced to subpoena all medical records and take depositions to ascertain information directly and easily within Plaintiff's knowledge and control.

**SPECIAL INTERROGATORY NO. 28:**

Identify all medications you have taken in the past ten (10) years, including the reason(s) for taking said medications, the daily dosage, and each health care practitioner(s) who prescribed each medication.

**RESPONSE TO SPECIAL INTERROGATORY NO. 28:**

Prior to the injury in question plaintiff was taking cholesterol medication. Following the subject injury, plaintiff has been on numerous pain medications and antibiotics.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 28 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding any medication Plaintiff has taken in the past ten (10) years. The response fails to provide sufficient information in response to this request. This response fails to identify the medication, state the specific person prescribing the medication, the reason it was furnished *and* the daily dosage, as specifically requested by this interrogatory. Plaintiff's response indicates that he has "been on numerous pain medications and antibiotics." This is an incomplete and insufficient response. It fails to provide any detailed information about what medication he has taken. It is grossly overbroad and incomplete.

Plaintiff is claiming damages for injuries he claims are related to the use of Defendants' product. No medical information or documentation has been provided to date. It is not Defendants' duty to obtain this information through other means; instead, it is Plaintiff's obligation to respond completely and sufficiently to the interrogatories asked. Plaintiff's response to this interrogatory is essential to the discovery process as it relates to his alleged injuries and damages.

**SPECIAL INTERROGATORY NO. 30:**

Please itemize all damages you are claiming in this matter.

///

///

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**RESPONSE TO SPECIAL INTERROGATORY NO. 30:**

Non-economic damages and economic damages for out of pocket medical expenses and lost wages.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 30 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding all damages Plaintiff claims to have sustained. This response is insufficient because it fails to provide any information regarding alleged damages, as Plaintiff would necessarily be aware of currently, especially considering this incident occurred several years ago. Plaintiff's overbroad and general statement that he suffered "non-economic and economic damages for out of pocket medical expenses and lost wages," does not itemize the nature or amount of each damages item being sought by Plaintiff in this litigation. It is merely a recitation of the damages sought in his complaint. The purpose of discovery is to ascertain the specific nature and amount of those damages. Defendants cannot evaluate Plaintiff's claim or prepare for trial without any information regarding the damages sought.

Defendants are not required to consult other records and determine what Plaintiff's alleged economic damages are and to speculate as to what is being sought. Such course of action would be unduly burdensome and speculative. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories so it may evaluate Plaintiff's claims. The response to this interrogatory is clearly essential to the discovery process as it relates to Plaintiff's alleged damages.

**SPECIAL INTERROGATORY NO. 31:**

Identify each person who will testify in support of each item of damage you are claiming in this matter.

**RESPONSE TO SPECIAL INTERROGATORY NO. 31:**

Plaintiffs, plaintiff Alan Warner's treaters and experts.

///

///

Exhibit E
Page 543

KNLH\1007520.1

-25-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 31 SHOULD BE COMPELLED:**

This interrogatory asks Plaintiff to identify all individuals who will testify in support of each of Plaintiff's items of damage being claimed in this action. Plaintiff 's response merely identifies his "treaters and experts;" this is overbroad and fails to identify and provide the necessary indentifying information of said "treaters." This response does not need to identify expert witnesses yet, but does need to provide which "treaters" will be relied upon. The identity of this information is necessary so that Defendants may properly depose said individuals and subpoena the appropriate medical records. This answer is grossly incomplete. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories so that they may evaluate and defend against claims alleged against them. His response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

**SPECIAL INTERROGATORY NO. 32:**

Identify each document that support of each item of damage you are claiming in this matter.

**RESPONSE TO SPECIAL INTERROGATORY NO. 32:**

Medical records, medical bills and evidence of plaintiff's lost wages.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 32 SHOULD BE COMPELLED:**

This interrogatory asks Plaintiff to identify all documents that support each of Plaintiff's items of damage being claimed in this action. Plaintiff 's response merely identifies "medical records, medical bills and evidence of plaintiff's lost wages;" this is overbroad and fails to identify any actual documentation, as is required by this interrogatory. This response does not identify specific documents that support the damages being claimed by Plaintiff, nor does it provide any substantive response. Defendants need to know which medical records/bills support his damages,

KNLH\1007520.1

-26-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SU[illegible] COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Exhibit E

Page 544

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

and which documents evidence his alleged lost income. Defendants cannot be expected to speculate as to which documents support Plaintiff's claims, and Defendants certainly cannot defend this case without this critical information. This answer is grossly incomplete. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories that they may evaluate and defend against claims alleged against them. His response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

**SPECIAL INTERROGATORY NO. 33:**

Identify each lienholder (e.g. medical, insurance, worker's compensation and/or government) on any recovery you ultimately receive for injuries and damages due to alleged failure of the hip prosthesis system at issue in this matter, and the amount of any claimed lien.

**RESPONSE TO SPECIAL INTERROGATORY NO. 33:**

Medicare is the only potential lien holder plaintiff is aware of.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 33 SHOULD BE COMPELLED:**

This interrogatory asks Plaintiff to identify any lienholders on any recovery the Plaintiff may ultimately receive. His response identifies Medicare as being a potential lienholder; however, he fails to include the amount of the lien, as is specifically required by this interrogatory. This answer is incomplete.

**PLAINTIFF ALAN WARNER AND RESPONSES IN DISPUTE**

**REQUESTS FOR PRODUCTION (SET ONE) NOS. 1-23:**

**REQUEST FOR PRODUCTION NO. 1:**

All documents identified in response to Wright Medical's Special Interrogatories, Set One, served concurrently herewith.

///

///

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**REQUEST FOR PRODUCTION NO. 2:**

All documents identified in response to Wright Medical's Form Interrogatories, Set One, served concurrently herewith.

**REQUEST FOR PRODUCTION NO. 3:**

All documents supporting your contention that the Hip Prosthesis System contained a design defect.

**REQUEST FOR PRODUCTION NO. 4:**

All documents supporting your contention that the Hip Prosthesis System contained a manufacturing defect.

**REQUEST FOR PRODUCTION NO. 5:**

All documents supporting your contention that Wright Medical failed to warn you of the Hip Prosthesis System's alleged potential risk of fracturing.

**REQUEST FOR PRODUCTION NO. 6:**

All documents supporting your contention that the Hip Prosthesis System was defective at the time it left the control of Wright Medical.

**REQUEST FOR PRODUCTION NO. 7:**

All documents supporting your contention that Wright Medical breached a duty of care owed to you.

**REQUEST FOR PRODUCTION NO. 8:**

All documents supporting your contention that Wright Medical knew or should have known of an alleged risk of failure in the Hip Prosthesis System or any of its components.

**REQUEST FOR PRODUCTION NO. 9:**

All documents supporting your claim for breach of warranty.

**REQUEST FOR PRODUCTION NO. 10:**

All documents, including but not limited to, instructions concerning the Hip Prosthesis System.

Exhibit E

Page 546

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**REQUEST FOR PRODUCTION NO. 11:**

All reports or other documents concerning studies, tests, photographs, or x-rays of the Hip Prosthesis System.

**REQUEST FOR PRODUCTION NO. 12:**

All photographs, videos, charts, diagrams, or models of the Hip Prosthesis System.

**REQUEST FOR PRODUCTION NO. 13:**

All documents that evidence or relate to any statements you have made regarding the alleged failure of the Hip Prosthesis System (other than those made to your present attorney).

**REQUEST FOR PRODUCTION NO. 14:**

All documents that evidence or relate to statements concerning the alleged failure of the Hip Prosthesis System made to you (or anyone on your behalf).

**REQUEST FOR PRODUCTION NO. 15:**

All reports, medical records or other documents prepared by the doctors who attended, operated, treated, consulted, or examined you regarding your hip surgeries, including the initial insertion of the Hip Prosthesis System and subsequent removal and replacement surgeries.

**REQUEST FOR PRODUCTION NO. 16:**

All medical bills and related documents reflecting medical expenses you incurred in the medical procedures to remove and replace the Hip Prosthesis System, including medical procedures and therapy associated with your recovery.

**REQUEST FOR PRODUCTION NO. 17:**

All documents which support your contention that you have suffered mental suffering, loss of enjoyment of life, disfigurement, physical impairment, discomfort, inconvenience, anxiety, humiliation and emotional distress.

**REQUEST FOR PRODUCTION NO. 18:**

Your federal and state income tax forms for the past seven (7) years.

///

///

Exhibit E
Page 547

KNLH\1007520.1

-29-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**REQUEST FOR PRODUCTION NO. 19:**

All reports or other documents concerning any tests, examinations, inspections or investigations of the Hip Prosthesis System or any component part thereof.

**REQUEST FOR PRODUCTION NO. 20:**

All documents which support your claim for lost income (past and future).

**REQUEST FOR PRODUCTION NO. 21:**

All documents supporting, referencing or relating to all liens on any recovery you may receive in this matter.

**REQUEST FOR PRODUCTION NO. 22:**

All invoices, receipts, cancelled checks and all other documents which support or otherwise relate to your damage claims.

**REQUEST FOR PRODUCTION NO. 23:**

All exhibits you may offer as evidence at trial.

**RESPONSE TO REQUESTS FOR PRODUCTION NOS. 1-23:**

At this time, the only documents plaintiff has to substantiate his claim are his medical records from Cedar's Sinai Medical Center, which are already in Defendant's possession. As to documents supporting his wage loss claim, plaintiff will produce those forthwith.

**REASON WHY FURTHER RESPONSE TO REQUESTS FOR PRODUCTION NOS. 1-23 SHOULD BE COMPELLED:**

Defendants' twenty-three (23) separate and different requests for production of documents seek documents related to Plaintiff's contention that he was injured as a result of this incident. The requests ask for related medical records, invoices, receipts, etc. that support Plaintiff's damage claims; which are the crux of Plaintiff's legal action. Not a single document was produced by Plaintiff in response to any of these requests. Defendants presume that it is not Plaintiff's intention to withhold information or interfere with the discovery process; however, no documents were produced. There have been no documentation, such as billings, records or reports, provided to date, that reflect Plaintiff's alleged injuries or support Plaintiff's damage claims with reference to

KNLH\1007520.1

-30-

Exhibit E
Page 548

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

this incident. Defendants do not possess or have the unfettered access to Plaintiff's medical records as he does; Plaintiff is the proper person to obtain his own records.

Responses to these requests for production of documents are essential to evaluating alleged damages and liability for the incident. Documents identified in form and special interrogatory responses were also requested, yet not provided. Additionally, documents supporting Plaintiff's lost income claim, liens on recovery, and other damage items were requested but not produced. These documents are clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit. Defendants cannot conduct meaningful discovery or prepare for trial if Plaintiff fails to produce a single document in support of his claims.

**PLAINTIFF PATRICIA WARNER AND RESPONSES IN DISPUTE**

**FORM INTERROGATORIES (SET ONE):**

**FORM INTERROGATORY NO. 2.6:**

State:

(a) the name, **ADDRESS**, and telephone number of your present employer or place of self-employment; and

(b) the name, **ADDRESS**, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

**RESPONSE TO FORM INTERROGATORY NO. 2.6:**

Patricia Warner is not making a claim for lost wages.

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 2.6 SHOULD BE COMPELLED:**

This interrogatory asks Plaintiff to identify and provide contact information for her present employer. It also requires information regarding dates of employment, job title, and the nature of work she had done for the past five (5) years. Plaintiff's responses to this interrogatory merely states she "is not making a claim for lost wages." This however, is not the question asked of Plaintiff. The rationale behind the question is irrelevant to Plaintiff's obligation to response completely and accurately to the question posed. This information is relevant to her husband's

KNLH\1007520.1

-31-

Exhibit E
Page 549

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

damage claims, her loss of consortium claim and the parties' general claims of pain and suffering. If Mrs. Warner is working and earning income, that may negate the claims of distress as a result of Mr. Warner's alleged inability to work and earn income. Therefore this information is highly relevant and discoverable.

**FORM INTERROGATORY NO. 2.7:**

State:

(a) the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;

(b) the dates you attended;

(c) the highest grade level you have completed; and

(d) the degrees received.

**RESPONSE TO FORM INTERROGATORY NO. 2.7:**

Plaintiff attend Luke Callaghan School in Montreal, Quebec, Canada.

**REASON WHY FURTHER RESPONSE TO FORM INTERROGATORY NO. 2.7 SHOULD BE COMPELLED:**

This interrogatory asks Plaintiff to identify and provide identifying information for her past education history. The response provided is incomplete, it does not address whether or not the stated school was the only school attended, what dates she attended this school, the degree received, or what was the highest grade level completed. Additional information is needed for this answer to be complete. This information is relevant to Plaintiff's own claims being advanced in this litigation.

**PLAINTIFF PATRICIA WARNER AND RESPONSES IN DISPUTE**

**SPECIAL INTERROGATORIES (SET ONE):**

**SPECIAL INTERROGATORY NO. 1:**

Describe with specificity each fact upon which you rely to support your cause of action for loss of consortium. (For purposes of these Interrogatories, the term "you" refers to Plaintiff

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 550

KNLH\1007520.1 -32-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Patricia Warner, and all agents, representatives, attorneys, experts and all other persons acting or purporting to act on her behalf.)

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

The femoral component of plaintiff's husband's hip prosthesis system manufactured and distributed by defendants fractured at its neck while it was being used as expected.

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 1 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's primary claim against Defendants. Plaintiff alleges that due to her husband's injuries, she has suffered loss of consortium damages. However, when asked for specific facts upon which she relies in making this claim, she refuses to provide any such details. The alleged breaking or fracturing of the product does not provide any substantive information pertaining to Plaintiff's claims against Defendants. No facts were provided to support her claim. Additionally, Plaintiff needs to include facts supporting the loss of companionship, care, assistance, affection, etc. that she has also allegedly suffered. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories that they may evaluate and defend against claims alleged against them. Her response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims she is advancing in her initiated law suit. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

**SPECIAL INTERROGATORY NO. 6:**

Describe with specificity the work, services, and society usually performed in the care of the family home that you contend Alan Warner is no longer able to do, contribute to or assist with.

**RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

Prior the injury, Mr. Warner carried out the regular duties of a husband and the man around the house. As of the time of the injury in October of 2010, Mr. Warner has been essentially incapacitated as a result of several surgical procedures and complications experienced therefrom, which he underwent in an effort to treat the subject injury.

Exhibit E
Page 551

KNLH\1007520.1 -33-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**REASON WHY FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 6 SHOULD BE COMPELLED:**

This interrogatory seeks information regarding Plaintiff's primary claim against Defendants. Plaintiff alleges that due to her husband's injuries, he is unable to contribute or perform certain work, services and society. However, when asked for specific facts upon which she relies in making this claim, she refuses to provide any such details. Her response that "Mr. Warner carried out the regular duties of a husband and the man around the house" does not provide any substantive information pertaining to Plaintiff's claims against Defendants. No facts were provided to support her claim. For example, what "duties" is Mr. Warner no longer able to do? The response is evasive and provides no more information than the allegations in the complaint. Plaintiff has an obligation to provide a complete and full response to Defendants' interrogatories that they may evaluate and defend against claims alleged against them. Her response to this interrogatory is clearly essential to the discovery process as it relates to the primary claims he is advancing in his initiated law suit. Accordingly, Plaintiff's answer to this interrogatory is insufficient and unsatisfactory.

DATED: August 30, 2012

KIRBY NOONAN LANCE & HOGE LLP

By: [signature]
Michael L. Kirby
Micaela P. Banach
Attorneys for Wright Medical Group, Inc. and Wright Medical Technology, Inc.

Exhibit E
Page 552

KNLH\1007520.1

-34-

WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S SEPARATE STATEMENT OF DISCOVERY REQUESTS AND RESPONSES IN DISPUTE IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

COPY

BY FAX

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Received
AUG 30 2012
Filing Window

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| ALAN WARNER and PATRICIA WARNER,<br>Plaintiffs,<br>vs.<br>BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, DOES 1 through 100, inclusive,<br>Defendants. | Case No. BC 475958<br>**[PROPOSED] ORDER GRANTING WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS**<br>Judge: Hon. Charles F. Palmer<br>Dept.: 33<br>DATE: January 7, 2013<br>TIME: 8:30 a.m.<br>DEPT: 33<br>TRIAL: May 6, 2013 |

The motion of Defendants WRIGHT MEDICAL GROUP, INC. and WRIGHT MEDICAL TECHNOLOGY, INC.'s (collectively "Defendants") for an order: (1) compelling the further responses of Plaintiff ALAN WARNER to Defendants' first set of Form Interrogatories, Special Interrogatories, and Requests for Production of Documents; (2) compelling the further responses of Plaintiff PATRICIA WARNER to Defendants' first set of Form Interrogatories and Special Interrogatories; and (3) imposing $6,832.50 in monetary sanctions against Plaintiffs and Plaintiffs'

KNLH\1007777.1

Exhibit E
Page 553

[PROPOSED] ORDER GRANTING WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

counsel ("Motion") came on for hearing in Department 33 of this Court on January 7, 2013. Having read the motion, the memoranda, the declaration and the Separate Statement of Discovery Requests and Responses in Dispute, and having heard argument of counsel, and good cause appearing, IT IS ORDERED that:

1. Defendants' Motion is granted.
2. Plaintiffs shall provide further response to Defendants' first set of Form Interrogatories, Special Interrogatories, and Requests for Production of Documents complete with verifications, and without objections, within ten (10) days of this Order, or as soon as the Court may otherwise order.

IT IS FURTHER ORDERED that Plaintiffs and Plaintiffs' counsel shall pay monetary sanctions to Defendants in the amount of $6,832.50.

IT IS HEREBY ORDERED.

DATED: ________________

______________________________
Hon. Charles F. Palmer
Judge of the Superior Court

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Exhibit E
Page 554

KNLH\1007777.1

-2-

[PROPOSED] ORDER GRANTING WRIGHT MEDICAL GROUP, INC. AND WRIGHT MEDICAL TECHNOLOGY, INC.'S MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO DISCOVERY AND CORRESPONDING REQUEST FOR SANCTIONS

CIV-110

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Steven R. Vartazarian, SBN: 227635
The Vartazarian Law Firm
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA. 91403
TELEPHONE NO.: 818-990-9949 FAX NO. *(Optional)*: 818-990-6124
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Plaintiffs

FOR COURT USE ONLY

RECEIVED
AUG [illegible] 2012
KIRBY NOONAN LANCE & HOGE LLP

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA. 90012
BRANCH NAME: Central District

PLAINTIFF/PETITIONER: Alan Warner et. al.
DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D. et. al.

REQUEST FOR DISMISSAL

☐ Personal Injury, Property Damage, or Wrongful Death
☐ Motor Vehicle ☐ Other
☐ Family Law ☐ Eminent Domain
☑ Other *(specify)* : Products Liability

CASE NUMBER: BC475958

**- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -**

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice (2) ☑ Without prejudice
   b. (1) ☐ Complaint (2) ☐ Petition
   (3) ☐ Cross-complaint filed by *(name)*: on *(date)*:
   (4) ☐ Cross-complaint filed by *(name)*: on *(date)*:
   (5) ☐ Entire action of all parties and all causes of action
   (6) ☑ Other *(specify)*:* ONLY as to Brad L. Penenberg, M.D.

2. *(Complete in all cases except family law cases.)*
   ☐ Court fees and costs were waived for a party in this case. *(This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed).*

Date: August 27, 2012
Steven R. Vartazarian
(TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
(SIGNATURE)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
☑ Plaintiff/Petitioner ☐ Defendant/Respondent
☐ Cross–Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
   Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
(SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner ☐ Defendant/Respondent
☐ Cross–Complainant

*(To be completed by clerk)*
4. ☐ Dismissal entered as requested on *(date)*:
5 ☐ Dismissal entered on *(date)*: as to only *(name)*:
6. ☐ Dismissal **not entered** as requested for the following reasons *(specify)*:

7. a. ☐ Attorney or party without attorney notified on *(date)*:
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
   ☐ a copy to be conformed ☐ means to return conformed copy

Date: Clerk, by ______________________________, Deputy

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. July 1, 2009]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courtinfo.ca.gov

Exhibit E

CIV-110

| PLAINTIFF/PETITIONER: Alan Warner et. al.<br>DEFENDANT/RESPONDENT: Brad L. Penenberg, M.D. et. al. | CASE NUMBER:<br>BC475958 |
|---|---|

## Declaration Concerning Waived Court Fees

The court has a statutory lien for waived fees and costs on any recovery of $10,000 or more in value by settlement, compromise, arbitration award, mediation settlement, or other recovery. The court's lien must be paid before the court will dismiss the case.

1. The court waived fees and costs in this action for *(name)*:
2. The person in item 1 *(check one)*:
   a. ☐ is not recovering anything of value by this action.
   b. ☐ is recovering less than $10,000 in value by this action.
   c. ☐ is recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*
3. ☐ All court fees and costs that were waived in this action have been paid to the court *(check one)*: ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: ______________________

______________________________ ▶ ______________________________

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION) (SIGNATURE)

PROOF OF SERVICE
1013A (3) CCP
STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403.

On August 27, 2012, I served the foregoing document described as **Request for Dismissal** on the interested parties in this action:

PLEASE SEE SERVICE LIST

__X___By placing the true copies thereof enclosed in sealed envelopes addressed as follows:

_____ I deposited such envelope with Federal Express in Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid for Priority Overnight Delivery.

__X___ I caused such envelope to be deposited in the mail at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

_____(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

______(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was ________________. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

______By attaching the document described above as a PDF document and emailing the same to all parties identified on the Service List below.

XXX I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 27, 2012, at Sherman Oaks, California.

Dahlia Smith

Exhibit E
Page 557

**SERVICE LIST**

Michael L. Kirby
**KIRBY NOONAN LANCE & HOGE, LLP**
350 Tenth Avenue, Suite 1300
San Diego, Ca 92101
Attorneys for: Wright Medical Group, Inc. And Wright Medical Technology, Inc.

Suhasini S. Sawkar, Esq.
**HERZFELD & RUBIN, LLP**
1925 Century Park East, Suite 900
Los Angeles, Ca 90067
Attorneys for: Brad Penenberg

Steven R. Vartazarian, Esq. (SBN 227635)
Nareg Bardakjian, Esq. (SBN 276240)
THE VARTAZARIAN LAW FIRM
15250 Ventura Blvd., Suite 505
Sherman Oaks, California 91403
Telephone: 818/990-9949
Telecopier: 818/990-6124

RECEIVED
OCT - 8 2012
KIRBY NOONAN LANCE & HOGE LLP

**Attorneys for Plaintiff,**
ALAN WARNER and PATRICIA WARNER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

v.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,

Defendants.

CASE NO. BC 475958

*Assigned to the Hon. Charles F. Palmer, Department 33, for all purposes*

**PLAINTIFF ALAN WARNER'S NOTICE OF POSTING JURY FEES**

**Complaint Filed:** 12/27/2011

TO THE CLERK AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff ALAN WARNER, hereby post jury fees in the amount of $150.00 for trial in the above referenced matter.

Dated: October 4, 2012

THE VARTAZARIAN LAW FIRM

By: ______________________

Nareg Bardakjian, Esq.
Attorneys for Plaintiff, Alan Warner

Exhibit E
Page 559

PROOF OF SERVICE
1013A (3) CCP
STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403.

On October 4, 2012, I served the foregoing document described as **Notice of Posting Jury Fee's** on the interested parties in this action:

PLEASE SEE SERVICE LIST

__X____By placing the true copies thereof enclosed in sealed envelopes addressed as follows:

_____ I deposited such envelope with Federal Express in Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid for Priority Overnight Delivery.

__X___ I caused such envelope to be deposited in the mail at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

_____(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

______(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was _________________. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

______By attaching the document described above as a PDF document and emailing the same to all parties identified on the Service List below.

XXX I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 4, 2012, at Sherman Oaks, California.

Dahlia Smith

Exhibit E
Page 560

**SERVICE LIST**

Michael L. Kirby
**KIRBY NOONAN LANCE & HOGE, LLP**
350 Tenth Avenue, Suite 1300
San Diego, Ca 92101
Attorneys for: Wright Medical Group, Inc. And Wright Medical Technology, Inc.

Suhasini S. Sawkar, Esq.
**HERZFELD & RUBIN, LLP**
1925 Century Park East, Suite 900
Los Angeles, Ca 90067
Attorneys for: Brad Penenberg

Steven R. Vartazarian, Esq. (SBN 227635)
THE VARTAZARIAN LAW FIRM
15250 Ventura Blvd., Suite 505
Sherman Oaks, California 91403
Telephone: 818/990-9949
Telecopier: 818/990-6124

**Attorneys for Plaintiffs,**
ALAN WARNER and PATRICIA WARNER

RECEIVED
NOV - 2 2012
KIRBY NOONAN LANCE & HOGE LLP

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

v.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,

Defendants.

CASE NO. BC 475958

*Assigned to the Hon. Charles F. Palmer, Department 33, for all purposes*

**NOTICE OF APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN**

**Complaint Filed:** 12/27/2011

**TO THE CLERK AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on 11/28/2012 at 1:30pm, or as soon thereafter as counsel may be heard, in Department 33 of the Los Angeles Superior Court, located at the Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, California, 90012. George E. McLaughlin will and does hereby apply for an Order permitting him to appear as counsel *pro hac vice* in this action on behalf of Plaintiff(s) Alan Warner and Patricia Warner, pursuant to Rule 9.40 of the California Rules of Court. This application is based

Exhibit E
Page 562

upon this Notice and the attached Verified Application of George E. McLaughlin and Declaration of Steven R. Vartazarian.

Dated: October 29, 2012

Respectfully Submitted,

By: ______________________________

Erol D. Ari, Esq.
Steven R. Vartazarian, Esq.
Attorney for Plaintiffs, Alan and Patricia Warner

Exhibit E
Page 563

2

VERIFIED PRO HAC VICE APPLICATION OF GEORGE E. MCLAUGHLIN

**VERIFIED APPLICATION OF GEORGE E. MCLAUGHLIN**

Pursuant to Rule 9.40 of the California Rules of Court, I, George E. McLaughlin, submit this Verified Application to appear as counsel *pro hac vice* in this action on behalf of Plaintiff(s) Alan Warner and Patricia Warner.

1. I am a member of the law firm of John Gehlhausen, P.C., whose offices are at 22488 E. Polk Drive, Aurora, Colorado 80016. I reside at 1643 Monaco Parkway, Denver, Colorado 80220-1642.

2. I am and have been a member of good standing of the Bar of the State of Colorado since January 2, 1987, where I practice law. I am also admitted to practice law in the following courts:

| Court | Date of Admission |
|---|---|
| Bar of the State of Ohio<br>Supreme Court of the State of Ohio<br>65 South Front Street, 5th Floor<br>Columbus, Ohio 43215-3431 | 11/7/80 |
| Bar of the State of West Virginia<br>West Virginia Supreme Court of Appeals<br>Clerk of Court, Rory L. Perry II<br>State Capitol Rm E-317<br>1900 Kanawha Blvd. East<br>Charlston, WV 25305 | 9/25/79 |
| United States Supreme Court<br>Clerk of the Supreme Court of the United States, William K. Suter<br>Director of Admissions, Terry Thompson<br>1 First Street, NE<br>Washington, DC 20543 | 2/21/06 |
| United State Court of Appeals for the 4th Circuit<br>Clerk's Office<br>100 East Main Street<br>Richmond, VA 23219 | 8/26/87 |
| United States Court of Appeals for the 6th Circuit<br>Office of the Clerk<br>Clerk, Lonard Green<br>540 Potter Stewart U.S. Courthouse<br>100 E 5th St.<br>Cincinnati, OH 45202-3988 | 8/19/03 |

///

///

Exhibit E
Page 564

United States Court of Appeals for the 7th Circuit 4/13/10
Gino Agnello, Clerk
Clerk's Office, U.S. Court of Appeals
Room 2722
219 S Dearborn St
Chicago, IL 60604

United States District Court for the Northern District of West Virginia 10/25/79
Cheryl Dean Riley, Clerk U.S. District Court
PO Box 471
1125 Chapline Street, Suit 1000
Wheeling, WV 26003

United States District Court for the Southern District of West Virginia 8/19/03
Clerk's Office
Theresa L. Deppner, Clerk
Robert C. Byrd United States Courthouse
300 Virginia Street East, Suite 2400
Charleston, WV 25301

Unites States District Court for the Southern District of Ohio 4/24/96
Office of the Clerk
Joseph P. Kinneary U.S. Courthouse, Room 121
85 Marconi Boulevard
Columbus, OH 43215

United States District Court for the Northern District of Ohio 1/5/11
Office of the Clerk
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, OH 44113

United States District Court for the Eastern and Western Districts of Arkansas 7/20/98
United States District Court for the Eastern District of Arkansas
Clerk's Office
James W. McCormack, Clerk of the Court
Richard Sheppard Arnold United States Courthouse
600 W. Capitol Avenue, Room A149
Little Rock, AR 72201

United States District Court for the Western District of Pennsylvania 7/27/99
Office of the Clerk
Robert Barth, Jr., Clerk of the Court
U.S. Courthouse
700 Grant Street
Pittsburgh, PA 15219

Unites States District Court for the Eastern District of Michigan 10/18/00
Clerk's Office
Theodore Levin U.S. Courthouse
231 W. Lafayette Boulevard, Room 564
Detroit, MI 48226

///

///

Exhibit E

Page 565

United States District Court for the District of Colorado 9/26/01
Clerk's Office
Alfred A. Arraj United States Courthouse, Room A 105
901 19th Street
Denver, CO 80294-3589

United States District Court for the Western District of Oklahoma 6/26/08
Court Clerk, Robert D. Dennis
200 NW 4th Street
Oklahoma city, OK 73102

United States District Court for the Northern District of Oklahoma 9/25/08
Clerk's Office
Phil Lombardi, Clerk of Court
333 West Fourth Street, Room 411
Tulsa, OK 74103

United States District Court for the Western District of Tennessee 2/4/11
U.S. Clerk's Office
Western Divisional Office
67 N. Main St., Room 2442
Memphis, TN 38103

United States District Court for the Western District of Texas 2/10/09
U.S. District Clerk's Office
655 Cesar E. Chavez Boulevard, Room G65
San Antonio, TX 78206

Unites States District Court for the Northern District of Texas 6/29/07
U.S. District Clerk's Office
U.S. Courthouse
1100 Commerce St., Room 1452
Dallas, TX 75242

Unites States District Court for the Northern District of Illinois 5/3/10
U.S. District Clerk's Office
Thomas G. Bruton, Clerk of Court
Everett McKinley Dirksen United States Courthouse
219 S. Dearborn St.
Chicago, IL 60604

United States District Court for the Central District of Illinois 4/30/07
U.S. Clerk's Office
Springfield Division
151 U.S. Courthouse
600 E. Monroe St.
Springfield, IL 62701

United States District Court for the Southern District of Illinois 4/12/11
U.S. Courthouse
U.S. Clerk's Office
750 Missouri Ave.
East St. Louis, IL 62201

///

Exhibit E
Page 566

United States District Court for the Western District of Wisconsin 11/16/11
Clerk of Court
U.S. District Court
Western District of Wisconsin
120 N. Henry St., Room 320
Madison, WI 53703

United States Court of Federal Claims 7/19/96
Clerk's Office
717 Madison Pl. N.W.
Washington, DC 20005

3. I am a member in good standing in the aforementioned courts.

4. I have never been suspended or disbarred by any court.

5. In the preceding two years, I have filed two applications to appear as cousel *pro hac vice* in California in the following courts: (1) United States District Court for the Eastern District of California, *Post et al. v. Sunbeam Products Inc.* (Case No. 2:11-cv-00792-JAM-CMK), application granted October 2011; and (2) United States District Court for the Northern District of California, *Bookhamer et al. v. Sunbeam Products Inc.* (Case No. 3:09-cv-06027-MHP), application granted March 2010.

6. The attorney of record for Plaintiff(s) Alan Warner and Patricia Warner is Steven R. Vartazarian, an active member of the State Bar of California and a partner in the firm of The Vartazarian Law Firm P.C., 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403, tel. (818) 990-9949.

///

///

///

7. I have asked Mr. Vartazarian to serve on the State Bar of California a copy of this Application and a check for $50.00 representing the processing fee contemplated by California Rule of Court 9.40(e). Mr. Vartazarian has assured me that he will comply with this request and will attach to the papers supporting this Application, a Proof of Service that reflects such service in compliance with Cal. Civ. Proc. Code §1013(a).

Date: October 29, 2012

Respectfully submitted,

George E. McLaughlin

George E. McLaughlin
John Gehlhausen, P.C.
22488 E. Polk Drive
Aurora, CO 80016
Tel: (303) 690-8197
Fax: (303) 690-8198

Exhibit E

**VERIFICATION**

I, George E. McLaughlin, under oath, declare as follows:

1. I am an attorney for Plaintiff(s) Alan Warner and Patricia Warner in this action.

2. The matters stated in the foregoing Application to Appear as Counsel *Pro Hac Vice* are true of my own knowledge and belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this 29th day of October, 2012, Aurora, Colorado.

George E. McLaughlin

**DECLARATION OF STEVEN R. VARTAZARIAN**

I, Steven R. Vartazarian, hereby declare as follows:

1. I am a member of the Bar of this Court and associated with the firm of The Vartazarian Law Firm, P.C., counsel for Plaintiff(s) Alan Warner and Patricia Warner in this action. Through my involvement in this case, I have personal knowledge of the facts set forth herein and, if called upon to do so, could and would competently testify thereto.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 29th day of October, 2012 at Sherman Oaks, California.

Steven R. Vartazarian

**PROOF OF SERVICE**

I, Steven R. Vartazarian, today caused to be mailed to the Office of Certification of the State Bar of California this Notice of Application and Verified Application to Appear as Counsel *Pro Hac Vice* of George E. McLaughlin, along with a check for $50.00. A true and correct copy of the check, payable to the State Bar of California, together with my cover letter to the State Bar of California Office of Certification, is attached hereto as Exhibit A, following the Declaration of Steven R. Vartazarian.

Dated: October 29, 2012

Steven R. Vartazarian

Exhibit E
Page 571

PROOF OF SERVICE
1013A (3) CCP
STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403.

On October 30, 2012, I served the foregoing document described as **Notice of Application and Verified Application to Appear as Counsel Pro Hac Vice of George E. McLaughlin; Declaration of Steven R. Vartazarian** on the interested parties in this action:

PLEASE SEE SERVICE LIST

__X____By placing the true copies thereof enclosed in sealed envelopes addressed as follows:

_____ I deposited such envelope with Federal Express in Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid for Priority Overnight Delivery.

__X___ I caused such envelope to be deposited in the mail at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

_____(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

______(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was ________________. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

______By attaching the document described above as a PDF document and emailing the same to all parties identified on the Service List below.

XXX I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 30, 2012, at Sherman Oaks, California.

Dahlia Smith

Exhibit E
Page 572

**SERVICE LIST**

Pro Hac Vice Program
**THE STATE BAR OF CALIFORNIA**
180 Howard Street
San Francisco, CA 94105

Michael L. Kirby
**KIRBY NOONAN LANCE & HOGE, LLP**
350 Tenth Avenue, Suite 1300
San Diego, Ca 92101
Attorneys for: Wright Medical Group, Inc. And Wright Medical Technology, Inc.



A Professional Corporation
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA. 91403
Telephone (818) 990-9949
Facsimile (818) 990-6124

October 29, 2012

**SENT VIA U.S. POST ONLY**

Pro Hac Vice Program
The State Bar of California
180 Howard Street
San Francisco, CA 94105

**Re:** Pro Hac Vice Application in **Warner v. Wright Medical Group, et. al.**, Superior Court, County of Los Angeles, Central District, No. BC 475958.

Dear Sir or Madam:

Enclosed please find a Rule 9.40 Verified Pro Hac Vice Application, for George E. McLaughlin, together with a check for $50 made payable to the State Bar of California for his Application. The Application is noticed for hearing by the Court (Superior Court, County of Los Angeles, Central District, Department 33, the Hon. Charles F. Palmer) on 10/29/12.

Thank you for your assistance with this matter. If you have any questions, please do not hesitate to call me at (818) 990-9949.

VERY TRULY YOURS,

Steven R. Vartazarian

SRV:ds
Enclosures

PROOF OF SERVICE
1013A (3) CCP

STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403

On October 29, 2012, I served the foregoing document described as **NOTICE OF APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN** on the interested parties in this action:

XXX by placing the true copies thereof enclosed in sealed envelopes addressed as follows:

Pro Hac Vice Program
The State Bar of California
180 Howard Street
San Francisco, CA 94105

______ I deposited such envelope in the Federal Express box at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

XXX I caused such envelope to be deposited in the mail at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

_____(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

_____(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was ________________. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

XXX I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 29, 2012, at Sherman Oaks, California.

Steven R. Vartazarian, Esq.

Exhibit E
Page 575

THE VARTAZARIAN LAW FIRM

CLIENT TRUST ACCOUNT
15250 VENTURA BLVD., STE. 505
SHERMAN OAKS, CA 91403
(818) 990-9949

1242

90-3730-1222

DATE 10/29/12

PAY TO THE ORDER OF State Bar of California $ 50.00

Fifty DOLLARS

Security Features Included. Details on Back

FIRST CALIFORNIA BANK
16661 Ventura Blvd., Ste. 110, Encino, California 91436

FOR Pro hac Vice Joe Warner

MP

⑈001242⑈ ⑆122237308⑆ 008⑈004250⑈

Exhibit E
Page 576

Steven R. Vartazarian, Esq. (SBN 227635)
Erol D. Ari, Esq. (SBN 282772)
THE VARTAZARIAN LAW FIRM
15250 Ventura Blvd., Suite 505
Sherman Oaks, California 91403
Telephone: 818/990-9949
Telecopier: 818/990-6124

**Attorneys for Plaintiffs,**
ALAN WARNER and PATRICIA WARNER

RECEIVED
DEC 10 2012
KIRBY NOONAN LANCE & HOGE LLP

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

ALAN WARNER and PATRICIA WARNER,

Plaintiffs,

v.

BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,

Defendants.

CASE NO. BC 475958

*Assigned to the Hon. Charles F. Palmer, Department 33, for all purposes*

**NOTICE OF AMENDED APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN**

**Complaint Filed:** 12/27/2011

**TO THE CLERK AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, January 3rd, at 8:30 a.m., or as soon thereafter as counsel may be heard, in Department 33 of the Los Angeles Superior Court, located at the Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, California, 90012, George E. McLaughlin will and does hereby apply for an Order permitting him to appear as counsel *pro hac vice* in this action on behalf of Plaintiff(s) Alan Warner and Patricia Warner, pursuant to Rule 9.40 of the California Rules of Court. This application

1

NOTICE OF AMENDED APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN

Exhibit E

Page 577

is based upon this Notice and the attached Verified Application of George E. McLaughlin and Declaration of Steven R. Vartazarian.

Dated: November 30, 2012

Respectfully Submitted,

By:________________________

Erol D. Ari, Esq.
Steven R. Vartazarian, Esq.
Attorney for Plaintiffs, Alan and Patricia Warner

2

NOTICE OF AMENDED APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN

Exhibit E

Page 578

## VERIFIED APPLICATION OF GEORGE E. MCLAUGHLIN

Pursuant to Rule 9.40 of the California Rules of Court, I, George E. McLaughlin, submit this Verified Application to appear as counsel *pro hac vice* in this action on behalf of Plaintiff(s) Alan Warner and Patricia Warner.

1. I am a member of the law firm of John Gehlhausen, P.C., whose offices are at 22488 E. Polk Drive, Aurora, Colorado 80016. I reside at 1643 Monaco Parkway, Denver, Colorado 80220-1642.

2. I am and have been a member of good standing of the Bar of the State of Colorado since January 2, 1987, where I practice law. I am also admitted to practice law in the following courts:

| Court | Date of Admission |
|---|---|
| Bar of the State of Ohio<br>Supreme Court of the State of Ohio<br>65 South Front Street, 5th Floor<br>Columbus, Ohio 43215-3431 | 11/7/80 |
| Bar of the State of West Virginia<br>West Virginia Supreme Court of Appeals<br>Clerk of Court, Rory L. Perry II<br>State Capitol Rm E-317<br>1900 Kanawha Blvd. East<br>Charlston, WV 25305 | 9/25/79 |
| United States Supreme Court<br>Clerk of the Supreme Court of the United States, William K. Suter<br>Director of Admissions, Terry Thompson<br>1 First Street, NE<br>Washington, DC 20543 | 2/21/06 |
| United State Court of Appeals for the 4th Circuit<br>Clerk's Office<br>100 East Main Street<br>Richmond, VA 23219 | 8/26/87 |
| United States Court of Appeals for the 6th Circuit<br>Office of the Clerk<br>Clerk, Lonard Green<br>540 Potter Stewart U.S. Courthouse<br>100 E 5th St.<br>Cincinnati, OH 45202-3988 | 8/19/03 |

///

///

3

NOTICE OF AMENDED APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN

Exhibit E

Page 579

United States Court of Appeals for the 7th Circuit 4/13/10
Gino Agnello, Clerk
Clerk's Office, U.S. Court of Appeals
Room 2722
219 S Dearborn St
Chicago, IL 60604

United States District Court for the Northern District of West Virginia 10/25/79
Cheryl Dean Riley, Clerk U.S. District Court
PO Box 471
1125 Chapline Street, Suit 1000
Wheeling, WV 26003

United States District Court for the Southern District of West Virginia 8/19/03
Clerk's Office
Theresa L. Deppner, Clerk
Robert C. Byrd United States Courthouse
300 Virginia Street East, Suite 2400
Charleston, WV 25301

Unites States District Court for the Southern District of Ohio 4/24/96
Office of the Clerk
Joseph P. Kinneary U.S. Courthouse, Room 121
85 Marconi Boulevard
Columbus, OH 43215

United States District Court for the Northern District of Ohio 1/5/11
Office of the Clerk
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, OH 44113

United States District Court for the Eastern and Western Districts of Arkansas 7/20/98
United States District Court for the Eastern District of Arkansas
Clerk's Office
James W. McCormack, Clerk of the Court
Richard Sheppard Arnold United States Courthouse
600 W. Capitol Avenue, Room A149
Little Rock, AR 72201

United States District Court for the Western District of Pennsylvania 7/27/99
Office of the Clerk
Robert Barth, Jr., Clerk of the Court
U.S. Courthouse
700 Grant Street
Pittsburgh, PA 15219

Unites States District Court for the Eastern District of Michigan 10/18/00
Clerk's Office
Theodore Levin U.S. Courthouse
231 W. Lafayette Boulevard, Room 564
Detroit, MI 48226

///

4

NOTICE OF AMENDED APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN

Exhibit E

Page 580

| | |
|---|---|
| United States District Court for the District of Colorado<br>Clerk's Office<br>Alfred A. Arraj United States Courthouse, Room A 105<br>901 19th Street<br>Denver, CO 80294-3589 | 9/26/01 |
| United States District Court for the Western District of Oklahoma<br>Court Clerk, Robert D. Dennis<br>200 NW 4th Street<br>Oklahoma city, OK 73102 | 6/26/08 |
| United States District Court for the Northern District of Oklahoma<br>Clerk's Office<br>Phil Lombardi, Clerk of Court<br>333 West Fourth Street, Room 411<br>Tulsa, OK 74103 | 9/25/08 |
| United States District Court for the Western District of Tennessee<br>U.S. Clerk's Office<br>Western Divisional Office<br>67 N. Main St., Room 2442<br>Memphis, TN 38103 | 2/4/11 |
| United States District Court for the Western District of Texas<br>U.S. District Clerk's Office<br>655 Cesar E. Chavez Boulevard, Room G65<br>San Antonio, TX 78206 | 2/10/09 |
| Unites States District Court for the Northern District of Texas<br>U.S. District Clerk's Office<br>U.S. Courthouse<br>1100 Commerce St., Room 1452<br>Dallas, TX 75242 | 6/29/07 |
| Unites States District Court for the Northern District of Illinois<br>U.S. District Clerk's Office<br>Thomas G. Bruton, Clerk of Court<br>Everett McKinley Dirksen United States Courthouse<br>219 S. Dearborn St.<br>Chicago, IL 60604 | 5/3/10 |
| United States District Court for the Central District of Illinois<br>U.S. Clerk's Office<br>Springfield Division<br>151 U.S. Courthouse<br>600 E. Monroe St.<br>Springfield, IL 62701 | 4/30/07 |
| United States District Court for the Southern District of Illinois<br>U.S. Courthouse<br>U.S. Clerk's Office<br>750 Missouri Ave.<br>East St. Louis, IL 62201 | 4/12/11 |

///

5

NOTICE OF AMENDED APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN

Exhibit E

Page 581

| | |
|---|---|
| United States District Court for the Western District of Wisconsin<br>Clerk of Court<br>U.S. District Court<br>Western District of Wisconsin<br>120 N. Henry St., Room 320<br>Madison, WI 53703 | 11/16/11 |
| United States Court of Federal Claims<br>Clerk's Office<br>717 Madison Pl. N.W.<br>Washington, DC 20005 | 7/19/96 |

3. I am a member in good standing in the aforementioned courts.

4. I have never been suspended or disbarred by any court.

5. In the preceding two years, I have filed two applications to appear as cousel *pro hac vice* in California in the following courts: (1) United States District Court for the Eastern District of California, *Post et al. v. Sunbeam Products Inc.* (Case No. 2:11-cv-00792-JAM-CMK), application granted October 2011; and (2) United States District Court for the Northern District of California, *Bookhamer et al. v. Sunbeam Products Inc.* (Case No. 3:09-cv-06027-MHP), application granted March 2010.

6. The attorney of record for Plaintiff(s) Alan Warner and Patricia Warner is Steven R. Vartazarian, an active member of the State Bar of California and a partner in the firm of The Vartazarian Law Firm P.C., 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403, tel. (818) 990-9949.

7. I am not regularly employed in the State of California, nor am I regularly engaged in substantial business, professional, or other activities in the State of California.

///

///

///

6

NOTICE OF AMENDED APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN

Exhibit E

Page 582

8. I have asked Mr. Vartazarian to serve on the State Bar of California a copy of this Application and a check for $50.00 representing the processing fee contemplated by California Rule of Court 9.40(e). Mr. Vartazarian has assured me that he has complied with this request and will attach to the papers supporting this Application, a Proof of Service that reflects such service in compliance with Cal. Civ. Proc. Code §1013(a).

Date: November 30, 2012

Respectfully submitted,

[signature]

George E. McLaughlin
John Gehlhausen, P.C.
22488 E. Polk Drive
Aurora, CO 80016
Tel: (303) 690-8197
Fax: (303) 690-8198

7

NOTICE OF AMENDED APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN

Exhibit E

Page 583

**VERIFICATION**

I, George E. McLaughlin, under oath, declare as follows:

1. I am an attorney for Plaintiff(s) Alan Warner and Patricia Warner in this action.

2. The matters stated in the foregoing Application to Appear as Counsel *Pro Hac Vice* are true of my own knowledge and belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this 30th day of November, 2012, Aurora, Colorado.

George E. McLaughlin

8

NOTICE OF AMENDED APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN

Exhibit E

Page 584

**PROOF OF SERVICE**

I, Steven R. Vartazarian, on October 29, 2012, caused to be mailed to the Office of Certification of the State Bar of California this Notice of Application and Verified Application to Appear as Counsel *Pro Hac Vice* of George E. McLaughlin, along with a check for $50.00. A true and correct copy of the check, payable to the State Bar of California, together with my cover letter to the State Bar of California Office of Certification, is attached hereto as Exhibit 1, following the Declaration of Steven R. Vartazarian.

Dated: November 30, 2012

Steven R. Vartazarian

9

NOTICE OF AMENDED APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN

Exhibit E

Page 585

**DECLARATION OF STEVEN R. VARTAZARIAN**

I, Steven R. Vartazarian, hereby declare as follows:

1. I am a member of the Bar of this Court and associated with the firm of The Vartazarian Law Firm, P.C., counsel for Plaintiff(s) Alan Warner and Patricia Warner in this action. Through my involvement in this case, I have personal knowledge of the facts set forth herein and, if called upon to do so, could and would competently testify thereto.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 30th day of November, 2012 at Sherman Oaks, California.

Steven R. Vartazarian

10

NOTICE OF AMENDED APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN

Exhibit E

Page 586

PROOF OF SERVICE
1013A (3) CCP
STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403.

On December 4, 2012, I served the foregoing document described as **NOTICE OF AMENDED APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN** on the interested parties in this action:

PLEASE SEE SERVICE LIST

__X___By placing the true copies thereof enclosed in sealed envelopes addressed as follows:

_____ I deposited such envelope with Federal Express in Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid for Priority Overnight Delivery.

__X___ I caused such envelope to be deposited in the mail at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

_____(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

______(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was __________________. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

______By attaching the document described above as a PDF document and emailing the same to all parties identified on the Service List below.

XXX I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 4, 2012, at Sherman Oaks, California.

________________________
Dahlia Smith

Exhibit E
Page 587

**SERVICE LIST**

Pro Hac Vice Program
**THE STATE BAR OF CALIFORNIA**
180 Howard Street
San Francisco, CA 94105

Michael L. Kirby
**KIRBY NOONAN LANCE & HOGE, LLP**
350 Tenth Avenue, Suite 1300
San Diego, Ca 92101
Attorneys for: Wright Medical Group, Inc. And Wright Medical Technology, Inc.

Exhibit E

Page 589

**EXHIBIT 1**



THE VARTAZARIAN
L A W F I R M

A Professional Corporation
15250 Ventura Blvd., Suite 505
Sherman Oaks, CA, 91403
Telephone (818) 990-9949
Facsimile (818) 990-6124

October 29, 2012

**SENT VIA U.S. POST ONLY**

Pro Hac Vice Program
The State Bar of California
180 Howard Street
San Francisco, CA 94105

**Re:** Pro Hac Vice Application in **Warner v. Wright Medical Group, et. al.**, Superior Court, County of Los Angeles, Central District, No. BC 475958.

Dear Sir or Madam:

Enclosed please find a Rule 9.40 Verified Pro Hac Vice Application, for George E. McLauglin, together with a check for $50 made payable to the State Bar of California for his Application. The Application is noticed for hearing by the Court (Superior Court, County of Los Angeles, Central District, Department 33, the Hon. Charles F. Palmer) on 10/29/12.

Thank you for your assistance with this matter. If you have any questions, please do not hesitate to call me at (818) 990-9949.

VERY TRULY YOURS,

Steven R. Vartazarian

SRV:ds
Enclosures

THE VARTAZARIAN LAW FIRM

CLIENT TRUST ACCOUNT
15250 VENTURA BLVD., STE. 505
SHERMAN OAKS, CA 91403
(818) 990-9949

1242

90-3730-1222

DATE 10/29/12

PAY TO THE ORDER OF State Bar of California $ 50.00

Fifty DOLLARS

FIRST CALIFORNIA BANK
16661 Ventura Blvd., Ste. 110 Encino, California 91436

FOR Pro hac vice Joe Warner

PROOF OF SERVICE
1013A (3) CCP

STATE OF CALIFORNIA, LOS ANGELES COUNTY

I am employed in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action; my business address is: 15250 Ventura Blvd., Suite 505, Sherman Oaks, CA 91403

On October 29, 2012, I served the foregoing document described as **NOTICE OF APPLICATION AND VERIFIED APPLICATION TO APPEAR AS COUNSEL PRO HAC VICE OF GEORGE E. MCLAUGHLIN; DECLARATION OF STEVEN R. VARTAZARIAN** on the interested parties in this action:

XXX by placing the true copies thereof enclosed in sealed envelopes addressed as follows:

Pro Hac Vice Program
The State Bar of California
180 Howard Street
San Francisco, CA 94105

______ I deposited such envelope in the Federal Express box at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

XXX I caused such envelope to be deposited in the mail at Sherman Oaks, California. The envelope was mailed with postage thereof fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing affidavit.

_____(BY PERSONAL SERVICE by NOW LEGAL SERVICES INC.) I delivered such envelope by hand to the offices of the addressee.

_____(BY FACSIMILE) On the interested parties in this action pursuant to C.R.C. Rule 2009(b). The FAX number that I used was ________________. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

XXX I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 29, 2012, at Sherman Oaks, California.

Steven R. Vartazarian, Esq.

Exhibit E
Page 592

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, NORTHWEST DISTRICT**

| | |
|---|---|
| ALAN WARNER and PATRICIA WARNER,<br><br>Plaintiffs,<br><br>v.<br><br>BRAD L. PENENBERG, M.D., WRIGHT MEDICAL GROUP, INC., a corporation, WRIGHT MEDICAL TECHNOLOGY, INC., a corporation, Doctor, and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. BC 475958<br><br>**[PROPOSED] ORDER ON APPLICATION OF GEORGE E. MCLAUGHLIN TO APPEAR AS COUNSEL *PRO HAC VICE* IN THIS ACTION FOR PLAINTIFFS ALAN WARNER AND PATRICIA WARNER**<br><br>Judge: Hon. Charles F. Palmer<br>Dept.: 33<br><br>Complaint Filed: December 27, 2011<br>Trial Date: May 6, 2013 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Application having been made by Plaintiffs ALAN WARNER and PATRICIA WARNER for an order granting Plaintiff's application for George E. McLaughlin to appear as counsel *pro hac vice*, and good cause having been shown therefor:

**IT IS HEREBY ORDERED**:

1) It is ORDERED that the application of George E. McLaughlin to appear as counsel *pro hac vice* for Plaintiffs Alan Warner and Patricia Warner in this matter is hereby granted.

OR IN THE ALTERNATIVE:

1) It is ORDERED ______________________________________________

______________________________________________

______________________________________________

______________________________________________

IT IS SO ORDERED.

**DATED:**______________

______________________________

Honorable Charles F. Palmer
Judge of the Superior Court

Exhibit E
Page 594

2

[PROPOSED] ORDER ON APPLICATION OF GEORGE E. MCLAUGHLIN TO APPEAR AS COUNSEL PRO HAC VICE IN THIS ACTION FOR PLAINTIFFS ALAN WARNER AND PATRICIA WARNER